IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

────────────────────────────────────

RAHEEM THOMPSON,

                    Plaintiff,

                                        Civ. Action No.
          v.                            9:09-CV-00685 (FJS/DEP)

HENRY J. SADOWSKI, Regional Counsel,
U.S. Bureau of Prisons, and BALDWIN,
Officer, FCI Ray Brook,

                    Defendants.

────────────────────────────────────

APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFF:

RAHEEM THOMPSON, *pro se*
15766-014
F.C.I. Fairton
P.O. Box 420
Fairton, NJ 08320

FOR DEFENDANTS:

HON. RICHARD HARTUNIAN          CHARLES E. ROBERTS, ESQ.
United States Attorney          Assistant U.S. Attorney
P.O. Box 7198
100 South Clinton Street
Syracuse, NY 13261-7168

HON. DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

Plaintiff Raheem Thompson, a federal prison inmate who is proceeding *pro se* and *in forma pauperis*, has commenced this action pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999 (1971), claiming to have suffered a deprivation of his civil rights at the hands of the defendants, two employees of the United States Bureau of Prisons ("BOP").  In his complaint, plaintiff maintains that several items of personal property were stolen by fellow inmates from his locker and bunk area, and that while Corrections Officer Baldwin, one of the two named defendants, was present and observed the theft, he failed to intercede and prevent it from occurring.  Plaintiff additionally maintains that through the actions of defendant Henry J. Sadowski, a BOP Regional Counsel, and by virtue of the agency's refusal to offer him a settlement of the matter in response to administrative claims filed pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq.*, he was effectively denied an adequate post-deprivation remedy, in violation of his due process rights under the Fifth Amendment to the United States Constitution.  As relief, plaintiff's amended complaint seeks $1,350.00 in compensatory damages.

2

Currently pending before the court in connection with this action are two separate motions.  In the first, defendants have moved for either dismissal of plaintiff's claim for failure to state a cause of action or, alternatively, for summary judgment, arguing that the claim is procedurally barred based upon Thompson's failure to exhaust available administrative remedies and that his complaint fails to state a plausible due process cause of action.  Prior to opposing defendants' motion, which he has now done, plaintiff initially moved for a stay of this action to permit him to exhaust administrative remedies.

After carefully considering defendants' motion, I recommend that it be treated as a motion for summary judgment and granted, based upon a finding that, while genuine issues of material fact exist regarding defendants' exhaustion defense, based upon the record now before the court no reasonable factfinder could conclude that plaintiff was denied due process by the defendants. I also recommend that plaintiff's motion to stay be denied as futile in light of my determination that there is no genuine issue as to the merits of his due process claim.

1.     BACKGROUND[1]

Plaintiff is a federal prison inmate within the custody of the BOP. *See generally* Complaint (Dkt. No. 1).  At the times of the occurrences giving rise to plaintiff's claims he was designated by the BOP to the Ray Brook Federal Correctional Institution ("FCI Ray Brook"), located in Ray Brook, New York.  *Id.*

On December 2, 2007, plaintiff was assaulted by inmates at FCI Ray Brook.  Amended Compl. (Dkt. No. 23) p. 1.  Following that assault, Thompson was taken to the facility's special housing unit ("SHU"), where he remained for a year under investigation and in administrative confinement.  *Id.; see also* Thompson Aff. (Dkt. No. 49) ¶ 6.

Two days after being transferred into the facility's SHU plaintiff was asked to inventory his personal property, which apparently was delivered from his original housing unit.  Amended Complaint (Dkt. No. 23) p. 2; Thompson Aff. (Dkt. No. 49) ¶ 2.  Plaintiff immediately noticed that a substantial amount of his property was missing and reported that fact both

---

[1]     Based upon my recommendation that defendants' motion be treated as seeking summary judgment, the following recitation is derived from the record now before the court with all inferences drawn and ambiguities resolved in plaintiff's favor. *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir.2003).

verbally and on a form provided to him by prison officials.  Amended

Complaint (Dkt. No. 23) p. 2.

Upon investigation it was learned that a fellow inmate was observed

by Corrections Officer Baldwin removing items from plaintiff's locker and

bunk area and placing them in a net bag.[2]  Amended Complaint (Dkt. No.

23) p. 2.  Despite witnessing the incident, Officer Baldwin neither

intervened to prevent what later was determined to be an unauthorized

theft, nor did he report the matter at the time.  *Id.*

On December 4, 2007, while still confined in the SHU, plaintiff filed

an administrative tort claim  pursuant to the FTCA concerning the property

loss.  Amended Complaint (Dkt. No. 23) p. 2; *see also* Defendants'

Exhibits (Dkt. No. 39-2) Exh. 1.  In that claim plaintiff alleged that certain

of his personal property had been stolen and requested payment of

$595.70 in damages.  *Id.*  In response to his FTCA claim, plaintiff received

a written memorandum, dated October 24, 2008, from defendant Henry J.

---

[2]     The parties disagree as to whether plaintiff's locker was properly secured at the time of the theft.  Thompson asserts that it was locked prior to the assault. Amended Complaint (Dkt. No. 23) p. 1; *see also* Thompson Aff. (Dkt. No. 49) ¶ 4. Defendants report, however, that plaintiff's locker was not properly secured and in fact was found to have been unlocked upon investigation following the theft.  In view of my determination that plaintiff's due process claim is substantially deficient,  this factual discrepancy does not provide a basis for denying defendants' motion for summary judgment.

Sadowski, Esq., Regional Counsel for the BOP, in which he declined to offer a settlement, noting that a BOP investigation revealed that on the date in question plaintiff's locker was unsecured, and there was no evidence of negligence on the part of any BOP employee.  Amended Complaint (Dkt. No. 23) p. 2; *see also* Defendants' Exhibits (Dkt. No. 39-2) Exh. 2.  A request by plaintiff for reconsideration of that determination, lodged on November 11, 2008, was subsequently denied by defendant Sadowski on December 12, 2008.  *See* Defendants' Exhibits (Dkt. No. 39-2) Exhs. 4 and 5.  Despite being advised in the two Sadowski memoranda of his right under the FTCA to commence an action against the United States within six months, it does not appear that the plaintiff pursued that course of action.[3]

---

[3]      Affording the plaintiff the benefit of the prison mailbox rule, *Tracy v. Freshwater*, No. 5:01-CV-0500, 2008 WL 850594, *1 (N.D.N.Y. March 28, 2008) (McCurn, S.J.) (citing *Houston v. Lack*, 487 U.S. 266, 276, 108 S. Ct. 2379, 2385 (1988)), it appears that this case was brought within six months of the date of defendant Sadowski's December 12, 2008 letter denying reconsideration, and plaintiff's complaint therefore could be construed as attempting to assert a claim under the FTCA.  Resolving a conflict among the circuits on the issue, in *Ali v. Federal Bureau of Prisons*, 552 U.S. 214, 128 S. Ct. 831 (2008), the Supreme Court held that the FTCA's waiver of sovereign immunity exemption, which applies to "[a]ny claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer." 28 U.S.C. § 2680(c), is applicable to BOP officers.  Courts have since interpreted that decision as precluding claims against such officers arising of the of the detention or loss of a federal prisoner's property.  *Storm v. Bureau of Prisons*, No. 4:08CV1690, 2009 WL 1163123, at *4-5 (N.D. Ohio Apr. 29, 2009); *Nunez v. United States*, No. 3:CV-07-1147, 2009 WL 222661, at *3 (M.D. Pa. Jan. 29, 2009).  Accordingly, to the extent that plaintiff's complaint could be construed

II.   <u>PROCEDURAL HISTORY</u>

Plaintiff commenced this action on June 15, 2009.  Dkt. No. 1.
Named as defendants in plaintiff's initial complaint were the BOP, FCI Ray
Brook Warden Deborah G. Schult, and Officer Baldwin.  *Id*.  Plaintiff's
complaint asserted multiple causes of action of an unspecified nature and
requested monetary damages in the sum of $1,000.00 based upon the
loss of his property.  *Id*.

Upon an initial review of the matter in association with plaintiff's
application to proceed *in forma pauperis*, the court *sua sponte* ordered
dismissal of plaintiff's original complaint pursuant to 28 U.S.C. §§1915(e)
and 1915A for failure to state a claim upon which relief may be granted.
Dkt. No. 4.   That determination was subsequently vacated, however, and
plaintiff was afforded permission to submit an amended complaint setting
forth due process claims against defendant Baldwin and Henry J.
Sadowski, the letter of whom was not named in the original complaint.
Dkt. No. 17.

---

as including an FTCA cause of action, that claim was dismissed by Senior District
Judge Frederick J. Scullin, Jr. on May 28, 2010, based upon the exemption afforded
under 28 U.S.C. §2680(c).  *See* Memorandum-Decision and Order dated May 28,
2010 (Dkt. No. 4)  p. 7.

In accordance with that determination plaintiff filed an amended complaint on July 7, 2010.  Dkt. No. 23.  Plaintiff's amended complaint names Regional Counsel Sadowski and Officer Baldwin as defendants, and seeks recovery of damages in the amount of $1,350.00.  *Id*.

In lieu of answering plaintiff's complaint, defendants filed a motion on November 1, 2010 seeking its dismissal for failure to state claim upon relief may be granted or, alternatively, for summary judgment in their favor.  Dkt. No. 39.  In their motion, defendants argue that plaintiff failed to satisfy his obligation to exhaust available administrative remedies before commencing this action, and in any event has not stated an actionable due process claim.  *Id.*

Plaintiff's initial response to defendants' motion was to submit a letter to the court requesting a stay of the action in order to permit him to exhaust administrative remedies.  Dkt. No. 44.  In support of that request, plaintiff passionately asserts that he was repeatedly denied access to the appropriate grievance form, and that he was instructed by prison officials that the appropriate avenue for pursuit of the matter was through the filing of a tort claim, emphasizing that he is now willing to follow the proper

procedure and afford the BOP a "second chance to rectify these issues."[4]
*Id.*  Plaintiff followed that stay request with the submission of an affidavit,
with exhibits, and a memorandum in opposition to defendants' motion,
which he characterizes as seeking summary judgment.  Dkt. No. 49.

Defendants' motion, which is now fully briefed and ripe for
determination, has been referred to me for the issuance of a report and
recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern
District of New York Local Rules 72.3(c).  *See also* Fed.R.Civ.P. 72(b).

III.   DISCUSSION

A.   Standards of Review

1.   Motion to Dismiss

One of the alternative forms of relief sought by the defendants is
dismissal of plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal
Rules of Civil Procedure for failure to sate a claim upon which relief may

---

[4]      Defendant has opposed plaintiff's request for a stay as futile, correctly
arguing that the act of exhausting administrative remedies after commencement of a
civil action will not cure the procedural defect, Dkt. No. 47.  *See Williams v. French*,
No. 10-CV-998, 2011 WL 2432917, at *2 (N.D.N.Y. Apr. 5, 2011) (Homer, M.J.)
(finding filing of prison grievance the same day as complaint did not meet PLRA
exhaustion requirement), *report and recommendation adopted*, 2011 2432918 (Jun.
15, 2011) (Mordue, C.J.); *see also Cuello v. Lindsay*, No. 09–CV–4525, 2011 WL
1134711, at *10 (E.D.N.Y. Mar. 25, 2011) (noting exhaustion under FTCA must occur
before filing the complaint); *Martinez v. Dr. Williams R.*, 186 F. Supp. 2d 353, 354
(S.D.N.Y. 2002) ("A prisoner must exhaust all available remedies before bringing an
action regarding prison conditions.") (citing *Neal v. Goord*, 267 F.3d 116 (2d Cir.
2001)).

be granted.  Such a motion calls upon a court to gauge the facial

sufficiency of that pleading, utilizing as a backdrop a pleading standard

which, though unexacting in its requirements, "demands more than an

unadorned, the-defendant-unlawfully-harmed me accusation" in order to

withstand scrutiny. *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S. Ct. 1937,

1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.

Ct. 1955, 1965 (2007)). Rule 8(a)(2) of the Federal Rules of Civil

Procedure requires that a complaint contain "a short and plain statement

of the claim showing that the pleader is entitled to relief." Fed. R .Civ. P.

8(a)(2). While modest in its requirement, that rule commands that a

complaint contain more than mere legal conclusions; "[w]hile legal

conclusions can provide the framework of a complaint, they must be

supported by factual allegations." *Ashcroft*, 129 S. Ct. at 1950.

To withstand a motion to dismiss, a complaint must plead sufficient

facts which, when accepted as true, state a claim which is plausible on its

face. *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir.2008) (citing

*Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974). As the Second Circuit has

observed, "[w]hile Twombly does not require heightened fact pleading of

specifics, it does require enough facts to 'nudge [plaintiffs'] claims across

the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502

F.3d 47, 50 (2d Cir.2007) (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974).

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party. *Cooper v. Pate*, 378 U.S. 546, 546, 84 S. Ct. 1733, 1734 (1964); *Miller v. Wolpoff & Abramson, LLP*, 321 F.3d 292, 300 (2d Cir.2003), *cert. denied*, 540 U.S. 823, 124 S. Ct. 153 (2003); *Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y.2005) (Kahn, J.). The burden undertaken by a party requesting dismissal of a complaint under Rule 12(b)(6) is substantial; the question presented by such a motion is not whether the plaintiff is likely ultimately to prevail, " 'but whether the claimant is entitled to offer evidence to support the claims.' " *Log On America, Inc. v. Promethean Asset Mgmt. L.L.C.*, 223 F. Supp. 2d 435, 441 (S.D.N.Y.2001) (quoting *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir.1995)) (citations and quotations omitted).

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007) (" '[A] *pro se*

11

complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers . . ..' ") (quoting *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976) (internal quotations omitted)); *Davis v. Goord*, 320 F.3d 346, 350 (2d Cir.2003) (citation omitted); *Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y.2004) (Hurd, J.). In the event of a perceived deficiency in a *pro se* plaintiff's complaint, a court should not dismiss without granting leave to amend at least once if there is any indication that a valid claim might be stated. *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir.1991); *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").

Additionally, it is appropriate "to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint." *Hale v. Rao*, No. 08-CV-612, 2009 WL 3698420, at *3 (N.D.N.Y.2009) (Hurd, D.J. & Lowe, M.J.) (citing *Gadson v. Goord*, No. 96 Civ. 7544,1997 WL 714878, at *1, n. 2 (S.D.N.Y.1997)).[5]  However, this special leniency

---

[5]     Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

"does not completely relieve a *pro se* plaintiff of the duty to satisfy the

pleading standards set forth in Rules 8, 10 and 12."  *Hale*, 2009 WL

3698420, at *3 (citing *Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir.2008)).

## 2.   Motion for Summary Judgment

Defendants have asked, alternatively, for the entry of summary

judgment, requesting the court to consider materials outside of the

complaint when deciding their motion.  Summary judgment motions are

governed by Rule 56 of the Federal Rules of Civil Procedure.  Under that

provision, summary judgment is warranted when "the pleadings, the

discovery and disclosure materials on file, and any affidavits show that

there is no genuine issue as to any material fact and that the movant is

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see*

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986);

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505,

2509-10 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight*

*Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004).  A fact is "material", for

purposes of this inquiry, if it "might affect the outcome of the suit under the

governing law."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *see also*

*Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing

*Anderson*).  A material fact is genuinely in dispute "if the evidence is such

13

that a reasonable jury could return a verdict for the nonmoving party."
*Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.

A party moving for summary judgment bears an initial burden of
demonstrating that there is no genuine dispute of material fact to be
decided with respect to any essential element of the claim in issue; the
failure to meet this burden warrants denial of the motion.  *Anderson*, 477
U.S. at 250 n.4, 106 S. Ct. at 2511 n.4; *Security Ins.*, 391 F.3d at 83.  In
the event this initial burden is met the opposing party must show, through
affidavits or otherwise, that there is a material issue of fact for trial.  Fed.
R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*,
477 U.S. at 250, 106 S. Ct. at 2511.  Though *pro se* plaintiffs are entitled
to special latitude when defending against summary judgment motions,
they must establish more than mere "metaphysical doubt as to the
material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475
U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *but see Vital v. Interfaith
Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court
to consider whether *pro se* plaintiff understood nature of summary
judgment process).

When deciding a summary judgment motion, a court must resolve
any ambiguities, and draw all inferences from the facts, in a light most

favorable to the nonmoving party.  *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998).  Summary judgment is warranted only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party.  *See Bldg. Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

> B.    Procedural Posture

Defendants' pre-answer motion is brought seeking either dismissal for failure to state a cause of action, in which case generally speaking matters outside of the four corners of plaintiff's complaint would not properly be considered by the court,  *see Global Network Communications, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006), or alternatively as a motion for summary judgment, in connection with which the court would have available to it the entire record, including extrinsic materials, for use in making its ruling. *See* Fed. R. Civ. P. 12(b) ("[i]f . . . matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . .)*; see also Friedl v. City of*

*New York*, 210 F.3d 79, 83-84 (2d Cir. 2000). Consideration of matters outside of a complaint when resolving a Rule 12(b)(6) motion without explicitly giving notice that the court is converting the Rule 12 motion to a Rule 56 motion ordinarily is improper.  *Reliance Ins. Co. v. Polyvision Corp.*, 474 F.3d. 54, 57 (2d Cir. 2007).  However, as is the case in this instance, when the nonmoving party is plainly aware that additional evidentiary materials have been submitted and summary judgment is being sought, and that party responds with his or her own evidentiary submissions, formal notice of the conversion by the court is not necessarily required.  *Id.; Ford v. Fischer*, No. 9:090-CV-723, 2011 WL 856416, at *4 (N.D.N.Y. Jan. 31, 2011) (citing *Reliance*) (Baxter, M.J.)*, report and recommendation adopted*, 2011 WL 846860 (Mar. 9, 2011) (Hurd, J.); *Richardson v. Schult*, No. 9:09-CV-868, 2011 WL 1085983, at *7 (N.D.N.Y. Jan. 19, 2011) (Peebles, M.J.), *report and recommendation adopted*, 2011 WL 807402 (Mar. 2, 2011) (Sharpe, J.).

     In this case the plaintiff has submitted to the court evidentiary materials stated to be in support of his complaint, Dkt. No. 41, and those materials are properly available for review in connection with defendants' motion for summary judgment.  *Richardson*, 2011 WL 1085983, at *7. Moreover, plaintiff has demonstrated his awareness that summary

judgment is being sought, formulating his response as addressing defendants' motion for summary judgment, and attaching both a reply to defendants' Local Rule 7.1(a)(3) Statement and his own Local Rule 7.1(a)(3) Statement, submitted pursuant to a local court rule governing summary judgment motions, as well as an affidavit in opposition to the motion.  Given these facts I recommend that the court consider the entire record now before it and treat defendants' motion as seeking summary judgment.

### C.    Exhaustion of Remedies

In their motion, the defendants first argue that plaintiff is procedurally barred from pursuing the claims in this action based upon his failure to exhaust available administrative remedies before commencing suit.

The Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); *see Woodford v. Ngo,* 548 U.S. 81, 84, 126 S. Ct. 2378, 2382

(2006); *Hargrove v. Riley,* No. CV-04-4587, 2007 WL 389003, at *5-6

(E.D.N.Y. Jan. 31, 2007).  "[T]he PLRA's exhaustion requirement applies

to all inmate suits about prison life, whether they involve general

circumstances or particular episodes, and whether they allege excessive

force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.

Ct. 983, 992 (2002) (citation omitted).

In the event a defendant named in such an action establishes that

the inmate plaintiff failed properly to exhaust available remedies prior to

commencing the action, his or her complaint is subject to dismissal.  *See*

*Pettus v. McCoy*, No. 04-CV-0471, 2006 WL 2639369, at *1 (N.D.N.Y.

Sept. 13, 2006) (McAvoy, J.); *see also Woodford*, 548 U.S. at 94-95, 126

S. Ct. at 2387-88 (holding that the PLRA requires "proper exhaustion" of

available remedies).  "Proper exhaustion" requires a plaintiff to

procedurally exhaust his or her claims by "compl[ying] with the system's

critical procedural rules."  *Woodford*, 548 U.S. at 95, 126 S. Ct. at 2388;

*see also Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007) (citing

*Woodford*).[6]

---

[6]      While placing prison officials on notice of a grievance through less formal
channels may constitute claim exhaustion "in a substantive sense", an inmate plaintiff
nonetheless must meet the procedural requirement of exhausting his order available
administrative remedies within the appropriate grievance construct in order to satisfy
the PLRA.  *Macias*, 495 F.3d at 43 (quoting *Johnson v. Testman*, 380 F.3d 691, 697-

As a federal prison inmate, plaintiff had available to him a three-tiered, four step internal administrative grievance system adopted by the BOP for the stated purpose of "allow[ing] an inmate to seek formal review of an issue relating to any aspect of his or her confinement. *Macias*, 495 F.3d at 42;  *see* 28 C.F.R. § 542, Subpt. B.  The first step of that Administrative Remedy Program ("ARP") entails making an effort to obtain an early resolution of the matter by raising the issue informally to staff. 28 C.F.R. § 542.13(a); *see also Johnson,* 380 F.3d at 693. In the event that step does not lead to a successful resolution, the inmate may next submit a formal written Administrative Remedy Request ("ARR") to the warden of the particular facility involved, utilizing a designated form, within twenty days of the relevant event. 28 C.F.R. § 542.14(a).  If the ARR is denied, an appeal may be taken to the appropriate BOP regional director within twenty calendar days of the date of denial. 28 C.F.R. § 542.15(a); *see also Johnson,* 380 F.3d at 693.   As a fourth step, an unfavorable decision from the regional director may be appealed to the general counsel's office within thirty days of the date on which the regional director rejects the inmate's appeal.  28 C.F.R. § 542.15(a).  Only upon completion of all of

---

98 (2d Cir. 2004) (emphasis omitted).

the required steps of this prescribed process does a federal inmate fully

exhaust available administrative remedies.  *Macias,* 495 F.3d at 44; *see*

*also Johnson v. Rowley*, 569 F.3d 40, 45 (2d Cir. 2009)*; Strong v. Lapin*,

No. 90-CV-3522, 2010 WL 276206, at * 4 (E.D.N.Y. 2010) ("Until the

BOP's Central Office considers the appeal, no administrative remedy is

considered to be fully exhausted.").

The record before the court convincingly establishes that the plaintiff

did not avail himself of this administrative grievance system to complain

regarding the theft and failure of prison officials to properly handle the

matter before commencing this action. Significantly, a search of BOP

records reveals that plaintiff has not once resorted to use of the ARP since

being incarcerated by the BOP.  Mastroberti Decl. (Dkt. No. 39-3) Ex. A. In

addition, plaintiff's motion to stay the action pending exhaustion signals

his tacit acknowledgment that those remedies were not exhausted.  *See*

Dkt. No. 44.

It is true that the plaintiff did communicate with regional BOP officials

regarding the matter through submission of an administrative tort claim.

This fact, however, is legally irrelevant since the procedures under the

FTCA differ from those required under the PLRA as a prelude to pursuit of

a *Bivens* claim, and fulfillment of one does not constitute satisfaction of

20

the other.  *Owasu v. BOP*, No. 02 Civ 0915, 2003 WL 68031 at *2 (S.D.N.Y. Jan 7, 2003); *see also Nwaokocha v. Sadowski*, 369 F. Supp. 2d 362, 386 (E.D.N.Y. May 17, 2005) ("the filing of an administrative tort claim by a prisoner does not excuse the prisoner's failure to meet the separate exhaustion requirements for a *Bivens* claim under the PLRA"); *Hylton v. BOP*, No. CV 00-5747, 2002 WL 720605, at *2 (E.D.N.Y. Mar. 11, 2002) ("it is entirely possible that [plaintiff] exhausted his administrative remedies for purposes of the FTCA without exhausting remedies pursuant to the PLRA for purposes of filing a *Bivens* claim").

Before concluding that a prisoner has failed to exhaust available administrative remedies as required by the PLRA, a court must consider three additional factors, including whether 1) administrative remedies were actually available to the inmate; 2) the defendants have either waived the defense of failure to exhaust or acted in such a way as to estop them from raising the defense; or 3) the existence of special circumstances, such as a reasonable misunderstanding of the grievance procedures, justifying the prisoner's failure to comply with the exhaustion requirement.  *Hargrove,* 2007 WL 389003, at *8 (citing *Ruggiero v. County of Orange*, 467 F.3d 170, 175 (2d Cir. 2006) (citing *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir.2004)).

21

Under the first prong, the test for assessing availability is an "objective one: that is, would a similarly situated individual of ordinary firmness have deemed them available." *Hargrove,* 2007 WL 389003, at *8 (quoting *Hemphill*, 380 F.3d at 688). In making this determination, "courts should be careful to look at the applicable set of grievance procedures." *Abney v. McGinnis*, 380 F.3d 663, 668 (2d Cir.2004). Exhaustion may be considered unavailable in situations where a plaintiff is unaware of the available grievance procedures or did not understand them, *Ruggiero*, 467 F.3d at 179, or where defendants' behavior prevents the plaintiff from seeking administrative remedies.[7]  *Hemphill*, 380 F.3d 680, 686 (2d Cir.2004).

Here, construed most favorably to the plaintiff, the record discloses genuine issues of fact concerning whether the remedies afforded under the BOP's ARP were available to Thompson.  First, there is some doubt from plaintiff's original complaint as to whether plaintiff was aware of the procedures and sufficiently understood them. *See* Compl. (Dkt. No. 1) ¶ 4. Notably, in that initial filing, he answered "yes" to the question "is there a

_____

[7]     Case law regarding the difference between behavior preventing a plaintiff from seeking administrative remedies and conduct warranting a finding of waiver of the defense is less than clear. *See Hargrove,* 2007 WL 389003, at *8, n.14.  Because of this overlap, I will address this issue only once under the former.

22

prisoner grievance procedure at this facility[,]" but yet clearly demonstrated a lack of understanding of the required procedures when asked to outline the steps he took to pursue a grievance. *See id.* Moreover, plaintiff asserts that this is his first lawsuit filed relating to his imprisonment. Additionally, in his application for a stay plaintiff asserts that he was under the misconception that his FTCA filings would suffice to exhaust administrative remedies.

Also critically important to the exhaustion analysis is the factual dispute regarding whether Thompson was denied access to the grievance procedures through the actions of prison personnel.  Plaintiff asserts that while segregated in the facility's SHU, he repeatedly asked his case manager and officers making rounds to provide him with a proper grievance form. *See, e.g.,* Thompson Aff. (Dkt. No. 49) ¶ 5.  Plaintiff further contends that he was instructed that filing a tort claim was the right course of action. *Id.* at ¶ 5.  In direct contrast to these assertions, defendants argue that plaintiff never asked for a grievance form, emphasizing that plaintiff has failed to name the individual whom he asked and highlighting that plaintiff never asked Legal Assistant Robin

VanWeelden, who makes weekly rounds in the FCI Ray Brook SHU, for a

proper form.  *See* VanWeelden Decl. (Dkt. No. 47-2) ¶ 5.

Regardless of how unlikely it may be that plaintiff ultimately will be

able to substantiate his inability to pursue a grievance regarding his claim

due to the actions of prison officials, at this point in the litigation there

remains a genuine issue of material fact as to whether the remedies under

the ARP were available to the plaintiff. *See Bailey v. Fortier*, No.

09-CV-0742, 2010 WL 4005258 (N.D.N.Y. Aug. 30, 2010) (Peebles, M.J.),

*report and recommendation adopted*, 2010 WL 3999629 (Oct. 12, 2010)

(Sharpe, J.).  That dispute turns upon credibility determinations that

cannot properly be made on a motion for summary judgment.

Accordingly, I recommend defendants' motion for summary judgment on

the procedural ground of failure to exhaust be denied.[8]

D.    Due Process Claim

Liberally construed, plaintiff's complaint alleges only a claim for

violation of his right to due process in association with the loss of his

---

[8]       In the event my recommendation on the merits is rejected, then an
evidentiary hearing could then be conducted to resolve the discerned factual
discrepancy and resolve the exhaustion defense.  *Messa v. Goord*, -- F.3d --, 2011 WL
3086827 (2d Cir. Jul. 26, 2011).

property.[9]  Defendants contend that summary judgment is appropriate on the merits because plaintiff cannot demonstrate the existence of such a cognizable claim.

The Due Process Clause of the Fifth Amendment provides that "no person shall be deprived of life, liberty, or property without due process of law[.]" U.S. Const.  amend. V; *see also Fusco v. Drew*, No. 9:05-cv-41, 2007 WL 2227506, at * 2 (Jul. 31, 2007) (Sharpe, J. & Homer, M.J.).  "In evaluating due process claims, the threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution." *Perry v. McDonald*, 280 F.3d 159, 173 (2d Cir. 2001).  In the prison context, it is well-established that an allegation that an inmate's personal property was destroyed or lost by prison officials, negligently or even intentionally, does not offend the Due Process Clause provided that adequate post-deprivation remedies are available for redress of the matter.  *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S. Ct. 3194 (1984).

---

[9]      Plaintiff also asserts that officers at FCI Ray Brook violated U.S. Department of Justice Program Statement 3420.09 ("Standards of employee conduct"). It is well-established, however, that a claim that the BOP or one of its employees violated such an internal regulation or policy fails to rise to a level of constitutional significance and is not cognizable under *Bivens*. *McDonald v. United States*, No. 07cv82, 2008 WL 4615017, at *4 (N.D.W.Va. Oct. 14, 2008), *aff'd*, 325 Fed. App'x 212 (4th Cir.2009).

The existence of a post-deprivation remedy under the FTCA for the return of property or just compensation is sufficient to satisfy the Due Process Clause and precludes a Fifth Amendment challenge of the nature now raised. *Ramirez v. Obermaier*, No. 91 Civ. 7120, 1992 WL 320985, at *7 (S.D.N.Y. Oct. 28, 1992) (citing *Rodriguez-Mora v. Baker*, 792 F.2d 1524, 1527 (11th Cir.1986)).

The circumstances of this case are strikingly similar to those presented in *Crum v. Dupell*, No. 06-CV-512, 2008 WL 902177, at *4 (N.D.N.Y. Mar. 31, 2008) (Scullin, J. & DiBianco, M.J.).  There the plaintiff alleged that certain of his personal property, including legal papers, a religious medallion, a gold chain, and a wedding band, were lost or intentionally destroyed by prison officials when he was transferred from FCI Ray Brook to another BOP facility.[10]  *Id*.  Plaintiff in that action challenged the deprivation both through BOP's ARP and under the FTCA. Plaintiff then filed an action against staff at FCI Ray Brook and the defendants moved for dismissal or, alternatively, summary judgment. *Id.*

---

[10]    One could well argue that the facts in *Crum* are more supportive of the plaintiff's due process claim in that action, since it involved the alleged misplacement or intentional destruction of property by prison officials, as opposed to a theft by a fellow inmate, as is plaintiff's claim in this action.

The court granted summary judgment, reasoning that "because plaintiff had sufficient post-deprivation remedies available, his *Bivens* claim for loss or destruction of property cannot survive."  *Id.* at *4.

In light of the fact that plaintiff's potential FTCA claim in this case has been dismissed on the basis of sovereign immunity, one might argue that plaintiff does not, in reality, have available to him a viable post-deprivation remedy.  Though some courts have determined that BOP's grievance procedure provides the requisite, adequate post-deprivation remedy, *see Hathaway v. Hooper*, No. 1:11-cv-675, 2011 WL 2111995, at *2 (M.D. Pa. May 3, 2011), *report and recommendation adopted*, 2011 WL 2078541 (May 26, 2011); *Wall v. Black*, No. 5:08-cv-274(DCB)(MTP), 2009 WL 3215344, at * 12 (S.D. Miss. Sep. 30, 2009), I have already concluded that material issues of fact exist in this case regarding the availability of that remedy to plaintiff.  Nonetheless, when analyzed on the merits plaintiff's due process claim lacks substance.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991) and *McKinnon v. Patterson,*

568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087, 98 S. Ct. 1282 (1978)).  As the Supreme Court has noted, a defendant may only be held accountable for his or her actions under section 1983.  *Iqbal*, 129 S. Ct. at 1952.  In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant.  *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

In this instance, plaintiff does not allege that either of the defendants had direct involvement in the theft or loss of his property.  With regard to defendant Sadowski, plaintiff contends only that Sadowski deprived him of due process when denying his request for administrative relief under the FTCA.  As discussed above, plaintiff has no claim against BOP officials for lost property under the FTCA.  *Storm*, 2009 WL 1163123, at *4-5.  As a result, any alleged interference with that form of administrative relief cannot form the basis form the basis for a due process claim.

Turning to defendant Baldwin, his alleged involvement appears to be limited to the failure to perceive that inmates were taking plaintiff's property without authorization and to intercede.  While such an allegation could potentially support a claim of negligence against Officer Baldwin, a

matter not cognizable under *Bivens*, it does not suffice to establish a

denial of due process.  *Andujar v. Fischer*, No. 09-CV-489, 2010 WL

786298, at *4 (N.D.N.Y. Mar. 2, 2010) (Mordue, C.J. & Homer, M.J.)

(citing *Daniels v. Williams*, 474 U.S. 327, 328, 106 S. Ct. 662, 663 (1986);

*Crum*, 2008 WL 902177, at * 4 (citing *Daniels*).  Accordingly, even when

analyzed on the merits, plaintiff's due process claim is subject to dismissal

as a matter of law.  I therefore recommend that defendants' motion for

summary judgment be granted.

     E.   <u>Motion to Stay</u>

     In response to defendants' motion, plaintiff has sought a stay of this

action in order to enable him to exhaust his available remedies.

Defendants oppose that motion on the basis that a stay would be futile.

In this regard, defendants correctly observe that a stay would not benefit

the plaintiff since exhaustion of remedies following commencement of suit

is insufficient to cure the procedural defect and will not avoid dismissal of

an action for failure to exhaust prior to filing the action.  *See Williams*,,

2011 WL 2432917, at *2, *report and recommendation adopted*, 2011

2432918); *Cuello*, 2011 WL 1134711, at *10; *Martinez*, 186 F. Supp. 2d at

354 (citations omitted).  Because the suggested post-filing exhaustion of

remedies would not satisfy the PLRA's exhaustion requirement, I recommend that plaintiff's application for a stay be denied.[11]

IV.    SUMMARY AND RECOMMENDATION

Plaintiff's complaint alleges a single claim for deprivation of personal property without due process. Though it is clear that plaintiff failed to avail himself of the BOP administrative remedy program with regard to this claim prior to filing this action, considering the record in a light most favorable to the plaintiff and drawing all inferences in his favor, I find that genuine issues of material fact exist as to whether these administrative remedies were available to Thompson while he was held in the FCI Ray Brook SHU, precluding dismissal of plaintiff's complaint on this procedural basis.  Turning to the merits of plaintiff's claims, I conclude that his due process cause of action is legally deficient based upon the availability of adequate, post deprivation remedies, and further is lacking in merit as against both of the defendants.

Accordingly, it is hereby respectfully

---

[11]    In any event, plaintiff's request for a stay in this action will be rendered moot in the event my recommendation concerning dismissal of plaintiff's due process claim is accepted by the court.

RECOMMENDED, that defendants' motion for summary judgment (Dkt. No. 39) be GRANTED, that plaintiff's complaint be DISMISSED, and that plaintiff's motion to stay (Dkt. No. 44) be DENIED as both futile and as moot in light of the court's determination on the merits.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the Clerk of the Court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir.1993).

It is further hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:   August 16, 2011
         Syracuse, NY



Not Reported in F.Supp.2d, 2008 WL 850594 (N.D.N.Y.)
(Cite as: 2008 WL 850594 (N.D.N.Y.))

**H**
Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Patrick TRACY, Plaintiff,
v.
Patrick J. FRESHWATER; Peter Meskill, Tompkins
County Sheriff, and the Tompkins County Sheriff's
Department, Defendants.
No. 5:01-CV-0500(NPM/GHL).

March 28, 2008.

Patrick Tracy, Terre Haute, IN, pro se.

County of Tompkins, Jonathan Wood, County Attorney,
of Counsel, Ithaca, NY, for Defendants.

MEMORANDUM DECISION AND ORDER

NEAL P. McCURN, Senior District Judge.

*1 On July 31, 2007, this Court FN1 issued an Order
granting summary judgment in favor of Defendants.
Plaintiff, proceeding *pro se,* now moves for
reconsideration of or relief from that decision under
Federal Rule of Civil Procedure 59(e).

> FN1. By order (Dkt. No. 176) dated March 28,
> 2008, this case. previously assigned to Senior
> Judge Howard G. Munson, was reassigned to
> Senior Judge Neal P. McCurn.

First, the court needs to determine if this motion has been
properly presented under Fed.R.Civ.P. 59(e)-"[m]otion to
alter or amend judgment-or Fed.R.Civ.P. 60(b)"[r]elief

from judgment or order". The Second Circuit Court of
Appeals has long held that a post-judgment motion made
within 10 days of entry of judgment that seeks
reconsideration of matters properly encompassed within a
decision on the merits is a motion under Rule 59(e). *Jones
v. UNUM Life Insurance Co. of America,* 223 F.3d 130,
137 (2d Cir.2000). "[M]otions filed after the 10-day
period, no matter how styled, are to be treated as Rule
60(b)(1) motions seeking relief from the judgment.
*Feldberg v. Quechee Lakes Corp.,* 463 F.3d 195, 198-99
(2d Cir.2006). The docket sheet in the instant case shows
that Defendants' motion for summary judgment was
granted on July 31, 2007, and Plaintiff's present Rule 59e
motion was filed on August 20, 2007. While these entries
clearly indicate that Plaintiff's motion was not timely filed,
nevertheless, the prison mail box rule provided a timely
filing of Plaintiff's motion.

The prison mailbox rule provides that a *pro se* inmate's
motion is deemed filed on the date it is given to prison
officials. *Houston v. Lack,* 487 U.S. 266, 276, 108 S.Ct.
2379, 101 L.Ed.2d 245 (1988) (establishing the prison
mailbox rule) In cases where it is unclear when the inmate
gave his petition to prison officials, courts have assumed
that the petitioner submitted the petition on the same date
it was purportedly signed and dated. *Porter v. Greiner,*
2005 WL 3344828, at *7 (E.D.N.Y. Nov. 18, 2005);
*Corrigan v. Barbery,* 371 F.Supp.2d 325, 328 n. 4
(W.D.N.Y.2005); *Pack v. Artuz,* 348 F.Supp.2d 63, 66 n.
2 (S.D.N.Y.2004). The rule is premised on the *pro se*
inmate's lack of control-his dependence on the prison mail
system and lack of counsel to assure timely filing with the
court. *Garraway v. Broome County,* 2006 WL 931729, at
*3 (N.D.N.Y. Apr. 7, 2006).

Plaintiff's proof of service document was sworn to, signed
by Plaintiff on July 13, 2007, placed in a First Class
postage paid correctly addressed envelopes and placed in
the institutional mail box at his correctional institution.
The ten day time limit for filing a Rule 59(e) motion had
not expired on that date because the intermediate
Saturdays and Sundays are excluded where the time period
allowed is less than eleven days. (Rule 6(a) Fed.R.Civ.P.
Ergo, Plaintiff's Rule 59(e) motion was timely filed.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 850594 (N.D.N.Y.)
(Cite as: 2008 WL 850594 (N.D.N.Y.))

While some courts hold that a Rule 59(e) motion to alter or amend the judgment can be brought only after a trial, "[m]ost courts, however, including those in this circuit, allow a motion to amend a grant of summary judgment to be brought under Rule 59(e)." *Patel v. Lutheran Medical Center, Inc.,* 775 F.Supp. 592, 596 (E.D.N.Y.1991)

**\*2** Rule 59(e) is not an appropriate vehicle for a party dissatisfied with a court's ruling to secure a rehearing on the merits with respect to issues already decided, *USA Certified Merchants, LLC v. Koebel,* 273 F.Supp.2d 501, 503 (S.D.N.Y.2003); *Griffin Industries, Inc. v.. Petrojam, Ltd.,* 72 F.Supp.2d 365, 368 (S.D.N.Y.1999), or to advance " 'new facts, issues or arguments not previously presented to the court.' " *Wechsler v. Hunt Health Systems, Ltd.,* 186 F.Supp.2d 402, 410 (S.D.N.Y.2002). In other words, "[a] party seeking reconsideration 'is not supposed to treat the court's initial decision as the opening of a dialogue in which that party may then use such a motion to advance new theories or adduce new evidence in response to the court's rulings.' " *Polsby v. St. Martin's Press, Inc.,* 2000 WL 98057, at \*1 (S.D.N .Y. Jan. 18, 2000). Thus, Rule 59(e) should be "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court," *Williams v. New York City Department of Corrections,* 9 F.R.D. 78, 83 (S.D.N.Y.2003), and "to prevent the rule from being used as a substitute for appealing a final judgment." *USA Certified Merchants,* 273 F.Supp.2d at 503.

"Reconsideration of a court's previous order is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.' " *Montanile v. National Broadcasting Company,* 216 F.Supp.2d 341, 342 (S.D.N.Y.2002) (quoting In re *Health Management Systems Inc. Securities. Litigation.,* 113 F.Supp.2d 613, 614 (S.D.N.Y.2000)).

In his motion for reconsideration, Plaintiff does not assert that this court overlooked or misapplied any controlling legal authority. Rather, he seeks to relitigate the same issues presented to this court before when he objected to the Magistrate Judge's Report and Recommendation. The strict requirements for reconsideration under Rule 59(e) are specifically designed to preclude this type of

reargument. *Sutherland v. New York State Department of Law,* 1999 WL 600522, at \*1 (S.D.N.Y. Aug. 10, 1999), "A Rule 59(e) motion is a not a motion to reargue those issues already considered when a party does not like the way the original motion was resolved."

Accordingly, the Plaintiff's motion for reconsideration is denied.

It is so ORDERED:

N.D.N.Y.,2008.
Tracy v. Freshwater
Not Reported in F.Supp.2d, 2008 WL 850594 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2009 WL 1163123 (N.D.Ohio)

(Cite as: 2009 WL 1163123 (N.D.Ohio))

**H**

Only the Westlaw citation is currently available.
United States District Court,

N.D. Ohio,
Eastern Division.
Daniel STORM, Plaintiff,
v.
BUREAU OF PRISONS, et al., Defendants.
No. 4:08CV1690.

April 29, 2009.
West KeySummary**United States 393**  **78(5.1)**

393 United States

393V Liabilities
393k78 Torts
393k78(5) Nature of Act or Claim
393k78(5.1) k. In General. Most Cited Cases

An inmate's allegation that two corrections officers deprived him of his property did not state a claim under the Federal Tort Claims Act (FTCA). In an exclusion to the waiver of sovereign immunity, an inmate could not recover under the FTCA for the loss of his property at the hands of prison employees. Therefore, the inmate's claim under the FTCA was barred by sovereign immunity. 28 U.S.C.A. § 2680(c).

Daniel Storm, FCI Elkton, Lisbon, OH, pro se.

Lisa Hammond Johnson, Office of the U.S. Attorney, Cleveland, OH, for Defendants.

**ORDER**

PETER C. ECONOMUS, District Judge.
    **\*1** This matter is before the Court upon Defendants' Motion to Dismiss. (Dkt.# 11). On February 11, 2009, this Court issued an order assigning this case to Magistrate Judge James S. Gallas for general pretrial supervision. (Dkt.# 13). On April 14, 2009, the Magistrate Judge

issued an Interim Report and Recommendation recommending that Plaintiff Daniel Storm ("Storm") amend his Complaint within 30 days to include sufficient alternative allegations to provide a jurisdictional statement based on something other than the Federal Tort Claims Act. (Dkt.# 15). The Magistrate Judge further recommended that if Storm fails to amend with a sufficient jurisdictional statement, the Complaint shall be dismissed without prejudice. *Id.*

    FED. R. CIV.P. 72(b) provides that objections to a report and recommendation must be filed within ten (10) days after service. Storm and Defendants have failed to timely file any such objections. Therefore, the Court must assume that Storm and Defendants are satisfied with the Magistrate Judge's recommendation. Any further review by this Court would be a duplicative and an inefficient use of the Court's limited resources. *Thomas v. Arn,* 728 F.2d 813 (6th Cir.1984), *aff'd,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of Health and Human Services,* 932 F.2d 505 (6th Cir.1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

    Therefore, the Interim Report and Recommendation of Magistrate Judge Gallas is hereby **ADOPTED.** (Dkt.# 15). Defendants' Motion to Dismiss shall be held in abeyance. (Dkt.# 11). Storm shall amend his Complaint by Friday, May 29, 2009 to include sufficient alternative allegations to provide a jurisdictional statement based on something other than the Federal Tort Claims Act. If Storm fails to amend with a sufficient jurisdictional statement, the Magistrate Judge shall recommend whether the Court should dismiss the Complaint without prejudice.

    **IT IS SO ORDERED.**

INTERIM REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE (Regarding ECF # 11)

JAMES S. GALLAS, United States Magistrate Judge.
    Plaintiff Daniel Storm an inmate at FCI-Elkton appearing *pro se* seeks compensation for the $253.00 loss of his personal property at the hands of Federal Bureau of Prisons employees. Defendants do not deny this

Slip Copy, 2009 WL 1163123 (N.D.Ohio)

(Cite as: 2009 WL 1163123 (N.D.Ohio))

allegation, but instead move to dismiss the complaint under FED. R. CIV. P. 12(b)(1) for lack of subject matter jurisdiction.

**Motion to Dismiss Standard:**

Motions to dismiss for lack of subject matter jurisdiction either challenge the facial sufficiency of the allegations of the complaint or the factual basis for jurisdiction. See *DLX, Inc. v. Kentucky,* 381 F.3d 511, 516 (6th Cir.2004), *cert. denied,* 544 U.S. 961, 125 S.Ct. 1733, 161 L.Ed.2d 603 (2005); *Gentek Bldg Products, Inc. v. Steel Peel Litigation Trust,* 491 F.3d 320, 330 (6th Cir.2007). When the factual basis for jurisdiction is in issue, the court is not restricted to the allegations in the complaint and may consider affidavits, documents and even conduct a limited evidentiary hearing to resolve disputed jurisdictional facts. See *Kroll v. U.S.,* 58 F.3d 1087, 1093 n. 9 (6th Cir.1995) (*citing Ohio Nat'l Life Ins. Co. v. U.S.,* 922 F.2d 320, 325 (6th Cir.1990)); *Gentek Bldg. Prods., Inc. v. Steel Peel Litigation Trust,* 491 F.3d at 330. However, when the challenge is merely to the sufficiency of the allegations to establish subject matter jurisdiction, then the well-pleaded allegations are taken as true, as is the case with Rule 12(b)(6) motions to dismiss. See *O'Bryan v. Holy See,* 556 F.3d 361, 376 (6th Cir.2009) (citing *Mezibov v. Allen,* 411 F.3d 712,716 (6th Cir.2005)); [FN1] *Gentek,* 491 F.3d at 330; *RMI Titanium Co. v. Westinghouse,* 78 F.3d 1125, 1134 (6th Cir.1996). "As a general rule a claim cannot be dismissed for lack of subject-matter jurisdiction because of the absence of a federal cause of action." *Gentek,* 491 F.3d at 330 (quoting *Williamson v. Tucker,* 645 F.2d 404, 415-16 (5th Cir.1981)). The court delves into a factual inquiry "only when the facts necessary to sustain jurisdiction do not implicate the merits of the plaintiff's claim." *Gentek,* 491 F.3d at 330 (citing *Garcia v. Copenhaver, Bell & Assocs.,* 104 F.3d 1256, 1261 (11th Cir.1997)). However, if there is any question or uncertainty whether or not subject matter jurisdiction is present the motion to dismiss under Rule 12(b)(1) is denied and "the defendant is forced to proceed under Rule 12(b)(6) ... or Rule 56 ... both of which place greater restrictions on the district court's discretion...." *Gentek,* 491 F.3d at 330 (quoting *Williamson,* 645 F.2d at 415-16). Plaintiff's burden is not onerous and need only show that the complaint alleges a claim under federal law and that the claim is substantial or non-frivolous. *Musson Theatrical, Inc., v. Federal Exp.*

*Corp.,* 89 F.3d 1244, 1247 (6th Cir.1996).

FN1. "To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory. *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir.1988). Nonetheless, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss. *Jackson v. Heh,* 215 F.3d 1326 (Table), 2000 WL 761807 at *2 (6th Cir.2000) (citing *Blackburn v. City of Marshall,* 42 F.3d 925, 931 (5th Cir.1995))." *Mezibov v. Allen,* 411 F.3d at 716.

*2 Defendants present their motion to dismiss as a factual attack with lengthy exhibits documenting Storms' incarceration history, the administrative progress of his claim for personal property loss, and with sworn declarations. (See Motion to Dismiss and Exhibits, ECF11 to 11-8). However, their argument does not challenge the factual allegations of the complaint and thus presents only a challenge to its facial sufficiency. As a result, the court is restricted to the face of the complaint itself in assessing whether it sets forth sufficient allegations to establish subject matter jurisdiction.

**Storm's Complaint:**

The complaint states that it is brought under the Federal Court Claims Act (FTCA) referring to 28 U.S.C. § 2671, *et seq.* In his complaiont Storm accuses Heidi Swiger and Lt. Jackson, both employees of the Federal Bureau of Prisons, of taking possession of his personal property on March 2, 2007, when Storm was placed in administrative segregation at the special housing unit of FCI-Elkton. He claims that Ms. Swiger inventoried his property on Form 40, which she then transmitted with the property to Lt. Jackson "who was charged with the care, custody and control." When Strom was released from the special housing unit on August 13, 2007, he was informed by Lt. Jackson that Storm's property had been given away to other prisoners. Storm alleges exhaustion of administrative remedies with the filing of his "administrative tort claim" and the administrative denial

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1163123 (N.D.Ohio)

(Cite as: 2009 WL 1163123 (N.D.Ohio))

of his claim on June 13, 2008.[FN2] He divides his complaint into three causes of action. First, he claims breach of duty of care and failure to follow policy. Second, he claims failure to follow procedures. His final claim is negligence and deliberate indifference to his property rights.

> FN2. Defendants concede that Storm has exhausted his administrative remedies with the Bureau of Prisons prior to filing his complaint under the FTCA, which dually satisfied the exhaustion requirement under the Prison Litigation Reform Act (See 42 U.S.C. § 1997e(a); Macias v. Zenk, 495 F.3d 37 (2nd Cir.2007); Taylor v. U.S., 161 Fed. Appx. 483, 486 (6th Cir. Dec.21, 2005)), and the exhaustion requirement under the FTCA (See 28 U.S.C. § 2675(a); McNeil v. U.S., 508 U.S. 106, 113 S.Ct. 1980, 124 L.Ed.2d 21(1993)).

**Transfer under 28 U.S.C. § 1631:**

Storm initially filed this complaint with the United States Court of Claims, which dismissed it on July 9, 2008 and transferred it to this district court after finding *sua sponte* that it lacked subject matter jurisdiction over Storm's claims. (See Order in *Storm v. U.S.,* No. 08-482C (Ct. Cl. Jul 9, 2008, ECF # 4)). The Court of Claims in recognizing its limited jurisdiction examined Storms' claims under the Tucker Act's (28 U.S.C. § 1491) authorization for jurisdiction over express or implied contracts with the United States or over claims founded upon the Constitution or Act of Congress. The U.S. Court of Claims found Storm's claims did not relate to any statute, regulation, or constitutional provision mandating payment of money or breach of contract with the United States. Next with respect to Storm's reliance on the FTCA, that court dismissed the FTCA claims due to the district court's exclusive jurisdiction under 28 U.S.C. § 1346(b)(l), and transferred this matter to the Northern District of Ohio.[FN3]

> FN3. Subject to the provisions of chapter 171 of this title, the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have *exclusive* jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1,

1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred (emphasis supplied). 28 U.S.C.A. § 1346(b)(1).

**Facial Sufficiency of the Complaint:**

Storm's complaint states that his claims are brought under the FTCA. "The [FTCA] is a limited waiver of sovereign immunity, making the Federal Government liable for the same extent as a private party for certain torts of federal employees acting within the scope of their employment." *U.S. v. Orleans,* 425 U.S. 807, 813, 96 S.Ct. 1971, 1975, 48 L.Ed.2d 390 (1976); and see 28 U.S.C. § 1346(b). Congress carved out several exclusions, however, from the waiver of sovereign immunity for torts committed by federal employees, and these are listed under 28 U.S.C. § 2680(a) through (n).

**\*3** Among those exclusions, and pertinent to Storm's claim for loss of his property, is § 2680(c)'s exclusion of "[a]ny claims arising in respect of the assessment of collection of any tax or customs duty, or the **detention of any property** by any officer of customs or excise or any other law enforcement officer (emphasis supplied) [ .]" The Supreme Court in *Alt v. Federal Bureau of Prisons,* 552 U.S. 214, 128 S.Ct. 831, 169 L.Ed.2d 680 (2008), reversed *Kurinsky v. U.S.,* 33 F.3d 594 (6th Cir.1994), and several other circuit court decisions to hold that Bureau of Prisons officers were "law enforcement officers" under the foregoing exception. Under the Supreme Court's broad construction of § 2680(c), the waiver of the federal government's sovereign immunity under other parts of the FTCA was excluded, so a prison inmate could not recover under the FTCA for the loss of his property at the hands of prison employees. Defendants correctly argue for dismissal because Storm's claim under the FTCA is barred by sovereign immunity under § 2680(c).

***Storm's counter-arguments:***

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 4

Slip Copy, 2009 WL 1163123 (N.D.Ohio)

(Cite as: 2009 WL 1163123 (N.D.Ohio))

*Intentional Conduct.*

Storm begins his arguments claiming that *Ali* is distinguishable since it involved negligent handling of a prisoner's property, whereas negligence is not a factor in his case since the prison employees acted with "deliberate indifference." He proceeds to argue that Ms. Swiger and Lt. Jackson intentionally conspired to destroy his property.

The term "deliberate indifference" is equated with willful and wanton behavior or a "heightened" standard surpassing negligence. See *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 769 n. 15, 125 S.Ct. 2796, 2810 n. 15, 162 L.Ed.2d 658 (2005) (equated with willful and wanton); *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 122 S.Ct. 515, 151 L.Ed.2d 456.73, --- U.S. ----,----, 122 S.Ct. 515,523, 151 L.Ed.2d 456(2001) (citing *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ("[D]eliberate indifference describes a state of mind more blameworthy than negligence")). Storm's alleged intentional deprivation, though, is not an exception to the bar posed by sovereign immunity to claims concerning the detention of property by government officials under § 2680(c). See *Jeanmarie v. U.S.*, 242 F.3d 600 (5th Cir.2001) (the waiver of immunity for tortious conduct in § 2680(h) applies only to conduct not involving the seizure an detention of goods) (citing *Gasho v. U.S.*, 39 F.3d 1420, 1433-34 (9th Cir.1994)); and see *Capozzoli v. Tracey*, 663 F.2d 654, 658 (5th Cir.1981) ("*Section 2680(c)* has been interpreted broadly by the courts to preclude suits for damages arising out of the allegedly tortious activities of IRS agents when those activities were in any way related to the agents' official duties."). The exclusion from the general waiver of sovereign immunity applies to negligent and intentional conduct of U.S. law enforcement officers including prison officers.

*Administrative Due Process and Civil Asset Forfeiture:*

**\*4** Storm contends that 28 C.F.R. § 553.13 sets out the proper method for seizure of property as contraband, and this procedure was not followed, and he points to the amendment of § 2680(c) by the Civil Asset Forfeiture Act of 2000. Storm, though, did not allege in his complaint that his property was deemed to be contraband slated for

destruction. As for the 2000 amendment, it is only invoked when "the property was seized for the purpose of forfeiture under any provision of Federal law providing for forfeiture of property other than as a sentence imposed upon conviction of a criminal offense." See 28 U.S.C. § 2680(l). The complaint did not allege that Storms's property was seized for the purpose of forfeiture pursuant to Federal law. These provisions have no application to Storm's allegation in his complaint.

*Loss versus "detention":*

Storm also appears to question the application of § 2680(c)'s "the detention of any property" clause to his facts. He alleges that Lt. Jackson had given his things away to other prisoners. He believes that this was not a "detention" of his property. Storm's reading of § 2680(c) was notably followed in the Second, Fifth and Ninth Circuits, which held that negligent destruction or loss of property by government agents was not a "detention of any property." See *Alliance Assur. Co., v. U.S.*, 252 F.2nd 529 (2nd 1958); *A-Mark, Inc., v. U.S. Secret Service Dept. of Treasury*, 593 F.2d 849 (9th Cir.1978); *A & D International, Inc., v. U.S.*, 665 F.2d 669 (5th Cir.1982). The Supreme Court, though, has the final word and it disagreed. The Supreme Court emphasized § 2680(c)'s "arising in respect of" phrase to hold in *Kosak v. U.S .,* that "arising in respect of" meant any claim arising out of the detention of goods including claims resulting from negligent handling. *Id.,* 465 U.S. 848, 853-55, 104 S.Ct. 1519,79 L.Ed.2d 860 (1984). The reasoning of the Second, Fifth and Ninth Circuits was specifically rejected. See *Kosak,* 465 U.S. at 851 n. 5, 854-55. Storm's complaint involves the loss of his property that had been detained by federal officials, hence his cause of action under the FTCA arose out of that detention of goods and is barred by sovereign immunity. As explained previously, Storm's allegation that the deprivation of property was intentional has no effect and does not survive this jurisdictional challenge. Storm's complaint does not state a claim under the FTCA, whether the detention of property was due to negligence or intentional.

*There must be a purpose for that Claim Form:*

Storm contends that he filed his claim form and exhausted his administrative remedies as legally required, so there must be some purpose for this exercise. No doubt

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1163123 (N.D.Ohio)

(Cite as: 2009 WL 1163123 (N.D.Ohio))

the defendants' arguments make these proceedings appear as bizarre as Franz Kafka's *The Trial* or as odd as the world on the other side of Alice's looking glass. Storm files his claim on the prescribed form, his claim is denied, and the June 13, 2008 notice of final denial from the Federal Bureau of Prisons stated:

**\*5** If you are dissatisfied with this decision, you may bring an action against the United States in an appropriate United States District Court within six (6) months of the date of this memorandum. (ECF # 11-6)

As the statute of limitation for the FTCA provides:

A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or *unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented* (emphasis supplied).

28 U.S.C.A. § 2401(b).

The language in the notice of final denial neatly dovetails with the FTCA's statute of limitations, and certainly would be reasonably interpreted to indicate to the reader that any cause of action lies under the FTCA.

Storm filed his timely complaint incorrectly with the U.S. Court of Claims asserting jurisdiction under the FTCA. That court then transferred the complaint to this district court under the implicit assumption that this was the court where jurisdiction rested for Storm's FTCA claim. If the district court lacked jurisdiction, no transfer would have been made since the very purpose of 28 U.S.C. § 1631 is to preserve jurisdiction, and the U.S. Court of Claims will deny transfer where the district court lacks jurisdiction so transfer would be futile. E.g., *Little River Lumber Co., v. U.S.,* 7 Cl.Ct. 492, 494 (1985); *Schnelle v. U.S.,* 69 Fed. Cl. 463,467 (2006). The governing principle for the U.S. Court of Claims is, "[t]he statute requires the transferor court to determine both that it lacks jurisdiction and that the transferee court possesses jurisdiction." *Fisherman's Harvest, Inc. v. PBS & J,* 490 F.3d 1371, 1374(Fed.Cir.2007) (citing *United States v. County of Cook Ill.,* 170 F.3d 1084, 1087 (Fed.Cir.1999);

*James v. Caldera,* 159 F.3d 573, 578 (Fed.Cir.1998))." A case may be transferred under section 1631 only to a court that has subject matter jurisdiction." *Jan's Helicopter Service, Inc. v. F.A.A.,* 625 F3d 1299, 1303 (Fed.Cir.2008).FN4 However, defendants are correct in their argument based on *Ali,* that this court lacks subject matter jurisdiction over Storm's complaint under the FTCA, and *Ali* was governing law at the time the complaint was filed. This indeed appears to put an end to Storm's complaint and place federal administrative and legal procedures in an absurd posture.

> FN4. This case is not governed by the U.S. Court of Claims' unfairness principle where defendant "whipsaws an opponent" with inconsistent litigation positions by claiming lack of subject matter jurisdiction in both District Court and the Court of Claims since the Court of Claims' dismissal was *sua sponte.* Compare *Drury v. U.S.* 52 Fed. Cl. 402, 406 (2002); *Phillips v. U.S.,* 77 Fed. Cl. 513, 521 (2007).

However, just because there is no recourse under the FTCA does not mean that no plausible legal remedy exists. There are other avenues of relief potentially available to Storm, beginning with a *Bivens* action brought by a federal inmate due to the intentional destruction of personal property.FN5 In *Hudson v. Palmer,* a state prisoner argued that the intentional deprivation of property by a prison guard violated Fourteenth Amendment due process protections. *Id.,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). The Supreme Court did not disagree, but held that there was no violation of procedural due process when the state provided a meaningful post-deprivation remedy for the loss. See *Hudson,* 468 U.S. at 531-533. Compare *Daniels v. Williams,* 474 U.S. 327, 330-331, 106 S.Ct. 662, 664, 88 L.Ed.2d 662 (1986) (negligent deprivation of property at the hands of a state actor does not constitute a Fourteenth Amendment violation). Such claims by federal prisoners previously have been rejected in the Sixth Circuit under the assumption that a post-deprivation remedy existed under the FTCA. See *Stiger v. O'Neill,* 53 Fed. Appx. 738, 740 (6th Cir. Dec.6, 2002); *McNeair v. Snyder,* 7 Fed. Appx. 317, 319 (6th Cir. Feb.5, 2001).FN6 Since the Supreme Court's decision in *Ali,* the underlying assumption that a prisoner has legal recourse is now

Slip Copy, 2009 WL 1163123 (N.D.Ohio)

(Cite as: 2009 WL 1163123 (N.D.Ohio))

incorrect. There is no post-deprivation remedy under the FTCA for Storm's claim. Nonetheless, "[t]he Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.' " *Dusenbery v. U.S.,* 534 U.S. 161, 167, 122 S.Ct. 694, 699, 151 L.Ed.2d 597 (2002). Thus, plausible recourse can be had through an action against defendants for a constitutional deprivation of property for which no post-deprivation remedy exists under the FTCA.[FN7] A *Bivens* action may not be brought against a federal agency, though. See *Correctional Services Corp.,* 534 U.S. at 69; *F.D.I.C. v. Meyer,* 510 U.S. 471, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994).

> FN5. See *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), which held that federal officials could be sued for violating Constitutional rights of a person parallel to 42 U.S.C. § 1983 although the federal officials were not "state actors."

> FN6. "As a federal prisoner asserting that federal employees destroyed his property, McNair's post-deprivation remedy lies with the FTCA. See 28 U.S.C. §§ 1346(b), 2674. McNair did in fact file a FTCA claim and did not show that the remedy was inadequate. See *Hudson,* 468 U.S. at 531-33, 104 S.Ct. 3194, 82 L.Ed.2d 393; *Vicory [v. Walton,* 721 F.2d [1062] at 1066 [ (6th Cir.1983) ]." *McNair v. Snyder* 7 Fed. Appx. at 319.

> FN7. It is unlikely that Storm has a claim under the Fifth Amendment's takings clause because the government did not put his property to public use. See *Paalan v. U.S.,* 51 Fed. Cl. 738, 751 (2002) (Federal officers who seized plaintiff's property as evidence but lost it, did not intend to put property to public use); Compare *Schneider v. California Dept. of Corrections,* 151 F.3d 1194 (9th Cir.1998) (Fifth Amendment taking occurred when state reallocated interest income (which is a fundamental property right) from

inmate trust accounts to state inmate welfare fund).

**\*6** Next, Storm referred to Lt. Jackson's care, custody, and control, which could connote bailment. Accordingly, there is potential legal recourse in U.S. District Court under the "Little Tucker Act" for claims less than $10,000. See 28 U.S.C. § 1346(a)(2); *Belton v. U .S.,* 2008 WL 2273272, *8 (E.D.Wis.); and see *Kosak v. U.S.* 465 U.S. 848, 860 n. 22, 104 S.Ct. 1519, 79 L.Ed.2d 860(1984) (denying FTCA claim due to sovereign immunity conferred by § 2680(c) but leaving open recovery under implied contract for bailment). This statute confers jurisdiction to the District Courts like that under the Tucker Act for causes of action "founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States[.]"[FN8] An "implied in fact bailment contract" may have existed. See *Belton v. U.S.,* 2008 WL 2273272, *8; and see *Ysasi v. Rivkind,* 856 F.2d 1520, 1525-26 (Fed.Cir.1988); *Keifer & Keifer v. Reconstruction Finance Corp.,* 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784 (1939) (Regional Agricultural Credit Corp. was not immune from suit for negligence as a bailee of livestock). The analysis of such claims is very fact intensive:

> FN8. See *Conner v. West,* 56 Fed. Appx. 229 (6th Cir. Jan.30, 2003).

"Tucker Act jurisdiction extends only to contracts either express or implied-in-fact, and not to claims on contracts implied in law." *Hercules Inc. v. United States,* 516 U.S. 417, 423, 116 S.Ct. 981, 134 L.Ed.2d 47 (1996); *Trauma Serv. Group v. United States,* 104 F.3d 1321, 1324-25 (Fed.Cir.1997).... Whether a contract exists is a mixed question of law and fact. *Cienega Gardens v. United States,* 194 F.3d 1231, 1239 (Fed.Cir.1998). To prove that an implied-in-fact bailment contract exists, a claimant must show a "mutuality of intent to contract, offer and acceptance, and that the officer whose conduct is relied upon had actual authority to bind the government in contract." *H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1575 (Fed.Cir.1984). For the United States to be bound by an implied-in-fact contract of bailment, there must be

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1163123 (N.D.Ohio)

(Cite as: 2009 WL 1163123 (N.D.Ohio))

"a promise, representation or statement by any authorized government official" that the property would be returned. *Ysasi,* 856 F.2d at 1525.

*Hoffmann v. U.S.,* 17 Fed.Appx. 980, 986 (Fed.Cir. August 16, 2001).

**Storms' Complaint is Insufficient:**

Dismissal for lack of subject-matter jurisdiction occurs "only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.' " *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 89, 118 S.Ct. 1003, 1010, 140 L.Ed.2d 210 (1998) (quoting *Oneida Indian Nation of N.Y. v. County of Oneida,* 414 U.S. 661, 666, 94 S.Ct. 772, 777, 39 L.Ed.2d 73 (1974)). "[T]he party invoking federal jurisdiction bears the burden of establishing its existence." *Steel Co.,* 523 U.S. at 104. In light of *Kosak* and *Ali,* Storm's claims under the FTCA are foreclosed and no federal controversy exists due to the retention of sovereign immunity by the United States for its officials under § 2680(c). There is no subject matter jurisdiction under the FTCA.

**\*7** Further, the well-pleaded facts in the complaint fail to allege a constitutional violation as required to sustain a *Bivens* claim and fail to allege a bailment in fact as required to sustain a contractual breach which is actionable under the "Little Tucker Act ." It is Storm's burden of proving jurisdiction, which he has not carried by demonstrating any arguable basis in law for the claims set forth in the complaint. See *Musson Theatrical, Inc.,* 89 F.3d at 1248; *Ludwig v. Board of Trustees of Feris State Univ.,* 123 F.3d 404, 408 (6th Cir.1997). However, his factual allegations may with a bit of tweaking with allegations of constitutional deprivation or breach of implied contract with the United States plausibly state a mater over which the District Court has jurisdiction.

*CONCLUSION AND RECOMMENDATION*

Defendants' position is correct. As presently constituted Storm's complaint is facially insufficient to present a claim over which a United States District Court has subject matter jurisdiction. Accordingly, it is recommended that Storm amend his complaint within 30 days to include sufficient alternative allegations to provide a jurisdictional statement based on something other than the Federal Tort Claims Act. Otherwise, if Storm fails to amend with a sufficient jurisdictional statement, it is recommended that the complaint be dismissed without prejudice.

N.D.Ohio,2009.

Storm v. Bureau of Prisons
Slip Copy, 2009 WL 1163123 (N.D.Ohio)
END OF DOCUMENT

Westlaw.

Page 1

Slip Copy, 2009 WL 222661 (M.D.Pa.)

(Cite as: 2009 WL 222661 (M.D.Pa.))

C

Only the Westlaw citation is currently available.
United States District Court,

M.D. Pennsylvania.
Gerson NUNEZ, Plaintiff
v.
UNITED STATES, et al., Defendants.
Civil No. 3:CV-07-1147.

Jan. 29, 2009.
West KeySummary**Prisons 310**  ⌐  4(7)

310 Prisons

    Inmate's Federal Tort Claims Act (FTCA) claim
against corrections officers, related to the confiscation of
inmate's towel and t-shirt, was barred. Inmate's complaint
of the loss arose out of the detention of property by
corrections officers in pursuit of their duty to seize inmate
contraband. 28 U.S.C.A. § 2680(c).
40

Gerson Nunez, Anchorage, AK, pro se.
Jennifer Clark, U.S. Attorney's Office, Scranton, PA,
Michael Butler, United States Attorney's Office,
Harrisburg, PA, for Defendants.

*MEMORANDUM*

THOMAS I. VANASKIE, District Judge.
    **\*1** On June 27, 2007, Gerson Nunez ("Plaintiff"),
who currently resides in Anchorage, Alaska [FN1] initiated
this action pursuant to the Federal Tort Claims Act
("FTCA") [FN2] and the Freedom of Information Act
("FOIA") [FN3] while incarcerated at the Canaan Federal
Prison Camp, Waymart, Pennsylvania ("FPC-Canaan").
Named as Defendants are the United States of America,
"General Counsel", and the Federal Bureau of Prisons
("BOP"). Dkt. Entry # 1, p. 2.

    FN1. See Dkt. Entry # 39.

    FN2. Under the FTCA, the sovereign immunity

of the United States is waived with respect to
suits alleging the commission of certain torts. See
Simon v. United States, 341 F.3d 193, 200 (3d
Cir.2003). The only proper Defendant for
purposes of an FTCA claim is the United States
of America. See 28 U.S.C. § 2679(d).

    FN3. The FOIA requires that federal government
information including agency records, with
certain exceptions, be made available to the
public. See 5 U.S.C. § 552.

    Plaintiff states that he was transferred from another
federal correctional facility to FPCCanaan on July 20,
2005. He indicates that among the personal property items
which he brought from his former correctional institution
was a Sony radio. Following a February 15, 2006 search
of his inmate locker by FPC-Canaan officials, his Sony
radio was confiscated and ultimately destroyed because
the inmate's register number had been removed from the
radio in violation of prison policy. In his initial FTCA
claim, Plaintiff alleges that confiscation of his radio was
improper since it had been cleared for admission into the
prison with the register number sanded off.

    Nunez's second FTCA claim regards an additional
loss of property which occurred as a result of a March 15,
2006 shake down search at FPC-Canaan. Specifically, his
Complaint contends that during this search, prison
officials improperly confiscated his blue towel and ribbed
T-shirt which had also been previously admitted into the
prison.

    In his third claim, Plaintiff seeks relief under the
FOIA based upon the General Counsel's [FN4] purported
failure to respond to two FOIA requests which he initiated
in October of 2006.

    FN4. Defendants indicate that Plaintiff is
referring to BOP's General Counsel Kathleen
Kenney.

    Gerson exhausted the required administrative

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 222661 (M.D.Pa.)

(Cite as: 2009 WL 222661 (M.D.Pa.))

remedies on the FTCA claims before bringing suit. He asserted the FOIA claims without pursuing the administrative appeal process.

Presently pending is Defendants' motion to dismiss or for summary judgment. The motion (Dkt. Entry # 24) is ripe for consideration.

### Discussion

Defendants' pending dispositive motion is supported by evidentiary materials outside the pleadings. Nunez has responded to the motion by presenting additional documents. Federal Rule of Civil Procedure 12(d) provides in part as follows:

If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleading are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given reasonable opportunity to present all the material that is pertinent to the motion.

Fed.R.Civ.P. 12(d). The Court will not exclude the evidentiary materials accompanying the Defendants' motion and Plaintiff's response. Thus, the motion will be treated as one for summary judgment.

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); See also, Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir.2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. Id. at 248. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. Saldana, 260 F.3d at 232; see also Reeder v. Sybron Transition Corp., 142 F.R.D. 607, 609 (M.D.Pa.1992). Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir.1993).

**\*2** Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. See Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. (internal quotations omitted); see also Saldana, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." Celotex, 477 U.S. at 322-23. " 'Such affirmative evidence-regardless of whether it is direct or circumstantial-must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.' " Saldana, 260 F.3d at 232 (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir.1989)).[FN5]

FN5. It is noted that Defendants' summary judgment motion characterizes Plaintiff's Complaint as including Bivens-type civil rights claims and sets forth arguments addressing such claims. Based on this Court's review of the Complaint as well as Nunez's confirmation that he "did not file any claims under bivens," it is apparent that Plaintiff is not pursuing any civil rights claims. Instead, Plaintiff restricts this case to FTCA and FOIA claims.

### The FTCA Claims ___

Defendants initially argue that they are entitled to entry of summary judgment on the basis of mootness with respect to the FTCA claim relating to the confiscation of Nunez's blue towel and ribbed t-shirt. Specifically, Defendants assert that since those personal property items were returned to Plaintiff, his FTCA claim is moot. See Dkt. Entry # 26, p. 4.

The adjudicatory power of a federal court depends upon "the continuing existence of a live and acute controversy." Steffel v. Thompson, 415 U.S. 452, 459, 94

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 222661 (M.D.Pa.)

(Cite as: 2009 WL 222661 (M.D.Pa.))

S.Ct. 1209, 39 L.Ed.2d 505 (1974) (emphasis in original). "The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Id.* at n. 10 (citations omitted).

Defendants acknowledge that an incident report issued to Nunez relating to the confiscation of his towel and t-shirt was expunged by correctional officials. As a result of that administrative determination, "Nunez's towel and t-shirt were returned to him." *Id.* In support of their argument, Defendants have submitted a declaration under penalty of perjury by BOP Paralegal Susan Albert who states that based upon her review of the BOP computerized records, the t-shirt and towel were returned to Nunez on July 29, 2006. *See* Dkt. Entry # 26, Exhibit B, ¶ 7. Also submitted is a copy of an internal prison log entry indicating that those personal property items were returned to Nunez. *See id.* at Exhibit B-3.

In his opposing brief, Plaintiff contends that his towel and t-shirt were never returned and Defendants cannot prove that they were given back. *See* Dkt. Entry # 35, p. 3. Since the sole supporting evidence relied upon by Defendants, an unsubstantiated written entry in a prison log book, does not adequately establish that Nunez's towel and t-shirt were returned, it cannot be said that the claim pertaining to the towel and t-shirt is moot.

**\*3** Defendants also assert that adjudication of the FTCA claims is not warranted because they do not fall within the FTCA's limited waiver of sovereign immunity. Under the FTCA, the United States waives sovereign immunity for torts involving "injury or loss of property ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). As Defendants argue, however, exempted from the general waiver of sovereign immunity is "[a]ny claim arising in respect of the ... detention of any ... property by ... any ... law-enforcement officer." 28 U.S.C. § 2680(c).

In *Ali v. BOP,* 552 U.S. 214, ---- - ----, 128 S.Ct. 831,

840-41, 169 L.Ed.2d 680 (2008), the Court held that corrections officers are covered by the term "any law enforcement officer," thus precluding liability based upon a claim that federal prison officials caused the loss of an inmate's property. Since the decision in *Ali,* claims similar to those presented by Nunez have been dismissed. *See Corley v. United States,* Civil Action No. 5:08cv177DCB-MTP, 2008 WL 5412422, at \*4 (S.D.Miss., Dec.23, 2008) (federal inmate's claim for the loss of property by corrections officers barred by 28 U.S.C. § 2680(c)); *Stafford v. U.S. Bureau of Prisons,* Civil Action No. 7:08-CV-82-KKC, 2008 WL 1924124, at \*2 (E.D.Ky. April 29, 2008) (claim that corrections officers' negligence caused loss of inmate's property barred by 28 U.S.C. § 2680(c)); *Jebril v. Federal Bureau of Prisons,* Civil Action No. 08-CV-10159, 2008 WL 2788541, at \*1 (E.D.Mich. July 16, 2008) (FTCA claim for property lost while in federal prison dismissed under 28 U.S.C. § 2680(c)).

In *Wadley v. Warden,* Civil Action No. 7:08-cv-00362, 2008 WL 2455445 (W.D.Va., June 16, 2008), the inmate asserted a claim similar to that presented by Nunez. The inmate asserted that property (a pair of tennis shoes) was wrongfully removed from his cell during a search and not returned. In dismissing the claim, the court wrote:

[A]s the *Ali* decision makes it clear that prison officials qualify as "other law enforcement officers" for purposes of the exemption set forth in § 2680(c), the officers' detention of Wadley's property, whether that detention was negligent or wrongful, falls squarely within the exception. Thus, ... the official conduct of which he complains remains cloaked in sovereign immunity, as it is exempted from the waiver in § 1346(b). As sovereign immunity bars Wadley's claims, his complaint fails to state any claim upon which relief can be granted and must be dismissed accordingly....

*Id.* at \*2

An identical conclusion is compelled here. Nunez complains of a loss arising out of the detention of property by corrections officers in the pursuit of their duty to seize inmate contraband. Whether the loss was negligent or

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 222661 (M.D.Pa.)

(Cite as: 2009 WL 222661 (M.D.Pa.))

otherwise wrongful, and FTCA claim concerning the loss of the property is barred. Thus, the FTCA claims will be dismissed.

**The FOIA Claims**

*\*4* Defendants next argue that the FOIA portion of Nunez's Complaint is premature because there has not been a final administrative denial of his two requests. *See* Dkt. Entry # 26, p. 16. Indeed, the exhibits submitted by Plaintiff in opposition to the motion indicate that proceedings under the FOIA were being pursued by Plaintiff after he brought this action. (Dkt. Entry 37, Exhibits 18 through 24.) It is thus evident that the administrative process had not been completed when this action was brought.

The FOIA provides administrative remedies, including an appeals process by which individuals can request information from federal agencies. If a person fails to exhaust his available administrative remedies prior to filing a FOIA suit in federal district court, jurisdiction over his action may be declined. *See McConnell v. United States,* 4 F.3d 1227, 1240-41 (3d Cir.1993); *Thomas v. Internal Revenue Service,* No. 3:03CV2080, 2004 WL 3185316 \*3 (M.D.Pa., Nov.2, 2004). Exhaustion of administrative remedies is generally required to allow the appropriate federal agency the initial opportunity to exercise its discretion and expertise and to make a factual record regarding its determination with respect to the FOIA request. *See Id.; Oglesby v. Department of the Army,* 920 F.2d 57, 64 (D.C.Cir.1990).

That Plaintiff had not exhausted administrative remedies when he brought this action is made clear by the fact that on August 9, 2007, after this lawsuit had been filed, the BOP sent Plaintiff a letter requesting that he provide more specific information regarding the budgetary records which he was seeking. *See* Dkt. Entry # 37, Exhibit 24. Plaintiff responded by submitting a more specific request on August 22, 2007. *See id.* at Exhibit 25. As to his initial FOIA request for information pertaining to himself, Plaintiff received a letter dated October 24, 2007, and Plaintiff was advised that he could file an administrative appeal if he was dissatisfied with that response.

It is thus indisputable that Nunez brought this action before exhausting administrative remedies under FOIA. Accordingly, the FOIA claims will be dismissed. *See Hardy v. Daniels,* No. CV05-955, 2006 WL 176531 \*1 (D.Or. Jan. 23, 2006) ("[w]here a plaintiff has failed to exhaust within the administrative system, the district court will dismiss the case for lack of jurisdiction").

***Conclusion***

For the reasons set forth above, Defendant's Summary Judgment Motion will be granted. An appropriate order follows.

***ORDER***

**NOW, this 29th Day of January, 2009,** for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

1. Defendants' summary judgment motion (Dkt. Entry 24) is **GRANTED.** Plaintiff's FTCA claims are barred by sovereign immunity, and his FOIA claims are dismissed, without prejudice, for failure to exhaust administrative remedies before bringing this action.

2. The Clerk of Court is directed to mark this matter **CLOSED.**

M.D.Pa.,2009.

Nunez v. U.S.
Slip Copy, 2009 WL 222661 (M.D.Pa.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Page 1

Slip Copy, 2011 WL 2432917 (N.D.N.Y.)

(Cite as: 2011 WL 2432917 (N.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Riley J. WILLIAMS, Plaintiff,
v.
Robert A. FRENCH, also known as Robert A. France,
Defendant.
No. 10–CV–998 (NAM/DRH).

April 5, 2011.
Riley J. Williams, Dannemora, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General for the State
of New York, Michael G. McCartin, Esq., Assistant
Attorney General, Albany, NY, for Defendant The
Capitol.

**REPORT–RECOMMENDATION AND ORDER**[FN1]

> FN1. This matter was referred to the undersigned
> for report and recommendation pursuant to 28
> U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

DAVID R. HOMER, U.S. Magistrate Judge.

*1 Plaintiff pro se Riley J. Williams ("Williams"), an
**inmate** in the custody of the New York State Department
of Correctional Services ("DOCS"), brings this action
pursuant to 42 U.S.C. § 1983 alleging that defendant
French violated his constitutional rights under the First
Amendment. Compl. (Dkt. No. 1). Presently pending is
French's motion to dismiss pursuant to Fed.R.Civ.P.
12(b)(6). Dkt. No. 11. Williams has not responded to the
motion. Dkt. Nos. 13, 15.[FN2] For the following reasons, it
is recommended that French's motion be granted.

> FN2. Although Williams has not responded to
> the motion, he has twice previously attempted to
> file amended complaints. He filed his first on
> December 13, 2010 seeking to add an additional
> defendant. Dkt. No. 10. In an order filed

February 9, 2011, that amended complaint was
stricken because Williams failed to comply with
the procedural requirements of the local rules by
filing supporting documents. Dkt. No. 15. A
second amended complaint was filed on March
7, 2011, but it was also ordered stricken for
failure to comply with the procedural
requirements of the local rules. Dkt. Nos. 16, 17.

**I. Background**

The facts are related herein in the light most favorable
to Williams as the non-moving party. *See Ertman v.
United States,* 165 F.3d 204, 206 (2d Cir.1999). Williams
alleges that while incarcerated on August 14, 2010, he was
supposed to receive two potatoes, eggs, wheat bread,
vanilla pudding, apple crisp, and two breakfast juices for
his Ramadan celebration.[FN3] Compl. at 5. Defendant
French, the cook, did not provide Williams with his meal.
*Id.* at 5–6. The complaint was dated on August 14, 2010,
the same day the First Amendment violation allegedly
occurred. *Id.* at 6. Williams indicated in his complaint that
he had also filed a grievance at the facility in response to
his complaint, but had yet to receive a response. *Id.* at 2–3.

> FN3. " 'Ramadan, the ninth month of the Muslim
> calendar, is a holy month for Muslims, believers
> in the religion Islam. During Ramadan, Muslims
> fast (take no food or drink) from dawn to sunset.
> It is a very spiritual time for Muslims. They arise
> early for a pre-dawn meal. At the end of the day,
> the fast is broken by taking the Iftar meal .....
> When the new moon appears and the month of
> Ramadan is over, Muslims celebrate a joyous
> holiday called Eid–ul–Fitr (Festival of
> Fast–Breaking)....' " *Skoros v. City of N.Y.,* 437
> F.3d 1, 10 (2d Cir.2006) (quoting description
> from a Ramadan card).

**II. Discussion**

Williams contends that his First Amendment rights
were violated when his Ramadan meal was incorrectly
prepared or provided to him on August 14, 2010. [FN4]

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 2432917 (N.D.N.Y.)

(Cite as: 2011 WL 2432917 (N.D.N.Y.))

French moves to dismiss the **complaint** for Williams' failure to **exhaust** his **administrative remedies** as he **filed** both the grievance and **complaint** on or about the same day as the alleged constitutional violation without allowing the administrative review process to be completed.

> FN4. To the extent that Williams alleges claims against unnamed party corrections officer McBath, such claims will not be discussed because McBath is not a named party in the lawsuit. While Williams attempted to file an amended complaint to include McBath as a named party, the amended complaint was stricken. Dkt. No. 15; *see also* note 2 *supra*.

### A. Legal Standard

Rule 12(b)(6) authorizes dismissal of a complaint that states no actionable claim. When considering a motion to dismiss, "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994). However, this "tenet ... is inapplicable to legal conclusions[; thus, t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007) (holding that "entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action ... [as] courts are not bound to accept as true a legal conclusion couched as a factual allegation.")).

Accordingly, to defeat a motion to dismiss, a claim must include "facial plausibility ... that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 556 (explaining that the plausibility test "does not impose a probability requirement ... it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].")); *see also Arar v. Ashcroft,* 585 F.3d 559, 569 (2d Cir.2009) (holding that, "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible ....") (citations omitted). Determining whether plausibility exists is "a content specific task that requires the reviewing court to draw on

its judicial experience and common sense." *Iqbal,* 129 S.Ct. at 1950–51.

**\*2** When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special solicitude. *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006); *see also Sealed Plaintiff v. Sealed Defendant # 1,* 537 F.3d 185, 191–92 (2d Cir.2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds pro se, ... a court is obliged to construe his pleadings liberally.' " (citations omitted)).

### B. Failure to Exhaust

Under 42 U.S.C. § 1997e(a), an **inmate** must exhaust all administrative remedies prior to bringing any suits challenging prison conditions, including federal civil rights cases. *Porter v.. Nussle,* 534 U.S. 516, 524 (2002); *see also Woodford v. Ngo,* 548 U.S. 81, 83 (2006). This exhaustion requirement applies to all prison condition claims. *Porter,* 534 U.S. at 532. "[A]ny deprivation that does not affect the fact or duration of a **prisoner's** overall confinement is necessarily a condition of that confinement." *Jenkins v. Haubert,* 179 F.3d 19, 28 (2d Cir.1999). The exhaustion requirement also applies even if the administrative grievance process does not provide for all the relief requested by the **inmate**. *Nussle,* 534 U.S. at 524.

While the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply." *Ruggiero v. County of Orange,* 467 F.3d 170, 175 (2d Cir.2006) (citing *Giano v. Goord,* 380 F.3d 670, 677 (2d Cir.2004)). Exhaustion for an **inmate** in DOCS custody is generally achieved through the **Inmate** Grievance Program (IGP).[FN5] *See* N.Y. Comp.Codes R. & Regs. tit. 7, § 701.1, *et seq.* Included within the IGP's exhaustion requirement is the prerequisite that the **inmate** file an appeal with CORC and receive a response from CORC prior to filing a federal lawsuit. *Torres v. Carry,* 672 F.Supp.2d 338, 344 (S.D.N.Y.2009); *see also* N.Y. Comp.Codes R. & Regs. tit. 7 § 701.5(d)(2)(ii) ("The CORC shall review each appeal, render a decision on the grievance, and transmit its decision ... within 30 calendar days). Exhaustion must precede filing a lawsuit. *Neal v. Goord,* 267 F.3d 116, 122 (2d Cir.2001) ("Subsequent

Slip Copy, 2011 WL 2432917 (N.D.N.Y.)

(Cite as: 2011 WL 2432917 (N.D.N.Y.))

exhaustion after suit is filed therefore is insufficient.") *abrogated in part on other grounds by Porter,* 534 U.S. 516. Where the administrative process has been started, but has yet to conclude, courts have dismissed federal claims without prejudice and granting leave to reopen when the administrative process has ceased and the result is a denial of the **inmate's** grievance. *Torres,* 672 F.Supp.2d at 345–46.

> FN5. "The IGP is a three-step process that requires an **inmate** to: (1) file a grievance with the IGRC [ **Inmate** Grievance Resolution Committee]; (2) appeal to the superintendent within four working days of receiving the IGRC's written response, and (3) appeal to the CORC [Central Office Review Committee] ... within four working days of receipt of the superintendent's written response." *Abney v. McGinnis,* 380 F.3d 663, 668 (2d Cir.2004) (internal citations omitted).

In this case, Williams states in his complaint that he both initiated the IGP grievance process and filed the present complaint on or about the same day that the alleged constitutional violation occurred. Thus, Williams has commenced the administrative process, but he has not yet received a final determination. Because exhaustion of these remedies must precede the present lawsuit, French's motion to dismiss should be granted, and the complaint dismissed without prejudice to allow the grievance process to be completed. In the event that Williams' grievances are denied, he may then re-commence this action.

### III. Conclusion

**\*3** For the reasons stated above, it is hereby **RECOMMENDED** that defendant's motion to dismiss (Dkt. No. 11) be **GRANTED** and Williams' complaint be **DISMISSED** without prejudice.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the ... recommendation." N.Y.N.D.L.R. 72 .1(c) (citing 28 U.S.C. § 636(b)(1)(B)-(C)). **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS**

**WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Sec'y of HHS,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,2011.

Williams v. French
Slip Copy, 2011 WL 2432917 (N.D.N.Y.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2011 WL 1134711 (E.D.N.Y.)

(Cite as: 2011 WL 1134711 (E.D.N.Y.))

Only the Westlaw citation is currently available.NOT FOR PUBLICATION

United States District Court,

E.D. New York.
Julio CUELLO, Plaintiff,
v.
Cameron LINDSAY, in his individual and official capacities as Warden of Metropolitan Detention Center; Assistant Warden (Name Unknown) in his individual and official capacities as Assistant Warden of the Metropolitan Detention Center; Officer Rammarine, in his individual and official capacities as a duty of Metropolitan Detention Center; and Escort Officer (Name Unknown) in his individual and official capacities, Defendants.
No. 09–CV–4525 (KAM)(MDG).

March 25, 2011.
Julio Cuello, Bradford, PA, pro se.

Orelia E. Merchant, United States Attorneys Office, Eastern District of New York, Brooklyn, NY, for Defendants.

### *MEMORANDUM & ORDER*

MATSUMOTO, District Judge.
  **\*1** On September 28, 2009, Julio Cuello ("plaintiff") commenced this *pro se* action against Cameron Lindsay, former Warden of the United States Bureau of Prisons' ("BOP") Metropolitan Detention Center Brooklyn ("MDC"), an "Assistant Warden (Name Unknown)," Paul Ramnarine,[FN1] Senior Officer Specialist, and an "Escort Officer (Name Unknown)" (collectively "defendants"), in their official and individual capacities, alleging constitutional violations pursuant to *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) ("*Bivens*").[FN2] (*See* ECF No. 1, Compl.) Specifically, plaintiff claims that defendants' negligence and deliberate indifference caused him to be

subjected to an assault by a fellow **inmate** and that defendants subsequently delayed treatment of plaintiff's injuries sustained during the assault, resulting in prolonged pain and persisting medical complications, in violation of the Eighth Amendment. (*See generally id.*)
  FN1. Plaintiff spells this officer's name as "Rammarine," the name reflected in the case caption, whereas defendants spell the name as "Ramnarine." For purposes of this motion, the court uses defendants' spelling to refer to this officer.

  FN2. In his complaint, plaintiff lists two unnamed defendants, the "Assistant Warden" of MDC and an "Escort Officer." Neither of the two unnamed defendants has to date been properly named in the complaint or personally served with process pursuant to Federal Rule of Civil Procedure 4. Rule 4(m) provides that

    If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

  Fed.R.Civ.P. 4(m). Here, the summons was returned unexecuted as to the "Assistant Warden," stating that the MDC Legal Department would not accept service without the name of the individual to be served. (*See* ECF No. 14, Summons Returned Unexecuted as to "Assistant Warden" at MDC.) No further effort to serve the "Assistant Warden" was made. With respect to the unnamed "Escort Officer," no summons was ever issued for his personal service. Because the complaint in this case was filed on September 28, 2009, the 120–day period for service pursuant to Rule 4

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 1134711 (E.D.N.Y.)

(Cite as: 2011 WL 1134711 (E.D.N.Y.))

has now expired. Usually, the court would give plaintiff notice, pursuant to Rule 4(m), of its intent to dismiss without prejudice as to those two unnamed defendants and allow plaintiff to show good cause for the delay. In this case, however, dismissal without prejudice is not appropriate because any attempt to amend the complaint should plaintiff show good cause for the delay, or any re-filing of the complaint as to the two unnamed defendants after dismissal without prejudice, would be futile. As explained below, like defendants Lindsay and Ramnarine, any claims against these two unnamed defendants in their official capacities would be barred by sovereign immunity. Further, any claims against these defendants in their individual capacities would be barred because plaintiff failed to exhaust his administrative remedies pursuant to the PLRA. Therefore, the court dismisses with prejudice the claims against the unnamed "Assistant Warden" and the unnamed "Escort Officer."

As to the named defendants, Officer Ramnarine was personally served on December 4, 2009, well within the 120–day period prescribed by Rule 4(m). (*See* ECF No. 8, Summons Returned Executed as to Officer Ramnarine.) With respect to Warden Lindsay, however, service was never executed on him personally. Nevertheless, Federal Rule of Civil Procedure 12(h)(1)(B) provides that "[a] party waives any defense listed in Rule 12(b)(2)-(5) [which include, inter alia, insufficient service of process] by ... failing to either (i) make it by motion under this rule; or (ii) include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course." Fed.R.Civ.P. 12(h)(1)(B). Here, the United States Attorney's Office, as representative of both named defendants, effectively waived service under Rule 12(h)(1)(B) by failing to assert a Rule 12(b)(4) defense by motion or to include such defense in a responsive pleading. Therefore, plaintiff's service of process as to the named defendants,

Warden Lindsay and Officer Ramnarine, is unchallenged.

Pending before the court is defendants' motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), and, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56. (*See* ECF No. 23, Mot. to Dismiss for Lack of Jurisdiction, and in the Alternative, for Summ. J. ("Mot.").) For the reasons set forth below, defendants' motion to dismiss and, in the alternative, for summary judgment is granted.

**BACKGROUND**

**I. *Procedural History and Complaint Allegations***

Plaintiff commenced this action *pro se* on September 28, 2009, against defendants Cameron Lindsay and Paul Ramnarine. (*See* Compl.) Liberally construed, the Complaint alleges that defendants were negligent and deliberately indifferent in failing to prevent an assault upon plaintiff by another MDC **inmate** and in failing to provide adequate medical care for the injuries sustained during the assault, in violation of the Eighth Amendment. (*See id.*)

Defendants move to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing first that plaintiff's constitutional tort claims against defendants in their official capacities are barred by sovereign immunity; and second, that to the extent plaintiff's claims are construed as claims arising under the Federal Tort Claims Act ("FTCA"), those claims must be dismissed because plaintiff failed to exhaust his administrative remedies prior to commencing suit as required by the FTCA. (*See* ECF No. 27, Defs. Mem. of Law in Supp. of Mot. ("Defs.Mem.") at 4–7.) Next, defendant Lindsay moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that to the extent that the Complaint fails to set forth personal involvement by defendant Lindsay, plaintiff has failed to state a claim upon which relief can be granted. (*Id.* at 12–13.) Both defendants also argue that the claims must be dismissed under Rule 12(b)(6) because the defendants are protected by qualified immunity. (*Id.* at 14–16.) Finally, defendants seek summary judgment with respect to claims against them in their individual capacities pursuant to Federal Rule of Civil Procedure 56, arguing

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 1134711 (E.D.N.Y.)

(Cite as: 2011 WL 1134711 (E.D.N.Y.))

that there is no genuine factual dispute that plaintiff failed to exhaust his administrative remedies as required by the **Prisoner** Litigation Reform Act of 1996 ("PLRA"). (*Id.* at 10–12.)

   **\*2** Plaintiff is an **inmate** who was housed at the MDC from July 26, 2006 to November 5, 2008. (*See* ECF No. 26, Defs.' Stmt. Pursuant to Local Civil Rule 56.1 ("Defs. 56.1 Stmt.") ¶ 1; ECF No. 25, Decl. of Nicole McFarland ("McFarland Decl.") ¶ 1.) He is currently incarcerated at the Federal Correctional Institution in McKean, Pennsylvania, where he is serving a 216–month sentence for conspiracy to commit robberies, attempted robberies, conspiracy to distribute and possession with intent to distribute five kilograms or more of cocaine, and an 84–month sentence for the use, carrying and possession of a firearm in furtherance of a crime of violence. (Defs. 56.1 Stmt. ¶ 1; McFarland Decl. ¶ 1.)

   Plaintiff alleges that on July 25, 2007, an **inmate** assaulted him in the common area of his housing unit. (Compl.¶ 15.) Plaintiff further asserts that upon hearing the disturbance and seeing the assault, defendant officer Ramnarine "immediately activated his body alarm," which alerted staff who responded to the scene and separated plaintiff and his attacker. (*Id.* ¶ 16.) That same day, following the attack, plaintiff complained to staff about pain from injuries sustained during the assault and "[m]omentarily after the complaint was made, he was taken to the emergency room of an outside hospital" where he was examined by hospital staff and x-rays were taken. (*Id.* ¶ 17.) Plaintiff was referred to a bone specialist to examine "what appeared to be deep fractures to several parts of his body." (*Id.*) In or about July or August of 2007, plaintiff was taken to see a bone specialist who, after examining plaintiff, informed him that the pain he was suffering was caused by the re-fracturing of the left clavicle of his shoulder and the left wrist of his hand. (*Id.* ¶ 18.) In addition, the specialist informed plaintiff that in order to "effectively rectify" the injuries, each of the affected areas would have "to be completely rebroken [sic] to ensure that they heal properly for future effective utilization." (*Id.*) Plaintiff states that he suffers "prolonged and extreme pain up to the present day" which he alleges has "produced unnecessary complications in the treatment of his injuries." (*Id.* ¶ 30.) Moreover, plaintiff asserts that

the injuries sustained in the incident have left him with limited mobility in his left wrist and collarbone, which inhibits his ability to "carry out the basic and essential necessities ... needed to function and be productive in life." (*Id.* ¶ 31.) Finally, plaintiff alleges that his injuries have prevented him from sleeping comfortably, "producing an imbalance to his body and further pain and suffering to his upper and lower back." (*Id.*)

## II. *Undisputed Material Facts*

   Unless otherwise indicated, the undisputed material facts, set forth in the current record and defendants' Rule 56.1 Statement, are as follows.[FN3]

   > FN3. Local Civil Rule ("L.Civ. R.") 56.1 requires that "[e]ach numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." L. Civ. R. 56.1(c). In addition, Local Civil Rule 56.2 requires that notice be sent to a *pro se* party by the party moving for summary judgment, informing the *pro se* party of the need to submit evidence and follow the procedures in Rule 56 and Local Rule 56.1 to oppose the motion for summary judgment. *See* L. Civ. R. 56.2. Here, defendants complied with Local Rules 56.1 and 56.2 by serving their 56.1 statement and proper notice on *pro se* plaintiff. (*See* ECF No. 24, Notice to Pro Se Litigant Opposing a Rule 12 Motion Supported by Matters Outside the Pleadings and Motion for Summary Judgment ("Notice of Mot."); *see also* Defs.' 56.1 Stmt.) Plaintiff did not submit a correspondingly numbered document responding to defendants' 56.1 statement, although he did file responses to defendants' motions, nor did he file affidavits or other documentary evidence to support his opposition. (*See* ECF No. 22, Pl. Opp'n to Mot. ("Pl.Opp'n"); ECF No. 29, Resp. in Opp'n to Defs.' Reply in Supp. of Mot. ("Pl.Resp.").) Because plaintiff failed to respond to the motion for summary judgment with affidavits or documentary evidence contradicting

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 1134711 (E.D.N.Y.)

(Cite as: 2011 WL 1134711 (E.D.N.Y.))

the material facts asserted by the defendants, the court accepts defendants' factual assertions as true, as permitted by Local Civil Rule 56.2(d).

Plaintiff first filed a Request for Administrative Remedy ("BP–9") regarding the July 25, 2007 attack over six months after the incident, on February 4, 2008. (*See* Defs. 56.1 Stmt. ¶¶ 15–16; McFarland Decl. ¶ 15.) This BP–9 was rejected as untimely filed. (Defs. 56.1 Stmt. ¶ 17; McFarland Decl. ¶ 15.) On March 5, 2008, plaintiff appealed this rejection to the BOP's Northeast Regional Office, which responded that the BP–9 remedy request was untimely and instructed plaintiff to proffer a reason to the Warden for his failure to timely file the BP–9. (Defs. 56.1 Stmt. ¶¶ 18–19; McFarland Decl. ¶ 16.) Plaintiff failed to provide a reason and instead re-filed his appeal with the Regional Office on April 14, 2008. (Defs. 56.1 Stmt. ¶ 20; McFarland Decl. ¶ 17.) The Regional Office issued the same response as it had previously, rejecting the appeal as untimely and again instructing plaintiff to provide the Warden with valid justification for failing to timely file the BP–9. (Defs. 56.1 Stmt. ¶ 21; McFarland Decl. ¶ 17.) Again, plaintiff failed to justify his untimeliness and instead, on April 15, 2008, he appealed the Regional Office's rejection to the BOP's Central Office. (Defs. 56.1 Stmt. ¶ 22; McFarland Decl. ¶ 18.) The Central Office concurred with the rejection of plaintiff's claim on the ground of untimeliness. (Defs. 56.1 Stmt. ¶ 23; McFarland Decl. ¶ 18.)

**\*3** On July 17, 2009, plaintiff filed a standard form 95 ("SF–95") administrative tort claim with the Regional Office regarding the July 25, 2007 incident. (Defs. 56.1 Stmt. ¶ 24; McFarland Decl. ¶ 21.)[FN4] On September 28, 2009, while the administrative tort claim was still pending, plaintiff initiated the instant case in federal district court, in the Eastern District of New York, seeking injunctive relief, as well as "nominal, compensatory, and punitive damages." (Compl. at VI.) On January 13, 2010, during the pendency of the litigation, the BOP denied plaintiff's administrative tort claim. (Defs. 56.1 Stmt. ¶ 25; McFarland Decl. ¶ 22.)

FN4. Plaintiff filed a previous SF–95 on May 11, 2009, but that claim was rejected by the BOP Regional Office because it was unsigned.

(McFarland Decl. ¶ 20.)

## DISCUSSION

### I. *Legal Standards*
#### A. Motion to Dismiss Pursuant to Rule 12(b)(1)

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a claim may be dismissed for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1); *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000) ("A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."). In reviewing a motion to dismiss under Rule 12(b)(1), the court must accept as true all material factual allegations in the complaint, but is not required to draw all reasonable inferences in the plaintiff's favor. *J.S. v. Attica Cent. Schs.,* 386 F.3d 107, 110 (2d Cir.2004). Rather, a plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists. *Makarova,* 201 F.3d at 113. Additionally, in deciding a 12(b)(1) motion, the district court may rely on and refer to evidence outside the pleadings. *Id.* (stating that "[i]n resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court ... may refer to evidence outside the pleadings").

#### B. Motion to Dismiss Pursuant to Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint for a plaintiff's failure "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Thus, in order "[t]o survive a motion to dismiss under [Rule 12(b)(6) ], a complaint must contain sufficient factual matter, accepted as true, to state 'a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* ––– U.S. ––––, ––––, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). In assessing plausibility on a Rule 12(b)(6) motion to dismiss, a court must "assume [the] veracity" of all well-pleaded factual allegations contained in the complaint, *Iqbal,* 129 S.Ct. at 1950, and afford the plaintiff every reasonable inference, *see Zinermon v. Burch,* 494 U.S. 113, 118, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). However, allegations must consist of more

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 1134711 (E.D.N.Y.)

(Cite as: 2011 WL 1134711 (E.D.N.Y.))

than mere labels, legal conclusions, or a "formulaic recitation of the elements of a cause of action," and bare legal conclusions are "not entitled to the assumption of truth ." *Iqbal,* 129 S.Ct. at 1949–50.

**\*4** The facial plausibility standard is met when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. This does not require a showing of a "probability" of misconduct, but it does demand more than "a sheer possibility that a defendant has acted unlawfully." *See id* . Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," dismissal is appropriate. *Starr v. Sony BMG Music Entm't,* 592 F.3d 314, 321 (2d Cir.2010) (quoting *Iqbal,* 129 S.Ct. at 1950); *see also Twombly,* 550 U.S. at 570 (noting that where "plaintiffs ... have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed"). Indeed, "however true," if the allegations in a complaint "could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *See Twombly,* 550 U.S. at 558.

"Material *de hors* the complaint are generally not considered on a motion to dismiss unless the court treats it as one for summary judgment, giving all the parties a reasonable opportunity to present relevant evidence under Rule 56." *Nicholls v. Brookdale Univ. Hosp. Med. Ctr.,* No. 03–CV–6233, 2004 WL 1533831, at *2 (E.D.N.Y. July 9, 2004) (citing *Cortec Industries, Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991)). Here, defendants, on notice to the plaintiff, moved in the alternative for summary judgment pursuant to Rule 56 and submitted materials outside of the pleadings in support of summary judgment. (*See* Mot.; Notice of Mot.) Therefore, where the defendants rely on materials outside the Complaint, the court will consider the motion as one for summary judgment, rather than as a 12(b)(6) motion, and evaluate the motion under the Rule 56 standard. Alternatively, where defendants rely solely on materials found within the four-corners of the Complaint, the court will consider the motion as a 12(b)(6) motion, and subject the motion to the facial plausibility standard described above.

**C. Motion for Summary Judgment Pursuant to Rule 56**

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party carries the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In deciding a motion for summary judgment, the court's function is not to resolve disputed issues of fact, but only to determine whether there is a genuine issue to be tried. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must construe the facts in the light most favorable to the nonmoving party and all reasonable inferences and ambiguities must be resolved against the moving party. *Flanigan v. Gen. Elec. Co.,* 242 F.3d 78, 83 (2d Cir.2001).

**\*5** Nevertheless, the nonmoving party cannot rest merely on allegations or denials but must instead set out specific facts showing a genuine issue for trial. *See* Fed.R.Civ.P. 56(c) and 56(e); *see also National Westminster Bank USA v. Ross,* 676 F.Supp. 48, 51 (S.D.N.Y.1987) ("Speculation, conclusory allegations, and mere denials are not enough to raise genuine issues of fact."); *Harlen Assocs. v. Inc. Vill. of Mineola,* 273 F.3d 494, 499 (2d Cir.2001) ("[M]ere speculation and conjecture is [sic] insufficient to preclude the granting of the motion."). Nor can the nonmoving party rest only on the pleadings. *Celotex,* 477 U.S. at 324 ("Rule 56(e) requires the nonmoving party to go beyond the pleadings."). Instead, each statement of material fact by the movant or opponent must be followed by citation to evidence that would be admissible, as required by Rules 56(c) and 56(e) and Local Civil Rule 56.1(d). Moreover, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson,* 477 U.S. at 247–48 (emphasis in original). No genuine issue of material fact exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, ... or is not significantly probative, ...

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 1134711 (E.D.N.Y.)

(Cite as: 2011 WL 1134711 (E.D.N.Y.))

summary judgment may be granted." *Id.* at 249–50 (internal citations omitted).

### D. *Pro Se* Submissions

The Supreme Court has noted that "[a] document filed *pro se* is to be liberally construed,' and must be held to less stringent standards than formal pleadings drafted by lawyers.' " *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)); *see also Bertin v. United States,* 478 F.3d 489, 491 (2d Cir.2007) ("[W]e liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest." (internal quotation marks and citations omitted)). Because plaintiff in this case is *pro se,* the court will construe his submissions liberally "to raise the strongest arguments they suggest."   *Bertin,* 478 F.3d at 489.

## II. *Bivens* Claims

### A. Official Capacity Claims Barred by Sovereign Immunity

Plaintiff brings *Bivens* claims against both defendants in their official and individual capacities alleging that defendants' deliberate indifference caused him to be subject to an assault by a fellow **inmate** and that he was subsequently denied medical treatment, in violation of his constitutional rights under the Eighth Amendment. The claims against thei defendants in their official capacities must be dismissed on sovereign immunity grounds. It is well established that "the United States, as sovereign, is immune from suit save as it consents to be sued." *Lehman v. Nakshian,* 453 U.S. 156, 160, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981) (internal quotation marks and citations omitted). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer,* 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994). Moreover, sovereign immunity extends to officers of the United States when they "act in their official capacities," *Dotson v. Griesa,* 398 F.3d 156, 177 (2d Cir.2005), because such actions are "essentially a suit against the United States." *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 510 (2d Cir.1994).

**\*6** Here, the requisite consent by statute or other

means permitting *Bivens* claims to be brought against the defendants in their official capacities is absent. Consequently, plaintiff's *Bivens* claims against defendants Lindsay and Ramnarine in their official capacities are hereby dismissed. *See, e.g., Culbertson v. Cameron,* No. 08–CV–4838, 2010 WL 1269777, at *3 (E.D.N.Y. Mar.30, 2010) (dismissing plaintiff's official capacity *Bivens* claims against prison employees and medical staff at MDC based on sovereign immunity in the absence of consent by statute or other means).

### B. Individual Capacity Claims Barred by the PLRA

While *Bivens* claims brought against a federal officer in his individual capacity are not barred by sovereign immunity, *Robinson,* 21 F.3d at 510, plaintiff's *Bivens* claims against the defendants in their individual capacities must be dismissed because he failed to exhaust all available administrative remedies prior to his initiation of the present federal case. Under the PLRA, an action may not be brought "with respect to prison conditions under section 1983 of this title or any other federal law, by a **prisoner** confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e; *see Porter v. Nussle,* 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (noting that exhaustion requirement under PLRA applies to federal **prisoners** asserting *Bivens* claims); *Macias v. Zenk,* 495 F.3d 37 (2d Cir.2007) (similar). The Supreme Court has explained that the purpose of the PLRA is to "eliminate unwarranted federal-court interference with the administration of prisons, and ... to affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.' " *Woodford v. Ngo,* 548 U.S. 81, 93, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006) (quoting *Porter v. Nussle,* 534 U.S. 516, 525, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)). The Supreme Court notes, "Once within the discretion of the district court, exhaustion in cases covered by [the PLRA] is now mandatory." *Porter,* 534 U.S. at 524 (citing *Booth v. Churner,* 532 U.S. 731, 739, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001)). Contrary to plaintiff's argument in opposition to defendants' motion, this exhaustion requirement applies even if the **inmate** is seeking money damages, despite the fact that such damages are not an available administrative remedy. *Booth,* 532 U.S. at

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 1134711 (E.D.N.Y.)

(Cite as: 2011 WL 1134711 (E.D.N.Y.))

739–40. Furthermore, just as allegations regarding safety conditions are considered "prison conditions," and thus fall within the gamut of claims subject to the PLRA's exhaustion requirements, see Porter, 534 U.S. at 532 (explaining that "the PLRA's exhaustion requirement applies to all **inmate** suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong"), so too are allegations regarding medical treatment. See Neal v. Goord, 267 F.3d 116, 119–20 (2d Cir.2001) (court considered **prisoner's** § 1983 suit containing allegations of poor medical treatment as "ordinary garden variety complaints about prison conditions' ").

**\*7** Even though exhaustion is mandatory, the court must employ a three-part inquiry when an **inmate** plausibly seeks to challenge defendants' contention that the **prisoner** has failed to exhaust his administrative remedies as required by the PLRA. Hemphill v. New York, 380 F.3d 680, 686 (2d Cir.2004). First, the court must ask whether administrative remedies were in fact "available" to the **prisoner**. Id. (citing Abney v. McGinnis, 380 F.3d 663, 667 (2d Cir.2004)). If not, then the exhaustion requirement is inapplicable. Id. Second, if the exhaustion requirement applies, the court must inquire as to whether the defendants may have forfeited the affirmative defense by failing to raise or preserve it, "or whether the defendants' own actions inhibiting the **inmate's** exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." Id. Finally, if administrative remedies are available to the **inmate** and the defendants are not estopped and have not forfeited the exhaustion defense, the court should consider whether "special circumstances," such as a reasonable misunderstanding of grievance procedures, have been plausibly alleged to justify the **prisoner's** failure to exhaust his administrative remedies. Id. (citing Giano v. Goord, 380 F.3d 670, 675 (2d Cir.2004)).

## 1. BOP Administrative Grievance Procedures

Upon admission to a BOP facility, all **inmates** are given an Admission and Orientation ("A & O") booklet, advising them of the policies and procedures of both the BOP and the individual institution. (Defs. 56.1 Stmt. ¶ 3; McFarland Decl. ¶ 9.) The A & O booklet describes the Administrative Remedy process in detail and advises **inmates** of the proper means to initiate and exhaust that process. (Defs. 56.1 Stmt. ¶ 3; McFarland Decl. ¶ 9.) The BOP has established a three-tiered **inmate** grievance program for **prisoners** in its custody in which federal **inmates** may seek formal review of complaints relating to any aspect of their confinement. (See Defs. 56.1 Stmt. ¶ 2; McFarland Decl. ¶¶ 3–6 (citing 28 C.F.R. §§ 542.10–542.19).) The requirements are set forth in 28 C.F.R. §§ 542.10–542.19.

The administrative review process mandates that an **inmate** first report the issue informally to the prison staff, at which time the staff should attempt to resolve the issue. Id. § 542.13(a). If the **inmate** is dissatisfied with the staff's resolution, the **inmate** can then pursue the formal three-tiered administrative remedy process set forth at 28 C.F.R. §§ 542.10–542.16.

At the first of level of formal administrative review, an **inmate** may file a Request for Administrative Remedy (i.e., BP–9 or BP–229 form) with the Warden. Id. § 542.14(a). The requisite form must be submitted within 20 calendar days following the date on which the event forming the basis of the request occurred; this 20–day period includes the time during which the **inmate** must make the informal report to prison staff and await a response from staff. Id.

**\*8** An **inmate** who is not satisfied with the Warden's response may proceed to the second level of administrative review by filing with the BOP Regional Director a Regional Administrative Remedy Appeal (i .e., BP–10 form). Id. § 542.15. This form must be submitted "within 20 calendar days of the date the Warden signed the response" to the BP–9. Id. § 542.15(a).

Finally, if still unsatisfied, the **inmate** may file a Central Office Administrative Remedy Appeal (BP–11) with the General Counsel of BOP within 30 calendar days of the date the Regional Director signed the response. Id. § 542.15(a).

Under the three-tier system, "[i]f the **inmate** does not receive a response within the time allotted for a reply, including extension, the **inmate** may consider the absence of a response to be a denial at that level." Id. § 542.18.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 1134711 (E.D.N.Y.)

(Cite as: 2011 WL 1134711 (E.D.N.Y.))

Therefore, if time has expired at either the first or second level, the **inmate** may consider his request denied and in order to preserve his claim he must file an appeal at the next level, rather than file suit in the district court.

## 2. Plaintiff Failed to Exhaust Under the PLRA

Here, plaintiff failed to properly exhaust his administrative remedies prior to the commencement of the present federal suit. The undisputed facts, taken from the BOP's computerized database, SENTRY, reflect that plaintiff did not timely or properly exhaust his administrative remedies with respect to the July 25, 2007 incident. (Defs. 56.1 Stmt. ¶ 14; McFarland Decl. ¶ 14; *see also* Compl. ¶ 32.) Plaintiff filed his initial BP–9 administrative grievance relating to the alleged incident at issue in this case over six months after it occurred, on February 4, 2008. (Defs. 56.1 Stmt. ¶¶ 15–16; McFarland Decl. ¶ 15.) In so doing, plaintiff failed to file the BP–9 within the 20–day period required by BOP regulations, 28 C.F.R. § 542.14(a).

It is true that, though untimely, plaintiff pursued his administrative remedies at every level required by BOP regulations. However, the PLRA requires an **inmate** to "properly" exhaust administrative remedies before filing suit. *Woodford v. Ngo,* 548 U.S. 81, 92, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006) ( "To ... protect the integrity' of the federal exhaustion rule, we ask not only whether a **prisoner** has exhausted his state remedies, but also whether he has properly exhausted those remedies ...." (quoting *O'Sullivan v. Boerckel,* 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) (emphasis in original))). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ...." *Id.* at 90–91. Therefore, because plaintiff failed to file his grievance within the time limits prescribed by BOP regulation, he has failed to properly exhaust his administrative remedies under the PLRA.

Plaintiff seems to concede that his BP–9 was untimely. (*See* Compl. ¶ 32; Pl. Opp'n at 6–7.) Nevertheless, plaintiff argues that because he is seeking only money damages, his *Bivens* claims are not subject to exhaustion requirements. [FN5] (*See* Pl. Opp'n at 6–7.) Plaintiff correctly cites the law as it stood prior to the enactment of the PLRA in 1996, and provides pertinent

case law in support of the proposition that exhaustion of administrative remedies was not required when asserting money damages claims under *Bivens.* (*See id.* (citing *Muhammad v. Carlson,* 739 F.2d 122 (3d Cir.1984); *Britt v. Simi Valley Unified Sch. Dist.,* 696 F.2d 644 (9th Cir.1983))).) Those cases, however, have been superseded by the PLRA, which, as the Supreme Court made clear in *Booth,* requires exhaustion of administrative remedies regardless of the type of relief sought. *See Booth,* 532 U.S. at 741. In *Booth,* the court considered whether, under the PLRA, "an **inmate** seeking only money damages must complete a prison administrative process that could provide some sort of relief on the complaint stated, but no money." *Id.* at 733. The Court held "that Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." *Id.* at 741; *see also Giano v. Goord,* 380 F.3d 670, 675 (2d Cir.2004) (noting that "as long as other forms of relief are obtainable through administrative channels, the provision is applicable even to suits seeking relief, such as money damages, that may not be available in prison administrative proceedings"). Therefore, plaintiff was required to exhaust his administrative remedies, despite the fact that he seeks only money damages.

> FN5. While plaintiff asserts in his opposition to defendants' motion to dismiss that his complaint seeks only money damages (*see* Pl. Opp'n at 6–7), in the complaint, at section VI, plaintiff seeks "preliminary and permanent injunctions" against the various defendants and "their successors." (Compl. at VI.) The Court will, however, address plaintiff's non-exhaustion argument as if he were only seeking money damages.

**\*9** Finding that plaintiff failed to timely or properly exhaust his administrative remedies does not end the inquiry. The court must employ the three-part inquiry described above to determine whether plaintiff's failure to exhaust should be excused. *Hemphill,* 380 F.3d at 686. In this case, there is no factual dispute regarding the existence and availability of the grievance procedure to plaintiff. Nor is there any allegation that defendants forfeited the defense or prevented plaintiff from pursuing his administrative remedies. The only part of the three-part

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 1134711 (E.D.N.Y.)

(Cite as: 2011 WL 1134711 (E.D.N.Y.))

inquiry relevant in this case, therefore, is whether plaintiff can demonstrate a reasonable misunderstanding of the grievance procedures to excuse his failure to timely exhaust.

To determine whether failure to exhaust is justified, a court must consider the "circumstances which might understandably lead usually uncounselled **prisoners** to fail to grieve in the normally required way." *Giano,* 380 F.3d at 678. For example, in *Giano,* the Second Circuit held that the plaintiff's failure in that case to exhaust administrative remedies was justified where plaintiff's interpretation of ambiguously worded New York prison regulations led him to reasonably conclude that his claim was not grievable. 380 F.3d at 678–79.

Here, plaintiff's only potential claim for "special circumstances" is his ignorance of the effect of the PLRA's exhaustion requirements and the extension thereof to all claims, regardless of the relief sought. (*See* Pl. Opp'n at 6–7.) Plaintiff's ignorance of the law, unlike in *Giano,* is not the consequence of ambiguous terms in the PLRA and the BOP administrative grievance regulations, but rather the result of plaintiff's unreasonable interpretation of those texts and pertinent case law. Plaintiff was provided an A & O booklet upon admission to MDC advising him of the policies and procedures both of the BOP and MDC specifically. (Defs. 56.1 Stmt. ¶ 3; McFarland Decl. ¶ 9.) Moreover, his reliance on pre-PLRA case law cannot justify his failure to exhaust. The Supreme Court decided Booth, the case definitively holding that the PLRA mandated exhaustion even when a plaintiff sought only money damages, in 2001, over six years before the alleged incident in this case. Thus, plaintiff's misunderstanding of the requirements of the PLRA in an action for money damages is not reasonable and cannot justify his failure to timely and properly exhaust his administrative remedies;[FN6]

> FN6. Because the court finds that plaintiff's *Bivens* claims must be dismissed for failure to exhaust his administrative remedies pursuant to the PLRA, the court does not address whether plaintiff has failed to allege sufficient personal involvement as to defendant Lindsay or whether the defendants are protected by qualified

immunity.

### III. *FTCA Claims*

As explained above, because plaintiff is proceeding *pro se,* his Complaint must be liberally construed. *See Erickson,* 551 U.S. at 94; *Bertin,* 478 F.3d at 491. Here, his Complaint could be construed to allege tort claims against the defendants for negligence in their failure to adhere to BOP safety regulations regarding segregation of **inmates** and for failure to provide plaintiff with prompt and adequate medical care after the alleged attack. (*See* generally Compl.)

**\*10** Defendants argue that, to the extent the court construes plaintiff's claims as tort claims against the United States, such claims must proceed under the FTCA. (Defs. Mem. at 5.) The FTCA provides the exclusive remedy for "personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 2679(b)(1). The government certified that defendants Lindsay and Ramnarine were acting within the scope of their employment as employees of the United States at the time the alleged incident took place, and thus the United States would be substituted as the proper party in this action pursuant to 28 U.S.C. § 2679(d)(1). Defendants argue, however, that if the court construes plaintiff's official capacity claims as FTCA claims, they must be dismissed for failure to satisfy the exhaustion requirements of that statute. The court agrees.

The waiver of sovereign immunity under the FTCA is subject to the requirement that a claimant first present the claim to the appropriate federal agency:

> An action shall not be instituted ... unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter be deemed a final denial of the claim for purposes of this section.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 1134711 (E.D.N.Y.)

(Cite as: 2011 WL 1134711 (E.D.N.Y.))

28 U.S.C. § 2675(a). Therefore, a plaintiff is barred from bringing a tort suit unless and until the tort claim has been finally denied in writing by the agency, or at least six months have elapsed since the filing of the claim without any agency action. *Id.* This requirement "is jurisdictional and cannot be waived." *Celestine v. Mount Vernon Neighborhood Health Ctr.,* 403 F.3d 76, 82 (2d Cir.2005).

In order to exhaust FTCA administrative review, an **inmate** must file his claim with the appropriate BOP Regional Office and then appeal to the BOP General Counsel's Office. 28 C.F.R. §§ 543.21, 543 .32. The Supreme Court and the Second Circuit have made clear that exhaustion must occur prior to the commencement of FTCA litigation in federal courts. *See McNeil v. United States* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) (holding that the FTCA exhaustion requirement is jurisdictional, and thus the subsequent denial of an administrative claim cannot cure a prematurely **filed** FTCA **action**); *Celestine,* 403 F.3d at 82 ("The FTCA requires that a claimant **exhaust** all **administrative remedies** before filing a **complaint** in federal district court.").

In the present case, plaintiff filed an administrative tort claim with the BOP on July 17, 2009. (*See* Defs. 56.1 Stmt. ¶ 24; McFarland Decl. ¶ 21.) Plaintiff subsequently filed the instant Complaint in federal district court on September 28, 2009, initiating this case just over two months after he filed his administrative claim. (*See* Compl.; *See* ECF Docket.) On January 13, 2010, nearly four months after plaintiff had initiated the instant case, BOP denied plaintiff's administrative tort claim. (*See* Defs. 56.1 Stmt. ¶ 25; McFarland Decl. ¶ 22.) Therefore, plaintiff filed the instant federal Complaint subsequent to filing an administrative tort claim, but prior to fully exhausting the BOP administrative process, i.e. before determination of his claim by the BOP or before six months had elapsed from the filing of the administrative tort claim with the agency. The tort claim was not resolved by the BOP until more than three months after the present federal case was initiated. While plaintiff ultimately exhausted his administrative remedies on January 13, 2010, when his tort claim was denied by the BOP, he did so during the pendency of the present federal litigation. Supreme Court and Second Circuit precedent make clear

that the subsequent denial of an administrative claim cannot cure a prematurely filed FTCA action. *See McNeil,* 508 U.S. at 113; *Celestine,* 403 F.3d at 82. Consequently, the court dismisses plaintiff's FTCA claims without prejudice, with leave to re-file no later than May 2, 2011 without payment of the filing fee.[FN7]

> FN7. Under the FTCA "[a] tort claim against the United States shall be forever barred ... unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b). Here, the six month period after denial of the administrative claim, which was January 13, 2010, expired on July 13, 2010. The court notes that the six month period expired while the current case was pending. Because equitable tolling is available in this Circuit, *see, e.g., Valdez ex rel. Donely v. United States,* 518 F.3d 173, 182–84 (2d Cir.2008), the court dismisses this action without prejudice. Whether equitable tolling should apply if plaintiff decides to re-file his FTCA complaint is left to the sound discretion of the court assigned to plaintiff's new action, if any, which must be filed by no later than May 2, 2011.

### CONCLUSION

**\*11** For the foregoing reasons, (1) plaintiff's *Bivens* claims against the individual defendants in their official capacities are dismissed with prejudice; (2) plaintiff's *Bivens* claims against the individual defendants in their individual capacities are dismissed with prejudice; (3) plaintiff's official and individual capacity claims against the unnamed defendants are dismissed with prejudice; and (4) plaintiff's FTCA claims are dismissed without prejudice. Plaintiff is granted leave to re-file his complaint without payment of filing fees by no later than May 2, 2011. The Clerk of the Court is respectfully directed to close this case. Defendant shall serve a copy of this Memorandum & Order on plaintiff and file a Certificate of Service on the Electronic Case Filing System by no later than March 30, 2011.

**SO ORDERED.**

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 1134711 (E.D.N.Y.)

(Cite as: 2011 WL 1134711 (E.D.N.Y.))

E.D.N.Y.,2011.

Cuello v. Lindsay
Slip Copy, 2011 WL 1134711 (E.D.N.Y.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

**C**
Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
John HALE, Plaintiff,
v.
Jadow RAO; J. Ireland; Mack/s/Revell; R. Furnia; J.
Silver; John Doe # 1; John Doe # 2; Jane Doe # 1; Jane
Doe # 2; Jane Doe # 3; and Jane Doe # 4, Defendants.
**No. 9:08-CV-612.**

Nov. 3, 2009.

John Hale, Alden, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General of the State of
New York, Richard Lombardo, Esq., Asst. Attorney
General, of Counsel, Albany, NY, for Defendants.

***DECISION and ORDER***

DAVID N. HURD, District Judge.

**\*1** Plaintiff, John Hale, brought this civil rights action in
March 2008, pursuant to 42 U.S.C. § 1983. By
Report-Recommendation dated September 29, 2009, the
Honorable George H. Lowe, United States Magistrate
Judge, recommended that defendants' motions to dismiss
(Docket No. 27) be granted in part and denied in part as
follows: (1) the motion to dismiss should be granted to the
extent that plaintiff asserts claims for money damages
against defendants in their official capacities; and (2) the
motion should be denied to the extent that defendants
moved to dismiss plaintiff's Eighth Amendment claim
against defendant Rao, and moved to dismiss the
complaint against defendant Rao on the ground of
qualified immunity. The Magistrate Judge further
recommended that the motion to dismiss for failure to

prosecute, or in the alternative for an order compelling
plaintiff's responses (Docket No. 36), be denied. No
objections to the Report-Recommendation have been filed.

Based upon a careful review of the entire file and the
recommendations of Magistrate Judge Lowe, the
Report-Recommendation is accepted and adopted in all
respects. *See* 28 U.S.C. 636(b) (1).

Accordingly, it is

ORDERED that

1. Defendants' motion to dismiss (Docket No. 27) is
GRANTED IN PART and DENIED IN PART;

a. The motion to dismiss is GRANTED to the extent
that plaintiff asserts claims for money damages against
defendants in their official capacities; and

b. The motion is DENIED to the extent that
defendants moved to against defendant Rao on the
ground of qualified immunity;

2. Defendants' motion to dismiss for failure to prosecute,
or in the alternative, for an order compelling plaintiff's
responses (Docket No. 36) is DENIED;

3. This matter is referred back to the Magistrate Judge for
any further proceedings.

IT IS SO ORDERED.

***REPORT-RECOMMENDATION AND ORDER***

GEORGE H. LOWE, United States Magistrate Judge.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

This *pro se* prisoner civil rights action, filed pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c) of the Local Rules of Practice for this Court.

Currently pending is a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(c), seeking dismissal of the complaint in its entirety against Defendant Dr. Jadow Rao and against Defendants J. Ireland, R. Furnia, Mack Reyell, J. Silver, and Rao in their official capacities. Dkt. No. 27. Plaintiff opposes the motion. Dkt. Nos. 39, 41.

Also pending is a Motion to Dismiss for Lack of Prosecution pursuant to Fed.R.Civ.P. 41(b) or, in the alternative, for an Order compelling Plaintiff to respond to paragraphs I(A)(1)(b) and (c) of the Court's Mandatory Pretrial Discovery and Scheduling Order. Dkt. No. 36. Plaintiff opposes the motion. Dkt. Nos. 39, 41.

For the reasons discussed below, I recommend that the Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and 12(c) be granted, in part, and denied, in part. I also recommend that the Motion to Dismiss for Lack of Prosecution pursuant to Fed.R.Civ.P. 41(b) or, in the alternative, for an Order compelling Plaintiff's responses be denied.

## I. MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) AND 12(c)

### A. BACKGROUND

**\*2** Plaintiff John Hale alleges that eleven employees ("Defendants") of the New York State Department of Correctional Services ("DOCS") violated his rights under the Eighth Amendment when (1) in or around May of 2006, Defendants Ireland, Revell, Furnia, and Silver physically assaulted and injured him without provocation at Clinton Correctional Facility ("C.F."), and (2) between May of 2006 and February of 2008, the remaining seven Defendants (Dr. Rao, John Does 1-2, and Jane Does 1-4)

were deliberately indifferent to his resulting serious medical needs at Clinton, Southport, Elmira and Attica C.F.s. Complaint at ¶¶ 16-27.

Plaintiff states that he has exhausted his administrative remedies. Complaint at ¶ 29. Plaintiff has submitted copies of decisions from the Central Office Review Committee of the Inmate Grievance Program. Dkt. No. 5, Exhibits. Plaintiff also included a copy of a decision from the Superintendent of Attica C.F. *Id.*

## B. LEGAL STANDARD GOVERNING MOTIONS TO DISMISS

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). It has long been understood that a defendant may base such a motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Federal Rule of Civil Procedure 8(a)(2);[FN1] or (2) a challenge to the legal cognizability of the claim.[FN2]

> **FN1.** *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") (citations omitted); *Princeton Indus., Inc. v. Rem,* 39 B.R. 140, 143 (Bankr .S.D.N.Y.1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello,* 55 F.R.D. 72, 74 (S.D.N.Y.1972) ("This motion under Fed.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.' ").

> **FN2.** *See Swierkiewicz v. Sorema N.A.,* 534 U.S.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

506, 514 (2002) ( "These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest.... In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon,* 360 F.3d 73, 80 (2d Cir.2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas,* 308 F.3d 180, 187 (2d Cir.2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation ... fails as a matter of law.") (citation omitted); *Kittay v. Kornstein,* 230 F.3d 531, 541 (2d Cir.2000) (distinguishing between a failure to meet Rule 12(b)(6)'s requirement of stating a cognizable claim and Rule 8(a)'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,* 379 F.Supp.2d 348, 370 (S.D.N.Y.2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6) ].") (citation omitted); *accord, Straker v. Metro Trans. Auth.,* 331 F.Supp.2d 91, 101-102 (E.D.N.Y.2004).

Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) (emphasis added). By requiring this "showing," Rule 8(a)(2) requires that the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." [FN3] The main purpose of this rule is to "facilitate a proper decision on the merits." [FN4] A complaint that fails to comply with this rule "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims." [FN5]

FN3. *Dura Pharm., Inc. v. Broudo,* 125 S.Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) (citation omitted; emphasis added); *see also Swierkiewicz,* 534 U.S. at 512 [citation omitted]; *Leatherman v.*

*Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168 (1993) (citation omitted).

FN4. *Swierkiewicz,* 534 U.S. at 514 (quoting *Conley,* 355 U.S. at 48); *see also Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir.1995) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") (citation omitted); *Salahuddin v. Cuomo,* 861 F .2d 40, 42 (2d Cir.1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") (citations omitted).

FN5. *Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y.1996) (McAvoy, J.), *aff'd,* 113 F.3d 1229 (2d Cir.1997) (unpublished table opinion). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See, e.g., Photopaint Technol., LLC v. Smartlens Corp.,* 335 F.3d 152, 156 (2d Cir.2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.,* 104 F.3d 355 (2d Cir.1996)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556-57, 570 (2007)). Accordingly, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

alleged-but has not *shown*-that the pleader is entitled to relief." *Iqbal,* 129 S.Ct. at 1950 (emphasis added).

**\*3** It should also be emphasized that, "[i]n reviewing a complaint for dismissal under Fed.R.Civ.P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." [FN6] "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se.* "[FN7] In other words, while all pleadings are to be construed liberally under Rule 8(e), *pro se* civil rights pleadings are to be construed with an *extra* degree of liberality.

> FN6. *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (affirming grant of motion to dismiss) (citation omitted); *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994).

> FN7. *Hernandez,* 18 F.3d at 136 (citation omitted); *Deravin v. Kerik,* 335 F.3d 195, 200 (2d Cir.2003) (citations omitted); *Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 619 (2d Cir.1999) (citation omitted).

For example, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint.[FN8] Moreover, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest." [FN9] Furthermore, when addressing a *pro se* complaint, *generally* a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." [FN10] Of course, an opportunity to amend is not required where the plaintiff has already amended his complaint.[FN11] In addition, an opportunity to amend is not required where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it." [FN12]

> FN8. "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum." *Gadson v. Goord,* 96-CV-7544, 1997 WL 714878, at \*1, n. 2 (S.D.N.Y. Nov. 17, 1997) (citing, *inter alia, Gil v. Mooney,* 824 F.2d 192, 195 (2d Cir.1987) (considering plaintiff's response affidavit on motion to dismiss)). Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.' " *Donhauser v. Goord,* 314 F.Supp.2d 119, 212 (N.D.N.Y.2004) (considering factual allegations contained in plaintiff's opposition papers) (citations omitted), *vacated in part on other grounds,* 317 F.Supp.2d 160 (N.D.N.Y.2004). This authority is premised, not only on case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a matter of right, to amend his complaint once at any time before the service of a responsive pleading-which a motion to dismiss is not. *See Washington v. James,* 782 F.2d 1134, 1138-39 (2d Cir.1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to dismiss) (citations omitted).

> FN9. *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) (internal quotation and citation omitted).

> FN10. *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (internal quotation and citation omitted); *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires").

> FN11. *Yang v. New York City Trans. Auth.,* 01-CV-3933, 2002 WL 31399119, at \*2 (E.D.N.Y. Oct. 24, 2002) (denying leave to amend where plaintiff had already amended

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

complaint once); *Advanced Marine Tech. v. Burnham Sec., Inc.,* 16 F.Supp.2d 375, 384 (S.D.N.Y.1998) (denying leave to amend where plaintiff had already amended complaint once).

FN12. *Cuoco,* 222 F.3d at 112 (finding that repleading would be futile) (citation omitted); *see also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) (citation omitted).

However, while this special leniency may somewhat loosen the procedural rules governing the form of pleadings (as the Second Circuit has observed),[FN13] it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Rules 8, 10 and 12.[FN14] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Rules 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[FN15] Stated more plainly, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended." [FN16]

FN13. *Sealed Plaintiff v. Sealed Defendant # 1,* No. 06-1590, 2008 WL 3294864, at *5 (2d Cir. Aug. 12, 2008) ("[The obligation to construe the pleadings of *pro se* litigants liberally] entails, at the very least, a permissive application of the rules governing the form of pleadings.") (internal quotation marks and citation omitted); *see also Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) ("[R]easonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training ... should not be impaired by harsh application of technical rules.") (citation omitted).

FN14. *See Prezzi v. Schelter,* 469 F.2d 691, 692 (2d Cir.1972) (extra liberal pleading standard set forth in *Haines v. Kerner,* 404 U.S. 519 [1972], did not save *pro se* complaint from dismissal for failing to comply with Fed.R.Civ.P. 8 ]); *accord,*

*Shoemaker v. State of Cal.,* 101 F.3d 108 (2d Cir.1996) (citing *Prezzi v. Schelter,* 469 F.2d 691) (unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi v. Schelter,* 469 F.2d 691, within the Second Circuit); *accord, Praseuth v. Werbe,* 99 F.3d 402 (2d Cir.1995).

FN15. *See McNeil v. U.S.,* 508 U.S. 106, 113 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed ... we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California,* 422 U.S. 806, 834, n. 46 (1975) ("The right of self-representation is not a license ... not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *cf. Phillips v. Girdich,* 408 F.3d 124, 128, 130 (2d Cir.2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Rules 8 and 10 if his mistakes either "undermine the purpose of notice pleading [ ]or prejudice the adverse party").

FN16. *Stinson v. Sheriff's Dep't of Sullivan Cty.,* 499 F.Supp. 259, 262 & n. 9 (S.D.N.Y.1980).

Defendants also move pursuant to Fed.R.Civ.P. 12(c). Rule 12(c) of the Federal Rules of Civil Procedure provides, in pertinent part: "After the pleadings are closed ... any party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). "In deciding a Rule 12(c) motion, [courts] apply the same standard as that applicable to a motion under Rule 12(b)(6)." [FN17]

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

FN17. *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.), *cert. denied,* 513 U.S. 816 (1994) (citations omitted); *accord, Patel v. Contemporary Classics of Beverly Hills,* 259 F.3d 123, 126 (2d Cir.2001) (citations omitted) ("The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim.").

## C. ANALYSIS

### 1. Eighth Amendment

Reading the complaint generously, Plaintiff alleges that he complained to Defendant Rao, Health Services Director at Attica C.F., about his "medical problems," which included (1) the injuries he sustained during the alleged May 2006 incident, such as persistent vomiting of blood and urinating of blood, (2) surgical staples in his stomach, and (3) swollen ribs.[FN18] Complaint at ¶ ¶ 16-27. Plaintiff alleges that in response, Dr. Rao stated that he did not believe Plaintiff's complaints, consistently "denied" Plaintiff's complaints, and called Plaintiff " 'crazy.' " *Id.* at ¶¶ 26, 27. Plaintiff claims that as a result, he has endured pain, suffering, and injuries. *Id.*

FN18. Specifically, Plaintiff states, "It should be noted that *Plaintiff has been complaining about all of the above medical problems* [which include the injuries sustained during the alleged assault, the surgical staples, and swollen ribs] to medical staff here at Attica C.F. *including Defendant Dr. Rao* ... and ever since he was beaten by the Defendant Officers Ireland, Reyell, Furnia, and Silver *he has been throwing up blood and urinating blood yet the Defendants consisting* [sic] *denied his complaints;* resulting in Plaintiff's pain and suffering, and further injuries." Complaint at ¶ 27 (emphasis added).

**\*4** Defendants argue that Plaintiff has made an insufficient showing of an Eighth Amendment claim against Defendant Rao. Dkt. No. 27-2 at pp. 3-6.

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual" punishments. The word "punishment" refers not only to deprivations imposed as a sanction for criminal wrongdoing, but also to deprivations suffered during imprisonment. *Estelle v. Gamble,* 429 U.S. 97, 102-03 (1976). Punishment is "cruel and unusual" if it involves the unnecessary and wanton infliction of pain or if it is incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle,* 429 U.S. at 102. Thus, the Eighth Amendment imposes on jail officials the duty to "provide humane conditions of confinement" for prisoners. *Farmer v. Brennan,* 511 U.S. 825, 832 (1994). Thus, prison officials must "ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.' " *Farmer,* 511 U.S. at 832 (quoting *Hudson v. Palmer,* 468 U.S. 517, 526-27 (1984)).

A viable Eighth Amendment claim must contain both an objective and a subjective component. *Farmer,* 511 U.S. at 834. To satisfy the objective component, "the deprivation alleged must be, objectively, 'sufficiently serious.' " *Farmer,* 511 U.S. at 834 (quoting *Wilson v. Seiter,* 501 U.S. 294, 298 (1991)). Analyzing the objective element of an Eighth Amendment medical care claim requires two inquiries. "The first inquiry is whether the prisoner was actually deprived of adequate medical care." *Salahuddin v. Goord,* 467 F.3d 263, 279 (2d Cir.2006). The word "adequate" reflects the reality that "[p]rison officials are not obligated to provide inmates with whatever care the inmates desire. Rather, prison officials fulfill their obligations under the Eighth Amendment when the care provided is 'reasonable.' " *Jones v. Westchester County Dept. of Corrections,* 557 F.Supp.2d 408, 413 (S.D.N.Y.2008).

The second inquiry is "whether the inadequacy in medical care is sufficiently serious. This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin,* 467 F.3d at 280. The focus of the second inquiry depends on whether the prisoner claims to have been completely deprived of treatment or whether he claims to have received treatment that was inadequate. *Id.* If "the unreasonable medical care is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

medical condition is sufficiently serious." *Id.* A "serious medical condition" is "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J. dissenting) (citations omitted), *accord, Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1996), *cert. denied,* 513 U.S. 1154 (1995); *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998). Relevant factors to consider when determining whether an alleged medical condition is sufficiently serious include, but are not limited to: (1) the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; (2) the presence of a medical condition that significantly affects an individual's daily activities; and (3) the existence of chronic and substantial pain. *Chance,* 143 F.3d at 702-03.

**\*5** If the claim is that treatment was provided but was inadequate, the second inquiry is narrower. *Salahuddin,* 467 F.3d at 280. For example, "[w]hen the basis for a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone in analyzing whether the alleged deprivation" is sufficiently serious. *Smith v. Carpenter,* 316 F.3d 178, 185 (2d Cir.2003).

To satisfy the subjective component of an Eighth Amendment claim, the defendant's behavior must be "wanton." Where a prisoner claims that a defendant provided inadequate medical care, he must show that the defendant acted with "deliberate indifference." *Estelle,* 429 U.S. at 105.

Medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act ... that evinces 'a conscious disregard of a substantial risk of serious harm.' " *Chance,* 143 F.3d 698, 703 (quoting *Farmer v. Brennan,* 511 U.S. 825, 835 (1994)). Thus, to establish deliberate indifference, an inmate must prove that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference. *Farmer,* 511 U.S. at 837; *Chance,*

143 F.3d at 702-703. The inmate then must establish that the provider consciously and intentionally disregarded or ignored that serious medical need. *Farmer,* 511 U.S. 825, 835; *Ross v. Giambruno,* 112 F.3d 505 (2d Cir.1997). An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." *Estelle,* 429 U.S. at 105-06. Moreover, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim ... under the Eighth Amendment." *Id.* Stated another way, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.; Smith v. Carpenter,* 316 F.3d 178, 184 (2d Cir.2003) ("Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation."). However, malpractice that amounts to culpable recklessness constitutes deliberate indifference. Accordingly, "a physician may be deliberately indifferent if he or she consciously chooses an easier and less efficacious treatment plan." *Chance,* 143 F.3d at 703.

Regarding the objective component, the complaint alleges that Defendant Rao provided Plaintiff with inadequate or no medical care after learning of Plaintiff's physical complaints, including persistent vomiting of blood and urinating of blood. Vomiting of blood and urinating of blood are indications of serious medical needs. *See Morgan v. Maass,* No. 94-35834, 1995 WL 759203, at \*2 (9th Cir. Dec. 26, 1995) (finding that vomiting blood constituted a serious medical need); *Kimbrough v. City of Cocoa,* No. 6:05-cv-471, 2006 WL 2860926, at \*3 (M.D.Fla. Oct. 4, 2006) (finding that "[e]ven to a lay person, it is obvious that blood in the urine is an indication of a serious medical need."). Thus, the allegations in the complaint satisfy the objective component.

**\*6** Regarding the subjective component, the complaint alleges that Defendant Rao was aware that Plaintiff had serious medical needs, but consciously and intentionally disregarded or ignored those needs. Dkt. No. 1. Thus, the allegations in the complaint satisfy the subjective component.

Defendants argue that Plaintiff's complaint is conclusory and fails to contain specific allegations of fact indicating

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

a deprivation of rights as against Defendant Rao. Dkt. No. 27-2, at p. 5. The Court disagrees. Plaintiff specifically stated that he informed Defendant Rao about his "medical problems," which included vomiting of blood and urinating of blood, but that Dr. Rao expressed disbelief, consistently "denied" Plaintiff's complaints, and stated that Plaintiff was "crazy." Complaint at ¶ 27. Plaintiff has set forth more than a simple conclusory allegation.

In light of the foregoing, the Court declines to conclude at this stage that Plaintiff has failed to state a claim for deliberate medical indifference against Defendant Rao.[FN19] Accordingly, the motion to dismiss the Eighth Amendment claim against Defendant Rao should be denied.

> FN19. *See Beeks v. Reilly,* No. 07-CV-3865, 2008 WL 3930657, at *7 (E.D.N.Y. Aug. 21, 2008) (citing *Chance,* 143 F.3d at 703-04 (reversing district court's dismissal of medical indifference claim at 12(b)(6) stage because "[w]hether a course of treatment was the product of sound medical judgment, negligence, or deliberate indifference depends on the facts of the case.... It may be that Chance has no proof whatsoever of this improper motive, and that lack of proof may become apparent at summary judgment. But even if we think it highly unlikely that Chance will be able to prove his allegations, that fact does not justify dismissal for failure to state a claim, for Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations ....") (citations and quotation marks omitted) (other citations omitted); *see also Lloyd v. Lee,* 570 F.Supp.2d 556, 559 (S.D.N.Y.2008) (finding that amended complaint plausibly alleged that doctors knew that plaintiff was experiencing extreme pain and loss of mobility, knew that the course of prescribed course of treatment was ineffective, and declined to do anything to attempt to improve plaintiff's situation besides re-submitting MRI request forms) (citing *Harris v. Westchester County Dep't of Corrections,* No. 06 Civ.2011, 2008 WL 953616, at *23 (S.D.N.Y. Apr. 3, 2008) (despite plaintiff's sparse allegations as to defendant's conduct, at the 12(b)(6) stage plaintiff sufficiently alleged facts supporting a plausible claim that defendant

was deliberately indifferent to plaintiff's medical needs)).

## 2. Qualified Immunity

Defendant Rao asserts that he is entitled to dismissal on the ground of qualified immunity. Dkt. No. 27-2 at pp. 6-8.

"Once qualified immunity is pleaded, plaintiff's complaint will be dismissed unless defendant's alleged conduct, when committed, violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Williams v. Smith,* 781 F.2d 319, 322 (2d Cir.1986) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 815 [1982] ). As a result, a qualified immunity inquiry in a prisoner civil rights case generally involves two issues: (1) "whether the facts, viewed in the light most favorable to the plaintiff establish a constitutional violation"; and (2) "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Sira v. Morton,* 380 F.3d 57, 68-69 (2d Cir.2004) (citations omitted), *accord, Higazy v. Templeton,* 505 F.3d 161, 169, n. 8 (2d Cir.2007) (citations omitted).

In determining the second issue (i.e., whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted), courts in this circuit consider three factors:

> (1) whether the right in question was defined with 'reasonable specificity'; whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

*Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991) (citations omitted), *cert. denied,* 503 U.S. 962 (1992).[FN20] "As the third part of the test provides, even where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful." *Higazy v. Templeton,* 505 F.3d 161, 169-70 (2d Cir.2007) (citations omitted). [FN21] This "objective reasonableness" part of the test is met if "officers of reasonable competence could disagree on [the legality of defendant's actions]." *Malley v. Briggs,* 475 U.S. 335, 341 (1986).[FN22] As the Supreme Court has explained,

> FN20. *See also Pena v. DePrisco,* 432 F.3d 98, 115 (2d Cir.2005); *Clue v. Johnson,* 179 F.3d 57, 61 (2d Cir.1999); *McEvoy v. Spencer,* 124 F.3d 92, 97 (2d Cir.1997); *Shechter v. Comptroller of City of New York,* 79 F.3d 265, 271 (2d Cir.1996); *Rodriguez v. Phillips,* 66 F.3d 470, 476 (2d Cir.1995); *Prue v.. City of Syracuse,* 26 F.3d 14, 17-18 (2d Cir.1994); *Calhoun v. New York State Division of Parole,* 999 F.2d 647, 654 (2d Cir.1993).

> FN21. *See also Anderson v. Creighton,* 483 U.S. 635, 639 (1987) ( "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective reasonableness of the action.' ") (citation omitted); *Davis v. Scherer,* 468 U.S. 183, 190 (1984) ("Even defendants who violate [clearly established] constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard."); *Benitez v. Wolff,* 985 F.2d 662, 666 (2d Cir.1993) (qualified immunity protects defendants "even where the rights were clearly established, if it was objectively reasonable for defendants to believe that their acts did not violate those rights").

> FN22. *See also Malsh v. Correctional Officer Austin,* 901 F.Supp. 757, 764 (S.D.N.Y.1995) (citing cases); *Ramirez v. Holmes,* 921 F.Supp. 204, 211 (S.D.N.Y.1996).

**\*7** [T]he qualified immunity defense ... provides ample

protection to all but the plainly incompetent or those who knowingly violate the law.

... Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized.

*Malley,* 475 U.S. at 341.[FN23]

> FN23. *See also Hunter v. Bryant,* 502 U.S. 224, 299 (1991) ("The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.") [internal quotation marks and citation omitted].

Here, after liberally reviewing the complaint, accepting all of its allegations as true, and construing them in Plaintiff's favor, the Court declines to conclude that Defendant Rao is entitled to qualified immunity at this stage. As noted, Plaintiff alleges that he informed Dr. Rao of his "medical problems," including persistent vomiting of blood and urinating of blood, but Dr. Rao stated that he did not believe Plaintiff's complaints, consistently denied Plaintiff's complaints, and called Plaintiff " 'crazy,' " which resulted in pain, suffering, and injuries. Complaint at ¶¶ 26-27. Therefore, the motion to dismiss the complaint on the ground of qualified immunity should be denied.[FN24]

> FN24. *See Beeks,* 2008 WL 3930657, at *9 (citing *See McKenna,* 386 F.3d at 437-38 (affirming district court's denial of qualified immunity at motion to dismiss stage on deliberate indifference claim, "[h]owever the matter may stand at the summary judgment stage, or perhaps at trial....") (other citations omitted)).

**3. Eleventh Amendment**

Defendants Ireland, Furnia, Reyell, Silver, and Rao argue

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

that to the extent the complaint seeks damages against them in their official capacities, the claim is barred by the Eleventh Amendment. Dkt. No. 27-2 at pp. 8-9.

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." See U.S. Const. amend XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); Hans v. Louisiana, 134 U.S. 1, 10-21, 10 S.Ct. 504, 33 L.Ed. 842 (1890); Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 267, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). State immunity extends not only to the states, but to state agencies and to state officers who act on behalf of the state. See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf, 506 U .S. 139, 142-47, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101-06, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

The Eleventh Amendment bars suits against state officials acting in their official capacities.[FN25] Where it has been successfully demonstrated that a defendant is entitled to sovereign immunity under the Eleventh Amendment, the federal court lacks subject matter jurisdiction over the case, and "the case must be stricken from the docket." McGinty v. State of New York, 251 F.3d 84, 100 (2d Cir.2001) (citation omitted); see also Fed.R.Civ.P. 12(h)(3).

FN25. See Ying Jing Gan v. City of New York, 996 F.2d 522, 529 (2d Cir.1993) ("The immunity to which a state's official may be entitled in a § 1983 action depends initially on the capacity in which he is sued. To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); Severino v.. Negron, 996 F.2d 1439, 1441 (2d Cir.1993) ( "[I]t is clear that the Eleventh Amendment does not permit suit [under Section 1983] for money damages

against state officials in their official capacities."); Farid v. Smith, 850 F.2d 917, 921 (2d Cir.1988) ("The eleventh amendment bars recovery against an employee who is sued in his official capacity, but does not protect him from personal liability if he is sued in his 'individual' or 'personal' capacity."); see also Will v. Michigan Dept. of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.... As such, it is no different from a suit against the State itself.... We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); Kentucky v. Graham, 473 U.S. 159, 165-66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity.").

**\*8** Here, each of the represented Defendants has an official position with DOCS. Therefore, any claims for money damages against these Defendants in their officials capacities are barred by the Eleventh Amendment and should be dismissed.

## II. MOTION TO DISMISS FOR LACK OF PROSECUTION, OR IN THE ALTERNATIVE, FOR AN ORDER COMPELLING RESPONSES

Defendants argue that the complaint should be dismissed on the ground that Plaintiff has failed to prosecute this action. Dkt. No. 36. Defendants argue that in the alternative, Plaintiff should be compelled to respond to paragraphs I(A)(1)(b) and (c) of the Court's Mandatory Pretrial Discovery and Scheduling Order. Id.

### A. ANALYSIS

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

Rule 41 of the Federal Rules of Civil Procedure provides, "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed.R.Civ.P. 41(b). As a result, Fed.R.Civ.P. 41(b) may be fairly characterized as providing for two independent grounds for dismissal on motion or on the Court's own initiative: (1) a failure to prosecute the action, and (2) a failure to comply with the procedural rules, or any Order, of the Court. *Id.*

With regard to the first ground for dismissal (a failure to prosecute the action), it is within the trial judge's sound discretion to dismiss for want of prosecution.[FN26] The Second Circuit has identified five factors that it considers when reviewing a district court's order to dismiss an action for failure to prosecute under Rule 41(b):

> FN26. *See Merker v. Rice,* 649 F.2d 171, 173 (2d Cir.1981).

[1] the duration of the plaintiff's failures, [2] whether plaintiff had received notice that further delays would result in dismissal, [3] whether the defendant is likely to be prejudiced by further delay, [4] whether the district judge has taken care to strike the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard and [5] whether the judge has adequately assessed the efficacy of lesser sanctions.[FN27]

> FN27. *See Shannon v. GE Co.,* 186 F.3d 186, 193 (2d Cir.1999) (affirming Rule 41(b) dismissal of plaintiff's claims by U.S. District Court for Northern District of New York based on plaintiff's failure to prosecute the action) (citation and internal quotation marks omitted).

As a general rule, no single one of these five factors is dispositive.[FN28] However, I note that, with regard to the first factor, Rule 41.2 of the Local Rules of Practice for this Court provides that a "plaintiff's failure to take action for four (4) months shall be presumptive evidence of lack of prosecution." N.D.N.Y. L.R. 41.2(a). In addition, I note that a party's failure to keep the Clerk's Office apprised of his or her current address may also constitute grounds for

dismissal under Rule 41(b) of the Federal Rules of Civil Procedure.[FN29]

> FN28. *See Nita v. Conn. Dep't of Env. Protection,* 16 F.3d 482 (2d Cir.1994).

> FN29. *See, e.g., Robinson v. Middaugh,* 95-CV-0836, 1997 WL 567961, at *1 (N.D.N.Y. Sept. 11, 1997)* (Pooler, J.) (dismissing action under Fed.R.Civ.P. 41[b] where plaintiff failed to inform the Clerk of his change of address despite having been previously ordered by Court to keep the Clerk advised of such a change); *see also* N.D.N.Y. L.R. 41.2(b) ( "Failure to notify the Court of a change of address in accordance with [Local Rule] 10.1(b) may result in the dismissal of any pending action.").

**1. Address Changes**

As to the first factor (the duration of Plaintiff's "failures") Defendants argue that Plaintiff was transferred to several different facilities, but failed to update the Court and defense counsel of his changes of address. Dkt. No. 36-2, Lombardo Decl., at ¶¶ 4-5, 7-12 & Dkt. Nos. 49, 50. Defendants argue that the action should be dismissed for this reason alone. Dkt. No. 36-8.

**\*9** Plaintiff has failed at times to update the Court and defense counsel as to his address changes. His most recent failure occurred on July 6, 2009 when he was transferred from Green Haven C.F. to Auburn C.F., and subsequently to Wende C.F., where he now remains. Dkt. No. 50-2, Stachowski Decl., at ¶¶ 3-5. Plaintiff failed to update the Court and defense counsel as to these changes. Thus, Plaintiff's failure to provide an updated address has persisted since July 6, 2009 (less than three months). Generally, it appears that durations of this length (i.e., less than four months) are not long enough to warrant dismissal.[FN30]

> FN30. N.D.N.Y. L.R. 41.2(a) ("[P]laintiff's failure to take action for four (4) months shall be presumptive evidence of lack of prosecution.");

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

*Georgiadis v. First Boston Corp.,* 167 F.R.D. 24, 25 (S.D.N.Y.1996) (plaintiff had failed to comply with order directing him to answer interrogatories for more than four months).

The Court notes that Plaintiff has been subject to frequent transfers. Since August 7, 2008, Plaintiff was transferred on seven occasions. Dkt. No. 36-3, Loiodice Decl., at ¶¶ 4-11; Dkt. No. 50-2, Stachowski Decl. at ¶¶ 4-5. Three of the transfers occurred within a span of six days. Dkt. No. 36-3, Loiodice Decl., at ¶¶ 7-11.

Moreover, whether Plaintiff was mentally and physically capable of providing written updates of all of his address changes is unclear. Plaintiff noted in his opposition papers that he was diagnosed as suffering from schizophrenia; has "borderline intellectual" functioning; [FN31] and is unable to read or write; therefore Plaintiff's submissions to the Court are written by others. Dkt. No. 39. Plaintiff also stated that at times he has been "prohibited from possessing any type of writing utensil." Dkt. No. 41. Plaintiff further stated that while at Central New York Psychiatric Center, "any legal work whatsoever" was discouraged and "not facilitate[d]." *Id.* In light of the foregoing, I find that the first factor weighs against dismissal of Plaintiff's complaint.

> FN31. Plaintiff submitted copies of medical records indicating that he was diagnosed as suffering from, *inter alia,* schizophrenia, paranoid type; has borderline intellectual functioning; and has an IQ of 71. Dkt. No. 5.

As to the second factor (whether plaintiff had received notice that further delays would result in dismissal), I find that Plaintiff has received notice that his failure to provide his current address may result in dismissal. *See* Dkt. No. 12 at 4 *(Order stating that "Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel of any change in Plaintiff's address; his failure to do so will result in the dismissal of this action")* (emphasis in original); N.D.N.Y. L.R. 41.2(b) (stating, "Failure to notify the Court of a change of address in accordance with L.R. 10.1(b) may result in the dismissal of any pending action.") [FN32] As a result, I find that the second factor weighs in favor of dismissal of Plaintiff's

complaint.

> FN32. I note that, to assist *pro se* litigants, the Clerk of the Court for the Northern District of New York has provided to all correctional facilities in New York State copies of the Northern District's Local Rules of Practice and *Pro Se* Manual.

Regarding the third factor (whether defendants are likely to be prejudiced by further delay), I am unable to find, based on the current record, that Defendants are likely to be prejudiced by a delay in the proceedings. While any delay that occurs theoretically impairs the Defendants' memories, the preservation of evidence, and the ability to locate witnesses, [FN33] Defendants have not argued that any delay has occurred due to Plaintiff's failure to update his address. As a result, I find that the third factor weighs against dismissal of Plaintiff's complaint. [FN34]

> FN33. *See, e.g., Georgiadis v. First Boston Corp.,* 167 F.R.D. 24, 25 (S.D.N.Y.1996) ("The passage of time always threatens difficulty as memories fade. Given the age of this case, that problem probably is severe already. The additional delay that plaintiff has caused here can only make matters worse.").

> FN34. *See Cruz v. Jackson,* No. 94 Civ. 2600, 1997 WL 45348, at *2 (S.D.N.Y. Feb. 5, 1997) (declining to dismiss action for failure to prosecute or failure to comply with court orders where plaintiff had failed to meet discovery deadlines, and noting that the fact that plaintiff "has been in lock-down and transferred to another facility during the pendency of this action also counsels leniency toward [the plaintiff's] delays") (citing *Jones v. Smith,* 99 F.R.D. 4, 14-15 (M.D.Pa.1983) (granting *pro se* plaintiff final opportunity to comply with orders of court, despite repeated wilful, dilatory and contumacious tactics), *aff 'd* 734 F.2d 6 (3d Cir.1984)).

**\*10** Regarding the fourth factor (striking the balance

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard), I find that Plaintiff's right to receive a further chance to be heard in this matter, at this point, outweighs the need to alleviate congestion on the Court's docket. Moreover, Defendants point to no delay caused by Plaintiff's failure to update his address. As a result, I find that the fourth factor weighs against dismissal of Plaintiff's complaint.

With regard to the fifth factor (whether the judge has adequately assessed the efficacy of lesser sanctions), I find that a strong reminder to Plaintiff of his obligation to provide a current address might be effective and is warranted. Plaintiff, who alleges that he suffers from schizophrenia and is unable to read and write, Dkt. No. 39, has been responsive to prior Orders from the Court,[FN35] and has shown an interest in prosecuting this action. *See* Dkt. Nos. 39, 41 (Plaintiff's Opposition Papers). As a result, I find that the fifth factor weighs against dismissal of Plaintiff's complaint.

> FN35. *See* Dkt. Nos. 7-11 (Report-Recommendation and Order; Plaintiff's Inmate Authorization Forms; Application to Proceed *In Forma Pauperis;* and Signed Last Page of Complaint).

Weighing these five factors together, I conclude that they tip the scales against dismissing Plaintiff's complaint (one of the factors weighing in favor of such dismissal and four of the factors weighing against such dismissal).[FN36] Dismissal based on a lack of prosecution is a harsh remedy to be used only in extreme situations. The Court does not currently view the present case to be in such a situation. For these reasons, I recommend that Defendants' Motion to Dismiss based on Plaintiff's failure to provide a current address (Dkt. No. 36) be denied.

> FN36. *Minnette v. Time Warner,* 997 F.2d 1023, 1027 (2d Cir.1993); *see also Jacobs v. County of Westchester,* Dkt. No. 02-0272, 2005 WL 2172254, at * 3 (2d Cir. Sept. 7, 2005) (remanding case to district court to make further factual findings concerning the plaintiff's lack of responsiveness and concerning his confinement

in a prison psychiatric ward where district court dismissed for failure to prosecute).

**2. Responses to Scheduling Order**

Defendants argue that if the Court does not dismiss the complaint for a failure to prosecute, the Court should issue an order requiring Plaintiff to respond to paragraphs I(A)(1)(b) and (c) of the Court's mandatory pretrial discovery and scheduling order dated November 18, 2008 ("Scheduling Order"). Dkt. No. 36-8, Memo. of Law at pp. 3-4.

The Scheduling Order provided, in relevant part, as follows:

### I. Discovery

**A. *Documents.*** Within sixty (60) days of the date of this order:

**1. *Plaintiff(s)*** shall provide to counsel for defendant(s) copies of all:

**a.** Documents and other materials which plaintiff(s) may use to support the claims in the complaint;

**b.** Correspondence, grievances, grievance appeals, and other documents relating to requests for administrative remedies or the inability or failure to exhaust such remedies; and

**c.** Complaints and petitions filed by plaintiff(s) in any other cases in any court relating to the same issues raised in the complaint in this action or, if such documents are not within the possession of plaintiff(s), plaintiff(s) shall provide to counsel for defendant(s) a list of any such legal proceedings stating the court in which the proceeding was filed, the caption of the case, and the court number.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

**\*11** Dkt. No. 26, at pp. 1-2.

Defendants admit that they received "what purported to be plaintiff's response to paragraph I(A)(1) of the [Scheduling Order]" in a letter to defense counsel from Plaintiff. Dkt. No. 36-2, Lombardo Decl., at ¶ 19 & Dkt. No. 36-6, Ex. C. In that letter, Plaintiff asserted the following:

> Pursuant to paragraph I(A) of the court's mandatory pretrial discovery and scheduling order dated Nov. 18, [20]08[:]

> a. Documents and materials which plaintiff will use to support the claims in this complaint is [sic] the complete Medical Records for the period of June 14, 2006 to present, and current Tier III documents and pictures surrounding the incident which you forwarded to me pursuant to mandatory pretrial discovery, in addition enclosed please find Lab work report of specimen done on plaintiff which will also be use[d].

> Plaintiff has complied with the court's mandatory pretrial discovery and scheduling order pursuant to paragraph I(A) so your office no longer has to seek dismissal of the complaint for failure to prosecute.

Dkt. No. 36-6, Ex. C.

Defendants view this letter as being nonresponsive to paragraphs I(A)(1)(b) and (c). However, regarding paragraph I(A)(1)(b), Plaintiff specifically stated in the above-quoted letter that he "will use the complete medical records for the period of June 14, 2006 to present, and *current Tier III documents and pictures surrounding the incident which you forwarded to me."* Dkt. No. 36-6, Ex. C at p. 1 (emphasis added). Moreover, Plaintiff stated in his March 23, 2009 letter to defense counsel that he filed grievances while in Attica C.F., but that he was no longer "in possession of those grievances" because his property was lost while he was at Central New York Psychiatric Center. [FN37] Dkt. No. 39 at p. 2. Plaintiff also stated that he has "no money in his account," therefore he has been unable to obtain copies of his grievances, as well as medical records. *Id.* Accordingly, Plaintiff has responded

to paragraph I(A)(1)(b). He stated that he no longer possesses the grievances he filed at Attica C.F.; he is unable to afford copies; and he intends to use the documents that defense counsel sent to him. To the extent that defense counsel is arguing that Plaintiff must provide copies of the same documents defense counsel has already provided Plaintiff, Dkt. No. 36-7, Ex. D at p. 2, this argument is unavailing.

> FN37. Plaintiff also asserts that he no longer has a copy of the complaint in this action. Dkt. No. 41, at ¶ 8. Accordingly, the Clerk will be directed to provide a copy of the complaint to Plaintiff.

Regarding paragraph I(A)(1)(c), Plaintiff stated in his March 23, 2009 opposition letter that "[t]here is no other complaints or petitions filed by plaintiff in any other cases in any other court [sic]." Dkt. No. 39, at p. 2. Plaintiff reiterated this response in a supplemental opposition letter dated March 31, 2009 by stating that "there are no other known complaints, petitions, etc. filed by plaintiff in any other court with regards to the claims raised in [this case]." Dkt. No. 41, [FN38] at ¶ 6. Accordingly, Plaintiff has responded to paragraph I(A)(1)(c).

> FN38. To the extent that Plaintiff is seeking permission to amend his complaint via his supplemental opposition letter, (Dkt. No. 41), Plaintiff's request must be in the form of a motion. *See* N.D.N.Y. Local Rule 7.1.

**\*12** In light of the foregoing, Defendants' request for an order compelling responses to paragraphs I(A)(1)(b) and (c) of the Scheduling Order should be denied as moot.

**ACCORDINGLY,** it is

**RECOMMENDED** that Defendants' motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and 12(c) (Dkt. No. 27) be GRANTED in part and DENIED in part. The motion to dismiss should be granted to the extent that Plaintiff asserts claims for money damages against Defendants in their official capacities. The motion should be denied to

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

the extent that Defendants moved to dismiss Plaintiff's Eighth Amendment claim against Defendant Rao, and moved to dismiss the complaint against Defendant Rao on the ground of qualified immunity; and it is further

**RECOMMENDED** that the Motion to Dismiss for Failure to Prosecute or in the alternative for an Order compelling Plaintiff's responses (Dkt. No. 36) be DENIED; and it is further

**ORDERED,** *that Plaintiff is required to promptly notify the Clerk's Office and all parties or their counsel of any change in Plaintiff's address; his failure to do so may result in the dismissal of this action;*

**ORDERED,** that the Clerk update Plaintiff's address to reflect that he is currently incarcerated at Wende Correctional Facility; [FN39] and it is further

> **FN39.** Defendants' letter to the Court dated August 21, 2009 indicates that Plaintiff is now incarcerated at Wende C.F. Dkt. No. 50.

**ORDERED,** that the Clerk serve (1) copies of the electronically-available-only opinions cited herein; [FN40] (2) a copy of the Complaint (Dkt. No. 1); and (3) a copy of this Report-Recommendation and Order on Plaintiff.

> **FN40.** Those decisions include *Gadson v. Goord,* 96-CV-7544, 1997 WL 714878 (S.D.N.Y. Nov. 17, 1997); *Yang v. New York City Trans. Auth.,* 01-CV-3933, 2002 WL 31399119 (E.D.N.Y. Oct. 24, 2002); *Sealed Plaintiff v. Sealed Defendant # 1,* No. 06-1590, 2008 WL 3294864 (2d Cir. Aug. 12, 2008); *Morgan v. Maass,* No. 94-35834, 1995 WL 759203 (9th Cir. Dec. 26, 1995); *Kimbrough v. City of Cocoa,* No. 6:05-cv-471, 2006 WL 2860926 (M.D.Fla. Oct. 4, 2006); *Beeks v. Reilly,* No. 07-CV-3865, 2008 WL 3930657 (E.D.N.Y. Aug.21, 2008); *Harris v. Westchester County Dep't of Corrections,* No. 06 Civ.2011, 2008 WL 953616 (S.D.N.Y. Apr. 3, 2008); *Robinson v. Middaugh,* 95-CV-0836, 1997 WL

567961 (N.D.N.Y. Sept. 11, 1997); *Cruz v. Jackson,* No. 94 Civ. 2600, 1997 WL 45348 (S.D.N.Y. Feb. 5, 1997); and *Jacobs v. County of Westchester,* Dkt. No. 02-0272, 2005 WL 2172254 (2d Cir. Sept. 7, 2005).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,2009.

Hale v. Rao

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Page 1

Not Reported in F.Supp., 1997 WL 714878 (S.D.N.Y.)
(Cite as: 1997 WL 714878 (S.D.N.Y.))

▷ Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
Anthony GADSON, Plaintiff,
v.
Glenn S. GOORD, Philip Coombe, Artuz, L. Zwillinger,
D. Stevens, J. Manion, G. Schneider, D. Connelly, B.
Pease, C.O. Rassman, D. Zaken, C. Bennett,
Defendants.
**No. 96 Civ. 7544(SS).**

Nov. 17, 1997.

Anthony Gadson, pro se, Terrace Health Care Center,
Bronx, NY, for plaintiff.
Dennis C. Vacco, Attorney General of the State of New
York New York, NY, of counsel: Constantine A. Speres,
Assistant Attorney General, for defendants.

**OPINION AND ORDER**

SOTOMAYOR, J.

**\*1** *Pro se* plaintiff, Anthony Gadson, formerly
incarcerated at Green Haven Correctional Facility, brings
this 42 U.S.C. § 1983 action, alleging that defendants
violated his constitutional rights by (1) failing to provide
him with an appropriate and medically necessary
wheelchair; (2) harassing him; and (3) failing to return
plaintiff's property. The twelve named defendants are or
were Department of Correctional Services administrators
and Green Haven security or medical staff.FN1 Plaintiff
seeks an order from the Court directing defendants to: (1)
provide plaintiff with proper medical care (*e.g.,* an
appropriate wheelchair) and a proper living environment;
and (2) stop mistreating plaintiff. Additionally, plaintiff
seeks compensatory damages and punitive damages.

FN1. Defendants Goord and Coombe are named
as Department of Corrections administrators;
defendants Artuz, Schneider, Connelly, Pease,
Rassman, and Zaken are named as Green Haven
security personnel; and defendants Zwillinger,
Stevens, and Manion are named as Green Haven
medical personnel.

Defendants move to dismiss the Complaint pursuant to
Fed.R.Civ.P. 12(b)(6) for failure to state a claim. For the
reasons discussed, defendants' motion to dismiss is
**granted** in part and **denied** in part.

**BACKGROUND**FN2

FN2. The following information is set forth in
plaintiff's Complaint, accompanying exhibits and
memorandum entitled, "Opposition Against
Defendants [sic] Motion to Dismiss" ("Opp'n
Mem.") Generally, a court may not look outside
the pleadings when reviewing a Rule 12(b)(6)
motion to dismiss. However, the mandate to read
the papers of *pro se* litigants generously makes it
appropriate to consider plaintiff's additional
materials, such as his opposition memorandum.
*See Gil v. Mooney,* 824 F.2d 192, 195 (2d
Cir.1987) (in reviewing district court's dismissal
of *pro se* plaintiffs § 1983 claim, Second Circuit
considered plaintiff's affidavit submitted in
opposition to defendant's motion to dismiss);
*Donahue v. United States Dep't of Justice,* 751
F.Supp. 45, 49 (S.D.N.Y.1990) ("The policy
reasons favoring liberal construction of *pro se*
pleadings warrant the Court's consideration of
the allegations contained in plaintiffs'
memorandum of law, at least where those
allegations are consistent with the allegations in
the complaint ..."); *Lucas v. New York City,* 842
F.Supp. 101, 104 & n. 2 (S.D.N.Y.1994)
(considering *pro se* plaintiffs opposition papers).

Plaintiff is currently on parole status living at the Kings
Terrace Nursing Home in Bronx, New York. During the
events in question, plaintiff was incarcerated at Green

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 714878 (S.D.N.Y.)
(Cite as: 1997 WL 714878 (S.D.N.Y.))

Haven Correctional Facility ("Green Haven") located in Stormville, New York.

Plaintiff alleges that he is paralyzed and requires a customized "medical wheelchair." (Complaint ¶¶ 1,7.) Plaintiff claims that on January 28, 1994, prior to his transfer to Green Haven from another correctional facility, he was "medically fitted" for a wheelchair by a physical therapist at Helen Hayes Hospital. (Complaint ¶ 1; Exhibit ("Ex.") A to Complaint.)[FN3] For reasons not explained, plaintiff received a second evaluation for a wheelchair by a physical therapist employed at Green Haven on March 9, 1994. (Complaint ¶ 2.) Unlike the original wheelchair prescribed at Helen Hayes, this second wheelchair recommendation, according to plaintiff, was "not for my Physical Condition." (Complaint ¶ 2; Ex. B.)

FN3. All exhibits referenced are annexed to the Complaint.

On July 26, 1994, plaintiff claims he received a "defective wheelchair" from the Green Haven Physical Therapy Department. (Complaint ¶ 3; Ex. C-3.) He alleges that unlike the chair recommended by Helen Hayes, the delivered wheelchair was not fitted with a self-recliner nor was it suitable for plaintiff's weight or legs. (Ex. C-1; C-3.) Plaintiff maintains that he rejected the chair because it lacked these medically necessary features. (Complaint ¶ 1; Ex. C-3.)

On September 7, 1994, plaintiff filed a grievance against Green Haven personnel complaining that he was in a "great deal of pain" and seeking an "adequate heavy duty wheelchair equipped with self-recliner for his proper medical treatment." (Ex. C-1.) On December 14, 1994, the Central Office Review Committee for the State of New York Inmate Grievance Program ("C.O.R.C.") unanimously approved plaintiff's request and indicated that a new reclining wheelchair, "as prescribed," was then on order. (Ex. C-4.)

*2 Plaintiff received a second wheelchair on or about March 15, 1995. (Ex. D-1.) Plaintiff deemed this second wheelchair also "improper" and refused to accept it. Id. Specifically, plaintiff claimed the second wheelchair was

improper because: (1) the reclining handles were not within his reach; (2) the adjustable foot pieces were not accessible; (3) the leg rests were not "swing detachable;" (4) the brakes had no extensions and were hard to reach; and (5) that without a buckle, the seat belt was not strong enough. (Ex. D-1.) On March 20, 1995, Plaintiff filed a second grievance, again requesting a "proper made wheelchair" for his medical condition. (Ex. D-1.) This second grievance further requested that prison officials "stop causing me more pain and suffering by having me lie in bed for over a year." Id.

The C.O.R.C. denied plaintiff's second grievance on June 14, 1995, concluding that an "investigation reveals that the wheelchair in question was a custom made reclining wheelchair. The wheelchair was recommended and ordered by the physical therapy department and meets the medical needs of grievant per physical therapy." (Ex. D-4 .) The C.O.R.C. based its determination on statements and an investigation by defendant Zwillinger, the Green Haven Regional Health Services Administrator. Id.

Plaintiff filed a third grievance requesting a wheelchair in August 1995 and again on October 18, 1995.[FN4] (Complaint ¶ 5; Ex. E-1.) Plaintiff notes that by this time he had been waiting almost two years for a special made wheelchair for my medical condition." (Complaint ¶ 5.) His grievance states that "it appears that the medical department has determine [sic] that they are not going to order me a wheelchair at all for my medical condition." (Ex. E-1 .) Eight days after filing the grievance, plaintiff was transferred to another correctional facility. (Ex. E-3.) Thereafter, on January 17, 1996, the C.O.R.C. denied plaintiff's third grievance, reiterating its previous finding that a proper wheelchair had been ordered which plaintiff had refused and suggesting that plaintiff "address the issue of his wheelchair with the health staff at his new facility." (Complaint ¶ 5; Ex. E-3.)

FN4. Apparently, plaintiff's August grievance was misplaced or not received by Green Haven personnel. By his own account, plaintiff refiled the same grievance on October 18, 1995.

Plaintiff claims that as a result of Green Haven's failure to provide him with an appropriate wheelchair, he spent two

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 714878 (S.D.N.Y.)
(Cite as: 1997 WL 714878 (S.D.N.Y.))

and a half years "bed-ridden, in constant pain, feet degenerations, and emotional distress. (Opp'n Mem. ¶ 10; Ex. D-1.) Plaintiff further claims that the Green Haven Medical Department "play[ed] word games" with his grievances and attempted to deprive him of a proper wheelchair by using the second chair recommendation which was "wrong ... from the start." (Complaint ¶ 5.) Plaintiff insists he cannot use any wheelchair other than the "self recliner" chair he requested and which the C.O.R.C. approved in response to his first grievance. (Ex. K-1.) Finally, plaintiff contends that defendants "deliberately after knowing that the first wheelchair was not for Plaintiff medical condition kept on ordering the same type of wheelchair repeatedly knowing that the Plaintiff would not accept it do [sic] to the time it takes to get a wheelchair for his medical condition." (Opp'n Mem. ¶ 10.)

### The Retaliation Claims

*3 Plaintiff further alleges that while waiting for a proper wheelchair, he experienced "a great deal of harassment" by Green Haven prison officials. See (Complaint ¶¶ 7-9.) Specifically, plaintiff alleges: (1) that defendant Connelly ordered the "illegal" search of his cell, during which time his medical and legal documents were taken from him and not returned (Complaint ¶¶ 7 & 8; Ex. G-1-G-4 & I-1-I-4); (2) that defendants Pease, Zaken, and Bennett created false misbehavior reports to keep him "on some kind of restriction" or keeplock "24 hours a day" (Complaint ¶ 7; Opp'n Mem. ¶ 17); (3) that defendant Rassman, under the direction of defendant Pease, harassed him by preventing other inmates from socializing with plaintiff while on keeplock (Complaint ¶ 9; Ex. K-2); and (4) that defendants transferred him to another correctional facility on October 26, 1995, to "further delay my getting a wheelchair ... and to prolong my stay in prison." (Complaint ¶ 10, Ex. E-2). Although plaintiff has not directly alleged that these acts of harassment were committed in retaliation for his filing of grievances, his pleadings suggest this to be his claim.[FN5]

FN5. Any claim for retaliation plaintiff may make is based solely on a permissive reading of the pleadings, interpreting them to "raise the strongest arguments that they suggest." See *Soto v. Walker,* 44 F.3d 169, 173 (2d Cir.1995).

Defendants have filed a motion to dismiss urging dismissal of the Complaint in its entirety for failure to state a claim. In particular, defendants contend that: (1) plaintiff has pled insufficient facts to support a claim of deliberate indifference to his medical needs; (2) plaintiff's claim of deprivation of property is not actionable in federal court and plaintiff does not allege any facts to demonstrate actual deprivation of access to court; (3) as against defendants Goord, Coombe, Artuz, Schneider, Zaken and Bennett, the claims must be dismissed because these defendants had no personal involvement or supervisory liability for the alleged constitutional deprivations; (4) the Eleventh Amendment protects defendants from suit in their official capacities; and (5) plaintiff's prayer for injunctive relief is moot because he is no longer incarcerated at Green Haven.

In response to defendants' motion, plaintiff provided supplemental facts addressing, *inter alia,* his claim of deliberate indifference and the personal involvement of defendant's Zaken and Bennett. For the reasons addressed in note 2, *supra,* the Court will consider these factual allegations in evaluating defendants' motion.

### DISCUSSION

**I.** *Mootness*

Because plaintiff is no longer incarcerated and under the supervision of any of the named defendants, the Court rejects plaintiff's request for injunctive relief "directing defendants to provide medical care," "preventing defendants from mistreating pltf [sic]", and "directing defendant's [sic] to provide proper living environment for pltf." (Complaint at 5.) Plaintiff's claims for injunctive relief are moot and the Court lacks jurisdiction to consider them. See *Iron Arrow Honor Soc'y v. Heckler,* 464 U.S. 67, 104 S.Ct. 373, 78 L.Ed.2d 58 (1983); *see generally Courts v. Coombe,* 95 Civ. 2350(DC), 1996 WL 312357, at 2 (S.D.N.Y. June 11, 1996) (citing *Armstrong v. Ward,* 529 F.2d 1132, 1135 (2d Cir.1976)) ("The mere possibility that [plaintiff] may be returned to [the correctional facility where the incidents at issue arose] at some point in the future does not present a sufficient case

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 714878 (S.D.N.Y.)
(Cite as: 1997 WL 714878 (S.D.N.Y.))

or controversy that the court can presently adjudicate."). Accordingly, the Court reviews plaintiff's claims only to the extent they seek compensatory and punitive damages.

## II. *Motion to Dismiss Standard*

**\*4** In considering defendants' motion to dismiss under Fed.R.Civ.P. 12(b)(6), the Court must "assess the legal feasibility of the Complaint," *Smith v. O'Connor,* 901 F.Supp. 644, 646 (S.D.N.Y.1994), accepting as true the factual allegations in the Complaint and construing all reasonable inferences in plaintiff's favor. *See generally Leatherman v. Tarrant County Narcotics Intelligence & Coord. Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994). The Court may properly dismiss a claim only if, after viewing all allegations in the light most favorable to the plaintiff, it determines "beyond doubt that the plaintiff can prove no set of facts in support of [plaintiff's] claims which would entitle [plaintiff] to relief." *Hernandez,* 18 F.3d at 136 (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Moreover, where a plaintiff proceeds *pro se,* as here, the Court must " ' read his [or her] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest.' " *Soto v. Walker,* 44 F.3d 169, 173 (2d Cir.1995) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)); *Hernandez,* 18 F.3d at 136. In so doing, the Court must hold plaintiff to a pleading standard which is "less stringent ... than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curium).

## III. *Liability Under 42 U.S.C. § 1983*

In a § 1983 action, the plaintiff must establish that a person acting under color of state law deprived him or her of a federal constitutional right. 42 U.S.C. § 1983; *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993). Section 1983 does not create any federal rights on its own, but rather enforces rights established under the Constitution, laws, or treaties of the United States. *Sykes,* 13 F.3d at 519.

Nowhere in his Complaint does plaintiff specifically allege constitutional violations, however, liberally construed, plaintiff claims that defendants denied him adequate medical care in violation of the Eighth Amendment and retaliated against him for filing grievances in violation of the First Amendment. Furthermore, plaintiff's claim that defendants deprived him of his property may be construed as alleging a violation of the Fourteenth Amendment.

## IV. *Plaintiff's Eighth Amendment Claim*

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments" on prisoners. In *Estelle v. Gamble,* the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' ... proscribed by the Eight Amendment." 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoting *Gregg v. Georgia,* 428 U.S. 153, 173, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), *reh'g denied,* 429 U.S. 1066 (1977)). To state a claim of deliberate indifference, plaintiff must show that prison officials intentionally denied, delayed access to, or interfered with prescribed treatment. *Estelle,* 429 U.S. at 104-05. The inadvertent or negligent failure to provide adequate medical care does not rise to the level of deliberate indifference. *Id.* at 105.

**\*5** To sustain a claim of deliberate indifference to medical needs, plaintiff must plead facts sufficient to satisfy both the objective and subjective components of the applicable standard, *i.e.,* that the alleged deprivation was sufficiently serious and that the prison officials acted with a sufficiently culpable state of mind. *Farmer v. Brennan,* 511 U.S. 825, 834-35, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *see also Hudson v. McMillian,* 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) ("Deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.' ") (citing *Estelle,* 429 U.S. at 103-104); *Wilson v. Seiter,* 501 U.S. 294, 299, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) (an Eighth Amendment claim requires "inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment").

Accepting the accuracy of plaintiff's allegations for purposes of defendants' motion to dismiss, the Court can

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 714878 (S.D.N.Y.)
(Cite as: 1997 WL 714878 (S.D.N.Y.))

not conclude that plaintiff can show no set of facts sufficient to meet the deliberate indifference standard in this case. Plaintiff asserts he suffered serious injury because of the delays in his receiving a proper wheelchair, *e.g.,* that he was forced to remain bed-ridden and suffered "a great deal of pain," as well as "feet degenerations, and emotional distress" for a period of two and a half years. (Opp'n Mem. ¶ 10; Ex. D-1 & C-1.) Moreover, he alleges that defendants intentionally failed to provide him with an appropriate wheelchair despite his frequent notification to the Green Haven medical staff that he was in pain, his three grievances requesting a proper wheelchair, and the C.O.R.C.'s unanimous determination in response to his first grievance that plaintiff was entitled to a self-reclining wheelchair. Certainly, plaintiff's refusal to accept the second wheelchair offered to him, which purportedly was self-reclining, casts doubt on plaintiff's claim that defendants were purposely indifferent.[FN6] However, at this early pleading stage, without the benefit of any information on the nature of plaintiff's actual medical condition or the medical appropriateness of the wheelchairs offered to plaintiff, this Court can not conclusively say that plaintiff's Complaint fails to allege that he suffered serious injury from lack of a wheelchair. Nor can the Court, at this point, reject plaintiff's claim that defendants acted with a culpable state of mind by their intentional delay in providing him with a wheelchair customized to his particular medical needs.

FN6. Plaintiff explains his rejection of both chairs by stating that he "can not utilize any other kind of wheelchair" than the "self recliner" chair requested and approved by the C.O.R.C. (Ex. K-1.) Defendants do not dispute this allegation. While plaintiff does not explain the precise nature of his medical condition and this Court knows of no medical condition requiring use of a self-reclining wheelchair exclusively, in the absence of dispositive information to the contrary, the Court must accept these facts as true for purposes of a motion to dismiss. It is well established that claims based on a difference of opinion over matters of medical judgment do not give rise to an Eighth Amendment violation. *See Estelle,* 429 U.S. at 106-07; *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996) ("Hathaway III"). Nevertheless, given plaintiff's stated medical need for a specific type of wheelchair, without more information, the Court

can not say that his allegation is based in mere disagreement with medical opinions.

Significantly, the Second Circuit has repeatedly held that allegations of delay in providing medical treatment to a prisoner, even in the absence of physical pain, can state a claim for deliberate indifference sufficient to survive a motion to dismiss. *See Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994) ("Hathaway II") (allegations that prison doctor delayed prisoner's surgery for over two years although he knew prisoner had two broken pins in his hip, was sufficient to meet both components of deliberate indifference claim and to withstand a motion to dismiss); *Archer v. Dutcher,* 733 F.2d 14, 16 (2d Cir.1984) (if prison officials did delay "medical aid-even for 'only' five hours-in order to make [the prisoner] suffer, surely a claim would be stated under *Estelle* "); *Koehl v. Dalsheim,* 85 F.3d 86, 88 (2d Cir.1996) (deprivation of prescriptive eye glasses constitutes denial of serious medical need and satisfies objective component; although deprivation did not cause pain, it prolonged plaintiffs suffering). *See also Candelaria v. Coughlin,* No. 91 Civ. 2978, 1996 WL 88555, at 7-8 (S.D.N.Y.1996) (denying cross-motions for summary judgment because the parties disputed whether plaintiffs claims of medical injury based on failure to provide proper wheelchair were "serious").

*6 Here, plaintiff alleges delay as well as pain. Plaintiff alleges he waited in bed for six and a half months before the arrival of the first "defective" wheelchair and another eight months before the delivery of the second chair. Furthermore, plaintiff contends that, after the C.O.R.C. approved the wheelchair request in his first grievance, defendants simply reordered the same chair, knowing full well that plaintiff would reject it. Defendants have not disputed these allegations and appear to agree that at least the first wheelchair was inappropriate for plaintiffs medical needs. (Ex. C-4; Def's Mot. Dismiss at 7.) Accordingly, although some question exists as to the viability of plaintiff's claim, the Court nevertheless finds that, as alleged, and in the absence of any medical documentation dispositively evincing that the second wheelchair offered to defendant was appropriate for his medical needs, plaintiff's claim is sufficient to withstand a motion to dismiss.

**V. Retaliation Claims**

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 714878 (S.D.N.Y.)
(Cite as: 1997 WL 714878 (S.D.N.Y.))

Plaintiff also alleges that prison officials subjected him to a "great deal of harassment" while he waited for an appropriate wheelchair. Plaintiff insinuates that by this harassment, prison officials retaliated against him for filing grievances. Plaintiff claims this harassment to have included an illegal cell search, confiscation of legal materials he needed for court, false misbehavior reports, curtailed socializing, and a forced transfer to another correctional facility.

The Second Circuit has recognized that prison officials may not retaliate against prisoners for exercising their constitutional rights. *See Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995) (citing *Franco v. Kelly,* 854 F.2d 584, 589 (2d Cir.1988)). These rights include a prisoner's constitutional right to file grievances seeking administrative redress. *Franco,* 854 F.2d at 589. Nevertheless, "because we recognized ... the ease with which claims of retaliation may be fabricated, we examine prisoners claims of retaliation with care." *Colon,* 58 F.3d at 871 (citing *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983)). Given the possibilities for such abuse, the Second Circuit requires a "higher level of detail in pleading [retaliation claims]." *Gill v. Mooney,* 824 F.2d 192, 194 (2d Cir.1987).

A plaintiff alleging retaliation "bears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating fact in the prison officials' decision to discipline plaintiff." *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996) (citing *In Mount Healthy Sch. Dist. V. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). In order for a plaintiff to maintain a retaliation claim, the plaintiff must prove that the alleged wrongful action would not have been taken but for the exercise of his constitutional rights. *See Haymes v. Montanye,* 547 F.2d 188, 191 (2d Cir.1976). Action that is taken for both valid and invalid reasons will not be deemed unconstitutional if the action would have been taken in any event for the constitutionally valid reason. *See Graham,* 89 F.3d at 79.

**\*7** Where retaliation claims may have merit, the prisoner making the claim must be accorded the full procedural and substantive safeguards available to other litigants. *See Colon,* 58 F.3d at 872. "[A] retaliation claim supported by specific and detailed factual allegations which amounts to a persuasive case ought to be pursued with full discovery. However, a Complaint which alleges retaliation in wholly conclusory terms may be safely dismissed on the pleadings alone." *Flaherty,* 713 F.2d at 13; *accord Colon,* 58 F.3d at 872.

A. *The Cell Search*

Plaintiff's cell search allegation is dismissed in its entirety because the Supreme Court has held that searches of cells implicate no protected constitutional rights, even if the search is arbitrary or retaliatory in nature. *See Hudson v. Palmer,* 468 U.S. 517, 527, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). *See also Payne v. Axelrod,* 871 F.Supp. 1551, 1555 (N.D.N.Y.1995); *Demaio v. Mann,* 877 F.Supp. 89, 95 (N.D.N.Y.1996).

B. *Denied Access to the Courts and Deprivation of Legal Property*

Any claim plaintiff may be making for the deprivation of his legal documents and medical records must also be dismissed. A claim for deprivation of property does not lie in federal court if state courts provide an adequate remedy for the deprivation of that property. *Hudson,* 468 U.S. at 533; *Parratt v. Taylor,* 451 U.S. 527, 542-543, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds,* 474 U.S. 327, 330-331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Marino v. Ameruso,* 837 F.2d 45, 47 (2d Cir.1988). New York provides such a remedy in § 9 of the New York Court of Claims Act, which permits an inmate to pursue a claim for deprivation of property against the State of New York in the New York Court of Claims. *See Demaio,* 877 F.Supp. at 95. Therefore, plaintiff may not pursue his deprivation of property claim in this Court.

Nor has plaintiff stated a constitutional claim that confiscation of his legal materials deprived him of reasonable access to court. While confiscation of an inmate's legal materials can be actionable as a constitutional violation, *see Tyler v. "Ron" Deputy*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 714878 (S.D.N.Y.)
(Cite as: 1997 WL 714878 (S.D.N.Y.))

*Sheriff,* 574 F.2d 427,429 (8th Cir.1978) (citing *Sigafus v. Brown,* 416 F.2d 105 (7th Cir.1969)); *see also Tyler v. Woodson,* 597 F.2d 643 (8th Cir.1979), to prevail on such a claim, a plaintiff must establish actual injury. *See Monsky v. Moraghan,* 127 F.3d 243, 1997 WL 606487 (2d Cir. Oct 2, 1997) (quoting *Lewis v. Casey,* 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)) ("[A] plaintiff must demonstrate that a defendant caused 'actual injury,' i.e., took or was responsible for actions that 'hindered [a plaintiff's] efforts to pursue a legal claim.' ").

Here, the only allegation plaintiff makes suggesting actual injury is that, following the search of his cell in 1995, he did not receive back all of his medical records and legal papers relevant to a then pending legal matter. [FN7] (Ex. G-4.) However, plaintiff has not alleged anything to indicate that the confiscation in fact interfered with his court access in that legal action. Moreover, the exhibits to plaintiff's Complaint indicate that plaintiff's property has been returned to him.[FN8] In short, these allegations are insufficient to establish any violation of a constitutional nature. At best they provide support for a claim of deprivation of personal property, which, as mentioned above, is not properly before this Court.

FN7. Apparently, plaintiff had filed or was intending to file a legal action in a different matter.

FN8. The exhibits to plaintiff's Complaint reflects that plaintiff filed a grievance with the C.O.R.C. on January 9, 1995, and again on March 17, 1995, requesting that his legal documents and other property be returned. (Ex. G-1 & I-1.) On March 22, 1995, the C.O.R.C. found that all confiscated property had been returned to the plaintiff on January 12, 1995. (Ex. G-6.) On August 30, 1995, the C.O.R.C. again determined that: (1) plaintiff's property was returned on January 12, 1995; (2) plaintiff refused to sign for his property; and (3) plaintiff's refusal to sign was noted in the hospital log book. (*See* Complaint ¶ 8; Ex. I-4.)

C. *Retaliatory False Misbehavior Reports and Curtailed Socializing*

**\*8** Construed liberally, plaintiff alleges that defendants fabricated false misbehavior reports against him and limited his socializing in retaliation for initiating prison grievances. Plaintiff's sole allegations in this respect are that he was "accused of sex charges that never happened" and was "constantly found guilty of charges" to keep him on "some kind of restriction ... or locked up in a room 24 hours a day." Plaintiff further alleges that defendant Rassman harassed him by preventing inmates from socializing with plaintiff.

The Second Circuit has held that " '[a]lthough the filing of unfounded charges d[oes] not give rise to a per se constitutional violation action under section 1983,' ... a § 1983 claim may stand when the false charges are allegedly brought in retaliation for an inmate's exercise of his substantive due process rights." *Rodgriquez v. Phillips,* 66 F.3d 470, 477 (2d Cir.1995) (quoting *Freeman v. Rideout,* 808 F.2d 949, 953 (2d Cir.1986)). However, as noted above, claims of retaliation must be examined with skepticism and care, *Flaherty,* 713 F.2d at 13, and a "higher level of detail in pleading" is required. *Gill,* 824 F.2d at 194.

With respect to plaintiff's allegations of false misbehavior reports and curtailed socializing, the Court finds that plaintiff has failed to allege the "higher level of detail" required to sustain these claims against a motion to dismiss. *See Gill,* 824 F.2d at 194. Even viewed under liberal *pro se* pleading considerations, *Haines,* 404 U.S. at 520-21, plaintiff's allegations as to these claims are so conclusory and lacking of any detail whatsoever that the Court can not find them legally feasible. Consequently, plaintiff's claims of retaliatory false misbehavior reports and curtailed socializing are hereby dismissed.

D. *Retaliatory Transfer*

Liberally construing plaintiff's pleadings, his last claim of retaliation concerns his transfer from Green Haven to another correctional facility on October 26, 1995, eight days after plaintiff's third wheelchair grievance. Plaintiff claims he was transferred to "further delay my getting a wheelchair ... and to prolong my stay in prison."

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 714878 (S.D.N.Y.)
(Cite as: 1997 WL 714878 (S.D.N.Y.))

While there is no right to be placed in a particular facility, *Montanye v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976), an inmate can not be transferred solely in retaliation for the exercise of his constitutional rights. *See Meriwether v. Coughlin,* 879 F.2d 1037, 1047 (2d Cir.1989); *see also Lowrance v. Coughlin,* 862 F.Supp. 1090, 1099 (S.D.N.Y.1994). The filing of prison grievances is a constitutionally protected right. *Franco v. Kelly,* 854 F.2d at 589.

The temporal proximity between the grievance filing and the transfer does provide circumstantial evidence suggesting that the transfer may have been in retaliation for plaintiff's grievance. Circumstantial facts in a retaliation claim can suggest an improper motive sufficient to withstand a motion to dismiss. *See Gagliardi v. Village of Pawling,* 18 F.3d 188 (2d Cir.1994) (denying motion to dismiss where retaliation claim alleged a chronology of events from which retaliatory intent could be inferred); *see also Murphy v. Lane,* 833 F.2d 106, 108-09 (7th Cir.1987) ("Chronology of events from which retaliatory animus on part of the defendants could be inferred" sufficient to overcome motion to dismiss).[FN9] Because this is a motion to dismiss and not a motion for summary judgment, the defendants properly have not provided the Court with any dispositive records or information indicating that the transfer was not retaliatory in nature. Under these circumstances, however, the Court finds that plaintiff does allege a sequence of events which may be read as providing some support for an inference of retaliation sufficient to withstand a motion to dismiss.

> FN9. In contrast, circumstantial evidence of retaliatory animus is not sufficient to withstand a motion for summary judgment. *See Blue v. Koren,* 72 F.3d 1075, 1084 (2d Cir.1995) (mere temporal proximity of events may "fuel ... suspicions" but will not withstand a motion for summary judgment); *Dietz v. Damas,* 948 F.Supp. 198 (E.D.N.Y.1996).

**\*9** Nevertheless, the Court must dismiss plaintiff's retaliatory transfer claim because he has not alleged the personal involvement of any of the named defendants in the transfer decision. It is well established that as a

prerequisite to a damage award under 42 U.S.C. § 1983, a plaintiff must allege the defendant's direct or personal involvement in the alleged constitutional deprivation. *See Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). Plaintiff has not done so with respect to his transfer claim and accordingly the claim must be dismissed. The Court grants plaintiff permission, however, to amend his Complaint within thirty days of this order, reasserting claims against or adding any defendants whom he can plead with particularity had personal involvement in his retaliatory transfer claim.

## VI. *Personal Involvement*

As stated above, plaintiff must allege a defendant's direct personal involvement in a constitutional deprivation in order to receive a damage award under § 1983. *See Wright,* 21 F.3d at 501. Because the Court has dismissed the plaintiff's retaliation claims, the retaliation claims against Schneider, Connelly, Pease, Rassman, Zaken, and Bennett are dismissed.

Concerning the plaintiff's allegation of deliberate indifference to plaintiff's medical needs against defendants Zwillinger, Stevens, and Manion, plaintiff has alleged facts of their direct involvement, knowledge, and responsibility sufficient to withstand a motion to dismiss.

Plaintiff makes no claims of direct involvement by defendants Goord (Department of Correctional Services Acting Commissioner), Coombe (Former Commissioner), and Artuz (Green Haven Superintendent) in any constitutional violation. Liability for damages in a § 1983 action may not be based in respondent superior or vicarious liability doctrines. *See Monell v. Department of Social Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Absent allegations of personal involvement, all claims against Goord, Coombe, and Artuz are hereby dismissed.

## VII. *Eleventh Amendment Immunity*

Finally, defendants assert that the instant Complaint is barred by the Eleventh Amendment because defendants

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 714878 (S.D.N.Y.)
(Cite as: 1997 WL 714878 (S.D.N.Y.))

were acting in their official capacities with regard to the claims alleged and thus are immune from suit. It is unclear, however, whether plaintiff is suing defendants in their official or in their individual capacities. In a case such as this, where doubt exists as to whether an official is sued in his individual or official capacity, the course of the proceedings will generally resolve the ambiguity by revealing the nature of the liability sought to be imposed. *See Kentucky v. Graham,* 473 U.S. 159, 167 n. 4, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (citing *Brandon v. Holt,* 469 U.S. 464, 469, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985)). It is improper at an early stage in the proceedings automatically to construe a Complaint as focusing on one capacity and not the other. *See Frank v. Relin,* 1 F.3d 1317, 1326 (2d Cir.). Accordingly, the Court assumes for the purposes of this motion that plaintiffs claims are asserted against defendants in both their individual and their official capacities.

**\*10** To the extent that plaintiff asserts claims for monetary damages against the defendants in their official capacities, these claims must be dismissed. A claim against an employee of the New York State Department of Corrections for actions taken in his or her official capacity is, in effect, a suit against the State. Absent the State's waiver or consent, neither of which have been given here, the Eleventh Amendment bars from federal court all § 1983 suits for legal or equitable relief brought by citizens against the State and its agencies. *See Alabama v. Pugh,* 438 U.S. 781, 782, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978) (per curiam); *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). *See also Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) (reaffirming Edelman holding that § 1983 does not override the immunity granted to States under the Eleventh Amendment). Thus, plaintiffs claims for monetary damages from defendants in their official capacities are dismissed as barred under the Eleventh Amendment. *See generally Dube v. State Univ. of New York,* 900 F.2d 587, 594-95 (2d Cir.1990). However, plaintiff may maintain his claims against defendants in their individual capacities. *See generally Hafer v. Melo,* 502 U.S. 21, 30-31, 112 S.Ct. 358, 116 L.Ed.2d 301(1991) ("[T]he Eleventh Amendment does not erect a barrier against suits to impose 'individual and personal' liability on state officials under sec.1983.") (citation omitted).

## CONCLUSION

Defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is GRANTED in part and DENIED in part. The Court denies the motions of defendants Zwillinger, Stevens, and Manion to dismiss plaintiff's claim against them of deliberate indifference to plaintiff's medical needs. The Court grants the motions of defendants Goord, Coombe, Artuz, Schneider, Connelly, Pease, Rassman, Zaken, and Bennett to dismiss the retaliation and other claims against them in their entirety. As noted herein, plaintiff has thirty days from the date of this Order to amend his Complaint to allege the personal involvement of defendants in his retaliatory transfer claim. If plaintiff adds new defendants, he must effect service upon them. **The Court schedules a conference for 1/16/98, at 2:00 pm, at which time defendants will advise the Court of the status of discovery. Attached is a Pro Se Conference notice that explains to the plaintiff how he may participate in the conference.**

## SO ORDERED

S.D.N.Y.,1997.
Gadson v. Goord
Not Reported in F.Supp., 1997 WL 714878 (S.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2011 WL 856416 (N.D.N.Y.)

(Cite as: 2011 WL 856416 (N.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Corey FORD, Plaintiff,
v.
Brian FISCHER, et al., Defendants.
No. 9:09-CV-723 (DNH/ATB).

Jan. 31, 2011.

Corey Ford, pro se.

Brian J. O'Donnell, Asst. Attorney General for Defendant.

**REPORT-RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge.
    *1 This matter was referred to me for Report and Recommendation on March 8, 2010 by U.S. District Judge David N. Hurd, pursuant to 28 U .S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c). Plaintiff's second amended complaint ("AC," Dkt. No. 28) seeks monetary damages, under 42 U.S.C. § 1983, for various alleged violations of his constitutional rights arising from his confinement by the New York State Department of Correctional Services ("DOCS") at the Shawangunk Correctional Facility ("Shawangunk") in 2008 and 2009. Presently before this court is defendants' motion to dismiss the second amended complaint for failure to state a claim, pursuant to FED. R. CIV. P. 12(b)(6), which was supported by several substantive affidavits and substantial documentary evidence. (Dkt. No. 32). Plaintiff has filed a lengthy declaration and voluminous documentary exhibits in opposition to the defendants' motion. (Dkt. No. 35). For the reasons set forth below, this court recommends granting in part and denying in part defendants' motion.

**DISCUSSION**

**I.** *Facts*
    On or about April 14, 2004, plaintiff was transferred to the Special Housing Unit ("SHU") at Shawangunk,

following his violent assault on a correction officer at Green Haven Correctional Facility ("Green Haven").[FN1] Plaintiff alleges, and defendants admit, that plaintiff was the subject of a "mail watch" at Shawangunk, from the time of his transfer in April 2004, through at least late 2009. (AC, Facts ¶ 9; Defts.' Memo. of Law at 6, Dkt. No. 32-24). Plaintiff claims that the screening of his incoming and outgoing mail at Shawangunk included some privileged legal mail, and resulted in delays of many days in delivery of his mail. (AC ¶¶ 11-15, 22). Shawangunk Superintendent Joseph T. Smith admittedly approved the initial mail watch, and renewed the approval every 60 days thereafter. (AC, Facts ¶ 9; Defts.' Memo. of Law at 6). Plaintiff alleges that John Maly, Deputy Superintendent for Security, and Ms. Parisi, a mail clerk, were involved in executing the mail watch. (AC ¶¶ 11-15, 22-23).

    FN1. Plaintiff threw hot oil in the face of the correction officer at Green Haven and then stabbed him three times. *Ford v. Smith,* 23 A.D.3d 874, 875, 803 N.Y.S.2d 821 (3d Dept.2005), *lv. app. den.,* 6 N.Y. 708, 813 N.Y.S.2d 44 (N.Y.2006). Plaintiff was found guilty of various disciplinary charges at Green Haven and sentenced to serve eight years in the SHU, which disposition was upheld in an Article 78 proceeding and affirmed on appeal. *Id.* Plaintiff was also convicted on related criminal charges in Dutchess County, New York, for which he was sentenced, on June 11, 2008, to a consecutive prison term of 22 years to life. (AC ¶ 27; 6/11/08 Transcript of Sentencing at 1, 13-14, Dkt. No. 35-2 at 7, 19-20).

    On or about March 22, 2009, plaintiff was charged in an Inmate Misbehavior Report based on two of his letters which were reviewed and confiscated by defendant Maly pursuant to the continuing mail watch. In one letter, plaintiff allegedly asks an unincarcerated individual to harass and threaten plaintiff's "fiancee." In the other letter, which plaintiff sent to another inmate through a person outside the facility (a prohibited process known as "kiting"), plaintiff allegedly asks one inmate to assault another inmate. (AC ¶ 25). Plaintiff claims that, in

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 856416 (N.D.N.Y.)

(Cite as: 2011 WL 856416 (N.D.N.Y.))

connection with the disciplinary hearing conducted by defendant Eric Gutwein, he was deprived of proper assistance, in that he was denied documents he deemed critical to his defense. Plaintiff also claims that Hearing Officer Gutwein improperly refused to allow certain witnesses, requested by plaintiff, to testify. Plaintiff was found guilty of the disciplinary charges and sentenced to an additional 18 months in the SHU and 18 months loss of good time. (AC ¶ 29).[FN2]

> FN2. The disciplinary proceeding resulted in sanctions affecting both the conditions and duration of plaintiff's confinement. In order to be allowed to proceed with this Section 1983 action seeking money damages for alleged constitutional violations in connection with the disciplinary hearing, without first pursuing a habeas action to attack the sanctions affecting the term of imprisonment, plaintiff states that he forever abandoned any claim of challenging the loss of good time. (AC at p. 36, citing *Peralta v. Vasquez,* 467 F.3d 98 (2d Cir.2006), *cert. denied sub nom. Jones v. Peralta,* 551 U.S. 1145 (2007)).

**\*2** Plaintiff requested permission to marry his fiancee on or about April 1, 2008, while he was still confined in the SHU at Shawangunk. Defendant Smith refused plaintiff's request based on his long-term SHU status. (AC ¶¶ 16-18; 4/24/08 Smith Ltr., Dkt. No. 35-3 at 58). In April 2009, Supt. Smith indefinitely revoked the visiting privileges of plaintiff's fiancee because of her alleged involvement in smuggling a note from another inmate to plaintiff in the visiting room, and because of purported concerns for her safety based on the intercepted letter in which plaintiff allegedly asked another individual to harass and threaten her. (AC ¶¶ 24, 30-32, 34). Plaintiff claims that Supt. Smith and Dep. Supt. Maly pursued "an anti-family agenda against plaintiff, all in retaliation" for plaintiff's assault of a correction officer at Green Haven in April 2004, and his filing of grievances and lawsuits against certain defendants. (AC ¶¶ 17, 33-34). Plaintiff alleges that he formally appealed the revocation of his fiancee's visitation rights to defendant Brian Fischer, the DOCS Commissioner, but did not receive any reply. (AC ¶ 35).

Plaintiff alleges that his cell was searched three times in one week in July 2009, purportedly in retaliation for his initiation of this lawsuit and his filing of grievances and other court actions. Plaintiff claims that several correction officers informed him that "higher ups," including defendants Smith and Maly, had ordered them to destroy plaintiff's cell and take his legal magazines and books. (AC ¶¶ 36-39).

## II. Contentions and Summary of Recommendations

Plaintiff purports to sue DOCS Commissioner Fischer, Shawangunk Supt. Smith, Dep. Supt. Maly, Mail Clerk Parisi, and Hearing Officer Gutwein in their individual and official capacities.[FN3] The second amended complaint states five causes of action based on particular constitutional rights that plaintiff alleges were violated in various ways. However, it will be easier to address plaintiff's claims if they are considered by reference to the nature of the defendants' alleged underlying conduct.

> FN3. It is now well-settled that the state itself cannot be sued under section 1983. *Komlosi v. New York State OMRDD,* 64 F.3d 810, 815 (2d Cir.1995) (citing *Will v. Michigan Department of Police,* 491 U.S. 58, 71 (1989)). An action against state officers in their official capacities is tantamount to an action against the state. *Yorktown Medical Laboratory, Inc. v. Perales,* 948 F.2d 84, 87-88 & n. 1 (2d Cir.1991) (citations omitted). To the extent that the DOCS defendants are being sued in their official capacity for money damages, that cause of action should be dismissed under the Eleventh Amendment. *Huang v. Johnson,* 251 F.3d 65, 69-70 (2d Cir.2001); *Posr v. Court Officer Shield # 207,* 180 F.3d 409, 414 (2d Cir.1999).

Plaintiff alleges that the repeated extensions of the "mail watch" directed at him were not supported by current information establishing reasonable cause, and were motivated by a desire to retaliate against him for pursuing protected activity. Plaintiff claims that the mail watch violated applicable DOCS Directives, his due process rights, and his First Amendment rights-by interfering with the "free flow" of his incoming and outgoing mail, and by improperly denying him access to

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 856416 (N.D.N.Y.)

(Cite as: 2011 WL 856416 (N.D.N.Y.))

courts. Relying on affidavits that go beyond the allegations in the complaint or the documents reasonably associated with it, defendants argue that there was sufficient cause for the ongoing mail watch to pass constitutional muster. However, on the basis of the information properly considered in the context of a motion to dismiss, this court finds that plaintiff has stated a plausible claim that, by continuing the mail watch through all of 2008 and 2009, defendants Smith and Maly violated plaintiff's First Amendment rights. Plaintiff's claim that the mail watch denied him access to the courts should be dismissed because he fails to make plausible allegations that he was prejudiced in connection with any litigation.

**\*3** The second amended complaint suggests that the disciplinary charges against plaintiff violated his constitutional rights because they were predicated on his letters, which were improperly reviewed and confiscated pursuant to the ongoing mail watch. However, because inmates are not constitutionally entitled to the suppression of illegally obtained evidence in the context of a disciplinary hearing, this cause of action would fail even if the ongoing mail watch were ultimately determined to violate the First Amendment. Plaintiff also alleges that he was deprived of due process at his disciplinary hearing because he was denied certain documents and because the hearing officer refused to call two witnesses, without adequate supporting reasons. Plaintiff's motion papers attach extensive documentary evidence, including the hearing transcript, in which defendant Gutwein articulates rational reasons for not allowing the particular documents and witnesses. In any event, none of the excluded evidence would have effected the outcome of the hearing, and so any procedural errors were harmless. Based on plaintiff's allegations and submissions, without reference to the hearing officer's affidavit, the plaintiff's due process claims relating to the disciplinary hearing should be dismissed under Rule 12(b)(6).

Plaintiff claims that defendant Smith denied his request to marry, based on retaliatory motives and without reasonable penological justification, in violation of plaintiff's First and Eighth Amendment rights. Relying on affidavits beyond the proper scope of a motion to dismiss, the defendants attempt to document and defend Supt. Smith's reasons for denying plaintiff's request. This court concludes that, based on the information properly considered under Rule 12, plaintiff establishes a plausible claim that, in preventing plaintiff from marrying, perhaps for the entire duration of his long-term SHU confinement, defendant Smith violated plaintiff's First Amendment rights.

Plaintiff asserts that the revocation of his fiancee's visitation rights were retaliatory and a violation of his due process, and Eighth Amendment rights. This court concludes that plaintiff's conclusory allegations of retaliation fail to state a viable claim. The denial of visitation cannot be the basis of an Eighth Amendment or due process claim by a inmate. Plaintiff's complaint will be liberally construed to also include a claim under the First Amendment; however, the admitted reasons stated for the denial of visitation clearly constitute a rational penological justification. Because DOCS Commissioner Fisher's alleged role in the violations alleged in the second amended complaint seems to be limited to his failure to respond to plaintiff's appeals or complaints involving visitation and, perhaps, other issues, he was not personally involved to the extent necessary to establish his liability under Section 1983.

Finally, plaintiff alleges that the cell searches in July 2009 were in retaliation for his involvement in grievances and law suits against DOCS officials. However, even if plaintiff's sparse allegations suggested a retaliatory motive, cell searches in the prison setting are not the type of "adverse action" that will support a civil rights claim.[FN4]

FN4. The "fourth cause of action" in the second amended complaint, which purports to state claims under the Eighth Amendment, makes a passing reference to conditions of confinement at Shawangunk. (AC at p. 27). The vague allegations about un-shoveled snow and bird droppings in the exercise areas, occasional discoloration in the water, and late Ramadan meals are insufficient to state a plausible claim that the defendants were personally responsible for, or deliberately indifferent to, conditions of confinement that imposed an excessive risk to the plaintiff's health or safety. *Farmer v. Brennan,* 511 U.S. 825, 834, 837 (1994).

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 856416 (N.D.N.Y.)

(Cite as: 2011 WL 856416 (N.D.N.Y.))

### III. *Motion to Dismiss*

**\*4** To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* (citing *Bell Atl. Corp.,* 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant " 'fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atl. Corp.,* 550 U.S. at 555 (citation omitted).

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 71 (2d Cir.1995). The court must heed its particular obligation to treat *pro se* pleadings with liberality. *Phillips v. Girdich,* 408 F.3d 124, 128 (2d Cir.2005); *Tapia-Ortiz v. Doe,* 171 F.3d 150, 152 (2d Cir.1999) (*per curiam* ).

In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference. *Rothman v. Gregor,* 220 F.3d 81, 88 (2d Cir.2000); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d at 72 (the court may take into consideration documents referenced in or attached to the complaint in deciding a motion to dismiss, without converting the proceeding to one for summary judgment). No exhibits are attached to the second amended complaint, although it does reference a number of specific documents. The defendants have submitted three affidavits and a number of documents that go beyond what should properly be considered in connection with their motion to dismiss. *See, e.g., Sira v. Morton,* 380 F.3d 57, 67-68 (2d Cir.2004) (because the district court did not exclude, from its consideration, a document not incorporated by reference in or integral to the complaint, the district court should

have converted the motion to dismiss into one for summary judgment).

The plaintiff responded in kind to the defendants' motion and its supporting affidavits and exhibits, filing a 78-page declaration and a substantial number of supporting documents. At least to the extent the additional factual information submitted by plaintiff is consistent with the allegations in the complaint, it may be considered in connection with the motion to dismiss, as a *de facto* amendment of the complaint. See, e.g., *Benitez v. Ham,* 9:04-CV-1159 (NAM/GHL), 2009 WL 3486379, at *8 & n. 21 (N.D.N.Y. Oct. 21, 2009) (citing, *inter alia, Washington v. James,* 782 F.2d 1134, 1138-39 (2d Cir.1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to dismiss). There is some authority for the proposition that, when "it is clear from the record" that the party responding to a motion to dismiss knew that additional factual submissions "were being considered and, in fact, responded with its own evidentiary submissions," a court may consider factual allegations outside the complaint in deciding the motion. *See, e.g., Reliance Ins. Co. v. Polyvision Corp.,* 474 F .3d 54, 57 (2d Cir.2007) (under those circumstances, it was harmless error for the court to fail to give explicit notice that it was converting the Rule 12 motion to a Rule 56 motion). However, because this *pro se* plaintiff has not been given any notice that the defendants' motion to dismiss would or could be converted to one for summary judgment, this court finds it inappropriate to consider defendants' factual affidavits and most of the supporting documents against the *pro se* plaintiff in resolving the current motion.[FN5] Plaintiff has asserted two facially plausible claims that are better resolved by a properly noticed and documented motion for summary judgment.

> FN5. The court will not consider, against the plaintiff, the affidavits of defendants Smith (Dkt. No. 32-1), Maly (Dkt. No. 32-7), and Gutwein (Dkt. No. 32-16) or, except to the extent discussed below, the supporting documents.

### IV. Mail Watch and Related Conduct

#### A. Mail Watch

#### 1. Legal Standards

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 856416 (N.D.N.Y.)

(Cite as: 2011 WL 856416 (N.D.N.Y.))

**\*5** Among the protections enjoyed by prison inmates, subject to appropriate limitations, is the right "to the free flow of incoming and outgoing mail" guaranteed by the First Amendment. *LeBron v. Swaitek,* No. 05-CV-172 (GLS/DRH), 2007 WL 3254373, at \*6 (N.D.N.Y.2007) (Sharpe, J.) (quoting *Davis v. Goord,* 320 F.3d 346, 351 (2d Cir.2003)).[FN6] That right, however, must yield to the legitimate penological interests of prison officials when mail is monitored for the purpose of ensuring order in the prison by preventing illegal activities, in which case no constitutional violation has occurred. *Duamutef v. Hollins,* 297 F.3d 108, 112-13 (2d Cir.2002) (citing, *inter alia, U.S. v. Workman,* 80 F.3d 688, 699 (2d Cir.1996)). "The [Supreme] Court has counseled judicial restraint in the federal courts' review of prison policy and administration, noting that 'courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform.' " *Giano v. Senkowski,* 54 F.3d 1050, 1053 (2d Cir.1995) (quoting *Turner v. Safely,* 482 U.S. 78, 84 (1987)).

> FN6. This discussion of the applicable legal standards draws heavily on Magistrate Judge Peebles' report-recommendation in *Dillhunt v. Theriault,* 9:07-CV-0412 (GTS/DEP), 2009 WL 4985477, at \*9 (N.D.N.Y. Dec. 15, 2009), which was adopted by District Judge Suddaby.

Actions taken by prison administrators directed toward inmate mail are subject to the overarching consideration that a prison regulation infringing on an inmate's constitutional rights is valid so long as the regulation is "reasonably related to the legitimate penological interests." *Turner v. Safely,* 482 U.S. at 89. Applying this precept, "[c]ourts have constitutionally afforded greater protection ... to outgoing mail than to incoming mail." *Davis,* 320 F.3d at 351 (citations omitted). Nonetheless, the Second Circuit has held that " 'where good cause is shown, outgoing mail can be read' without violating inmates' First Amendment rights." *Workman,* 80 F.3d at 698 (quoting *Wolfish v. Levi,* 573 F.2d 118, 130 n. 27 (2d Cir.1978), *rev'd in part on other grounds sub nom., Bell v. Wolfish,* 441 U.S. 520 (1979)).

**2. Application**

Although the second amended complaint alleges that the mail watch relating to plaintiff was unlawful from its inception in April 2004 (AC, Facts ¶ 9), this lawsuit focuses on the claim that the mail watch was continued through 2008 and 2009, without any new or current factual information to establish good cause or penological justification. (AC ¶¶ 40, 52-53). Plaintiff would likely be foreclosed from challenging the validity of the initial mail watch based on his prior litigation of this issue. In *Ford v. Phillips,* et al., 05 Civ. 6646, 2007 WL 946703, at \* 14-15 (S.D.N.Y. Mar. 27, 2007), a district judge in the Southern District of New York rejected this plaintiff's prior civil rights challenge to the mail watch at Shawangunk, for the period from April 2004 through the date of filing of the complaint in that action in 2005. The judge concluded that DOCS officials had ample good cause to monitor plaintiff's mail, including the need (1) to investigate his April 2004 assault on a correction officer at Green Haven, (2) to prevent Ford from instigating further violence following the assault, and (3) to monitor efforts by Ford to improperly influence witnesses in connection with his impending criminal trial. *Id.* at \* 14.[FN7] If plaintiff were attempting to relitigate the legality of the initial mail watch in this action, he would be barred by claim preclusion. *Ford v. Krusen,* 9:06-CV-890 (GTS/DEP), 2009 WL 959534, at \*7 (Apr. 6, 2009) (Corey Ford's prior, unsuccessful, due process challenge to the disciplinary hearing leading to his prolonged SHU confinement in the Southern District of New York barred him from pursuing that claim further in a subsequent action in the Northern District of New York).

> FN7. The district judge in the Southern District noted that, during the mail watch, DOCS officials found, in or before 2006, at least one letter that was relevant to the prison's investigation of the assault, and one letter through which Ford attempted to influence a witness in his trial. *Id.* The second amended complaint points out that the state court judge who presided over plaintiff's criminal trial for the April 2004 assault, suppressed a letter seized pursuant to the mail watch in late 2004. (AC ¶ 10). Transcripts of the state court proceedings submitted by plaintiff in opposition to defendants' motion, makes clear that the state

Slip Copy, 2011 WL 856416 (N.D.N.Y.)

(Cite as: 2011 WL 856416 (N.D.N.Y.))

court judge found that repeated 60-day renewals of the mail watch, without any factual statements of justification, violated "due process" because DOCS did not follow its own rules and regulations, in DOCS Directive 4422. (Dkt. No. 35-2 at 1-4; AC ¶ 10). It is not clear whether the state judge purported to apply New York state or federal due process standards. However, as discussed below, a violation of DOCS directives in connection with the mail watch would not constitute a federal constitutional violation cognizable under Section 1983. Hence, the state judge's suppression ruling would not undermine the preclusive effect of the federal judge's adverse ruling in the Southern District of New York on plaintiff's federal constitutional claim relating to the mail watch during the period from April 2004 through the date plaintiff filed the prior action in 2005.

**\*6** Plaintiff focuses on the fact that the continuation of the mail watch for approximately five years, violated the internal guidelines of DOCS Directive 4422.[FN8] However, a violation of this DOCS Directive does not state a claim for a constitutional violation under Section 1983. *See, e.g., Dillhunt v. Theriault,* 2009 WL 4985477, at *11 (collecting cases).

FN8. Mail watches are governed by DOCS Directive # 4422, which provides, in relevant part, as follows:

III.B.[9.] Outgoing correspondence [ ... ] shall not be opened, inspected, or read without express written authorization from the facility Superintendent.

a. The Superintendent shall not authorize the opening or inspection of such outgoing mail unless there is a reason to believe that the provisions of this or any directive or inmate rule or regulation have been violated, that any applicable state or federal law has been violated, or that such mail threatens the safety, security, or good order of a facility or the safety or well being of any person. Such

written authorization by the Superintendent shall set forth specific facts forming the basis for the action.

b. If after inspecting the contents of outgoing mail it is determined that the provisions of a directive, rule or regulation, or state or federal law have been violated, or that such correspondence threatens the safety, security or good order of the facility or the safety or well being of any person, then the correspondence may be confiscated. The inmate must be informed in writing unless doing so would interfere with an ongoing investigation.

Where the inmate has been so notified, he or she may appeal the action to the Superintendent. * * *

**III.G.5.** Incoming general correspondence, other than inmate-to-inmate letters and inmate business mail, will not be read unless there is evidence that the correspondence may contain one or more of the following:

a. Plans for sending contraband in or out of the facility;

b. Plans for criminal activity including escape; and

c. Information which, if communicated, would create a clear and present danger to the safety of persons and/or the security and good order of the facility.

**III.G.6.** Written authorization from the facility Superintendent to read incoming mail must be placed in the inmate's file specifying the reasons such action is considered necessary and whether all mail or certain correspondence shall be read. Such authorization shall be for a 60 day period subject to renewal by the Superintendent. The Superintendent shall request documentation from the person

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 856416 (N.D.N.Y.)

(Cite as: 2011 WL 856416 (N.D.N.Y.))

recommending inspection to determine that there are sufficient grounds for reading the mail, that the reasons for reading the mail are related to the legitimate interests of safety, security, and order, and that the reading is no more extensive than necessary to further these interests.

Jackson v. Portuondo, 9:01-CV-00379 (GLS/DEP), 2007 WL 607342, at *5 n. 7 (N.D.N.Y. Feb. 20, 2007).

Liberally construing the second amended complaint, plaintiff also alleges that his constitutional rights were violated because successive 60-day renewals of the mail watch were "rubber stamp[ed]" by Supt. Smith through 2008 and 2009 without any "new underlying facts" establishing good cause to continue the mail watch. (AC ¶¶ 40, 52-53). The allegations of the complaint and the related documents which are arguably incorporated by reference in the complaint, or were submitted by plaintiff in his motion papers, identify two abuses of the prison mail system by plaintiff in March 2009 that would certainly appear to justify a mail watch for some period of time thereafter.[FN9] DOCS reviewed and confiscated two sets of letters from plaintiff at that time-one which allegedly reflected an effort by plaintiff to harass or threaten his fiancee through others outside the institution over some disputed money, and another, which was improperly "kited" through someone outside the facility, and which purportedly sought to induce one inmate to threaten or do harm to another inmate at plaintiff's behest. (AC ¶ 25).[FN10]

FN9. See, e.g., Jackson v. Portuondo, 2007 WL 607342, at *6-7, 13 (granting summary judgment on claim challenging mail watch, which was supported by evidence that inmate was "kiting" mail in an effort to harm another inmate and smuggle contraband) (citing, inter alia, United States v. Felipe, 148 F.3d 101, 107-108 (2d Cir.1998) (knowledge that plaintiff had violated prison regulations related to mail, and had written about the commission of illegal acts constituted reasonable cause to intercept the inmate's correspondence).

FN10. While not validating the DOCS interpretations of this correspondence, plaintiff refers to it with some specificity in the second amended complaint. (AC ¶ 25). Thus, the copies of the letters attached to defendant Maly's affidavit (Dkt. No. 32-11 & 32-12) are properly considered here. Sira v. Morton, 380 F.3d at 67 (where the complaint explicitly refers to and relies upon documents, they are properly considered in the context of a Rule 12(b)(6) motion). In any event, plaintiff attaches, to his motion papers, the transcript from his March 2009 disciplinary hearing where the letters are discussed in detail and, often at the behest of plaintiff, read into the record. (See, e.g., Dkt. No. 35-4 at 14, 20, 39, 40). Notwithstanding plaintiff's dispute about the import of these letters, the text clearly implicated the safety and security concerns of the facility. Hence, the confiscation of this particular mail would clearly be supported by good cause and would not support a Section 1983 claim. See Ford v. Phillips, 2007 WL 946703, at * 14 (confiscation of letters admitting to assault and attempting to properly influence witnesses "did not go beyond what was necessary to protect the prison's legitimate penological interests").

The affidavits of defendants Smith and Maly, which this court is **not** using against the plaintiff in connection with this motion to dismiss, provide no factual information relating to any misconduct of plaintiff that would current justification for the mail watch after 2005 or 2006 (as described in the prior case from the Southern District of New York, Ford v. Phillips, 2007 WL 946703, at * 14-15), but before March 2009, when plaintiff was accused of several instances of mail-related misconduct. (Smith Aff., Dkt. No. 32-1; Maly Aff., Dkt. No. 32-7).[FN11] Moreover, the 33 memoranda by which Supt. Smith repeatedly renewed plaintiff's mail watch between June 2004 and August 2009 (Dkt. No. 32-2 at 6-38) do not set forth any justification for continuing the mail watch. The Second Circuit has suggested that, although prison officials are entitled to considerable deference in ordering a mail watch for security reasons, justification for a mail

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 856416 (N.D.N.Y.)

(Cite as: 2011 WL 856416 (N.D.N.Y.))

watch should be relatively current, and the duration of the screening of mail should be reasonably limited based on the perceived threat. *Duamutef v. Hollins,* 297 F.3d at 113 (mail-related disciplinary charge in 1994, following a history of involvement in prohibited organizational activities, was not too remote to justify a "temporary" (30-day) watch on plaintiff's mail in 1995). Given that the legitimacy of the penological justification for a mail watch is difficult to validate, in the context of a Rule 12(b)(6) motion,[FN12] this court finds, that plaintiff's First Amendment cause of action against defendants Smith and Malay should not be dismissed at this stage of the proceedings.

> FN11. The Smith affidavit (¶ 7) and the Maly affidavit (¶ 9) vaguely suggest that plaintiff engaged in some other instances of mail kiting, but provide no dates or other specific information.

> FN12. *See, e.g., Knight v. Keane,* 247 F.Supp.2d 379, 384-85 (S . D.N.Y.2002) (in the context of a Rule 12(b)(6) motion, the record is insufficient to establish that inspection of plaintiff's mail was based on good cause, distinguishing *Duamutef,* 297 F.3d 108 (upon an application for summary judgment, finding that "a rational jury" could not find that the watch on plaintiff's mail was not reasonably related to legitimate penological interests); *LeBron v. Swaitek,* 2007 WL 3254373, at *7 (it may be the case that the confiscation of LeBron's outgoing mail was justified by legitimate governmental interests; however, it would be inappropriate to dismiss LeBron's claim at this time under Rule 12(b)(6) (citing *Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986) (reversing the district court's dismissal of claims relating to interference with plaintiff's outgoing and incoming mail under Rule 12(b)(6)).

**2. Personal Involvement of Defendant Parisi**

**\*7** Mail Clerk Doreen Parisi was clearly involved in the implementation of the mail watch authorized by Supt. Smith. (AC ¶ 55). However, she lacked the authority to decline the directions of Supt. Smith and Dep. Supt. Maly to intercept plaintiff's mail and provide it defendant Maly for his review. Unlike defendants Smith and Maly, Ms. Parisi had no personal involvement in the acts which allegedly violated plaintiff's constitutional rights-the authorization of the mail watch without adequate and current penological justification. Under these circumstances, defendant Parisi should not be liable, under Section 1983, for her clerical role in carrying out the mail watch at the direction of her superiors. See, e.g., *Webster v. Fischer,* 694 F.Supp.2d 163, 181 (N.D.N.Y. Mar. 9, 2010) (dismissing claim of senior mail clerk that she initiated and participated in a mail watch, which only the Superintendent of the facility had the authority to institute); *Davidson v. Goord,* 99-CV-555S, 2000 WL 33174399, at *9 (W.D.N.Y. Sept. 27, 2000) (plaintiff's allegations regarding delays in legal mail were not sufficient to state a constitutional claims against DOCS personnel who merely handled inmate mail consistently with applicable DOCS policies). *See also Smith v. Woods,* 9:05-CV-1439 (LEK/DEP), 2008 WL 788573 at *9 (N.D.N.Y. Mar. 20, 2008) (dismissing medical indifference claim against social worker and psychologist in prison who had no authority to override the decision of the treating psychiatrist). Thus, the amended complaint may be dismissed in its entirety as to defendant Parisi.

**B. Access to Courts**

Plaintiff has also alleged that the mail watch resulted in delays of his legal correspondence. The First and Fourteenth Amendments to the U.S. Constitution are implicated when a prisoner's legal mail is obstructed, but a plaintiff must allege that the defendants' actions hindered the prisoner's "efforts to pursue a legal claim." *See Davis v. Goord,* 320 F.3d 346, 351 (2d Cir.2003) (citing *Monsky v. Moraghan,* 127 F.3d 243, 247 (2d. Cir.1997). In order to establish that a prisoner's right of access to the courts has been abrogated, actual injury must be shown. *See Lewis v. Casey,* 518 U.S. 343, 351-52 (1996). In this case, plaintiff has not alleged that any delays in his mail resulted in prejudice to him in any legal proceeding, and thus he fails to state a claim for denial of access to courts. *See, e.g,* *Zimmerman v. Seyfert,* 9:03-CV-1389 (TJM), 2007 WL 2080517, at *31 (N.D.N.Y. July 19, 2007) (plaintiff's First Amendment claim of denial of access to courts based upon the mail watch must be dismissed because he cites no case that was hindered or lost because

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 856416 (N.D.N.Y.)

(Cite as: 2011 WL 856416 (N.D.N.Y.))

of the mail watch); *Jermosen v. Coughlin,* 877 F.Supp. 864, 871 (S.D.N.Y.1995) (a mere delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation).[FN13] Thus, this court recommends that plaintiff's access-to-courts claim be dismissed as to all defendants.

> FN13. The fact that the Dutchess County District Attorney attempted to introduce a letter intercepted by the mail watch in late 2004 at plaintiff's criminal trial does not support a claim of prejudice for the purpose of an access-to-courts claim in this action, which is focused on the legality of the mail watch in 2008 to 2009. In any event, the state court criminal judge did not allow the letter to be used against Ford, so he was not prejudiced, in any event. *See Douglas v. Smith,* 9:05-CV-1000 (LEK/DRH), 2008 WL 434605, at *13 (N.D.N.Y. Feb. 14, 2008) (fact that letter seized by prison authorities and offered at plaintiff's criminal trial was suppressed by the state court judge negated any impact on him).

**C. Retaliation and Due Process**

**\*8** The second amended complaint suggests that the mail watch was instituted in retaliation for plaintiff's participation in protected activity and violated his due process rights. Conclusory allegations of retaliation, like those in plaintiff's complaint, are insufficient to support a viable claim of retaliation. *See, e.g., Douglas v. Smith,* 2008 WL 434605, at *15 (conclusory allegation that defendants' actions, including initiation of a mail watch, were motivated by plaintiff's filing of grievances, failed to state an actionable claim). Moreover, mere delays in the transfer of plaintiff's legal papers, even if motivated by retaliation, is not the type of "adverse action" required to support a retaliation claim. *See, e.g., Rivera v. Pataki,* No. 04 Civ. 1286, 2005 WL 407710, at *19 (S.D.N.Y. Feb. 7, 2005) (several temporary incidents of actively preventing plaintiff from mailing his legal documents were not sufficiently serious to constitute "adverse action"). With respect to the due process claim, the Second Circuit has held that the DOCS policies regarding discretionary restrictions on mail in prisons do not create a liberty interest protected by the due process clause. *Silano v. Sag*

*Harbor Union Free School Dist. Bd. of Educ.,* 42 F.3d 719, 724-25 (2d Cir.1994) (in *Purnell,* we rejected plaintiff's argument that a liberty interest relating to inmate mail was created by DOCS Directive 4422) (citing *Purnell v. Lord,* 952 F.2d 679, 685 (2d Cir.1992)).

**V. Due Process Claims Relating to Plaintiff's Disciplinary Hearing**

**A. Legal Standards**

The due process protections afforded inmates facing disciplinary hearings that affect a liberty interest include advance written notice of the charges, a fair and impartial hearing officer, a hearing that affords the inmate the opportunity to call witnesses and present documentary evidence, and a written statement of the evidence upon which the hearing officer relied in making his determination. *Sira v. Morton,* 380 F.3d at 69 (citing, *inter alia, Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974)). The hearing officer's findings must be supported by "some" or "a modicum" of "reliable evidence." *Id.* (citing, *inter alia, Superintendent v. Hill,* 472 U.S. 445, 455 (1985)). Violations of state regulations with respect to disciplinary hearings do not, by themselves, necessarily rise to the level of constitutional violations. *See, e.g., Soto v. Walker,* 44 F.3d 169, 173 (2d Cir.1995) (state law violation does not necessarily rise to the level of a constitutional violation); *Young v. County of Fulton,* 160 F .3d 899, 902 (2d Cir.1998) (violation of state law is not the "benchmark" for determining whether a constitutional violation has occurred). To establish a procedural due process claim in connection with a prison disciplinary hearing, an inmate must show that he was prejudiced by the alleged procedural deficiencies, in the sense that the errors affected the outcome of the hearing. *See, e.g., Clark v. Dannheim,* 590 F.Supp.2d 426, 429-31 (W.D.N.Y.2008) (citing, *inter alia, Powell v. Coughlin,* 953 F.2d 744, 750 (2d Cir.1991) ("it is entirely inappropriate to overturn the outcome of a prison disciplinary proceeding because of a procedural error without making the normal appellate assessment as to whether the error was harmless or prejudicial").

**\*9** An inmate's right to assistance with his disciplinary hearing is limited. *Silva v. Casey,* 992 F.2d 20, 22 (2d Cir.1993). An assistant has been held to be constitutionally necessary in cases in which a plaintiff is,

Slip Copy, 2011 WL 856416 (N.D.N.Y.)

(Cite as: 2011 WL 856416 (N.D.N.Y.))

*e.g.*, confined in SHU, and therefore, unable to marshal evidence and present a defense. *Id.* (citation omitted). In those cases, the assistant must do what the plaintiff would have done if he were able. *Id. See also Jackson v. Johnson,* 30 F.Supp.2d 613, 619 (S.D.N.Y.1998) (a hearing assistant's role is not to act as legal advisor or advocate, but to serve as a surrogate, performing functions, such as contacting witnesses, which the charged inmate could not do because he is not among the general population) (collecting cases); *Clyde v. Bellnier,* 9:08-CV-909, 2010 WL 1489897, at *6 (N.D.N.Y. Apr. 13, 2010) (Singleton, J.) (no due process violation arose when the hearing officer/assistant failed to provide documents that did not exist, were confidential, or were not relevant to the defense).

Although due process includes a right to call witnesses, this right is also not unfettered. *Alicia v. Howell,* 387 F.Supp.2d 227, 234 (W.D.N.Y.2005) (citing *Ponte v. Real,* 471 U.S. 491, 495 (1985)). This right may be limited for security reasons, to keep a hearing within reasonable limits, or on the basis of irrelevance or lack of necessity. *Id.* (citing, *inter alia, Kingsley v. Bureau of Prisons,* 937 F.2d 26, 30 (2d Cir.1991)). An inmate's due process rights are violated when a prison hearing officer refuses to interview witnesses without assigning a reason "logically related to preventing undue hazards to 'institutional safety or correctional goals.'" *Ponte v. Real,* 471 U.S. at 497. The burden is not upon the inmate to prove the official's conduct was arbitrary and capricious, but upon the official to prove the rationality of his position. *Id.* at 499; *Kingsley v. Bureau of Prisons,* 937 F.2d at 30-31.

**B. Application**

Plaintiff appears to claim that he was deprived of due process in connection with the disciplinary charges leveled against him in March 2009 because they were based on letters confiscated pursuant to an illegal mail watch. However, even if the mail watch was contrary to DOCS Directives or unconstitutional, plaintiff's letters would not be subject to suppression, and could be considered in the context of a prison disciplinary hearing. *See, e.g., Dillhunt v. Theriault,* 9:07-CV-0412 (GTS/DEP), 2009 WL 4985477, at *15 (N.D.N.Y. Dec. 15, 2009) (the "fruit of the poisonous tree doctrine," which applies to evidence

that is unconstitutionally obtained during a criminal investigation, has no applicability to prison disciplinary hearings) (citing *Rabb v. McMaher,* No. 94-CV-614, 1998 WL 214425, at *7 (N.D.N.Y. Apr. 24, 1998) (Pooler, J.)). *See also United States v. Green,* No. 92-CR-159C, 1994 WL 178139, at *5-6 (W.D.N.Y. Feb. 10, 1994) (Curtin, J.) (in the context of a criminal case, evidence from a mail watch may be introduced even though it was implemented in violation of DOCS Directive 4422).

**\*10** In the second amended complaint and the declaration in opposition to defendants' motion, the plaintiff specifies how he believes his due process rights were violated in connection with his disciplinary hearing. First, plaintiff claims that he was denied adequate assistance in preparing for the hearing because he was not provided with two types of documents-the records authorizing and stating the justification for the ongoing monitoring of his mail and his prior grievances, in response to which DOCS officials allegedly denied that the mail watch was in place. (AC ¶¶ 29, 56; Pltf.'s Decl., Dkt. No. 35 at 24, 53-57).[FN14] Plaintiff objects, in passing, that the hearing officer relied on information that "was never read into the record," (AC ¶ 56), presumably referring to *ex parte* testimony that the hearing officer received out of the presence of the plaintiff, because of security concerns. Plaintiff also alleges that he was improperly denied the right to call two witnesses at the hearing: (1) Supt. Smith, to testify about the circumstances relating to the approval of the ongoing mail watch, and (2) Lt. Barone, who plaintiff wanted to explain a perceived inconsistency in testimony about who the "reviewing officer" was for the inmate misbehavior report filed against plaintiff by Lt. Gardner. (Pltf.'s Decl., Dkt. No. 35 at 25-26, 59-62).

FN14. Because of the inconsistent page numbering of plaintiff's declaration, references will be to the page numbers in the CM-ECF header.

According to the hearing transcript submitted by plaintiff, he was denied requested documents regarding the authorization of his prior mail watch because the underlying facts were deemed confidential. (Dkt. No. 35-4 at 27-29, 57). Plaintiff was given some of his prior grievances, but requested all of his other grievances for

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

the prior five years which, he stated during the hearing, would show that officials at Shawangunk previously denied he was being subjected to a mail watch. (Dkt. No. 35-4 at 30, 33-35). Defendant Gutwein denied plaintiff the additional grievances, finding they would be "redundant." (Dkt. No. 35-4 at 57). Based on the authority cited above, the Hearing Officer's stated reasons for refusing plaintiff the additional documents appear, on their face, to be rationally related to penological goals of maintaining institutional security and avoiding repetitive and irrelevant evidence at the hearing. In any event, even if these documents were not properly denied, the procedural error would have had no impact on the outcome of plaintiff's disciplinary hearing and thus, would be harmless. Plaintiff was clearly attempting to use these documents to establish that the correspondence used against him at the hearing were seized pursuant to an illegal mail watch. However, as noted above, because there is no suppression remedy for illegally seized evidence in the context of a disciplinary hearing, plaintiff would not have altered the outcome of the hearing even if he were able to introduce additional evidence regarding the propriety of the mail watch.

At the conclusion of the hearing, defendant Gutwein notified plaintiff that he was relying, in part, on confidential testimony that he received from two witnesses when plaintiff was not present. (Dkt. No. 35-4 at 55-56). Taking testimony from witnesses out of plaintiff's presence does not violate due process requirements. *Bolden v. Alston,* 810 F.2d 353, 358 (2d Cir.1987) (citing *Baxter v. Palmigiano,* 425 U.S. 308, 322-23 & n. 5 (1976) (inmates are not entitled to the right to confront and cross-examine witnesses at a disciplinary hearing, and the hearing officer may rely upon evidence not presented at the hearing). The witnesses called at plaintiff's disciplinary hearing included Lt. Gardner, who issued the misbehavior report against plaintiff; the two inmates who were implicated in the correspondence by which plaintiff allegedly tried to induce one to assault the other; Sgt. Kimler, who testified about the assistance she provided plaintiff in connection with the hearing; and Dep. Supt. Maly who testified, *inter alia,* about the mail watch which resulted in the discovery of the correspondence which was the basis of the charges against the plaintiff. (Dkt. No. 35-4 at 58). Plaintiff Ford also wanted to call Supt. Smith regarding the reasons for the authorization of the mail watch. Defendant Gutwein

denied this request, finding that Supt. Smith's testimony would be redundant given that Dep. Supt. Maly had already testified about the mail watch. (Dkt. No. 35-4 at 56). The Hearing Officer's stated reason for not calling Supt. Smith was rationally related to the penological goal of avoiding duplicative evidence at the hearing. In any event, plaintiff's attempt to call Supt. Smith was clearly part of his effort to prove the illegality of the mail watch. Again, because the seized correspondence would not have been subject to suppression even if plaintiff had proven that the mail watch was illegal, any procedural error relating to not calling Supt. Smith would not have effected the outcome of the hearing, and would be harmless.

**\*11** Plaintiff also asked to call a "Lt. Barone" to clarify an alleged inconsistency between Lt. Gardner and Sgt. Kimler about who was the "reviewing" officer on Lt. Gardner's misbehavior report against plaintiff. Defendant Gutwein denied the request for this further testimony as being irrelevant and redundant. (Dkt. No. 35-4 at 57). Despite the plaintiff's extensive efforts to articulate why this testimony was relevant to his hearing (Pltf.'s Decl., Dkt. No. 35 at 24-26, 59-63), this court does not find that further evidence regarding this minor procedural issue would have been relevant or would have any impact on the outcome of the hearing. Based on the submissions of plaintiff, this court concludes that the second amended complaint fails to state a plausible due process claim relating to the disciplinary hearing.

### VI. Denial of Plaintiff's Request to Marry

The Supreme Court has recognized that prisoners have a fundamental constitutional right to marry. *Turner v. Safely,* 482 U.S. at 95, 96 (citing *Zablocki v. Redhail,* 434 U.S. 374 (1978) and *Loving v. Virginia,* 388 U.S. 1, 12 (1967)). However, the right to marry, like many other rights is subject to substantial restrictions as a result of incarceration. *Turner,* 482 U.S. at 95. In determining whether a prison regulation that infringes on a fundamental right is reasonable, a court must decide: (1) whether there is a "valid rational connection" between the regulation and a legitimate and neutral governmental interest put forward to justify it; (2) whether there are alternative means of exercising the asserted constitutional right; (3) whether and the extent to which accommodation

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 856416 (N.D.N.Y.)

(Cite as: 2011 WL 856416 (N.D.N.Y.))

of the asserted right will have an impact on prison staff, on an inmates' liberty, and on the allocation of limited prison resources; and (4) whether the regulation is reasonable, or whether it represents an "exaggerated response" to prison concerns. *Turner,* 482 U.S. at 89-90.[FN15]

> FN15. The *Turner* court did not decide whether an inmate's right to marry should be reviewed under a more stringent standard than the "reasonable relationship" test because it also implicates the rights of marriage partners who are not prisoners. *Turner v. Safely,* 482 U.S. 97. However, two years thereafter, the Supreme Court has made clear that to apply a heightened level of scrutiny to cases involving prison regulations affecting the rights of both prisoners and outsiders would unreasonably constrain the corrections system. *See Thornburgh v. Abbott,* 490 U.S. 401, 410 n. 9 (1989) (any attempt to forge separate standards for cases implicating the First Amendment rights of outsiders and inmates is out of step with Supreme Court case law).

Plaintiff alleges that defendant Smith denied his request to marry based on his long-term SHU status, pursuant to DOCS Directive 4201, which grants the Superintendent of a DOCS facility the discretion to deny a marriage request for an inmate confined in disciplinary housing. (AC ¶¶ 16-17, 20).[FN16] At the time he made his request, plaintiff faced approximately four more years in SHU confinement.

> FN16. Plaintiff also makes conclusory allegations that Supt. Smith denied plaintiff's request to marry in retaliation for his filing of grievances and lawsuits. (AC ¶ 46). The only factual support for the claim of retaliation is an allegation that Supt. Smith told plaintiff that he would not allow him to marry because of his involvement in the assault of a correction officer at Green Haven. (AC ¶ 18). Participation in an assault is not a protected activity that can form the basis for a retaliation claim. Based on the authority set forth below, plaintiff's unsupported allegations fail to state a plausible claim of retaliation relating to the denial of his marriage request. Plaintiff also asserts that the refusal of

his marriage request violated his Eighth Amendment rights, but the court finds no authority to suggest that the inability to marry is the type of cruel and unusual deprivation required to support such a claim. *See Johnson v. Rockefeller,* 365 F.Supp. 377, 381 (S.D.N.Y.1973) (the prohibition against participating in the marriage ceremony does not subject a life-term prisoner to a "fate forbidden by the principle of civilized treatment guaranteed by the Eighth Amendment," nor is it "barbarous" or "shocking to the conscience"), *aff'd without opinion sub nom. Butler v. Wilson,* 415 U.S. 953 (1974). *Johnson v. Rockefeller* was distinguished, but not repudiated in *Turner v. Safely,* 482 U.S. at 97, leading this court to conclude that the denial of plaintiff's marriage request should be evaluated under the *Turner* standards, not the Eighth Amendment.

In *Turner,* the Supreme Court invalidated a Missouri regulation which prohibited inmates from marrying other inmates or civilians unless the prison superintendent determined that were compelling reasons for the marriage, finding that this "almost complete ban on the decision to marry" was not reasonably related to any legitimate penological objective. *Turner v. Safely,* 482 U.S. at 94-99). There is some case law which suggests that temporary delays in allowing an inmate to marry for disciplinary reasons would pass muster under the *Turner* standards, but that indefinite or prolonged refusals might not. *See, e.g., Castellanos v. Gomez,* C-93-0503, 1994 WL 519465, at *6 (N.D.Cal. Sept. 21, 1994) (although defendants' initial statement to plaintiff that there were no procedures in place for SHU inmate marriages approaches the blanket denial of marriage held unconstitutional in *Turner,* defendants moved expeditiously to put procedures in place to allow the marriage; plaintiff's Section 1983 claims based on the defendants' 12-month delay in allowing his marriage dismissed under Rule 56); *Martin v. Snyder,* 329 F.3d 919, 921-22 (7th Cir.2003) (because warden postponed, but did not preclude inmate's marriage based on a disciplinary charge and temporary denial of visitation of plaintiff's girlfriend, constitutional claim based on 12-month delay in marriage was properly dismissed).

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 856416 (N.D.N.Y.)

(Cite as: 2011 WL 856416 (N.D.N.Y.))

**\*12** Because prison officials have some burden to demonstrate a penological justification for restricting an inmate's right to marry, and to satisfy the other elements of the *Turner* test, such claims are not conducive to resolution in the context of a Rule 12(b)(6) motion to dismiss.[FN17] *See, e.g., Martin v. Snyder,* 329 F.3d 921, 922 (a legitimate penological justification for refusing to allow an inmate's marriage is a defense that cannot be adjudicated under Rule 12(b)(6)); *Engel v. Ricci,* 07-5354, 2008 WL 2167994, at *5-6 (D.N.J. May 22, 2008) (denying a Rule 12(b)(6) motion to dismiss a claim based on a 19-month delay in approval of an inmate's marriage). As discussed above, defendant Smith has presented and defended his reasons for denying plaintiff's request to marry in an affidavit and supporting documents that are not fairly considered against the plaintiff in the context of this motion to dismiss. Based on the facts properly before this court in addressing the pending motion, it is unclear whether Supt. Smith refused plaintiff's right to marry for the four years or more he remained in the SHU, or whether he would reconsider approval while plaintiff was still confined in a disciplinary setting. This court concludes that the second amended complaint states a facially valid First Amendment claim against defendant Smith relating to his denial of the marriage request. Supt. Smith is, of course, not precluded from establishing, in the context of a properly noticed summary judgment motion, that his decision passes muster under the *Turner* standards.

> FN17. *See Salahuddin v. Goord,* 467 F.3d 263, 275 (2d Cir.2006) (under *Turner,* the defendants bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct; the burden remains with the prisoner to show that these articulated concerns were irrational).

**VII. Visitation**

**A. Imputed First Amendment Claim**

In *Overton v. Bazzetta,* the Supreme Court considered the nature and scope of visitation rights of prisoners:

Many of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner. An inmate

does not retain rights inconsistent with proper incarceration.... And, as our cases have established, freedom of association is among the rights least compatible with incarceration.... Some curtailment of that freedom must be expected in the prison context.

We do not hold, and we do not imply, that any right to intimate association is altogether terminated by incarceration or is always irrelevant to claims made by prisoners.

*Overton v. Bazzetta,* 529 U.S. 126, 131 (2003). The Court concluded that it did not need to explore and define, at length, the associational rights of inmates under the First Amendment, because the restrictions in question, including an indefinite ban [FN18] on the visitation rights of prisoners with two substance abuse violations, bore "a rational relation to legitimate penological interests" under the standards of *Turner v. Safely. Id.* at 132, 134-36.

> FN18. The visitation ban had a term of at least two years; reinstatement at the end of that period was not automatic, but could be granted the discretion of the warden. *Id.* at 130, 134.

"[I]nmates who claim that restrictions on their visitation privileges violated their First Amendment right to association ... must allege facts sufficient to support a finding that the challenged restrictions bear no 'rational relation to legitimate penological interests.' " *Calderon v. Conn. Dep't of Corrs.,* Civ. 04-1562, 2006 WL 3085716, at *9 (D.Conn. Sept. 1, 2006) (quoting *Overton v. Bazzetta,* 539 U.S. at 131-32). Plaintiff does not explicitly raise a First Amendment challenge to the visitation restrictions imposed on him, although this court will liberally construe his complaint to raise such a claim. Plaintiff acknowledges that the visiting privileges of his fiancee were indefinitely suspended in April 2009 because of her alleged involvement in smuggling a note from another inmate to plaintiff in the visiting room, and because of concerns for her safety based on the intercepted letter in which plaintiff allegedly asked another individual to harass and threaten her. (AC ¶¶ 24, 30-32, 34). These are clearly legitimate penological interests that justified Supt. Smith's suspension of plaintiff's fiancee's visiting privileges under the *Turner* standards. *See, e.g., Calderon*

Slip Copy, 2011 WL 856416 (N.D.N.Y.)

(Cite as: 2011 WL 856416 (N.D.N.Y.))

*v. Conn. Dep't of Corrs.,* 2006 WL 3085716, at *9, 11 (denial of visitation for disciplinary reasons would likely constitute a legitimate penological interest under Rule 12(b)(6) standards; only the claim that visitation was denied because of plaintiff's ethnicity was not dismissed); *Phillips v. Girdich,* 9:03-CV-1019 (DNH/DHR), 2007 WL 3046744, at *2-4 (N.D.N.Y. Oct. 17, 2007) (indefinite suspension of visitation privileges, lasting about three years, imposed due to improper conduct during a visit and an ensuing positive drug test, advanced legitimate penological goals and otherwise satisfied the *Turner* criteria); *Hernandez v. McGinnis,* 272 F.Supp.2d 223, 227-28 (W.D.N.Y.2003) (revocation of inmate's visitation rights, which lasted roughly three years, served a legitimate purpose-deterring visit-related misconduct and promoting internal security).

**B. Due Process Claim**

*13 To prevail on a procedural due process claim under section 1983, a plaintiff must show that he possessed a protected property or liberty interest and that he was deprived of that interest without being afforded sufficient procedural safeguards. *See Tellier v. Fields,* 280 F.3d 69, 79-80 (2d Cir.2000) (liberty interest); *Hynes v. Squillace,* 143 F.3d 653, 658 (2d Cir.1998). In *Sandin v. Conner,* 515 U.S. 472, 484 (1995), the Supreme Court held that although states may create liberty interests for inmates that are protected by due process, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force ..., nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Following the Supreme Court's decision in *Sandin v. Connor,* "in a majority (if not the entirety) of the circuits-including the Second Circuit-prisoners have no protected liberty interest in contact visits." *Zimmerman v. Burge,* 06-CV-0176 (GLS-GHL), 2008 WL 850677, at *2-3, 12 & n. 53 (N.D.N.Y. Mar. 28, 2008) (collecting cases) (restrictions on the conditions in which inmates may visit with non-inmates would appear to be a hardship that is rather typical and necessary in relation to the ordinary incidents of prison life, and thus does not implicate a protected liberty interest).[FN19]

FN19. To the extent plaintiff predicates his due process claim regarding visitation on alleged violations of DOCS directives or state regulations (AC ¶ 31), that alone does not support a viable constitutional claim under Section 1983. *Id.* at *11 & n. 48; *Holcomb v. Lykens,* 337 F.3d 217, 224-25 (2d Cir.2003) (state corrections officials did not violate inmate's due process rights when they revoked inmate's extended furlough without following procedures outlined in department of corrections manual).

Although plaintiff alleges that his complaints to the DOCS Commissioner about the denial of his fiancee's visitation rights were not answered (AC ¶¶ 35, 51 (p. 30)), he attaches to his opposition papers several grievances regarding the visitation issue that were considered and denied by DOCS. (Dkt. 35-6 at 3-6). Even if restrictions on visitation implicated some limited liberty interest, the grievance process would provide adequate due process under the circumstances. *Id.* at * 13.

**C. Eighth Amendment Claim**

To the extent plaintiff is alleging that the restriction on his visitation rights violated the Eighth Amendment, he fails to state a claim upon which relief may be granted. Under Supreme Court and Second Circuit authority, the challenged denial of visitation "does not amount to the infliction of pain at all, and that, even if it did, it does not amount to the sort of wanton (and penologically unjustified) infliction of pain prohibited by the Eighth Amendment." *Id.* at *3, 14 & n. 63 (citing, *inter alia, Overton v. Bazzetta,* 539 U.S. at 136-137 (prison regulation that subjected inmates with two substance-abuse violations to ban of at least two years on all visitation privileges did not create inhumane prison conditions, or deprive the inmate of basic necessities, under Eighth Amendment).

**D. Retaliation Claim**

The second amended complaint makes completely unsupported claims that certain defendants restricted his visitation rights in retaliation for his filing of grievances and lawsuits. (AC ¶¶ 30, 46). Based on the authority cited below, such conclusory allegations are insufficient to state

Slip Copy, 2011 WL 856416 (N.D.N.Y.)

(Cite as: 2011 WL 856416 (N.D.N.Y.))

a plausible claim of retaliation.

**VIII. Personal Involvement of Defendant Fischer**

   **\*14** Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and *respondeat superior* is an inappropriate theory of liability. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citation omitted); *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003). In *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation, and thus be subject to individual liability.

   A supervisory official is personally involved if that official directly participated in the infraction. *Id.* The defendant may have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id.* Personal involvement may also exist if the official created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id.* Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id. See also Iqbal v. Hasty,* 490 F.3d 143, 152-53 (2d Cir.2007) (citing *Colon v. Coughlin,* 58 F.3d 865, 873) (2d Cir.1995)), *rev'd on other grounds,* 129 S.Ct. 1937 (U.S.2009).

   DOCS Commissioner Fischer is mentioned as a defendant in a number of the causes of action in the second amended complaint. However, plaintiff's allegation that defendant Fischer failed to respond to written appeals/complaints regarding the denial of his fiancee's visitation rights (AC ¶¶ 35, 51), is the sole basis for the claim that Commissioner Fischer was involved in any of the purported constitutional violations. As noted above, defendant also filed grievances with regard to the restrictions on his visitation, which were addressed by DOCS. Defendant Fischer's receipt of, and/or failure to respond to, plaintiff's letters of complaint is not a sufficient basis to render him liable under Section 1983, and he should be dismissed from this action. *See, e.g., Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir.1997) (DOCS commissioner was not personally involved in alleged constitutional violation where he only referred plaintiff's complaint to a subordinate for decision); *Greenwaldt v.*

*Coughlin,* No. 93 Civ. 6551(LAP), 1995 WL 232736, at \*4 (S.D.N.Y. Apr. 19, 1995) ("[I]t is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations ." ) (collecting cases).

**IX. Retaliation-Cell Searches**

**A. Legal Standards**

   In order to establish a claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the conduct was a substantial motivating factor for "adverse action" taken against him by defendants. *Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir.2003). The plaintiff must establish a causal connection between the protected conduct or speech and the adverse action. *Gill v. Pidlypchak,* 389 F.3d 379, 380 (2d Cir.2004).

   **\*15** The Second Circuit has defined "adverse action" in the prison context as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights.' " *Gill v. Pidlypchak,* 389 F.3d at 381 (citations omitted). This objective test applies even if the plaintiff was not himself subjectively deterred from exercising his rights. *Id.*

   The court must keep in mind that claims of retaliation are "easily fabricated" and "pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration." *Bennett,* 343 F.3d at 137 (citation omitted). Accordingly, plaintiff must set forth non-conclusory allegations. *Id.* Even if plaintiff makes the appropriate showing, defendants may avoid liability if they demonstrate that they would have taken the adverse action even in the absence of the protected conduct. *Id.* (citing, *inter alia, Mount Healthy Sch. Dist. v. Doyle,* 429 U.S. 274, 287 (1977))

**B. Application**

   As noted above, plaintiff makes conclusory allegations that, in carrying out most of the conduct described in the second amended complaint, the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 856416 (N.D.N.Y.)

(Cite as: 2011 WL 856416 (N.D.N.Y.))

defendants were retaliating against him for filing grievances and lawsuits against DOCS officials. The only instance in which plaintiff provides any supporting facts relates to the three cell searches conducted at Shawangunk in July 2009. Plaintiff claims that, just after the first search, he had received correspondence from the court relating to this lawsuit, and he was doing legal research in this case and in connection with a post-conviction proceeding in his criminal case. (AC ¶¶ 37-38). During the second search, on July 16th, two correction officers purportedly told plaintiff that they were directed by "higher ups," including defendants Smith and Maly, to destroy his cell because plaintiff "pissed them off." He was also allegedly told that the officers were directed to take his legal magazines and books. (*Id.*). However, even if these allegations, accepted as true, were sufficient to support a plausible claim of a connection between his protected activities involving litigation and the searches of his cell, plaintiff cannot state a viable cause of action for retaliation. Numerous cases in this circuit have held a prison cell search is not the type of "adverse action" that can support a viable claim of retaliation. *See, e.g, Lebron v. Selsky,* 9:05-CV-172 (GTS/DRH), 2010 WL 1235593, at *5 & n. 8 (N.D.N .Y. Mar. 21, 2010) (collecting cases) (cell searches, even if conducted because of retaliatory motives, are not actionable under Section 1983).

**WHEREFORE,** based on the findings above, it is

**RECOMMENDED,** that defendants' motion to dismiss (Dkt. No. 32) be denied with respect to the First Amendment claim against defendants Maly and Smith relating to the continuation of the mail watch against plaintiff in 2008 and 2009, and the First Amendment claim against defendant Smith relating to his refusal to permit plaintiff to marry; and it is further

**\*16 RECOMMENDED,** that defendants' motion be granted and plaintiff's second amended complaint be dismissed with respect to all other defendants and claims.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE**

REVIEW. *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

N.D.N.Y.,2011.

Ford v. Fischer
Slip Copy, 2011 WL 856416 (N.D.N.Y.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Slip Copy, 2011 WL 1085983 (N.D.N.Y.)

(Cite as: 2011 WL 1085983 (N.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
James Davon RICHARDSON, Plaintiff,
v.
Deborah G. SCHULT,[FN1] Ph.D., Warden, and Mr.
Poirier, Officer, Defendants.

FN1. In plaintiff's complaint Warden Schult's
name is misspelled as "Schultz." The court's
records in the case have been amended to reflect
the correct spelling of that defendant's name.

Civil Action No. 9:09-CV-0868 (GLS/DEP).

Jan. 19, 2011.
James Davon Richardson, Fairton, NJ, pro se.

Hon. Richard S. Hartunian, United States Attorney,
Northern District of New York, Charles E. Roberts, Esq.,
Assistant U.S. Attorney, of Counsel, Syracuse, NY, for the
Defendants.

### *REPORT AND RECOMMENDATION*

DAVID E. PEEBLES, United States Magistrate Judge.

*1 Plaintiff James Davon Richardson, a federal
inmate who is proceeding *pro se* and *in forma pauperis,*
has commenced this action against the warden of the
correctional facility in which he was housed at the relevant
times as well as a corrections officer also assigned to work
there, alleging deprivation of his civil rights. Plaintiff's
claims arise from an incident during which, he claims, the
defendant corrections officer sprayed him with the
contents of a fire extinguisher while he was in his cell and,
following Richardson's threat to lodge a complaint,
engaged in a pattern of harassment against him. Plaintiff
maintains that when the occurrence was reported to the
warden she failed to take appropriate corrective measures.
As relief, plaintiff seeks $1 million in compensatory
damages and an additional $1 million in punitive damages

against each of the two named defendants.

In response to plaintiff's complaint, both defendants
have moved for its dismissal for failure to state a claim
upon which relief may be granted. In the alternative, the
corrections officer defendant requests the entry of
summary judgment dismissing plaintiff's claims against
him based upon additional record evidence submitted in
support of his motion. For the reasons set forth below, I
recommend that both motions be granted, and that
plaintiff's complaint be dismissed, with leave to replead.

I. *BACKGROUND*[FN2]

FN2. For purposes of defendant Poirier's motion,
which as will be seen is being treated as a motion
for summary judgment, the following recitation
is derived from the record now before the court
with all inferences drawn and ambiguities
resolved in favor of the plaintiff. *Terry v.
Ashcroft,* 336 F.3d 128, 137 (2d Cir.2003). The
focus of defendant Schult's motion is upon the
facts drawn principally from plaintiff's
complaint, the contents of which have been
accepted as true for purposes of the pending
motion, *see Erickson v. Pardus,* 551 U.S. 89, 94,
127 S.Ct. 2197, 2200 (2007) (citing *Bell Atlantic
Corp. v. Twombly,* 550 U.S. 544, 555-56, 127
S.Ct. 1955, 1965 (2007)); *see also Cooper v.
Pate,* 378 U.S. 546, 546, 84 S.Ct. 1733, 1734
(1964), as supplemented by the materials
submitted by the plaintiff in opposition to
defendants' motion, Dkt. No. 27, to the extent
they are consistent with the allegations set forth
in his complaint. *See Donhauser v. Goord,* 314
F.Supp.2d 119, 121 (N.D.N.Y.2004) (Hurd, J.).

Plaintiff is a prison inmate entrusted to the care and
custody of the United States Bureau of Prisons ("BOP");
at the times relevant to his claims Richardson was
designated to the Ray Brook Federal Correctional
Institution ("FCI Ray Brook"), located in Ray Brook, New
York, and was assigned to a two person cell in the
facility's special housing unit ("SHU").[FN3] Complaint (Dkt.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 1085983 (N.D.N.Y.)

(Cite as: 2011 WL 1085983 (N.D.N.Y.))

No. 1) ¶¶ 1, 5, 12; *see also* Poirier Decl. (Dkt. No. 20-8) ¶¶ 2-3. At all relevant times, defendant Deborah G. Schult served as the warden of FCI Ray Brook. *See generally* Complaint (Dkt. No. 1).

> FN3. At the time of the incident giving rise to plaintiff's claims it does not appear that he had a cell mate. Poirier Decl. (Dkt. No. 20-8) ¶ 3.

During the early morning hours of September 26, 2008, while making rounds, defendant Jason Poirier, a corrections officer assigned to work in the FCI Ray Brook SHU, sprayed the plaintiff with liquid contents of a silver fire extinguisher through the slot of plaintiff's cell door. Complaint (Dkt. No. 1) ¶ 5(A); Poirier Decl. (Dkt. No. 20-8) ¶¶ 2-5. According to Poirier's version of the events, his decision to spray the plaintiff stemmed from the fact that his view was obscured by a sheet hanging from the top bunk "like a curtain", preventing him from seeing whether plaintiff was in his assigned bunk.[FN4] Poirier Decl. (Dkt. No. 20-8) ¶ 3. After plaintiff complained to Poirier concerning the incident and asked to see a superior officer for purposes of making a complaint, defendant Poirier proceeded to harass him both verbally and by banging and kicking on his cell door throughout the remainder of the evening. Complaint (Dkt. No. 1) ¶ 5(A).

> FN4. Plaintiff denies that Corrections Officer Poirier's view into his cell was obscured by the hanging sheet. *See* Plaintiff's Opposition Memorandum (Dkt. No. 27) ¶ 27.

**\*2** Following the encounter plaintiff complained to prison officials through the filing of an administrative remedy complaint utilizing a BOP printed form (BP-9). Complaint (Dkt. No. 1) ¶ 5(B). Plaintiff was thereafter examined by a registered nurse for purposes of making an injury assessment, and six photographs of him were taken. Complaint (Dkt. No. 1) ¶ 5(B); Marini Decl. (Dkt. No. 20-6) ¶ 3. Neither the nurse's examination nor the photographs revealed any objective evidence of injury, although plaintiff reported having difficulty in breathing and of suffering from a rash .[FN5] Marini Decl. (Dkt. No. 20-6) ¶¶ 4-8.

> FN5. The examination did reveal the presence of

mild dryness of skin on plaintiff's back. Marini Decl. (Dkt. No. 20-6) ¶¶ 5, 9. That condition is attributed to plaintiff's chronicled history of eczema which predated the September 26, 2008 incident, and for which he has been prescribed Triamcinolone cream. *Id.* at ¶ 9.

A second incident involving plaintiff and Corrections Officer Poirier occurred on or about November 14, 2008 as plaintiff was returning to his housing unit from the facility dining hall. Complaint (Dkt. No. 1) ¶ 5(D). On that occasion, as plaintiff was about to enter a metal detector he was instead directed by defendant Poirier to submit to a pat search, a directive plaintiff attributes to continued ongoing harassment stemming from his complaint regarding the earlier incident.[FN6] Complaint (Dkt. No. 1) ¶ 5(D). Plaintiff was later called back to the "shake-down shack" by defendant Poirier, who apologized for his prior conduct, which he acknowledged was unprofessional. Complaint (Dkt. No. 1) ¶ 5(D); Poirier Decl. (Dkt. No. 20-8) ¶ 7.

> FN6. According to defendant Poirier, on that date plaintiff was wearing prohibited head gear which was confiscated. Poirier Decl. (Dkt. No. 20-8) ¶ 7. Plaintiff was not charged with any misconduct in connection with the incident. *Id.*

Defendant Poirier was ultimately suspended for ten days by Warden Schult as a result of the fire extinguisher spraying incident. Poirier Decl. (Dkt. No. 20-8) ¶ 6.

## II. *PROCEDURAL HISTORY*

Plaintiff commenced this action on July 30, 2009. Dkt. No. 1. Plaintiff's complaint names Warden Schult and Corrections Officer Poirier as defendants, and asserts a single cause of action which, while not directly so stating, appears to allege cruel and unusual punishment, in violation of his rights under the Eighth Amendment.[FN7] *See id.*

> FN7. Plaintiff's Eighth Amendment claim is brought pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 407 U.S. 388, 91 S.Ct. 1999 (1971), in which the Court recognized the existence of an analog to

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 1085983 (N.D.N.Y.)

(Cite as: 2011 WL 1085983 (N.D.N.Y.))

42 U.S.C.1983 for constitutional claims asserted against federal employees. *Hartman v. Moore,* 547 U.S. 250, 254 n.2, 126 S.Ct. 1695, 1700 (2006); *see also Chin v. Bowen,* 833 F.2d 21, 24 (2d Cir.1987).

Following service of the plaintiff's complaint but prior to any pretrial discovery in the action, defendants moved on March 17, 2010 to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. No. 20. Defendant Poirier's motion also requests, in the alternative, the entry of summary judgment based upon the additional materials submitted in support of that motion. *Id.* Plaintiff has since responded on July 1, 2010 in opposition to defendants' motion, Dkt. No. 27, which is now fully briefed and ripe for disposition and has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See also* Fed.R.Civ.P. 72(b).

III. *DISCUSSION*

A. *Dismissal Motion Standard*

A motion to dismiss a complaint, brought pursuant to Rule 12(b) (6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading, utilizing as a backdrop a pleading standard which, though unexacting in its requirements, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny. *Ashcroft v. Iqbal,* --- U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 555, 127 S.Ct. 1955, (2007)). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). *Id.* While modest in its requirement, that rule commands that a complaint contain more than mere legal conclusions; "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft,* 129 S.Ct. at 1950.

**\*3** To withstand a motion to dismiss, a complaint must plead sufficient facts which, when accepted as true, state a claim which is plausible on its face. *Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir.2008) (citing *Twombly,* 550 U.S. at 570, 127 S.Ct. at 1974). As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.' " *In re Elevator Antitrust Litig.,* 502 F.3d 47, 50 (2d Cir.2007) (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. at 1974).

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party. *Cooper v. Pate,* 378 U.S. 546, 546, 84 S.Ct. 1723, 1734 (1964); *Miller v. Wolpoff & Abramson, LLP,* 321 F.3d 292, 300 (2d Cir.2003), *cert. denied,* 540 U.S. 823, 124 S.Ct. 153 (2003); *Burke v. Gregory,* 356 F.Supp.2d 179, 182 (N.D.N.Y.2005) (Kahn, J.). The burden undertaken by a party requesting dismissal of a complaint under Rule 12(b)(6) is substantial; the question presented by such a motion is not whether the plaintiff is likely ultimately to prevail, " 'but whether the claimant is entitled to offer evidence to support the claims.' " *Log On America, Inc. v. Promethean Asset Mgmt. L.L.C.,* 223 F.Supp.2d 435, 441 (S.D.N.Y.2001) (quoting *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995)) (citations and quotations omitted).

B. *Summary Judgment Standard*

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, summary judgment is warranted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.,* 391 F.3d 77, 82-83 (2d Cir.2004). A fact is "material," for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *see also Jeffreys v. City of New York,* 426 F.3d 549, 553 (2d Cir.2005) (citing *Anderson*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 1085983 (N.D.N.Y.)

(Cite as: 2011 WL 1085983 (N.D.N.Y.))

). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson,* 477 U.S. at 250 n.4, 106 S.Ct. at 2511 n.4; *Security Ins.,* 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than mere "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 620-21 (2d Cir.1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

**\*4** When deciding a summary judgment motion, a court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party. *Jeffreys,* 426 F.3d at 553; *Wright v. Coughlin,* 132 F.3d 133, 137-38 (2d Cir.1998). The entry of summary judgment is warranted only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *See Building Trades Employers' Educ. Ass'n v. McGowan,* 311 F.3d 501, 507-08 (2d Cir.2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

C. *Personal Involvement*

In her motion defendant Schult argues that plaintiff's allegations are insufficient to establish her liability in connection with the constitutional violation alleged. In support of that contention defendant Schult notes that plaintiff's allegations appear to be predicated principally

upon a theory of *respondeat superior,* based upon the actions of Corrections Officer Poirier, and his further assertion that she was negligent in her handling of the matter and argues that neither theory would support a claim against her.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages both in a *Bivens* action and under its state action counterpart, section 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282 (1978)); *see also Walker v. Snyder,* No. 9:05-CV-1372, 2007 WL 2454191, at * 5 (N.D.N.Y. Aug.23, 2007) (Sharpe, J. and DiBianco, M.J) [FN8]; *Sash v. United States,* 674 F.Supp.2d 531, 542 (S.D.N.Y.2009). In order to prevail on either a claim under *Bivens* or section 1983 against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant. *See Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986).

> FN8. Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

Certain of plaintiff's allegations signal that his theory of liability against Warden Schult is predicated, at least in large part, upon *respondeat superior.* In his complaint, for example, plaintiff alleges that "defendant Schult is held accountable and responsible for the actions of her subordinates." Complaint (Dkt. No. 1) ¶ 6(C). Such allegations do not provide a basis for finding liability on the part of a supervisory employee; a supervisor cannot be liable for damages under section 1983 or in a *Bivens* setting solely by virtue of being a supervisor, as there is no *respondeat superior* liability in those circumstances. *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003); *Wright,* 21 F.3d at 501. Accordingly, any claims against defendant Schult based solely upon her position as warden and the conduct of her subordinates, standing alone, are not cognizable in a *Bivens* setting. *Walker,* 2007 WL 2454194, at * 5.

**\*5** On more than one occasion plaintiff's complaint

Slip Copy, 2011 WL 1085983 (N.D.N.Y.)

(Cite as: 2011 WL 1085983 (N.D.N.Y.))

alleges that Warden Schult was negligent in the performance of her duties. *See, e.g.,* Complaint (Dkt. No. 1) ¶¶ 8, 9. Mere negligence, however, does not rise to a level sufficient to support a constitutional claim under *Bivens. Davidson v. Canon,* 474 U.S. 344, 347-348, 106 S.Ct. 668, 670 (1986). Accordingly, any claim based solely upon plaintiff's assertion that defendant Schult was negligent in the performance of her duties is similarly without merit.

In this circuit it has historically been generally accepted that culpability on the part of a supervisory official for a civil rights violation can only be established in one of several ways, including when that individual 1) has directly participated in the challenged conduct; 2) after learning of the violation, such as through a report or appeal, has failed to remedy the wrong; 3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) was grossly negligent in managing the subordinates who caused the unlawful event; or 5) failed to act on information indicating that unconstitutional acts were occurring. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995); *see also Richardson v. Goord,* 349 F.3d at 435. More recently, however, the issue of supervisory liability for civil rights violation under *Bivens* was addressed by the Supreme Court in its decision in *Iqbal.* In that case, the Court made it clear that a governmental official, regardless of title, is accountable only for his or her conduct in such a setting, and that as such the term "supervisory liability" is a misnomer. *Iqbal,* 129 S.Ct. at 1948.

The Second Circuit has yet to address the impact of *Iqbal* upon the categories of supervisory liability under *Colon.* Lower courts have struggled with this issue, and specifically whether *Iqbal* effectively calls into question certain prongs of the *Colon* five-part test for supervisory liability. *See Sash,* 674 F.Supp.2d at 542-544; *see also Stewart v. Howard,* No. 9:09-CV-0069 (GLS/GHL), 2010 WL 3907227, at *12 n.10 (N.D.N.Y. Apr. 26, 2010) ("The Supreme Court's decision in [*Iqbal* ] arguably casts in doubt the continued vitality of some of the categories set forth in *Colon.*" ) (citations omitted), *report and recommendation adopted,* 2010 WL 3907137 (Sept. 30, 2010). While some courts have taken the position that only the first and third of the five *Colon* categories remain

viable and can support a finding of supervisory liability, *see, e.g., Bellamy v. Mount Vernon Hosp.,* No.07 CIV. 1801, 2009 WL1835939, at *6 (S.D.N.Y. June 26, 2009), *aff'd,* 387 Fed. App'x 55 (2d Cir.2010), others disagree and conclude that whether any of the five categories apply in any particular case depends upon the particular violations alleged and the supervisor's participatory role, *see, e.g., D'Olimpio v. Crisafi,* Nos. 09 Civ. 7283(JSR), 09 Civ. 9952(JSR), 2010 WL 2428128, at *5 (S.D.N.Y. Jun. 15, 2010); *Qasem v. Toro,* No. 09 Civ. 8361(SHS), 2010 WL 3156031, at *4 (S.D.N.Y. Aug. 10, 2010).

**\*6** I have assumed, for purposes of my analysis, the continued applicability of the *Colon* factors. Nonetheless, I conclude in this instance they do not support a finding of liability based upon the allegations of plaintiff's complaint. Plaintiff does not argue that Warden Schult directly participated in Corrections Officer Poirier's spraying of him using the fire extinguisher. [FN9] Instead, plaintiff appears to be claiming that after learning of the violation defendant Schult failed to act to remedy the wrong and to insure that unconstitutional acts were not ongoing under her supervision. [FN10]

> FN9. It is true that plaintiff's complaint contains the bald assertion that Warden Schult conspired with Corrections Officer Poirier to harass him. *See, e.g.,* Complaint (Dkt. No. 1) ¶ 2. The allegations of plaintiff's complaint, however, are insufficient to plead a plausible conspiracy claim. To support a claim of conspiracy in a civil rights setting such as this a plaintiff must establish that a defendant acted willfully, resulting in an agreement, or meeting of the minds, to violate rights secured by the constitution. *Loria v. Butera,* No. 5:09-CV-531, 2010 WL 3909884, at * 6 (N.D.N.Y. Sept. 29, 2010) (Scullin, S.J.) *Malsh v. Austin,* 901 F.Supp. 757, 763 (S.D.N.Y.1995). Conclusory allegations like those contained within plaintiff's complaint do not suffice to establish a plausible claim of conspiracy to deprive him of his constitutional rights. *Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997); *see also Somer v. Dixon,* 709 F.2d 173, 175 (2d Cir.), *cert. denied,* 464 U.S. 857, 104 S.Ct. 177 (1983). It should also be noted that

Slip Copy, 2011 WL 1085983 (N.D.N.Y.)

(Cite as: 2011 WL 1085983 (N.D.N.Y.))

any claim of conspiracy in this case would likely be doomed to fail as precluded under the intra-agency conspiracy doctrine, which provides that with exceptions not now presented, an entity cannot conspire with one or more of its employees, acting within the scope of employment, and thus a conspiracy claim conceptually will not lie in such circumstances. *See, e.g., Everson v. New York City Transit Auth.,* 216 F.Supp.2d 71, 75-76 (E.D.N.Y.2002); *Griffin-Nolan v. Providence Washington Ins. Co.,* No. 5:05CV1453, 2005 WL 1460424, at *10-11 (N .D.N.Y. June 20, 2005) (Scullin, C.J.).

FN10. From defendants' submissions we now know that plaintiff is mistaken, and that in fact Warden Schult took action to address Corrections Officer Poirier's conduct by suspending him without pay for a period of ten days. *See* Poirier's Decl. (Dkt. No. 20-8) ¶ 6. Unfortunately, however, due to the procedural posture of the case-defendant Schult not having sought summary judgment as an alternative remedy-the court cannot consider that fact when deciding defendant Schult's motion.

Richardson's Eighth Amendment claim is predicated principally upon a single isolated event. The plaintiff does not assert the existence of an ongoing deprivation of constitutional proportions which, when reported to Warden Schult, went unaddressed. Although a second incident allegedly took place involving Corrections Officer Poirier in the "shake-down shack," that incident does not arise to a level sufficient to support an Eighth Amendment violation. *See Tafari v. Paul,* No. 06CV0603A, 2009 WL 3260075, at * 2 (W.D.N.Y. Oct. 8, 2009); *Murray v. Bushey,* No. 9:04-cv-00805, 2009 WL 498144, at * 5 (N.D.N.Y. Feb. 26, 2009) (Hurd, J. and Lowe, J.).

Having carefully reviewed the allegations set forth in plaintiff's complaint and finding that they do not meet any of the grounds enunciated in *Colon* for establishing supervisory liability, I conclude that plaintiff has failed to assert a basis for finding liability on the part of Warden Schult, and therefore recommend dismissal of plaintiff's claims against her.

D. *Plaintiff's Eighth Amendment Claim Against Corrections Officer Poirier*

In his motion Corrections Officer Poirier submits that on its face plaintiff's complaint fails to allege a plausible claim of cruel and unusual punishment, in violation of the Eighth Amendment. Alternatively, he requests that the court consider the additional materials submitted with his motion and determine his entitlement to judgment on that claim as a matter of law.

1. *Procedural Posture*

Defendant Poirier's pre-answer motion is brought seeking, in the alternative, either dismissal for failure to state a cause of action or summary judgment dismissing the complaint. As an initial threshold matter, the court must determine whether to consider defendant's motion as seeking dismissal for failure to state a claim from which relief may be granted, limiting the court's review to the four corners of plaintiff's complaint, *see Global Network Communications, Inc. v. City of New York,* 458 F.3d 150, 156 (2d Cir.2006), or instead as a motion for summary judgment, in which case the court would have available to it the entire record, including the extrinsic materials submitted by the parties, for use in deciding the motion. *See* Fed.R.Civ.P. 12(b) (" [i]f ... matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 ....)*; see also, Friedl v. City of New York,* 210 F.3d 79, 83-84 (2d Cir.2000).

*7 It is ordinarily improper for a court to consider matters outside of a complaint when resolving a Rule 12(b)(6) motion absent express notice that the court is converting the motion to one for summary judgment. *Reliance Ins. Co. v. Polyvision Corp.,* 474 F.3d. 54, 57 (2d Cir.2007). Where, however, the nonmoving party is plainly aware that additional factual matters are being considered and responds with his or her own evidentiary submissions, formal notice of the conversion by the court is not required. *Id.* In this case plaintiff was notified by defendant Poirier's moving papers that the motion was made under Rule 12(b)(6) or, in the alternative, Rule 56,

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 1085983 (N.D.N.Y.)

(Cite as: 2011 WL 1085983 (N.D.N.Y.))

and indeed submitted extrinsic materials of his own in opposition to the motion, including objections to defendants' declarations and a responding statement pursuant to Northern District of New York Local Rule 7.1(a)(3). I therefore recommend that the court consider defendants' motion as seeking summary judgment dismissing plaintiff's complaint.

2. *Merits of Plaintiff's Eighth Amendment Claim*

Plaintiff's complaint asserts a cause of action brought under the Eighth Amendment, which proscribes punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble,* 429 U.S. 97, 102, 104, 97 S.Ct. 285, 290, 291 (1976); *see also Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1076, 1084 (1986) (citing, *inter alia, Estelle* ). While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement; thus, the conditions of an inmate's confinement are subject to Eighth Amendment scrutiny. *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 1976 (1994) (citing *Rhodes v. Chapman,* 452 U.S. 337, 349, 101 S.Ct. 2392, 2400 (1981)).

A plaintiff's constitutional right against cruel and unusual punishment is violated by an "unnecessary and wanton infliction of pain." *Whitley,* 475 U.S. at 319, 106 S.Ct. at 1084 (citations and quotations omitted); *Griffen v. Crippen,* 193 F.3d 89, 91 (2d Cir.1999). The lynchpin inquiry in deciding claims of excessive force against prison officials is "whether force was applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian,* 503 U.S. 1, 6-7, 112 S.Ct. 995, 998-999 (1992) (applying *Whitley* to all excessive force claims); *Whitley,* 475 U.S. at 320-21, 106 S.Ct. at 1085 (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.) (Friendly, J.), *cert. denied sub nom., John v. Johnson,* 414 U.S. 1033, 94 S.Ct. 462 (1973)).

Analysis of claims of cruel and unusual punishment requires both objective examination of the conduct's effect and a subjective inquiry into the defendant's motive for his or her conduct. *Wright v. Goord,* 554 F.3d 255, 268 (2d

Cir.2009) (citing *Hudson,* 503 U.S. at 7-8, 112 S.Ct. at 999 and *Blyden v. Mancusi,* 186 F.3d 252, 262 (2d Cir.1999)). As was recently emphasized by the United States Supreme Court in *Wilkins v. Gaddy,* however, after *Hudson* the "core judicial inquiry" is focused not upon the extent of the injury sustained, but instead whether the nature of the force applied was nontrivial. *Wilkins v. Gaddy,* --- U.S. ----, 130 S.Ct. 1175, 1178 (2010) (per curiam). Accordingly, when considering the subjective element of the governing Eighth Amendment test a court must be mindful that the absence of serious injury, though relevant, does not necessarily negate a finding of wantonness since, as the Supreme Court has noted,

**\*8** [w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated .... This is true whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.

*Hudson,* 503 U.S. at 9, 112 S.Ct. at 1000 (citations omitted); *Velasquez v. O'Keefe,* 899 F.Supp. 972, 973 (N.D.N.Y.1995) ( McAvoy, C.J.) (quoting *Hudson,* 503 U.S. at 9, 112 S.Ct. at 1000); *see Romaine v. Rewson,* 140 F.Supp.2d 204, 211 (N.D.N.Y.2001) (Kahn, J.). Even a *de minimis* use of physical force can constitute cruel and unusual punishment if it is "repugnant to the conscience of mankind." *Hudson,* 503 U.S. at 9-10, 112 S.Ct. 1000 (citations omitted).

With its focus on the harm done, the objective prong of the inquiry is contextual and relies upon "contemporary standards of decency." *Wright,* 554 F.3d at 268 (quoting *Hudson,* 503 U.S. at 8, 112 S.Ct. at 1000) (internal quotations omitted)). When addressing this component of an excessive force claim under the Eighth Amendment calculus, the court can consider the extent of the injury suffered by the inmate plaintiff. While the absence of significant injury is certainly relevant, it is not dispositive. *Hudson,* 503 U.S. at 7, 112 S.Ct. at 999. The extent of an inmate's injury is but one of the factors to be considered in determining a prison official's use of force was "unnecessary and wanton"; courts should also consider the need for force, whether the force was proportionate to the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 1085983 (N.D.N.Y.)

(Cite as: 2011 WL 1085983 (N.D.N.Y.))

need, the threat reasonably perceived by the officials, and what, if anything, the officials did to limit their use of force. *Whitley,* 475 U.S. at 321, 106 S.Ct. at 1085 (citing *Johnson,* 481 F.2d at 1033). "But when prison officials use force to cause harm maliciously and sadistically, 'contemporary standards of decency are always violated .... This is true whether or not significant injury is evident.' " *Wright,* 554 F.3d at 268-69 (quoting *Hudson,* 503 U.S. at 9, 112 S Ct. at 1000).

That is not to say that "every malevolent touch by a prison guard gives rise to a federal cause of action." *Griffen,* 193 F.3d at 91 (citing *Romano v. Howarth,* 998 F.2d 101, 105 (2d Cir.1993)); *see also Johnson,* 481 F.2d at 1033 ("Not every push or shove, even if it later may seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"). Where a prisoner's allegations and evidentiary proffers, if credited, could reasonably allow a rational factfinder to find that corrections officers used force maliciously and sadistically, however, summary judgment dismissing an excessive use of force claim is inappropriate. *Wrigh* t, 554 F.3d at 269 (citing *Scott v. Coughlin,* 344 F.3d 282, 291 (2d Cir.2003) (reversing summary dismissal of prisoner's complaint, though suggesting that prisoner's evidence of an Eighth Amendment violation was "thin" as to his claim that a corrections officer struck him in the head, neck, shoulder, wrist, abdomen, and groin, where the "medical records after the ... incident with [that officer] indicated only a slight injury")) (other citations omitted).

**\*9** Plaintiff's allegations in this case fail to rise to a level cognizable under the Eighth Amendment. Addressing the "shake-down shack" incident, for example, plaintiff alleges that he was harassed and made to submit to a pat frisk in lieu of passing through a metal detector. This allegation, even if true, reflects only an inconvenience of a modest nature, and is facially insufficient to support an Eighth Amendment violation, even if true. *See Boddie v. Schneider,* 105 F.3d 857, 859-861 (2d Cir.1997) ("The isolated episodes of harassment roughly alleged by Boddie are despicable and, if true, they may potentially be the basis of state tort actions. But they do not involve a harm of federal constitutional proportions as defined by the Supreme Court."); *see also Morales v. Mackalm,* 278 F.3d 126 (2d.

Cir.2002) ("Because Morales' allegations do not even rise to the level of those made by the plaintiff in *Boddie,* they do not state a claim for sexual harassment in violation of the Eighth Amendment to the United States Constitution."); *Williams v. Fitch,* No. 04-CV-6440L, 2008 WL 1947024, *2 (W.D.N.Y.2008) (An Eighth Amendment claim under § 1983 will not lie, however, where an inmate alleges only minor, isolated incidents which are neither singly nor "cumulatively egregious in the harm they inflicted."); *Davis v. Castleberry,* 364 F.Supp.2d 319, 321 (W.D.N.Y.2005) (allegation that corrections officer grabbed inmate's penis during pat frisk is insufficient to state constitutional claim); *Morrison v. Cortright,* 397 F.Supp.2d 424, 425 (W.D.N.Y.2005) (allegations that a corrections officer touched plaintiff's buttocks, and that another "rubbed up against plaintiff['s] buttocks with [the officer's] private part" during a strip search describe an isolated incident unaccompanied by physical injury, and therefore are not sufficiently serious to establish a constitutional claim); *Montero v. Crusie,* 153 F.Supp.2d 368, 373, 375 (S.D.N.Y.2001) (allegation that corrections officer squeezed inmate's genitalia during pat-frisks on several occasions does not show sufficiently serious deprivation to establish Eighth Amendment violation, particularly when inmate did not allege that he was physically injured by such conduct).

Similarly, plaintiff's claim that he was subjected to verbal harassment, including banging on his cell door, at the hands of Corrections Officer Poirier, if true reflects conduct that is objectionable and unprofessional, but fails to support a finding of cruel and unusual punishment in violation of the Eighth Amendment; neither *Bivens* nor its state action counterpart, 42 U.S.C. § 1983, is designed to represent a code of professional conduct for federal, state and local prison officials. *Alnutt v. Cleary,* 913 F.Supp. 160, 165-66 (W.D.N.Y.1996) (citations omitted); *Williams v. United States,* No. 07 Civ. 3018, 2010 WL 963474, at * 16 (S.D.N.Y. Feb. 25, 2010), *report and recommendation adopted,* 2010 WL 963465 (Mar. 16, 2010). Federal courts are neither equipped nor in the business of overseeing prison operations and performing human resource functions within such settings; rather, the function of the courts in a case such as this is to safeguard the right of prison inmates to be free of cruel and unusual punishment running afoul to the Eighth Amendment.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 1085983 (N.D.N.Y.)

(Cite as: 2011 WL 1085983 (N.D.N.Y.))

*Estelle,* 429 U.S. at 102, 97 S.Ct. at 291. Allegations of verbal abuse, however reprehensible it may be, do not ordinarily rise to the level of such a constitutional violation, and are not cognizable in a civil rights action such as this. *See Moncrieffe v. Witbeck,* No. 97-CV-253, 2000 WL 949457, at *3 (N.D.N.Y. June 29, 2000) (Mordue, J.) (allegations that corrections officer laughed at inmate not actionable under section 1983) (citation omitted); *Carpio v. Walker,* No. Civ.A.95CV1502, 1997 WL 642543, at *6 (N.D .N.Y. Oct. 15, 1997) (Pooler, J. & DiBianco, M.J.) ("verbal harassment alone, unaccompanied by any injury, no matter how inappropriate, unprofessional, or reprehensible it might seem, does not rise to the level of an Eighth Amendment violation").

**\*10** The sole incident described in plaintiff's complaint that could arguably support an Eighth Amendment claim concerns Corrections Officer Poirier's alleged spraying of Richardson. According to Corrections Officer Poirier, plaintiff's cell was sprayed with water from a silver fire extinguisher for the purpose of knocking down a hanging sheet allegedly interfering with his view of the plaintiff, and not with intent to cause harm to the plaintiff. Poirier Decl. (Dkt. No. 20-8) ¶¶ 4 and 5. A declaration of Phillip J. Hamel, the safety manager at FCI Ray Brook, confirms that the silver fire extinguisher used contains only water. *See* Hamel Decl. (Dkt. No. 20-7) ¶¶ 6-12. A physical inspection of the plaintiff by medical officials at FCI Ray Brook shortly following the incident failed to reflect any evidence of injury other than dry skin associated with a pre-existing condition. Marini Decl. (Dkt. No. 20-6) ¶¶ 3-12.

In his submission in opposition to defendants' motion, plaintiff does not refute defendants' contention that the fire extinguisher contained only water, instead asserting that "[i]t matters not whether the content of the 'fire extinguisher' " was water, milk or acid. The act within itself constitutes an Assault/Battery and clearly violates Plaintiff's Right 'To Be Free' from undo [sic] cruel and unusual punishment." Plaintiff's Opposition Memorandum (Dkt. No. 27) ¶ 20.

Without question Corrections Officer Poirier's actions, however well intentioned as an effort to insure

that plaintiff was in his bunk, were contrary to the standards of conduct in effect at FCI Ray Brook, as evidenced by the punishment administered to defendant Poirier stemming from the incident. Nonetheless, accepting as true plaintiff's allegations that he was sprayed for up to ten seconds with what the record establishes was water from a fire extinguisher, no reasonable factfinder could conclude that plaintiff's Eighth Amendment to be free from cruel and unusual punishment was abridged based upon that action.

This is not a case in which the plaintiff alleges that a history of animosity on the part of Corrections Officer Poirier resulted in a malicious spraying of him with a fire extinguisher while asleep. *Contrast Beckford v. Portuondo,* 151 F.Supp.2d 204, 216 (N.D.N.Y.2001) (finding that an Eighth Amendment claim could be supported by a finding that defendants sprayed plaintiff with a fire extinguisher "in a malicious and sadistic manner because of their anger with him over his misbehavior."). Instead, the record now before the court reflects a situation more akin to the circumstances presented in *Tapia v. Thornton,* No. 3:94-CV-197 RM, 1996 WL 204494 (N.D.Ind. Mar. 19, 1996), in which the court found that the act of squirting the plaintiff with water from a fire extinguisher "while unprofessional, did not amount to a constitutional violation ." *Id.* at \*5; *see also Lunsford v. Bennett,* 17 F.3d 1574, 1582 (7th Cir.1994) (incident in which corrections officers poured a bucket of water over the head of a prisoner who was already standing in ankle-deep water while shackled to the bars of his cells characterized as "a minor use of force that does not offend the conscience."). I therefore recommend dismissal of plaintiff's Eighth Amendment claim of cruel and unusual punishment.

### E. *Dismissal With Or Without Leave To Amend*

**\*11** Ordinarily a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once if there is any indication that a valid claim might be stated. *Branum v. Clark,* 927 F.2d 698, 704-05 (2d Cir.1991) (emphasis added); *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires"); *see also Mathon v. Marine Midland Bank, N.A.,* 875 F.Supp. 986, 1003 (E.D.N.Y.1995) (leave to

Slip Copy, 2011 WL 1085983 (N.D.N.Y.)

(Cite as: 2011 WL 1085983 (N.D.N.Y.))

replead granted where court could not say that under no circumstances would proposed claims provide a basis for relief). This holds true even in the event of a finding on a motion for summary judgment that record fails to support a claim set forth in plaintiff's initial complaint. *See Kilgore v. Kaufman,* 374 Fed. App'x (2d Cir.2010) (vacating, in part, the district court's grant of summary judgment and suggesting that on remand the lower court consider whether plaintiff may amend complaint). The court must next determine whether plaintiff is entitled to the benefit of this general rule, given the procedural history of the case.

Within plaintiff's complaint, which plainly centers upon his claim that defendants subjected him to cruel and unusual punishment, there are indicators suggesting that he may possess other potentially viable causes of action. Plaintiff's complaint, for example, intimates that defendant Poirier's actions may have been taken in retaliation for his having voiced concerns over prisoner abuses at FCI Ray Brook. *See* Complaint (Dkt. No. 1) ¶ 4. As currently constituted, however, plaintiff's complaint contains insufficient information to support a plausible claim of retaliation since it does not provide any indication of a nexus between that conduct and the adverse action taken against him by Corrections Officer Poirier. *See Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576 (1977); *Dillon v. Morano,* 497 F.3d 247, 251 (2d Cir.2007); *Dawes v. Walker,* 239 F.3d 489, 492 (2d Cir.2001), *overruled on other grounds, Phelps v. Kapnolas,* 308 F.3d 180 (2d Cir.2002).

Similarly, though in only a conclusory fashion, plaintiff alleges that he was subjected to discrimination on the basis of religion or ethnicity, and additionally was subjected to punishment without due process of law. *Id.* ¶ 13. While these claims are not now plausibly stated, nor do they appear to be at the heart of his complaint, plaintiff nonetheless should be given an opportunity to replead if desired in order to flesh out such potential causes of action. When doing so, however, plaintiff is reminded that he must plead sufficient facts to establish the existence of plausible claims under these other theories. It is well-established that "complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but

have no meaning." *Hunt v. Budd,* 895 F.Supp 35, 38 (N.D.N.Y.1995)* (McAvoy, S.J.) (citing *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987)* (other citations omitted). Any amended complaint, if permitted by the court after acting upon this report and recommendation, must therefore clearly set forth facts demonstrating the existence of one or more plausible claims and be calculated to replace the existing complaint and constitute a wholly integrated and complete pleading that does not rely on or incorporate by reference in any portion of the pleading currently on file with the court. *See Harris v. City of N.Y.,* 186 F.3d 243, 249 (2d Cir.1999).

IV. *SUMMARY AND RECOMMENDATION*

**\*12** Plaintiff's complaint, which alleges that he was subjected to cruel and unusual punishment though the conduct of Corrections Officer Poirier on two separate occasions, and that Warden Schult failed to take appropriate action to prevent those occurrences, is legally deficient. Addressing first plaintiff's claims against Warden Schult, I find that Richardson has failed to demonstrate a plausible basis for finding the requisite degree of personal involvement in the actions taken to support a finding of liability against her, even accepting as true each of the allegations set forth in his complaint. Turning to plaintiff's claims against Corrections Officer Poirier, and considering the full record now before the court, I find that no reasonable factfinder could conclude that the incidents alleged rise to a level sufficient to support a cognizable Eighth Amendment claim. Accordingly, it is hereby respectfully

RECOMMENDED that defendants' motion for dismissal and/or for summary judgment (Dkt. No. 20) be GRANTED, and that plaintiff's claims against defendant Schult be DISMISSED for failure to state a claim upon which relief may be granted, and that summary judgment be entered DISMISSING plaintiff's claims against defendant Poirier as a matter of law, both with leave to replead.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 1085983 (N.D.N.Y.)

(Cite as: 2011 WL 1085983 (N.D.N.Y.))

PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

ORDERED the clerk is also serve a copy of the Report and Recommendation upon the parties in accordance with this court's local.

N.D.N.Y.,2011.

Richardson v. Schult
Slip Copy, 2011 WL 1085983 (N.D.N.Y.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

Ⓒ  Only the Westlaw citation is currently available.

United States District Court,
E.D. New York.
Wayne HARGROVE, Plaintiff,
v.
Sheriff Edward RILEY; Nassau County Correctional
Facility, et al; Nassau County University Medical Staff
and Nassau County Correctional Facility, Defendants.
**Civil Action No. CV-04-4587 (DGT).**

Jan. 31, 2007.

Wayne Hargrove, Ossining, NY, pro se.

Alexander V. Sansone, Troy & Troy, Lake Ronkonkoma, NY, Joseph Carney, Mineola, NY, for Defendants.

*MEMORANDUM AND ORDER*

TRAGER, J.

**\*1** Inmate Wayne Hargrove ("Hargrove" or "plaintiff") brings this *pro se* action pursuant to 42 U.S.C. § 1983 against the Nassau County Sheriff, Nassau County Correctional Facility ("NCCF") and NCCF's medical staff, (collectively, "defendants"), seeking damages for injuries allegedly caused by defendants while he was incarcerated at NCCF. Defendants now move for summary judgment pursuant to Fed.R.Civ.P. 56 arguing, *inter alia,* that Hargrove's claims should be dismissed because he failed to exhaust administrative remedies, as required by the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e. For the following reasons, defendants' motions for summary judgment are granted.

**Background**

On August 27, 2004,[FN1] Hargrove filed a complaint, alleging that defendants violated his civil rights when they forcibly administered purified protein derivative skin tests ("PPD test") to test for latent tuberculosis ("TB") in April 2002, 2003 and 2004 while he was incarcerated at NCCF. Complaint, Ex. C; Aff. in Opp. at 1-4, Ex. A. Hargrove named Nassau County Sheriff Edward Reilly ("Reilly"), NCCF and Nassau County University Medical Staff [FN2] as defendants.[FN3] On November 22, 2004, after discovery, County Defendants and NHCC Defendants filed separate motions for summary judgment pursuant to Fed.R.Civ.P. 56. Both defendants properly filed a Local Rule 56.1 Statement and served Hargrove a Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment, pursuant to Local Civil Rule 56.2.

FN1. Hargrove signed the complaint August 27, 2004. The *pro se* clerk's office received and filed the complaint on September 20, 2004. Under the prison mail-box rule, a *pro se* prisoner's complaint is deemed filed when it is delivered to prison authorities. *See, e.g., Walker v. Jastremski,* 430 F.3d 560, 562 (2d Cir.2005)(deeming *pro* se prisoner's § 1983 action filed on date complaint was handed to prison officials). There is no evidence in the record as to when Hargrove handed the complaint to prison officials. However, it is clear the operative date is between August 27, 2004 and September 20, 2004. As discussed, *infra,* both of these dates occur before Hargrove properly exhausted the administrative remedies available to him at NCCF.

FN2. The Nassau County University Medical Staff are employed by the Nassau Health Care Corporation ("NHCC"). Pursuant to the Correctional Center Health Services Agreement between the County of Nassau and NHCC, dated September 24, 1999, NHCC provides medical services for inmates at NCCF. County Defs.'s

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

Not. of Motion, Decl., at 1.

FN3. Reilly and NCCF are represented separately from NHCC. Accordingly, when a distinction is necessary, Reilly and NCCF will be referred to as "County Defendants" and Nassau County University Medical Staff and NHCC will be referred to as "NHCC Defendants."

**(1)**

**Tuberculosis Testing at NCCF**

Upon entering NCCF, new prisoners must first go through medical intake. Aff. of Kim Edwards, ("Edwards Aff.") ¶ 3. This standard process usually takes seventy-two hours. Edwards Aff. ¶ 4. During medical intake, NCCF tests inmates for TB. Aff. of Getachew Feleke ("Feleke Aff.") ¶ 3. NCCF generally uses a PPD test to detect latent TB. Feleke Aff. ¶ 3. However, if an inmate has previously tested positive for TB, it is NCCF's policy to test for TB using an x-ray instead.FN4 Feleke Aff. ¶ 3. As part of its Infectious Disease Program, NCCF re-tests inmates for TB each year, beginning after they have been housed in that facility for one year. Edwards Aff. ¶ 5.

FN4. According to WebMD, "[a] tuberculin skin test should not be done for people who have a(1) Known TB infection [or a] (2) Positive tuberculin skin test in the past. A second test may cause a more severe reaction to the TB antigens." Jan Nissl, RN, BS, *Tuberculin Skin Tests,* W E B M D , h t t p : / / www.webmd.com/hw/lab_tests/hw203560.asp (last visited Jan. 31, 2007).

**(2)**

**Hargrove's Tuberculosis Testing at NCCF**

On March 15, 2002, Hargrove was incarcerated at NCCF.

NHCC Defs.' 56.1 Statement ¶ 1. Before entering the general population, Hargrove was processed through medical intake. NHCC Defs.' 56.1 Statement ¶ 2. The NCCF Medical Intake Chart for Hargrove, dated March 15, 2002 ("3/15/02 Chart"), shows that Hargrove informed medical staff that he had previously been exposed to tuberculosis. NHCC Defs.' Notice of Mot., Ex. C, at 1; NHCC Defs.' 56.1 Statement ¶ 2. The 3/15/02 Chart also shows that Hargrove reported testing positive to a prior PPD test and that he had been treated for TB in 2000. NHCC Defs.' Notice of Mot., Ex. C, at 1. Hargrove alleges that he was exposed to and treated for TB in 1997. Hargrove's Aff. in Opp. to Mot. for Summary Judgment, ("Aff. in Opp."), Ex. A at 1-2. Defendants contend that Hargrove was given an x-ray during the medical intake process because of his reported positive PPD test, and that the x-ray was negative, showing no active TB infection. NHCC Defs.' 56.1 Statement ¶ 2; Edwards Aff. ¶ 3. Without specifying a date, Hargrove generally states that his "request to be x-rayed was denied." Aff. in Opp. at 3.

**\*2** Pursuant to NCCF's Infectious Disease Program, after being incarcerated in NCCF for a year, Hargrove was scheduled to be re-tested for TB. Edwards Aff. ¶ 5; NHCC Defs.' 56.1 Statement ¶ 4. On May 24, 2003, Hargrove was given a PPD skin test. Edwards Aff. ¶ 5; NHCC Defs.' 56.1 Statement ¶ 4. This test was negative. Edwards Aff. ¶ 5; NHCC Defs.' 56.1 Statement ¶ 4. According to Hargrove, he requested an x-ray instead of a PPD test because of his previous exposure to TB, but was forced to submit to the PPD test. He also alleges that defendants threatened to put him in "keep lock" or "lock up" unless he submitted to the PPD test.FN5 Complaint, Ex. C; Aff. in Opp. at 1-4, Ex. A.

FN5. Hargrove has made contradictory statements about being placed in "keep lock" or "lock up". It is unclear whether he is alleging that defendants threatened to place him in "lock up" unless he submitted to the PPD test or whether he was actually placed in "lock up" until such time that he agreed to submit to the PPD tests. For example, in his complaint, Hargrove states that when he "refused to submit to another [PPD] test, the Correctional Authorities were brought in and placed [him] in lock up." Complaint ¶ 4. In a hearing before Magistrate Judge Bloom on

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

January 31, 2005, Hargrove stated that he took the PPD tests because he was told that he would be placed in "lock up" until he submitted to the test. Hr'g Tr. 6:1-18; 9:5-10:10. In Exhibit B to his complaint, Hargrove alleges both that he was given an unwarranted TB shot and that when he refused the same shot he was placed in "keep lock." Complaint, Ex. B. There is no evidence in the record that Hargrove was ever segregated from the general population while housed at NCCF, outside of the seventy-two hour initial medical intake period. Aff. of Sgt. Neumann ("Neumann Aff.") at 1-2 (referring to prison records showing Hargrove's holding locations which demonstrate that he was never placed in "lock up"); NCCF 56.1 Statement ¶ E. Whether or not Hargrove was actually placed in "lock up" is not a material fact for purposes of this motion; as explained in detail, *infra*, Hargrove's failure to exhaust administrative remedies under the PLRA precludes a consideration of the merits of his Section 1983 claim.

The following year, in June of 2004, Hargrove was scheduled to be retested. Edwards Aff. ¶ 6; NHCC Defs.' 56.1 Statement ¶ 5. Because of the contradiction between the negative May 2003 PPD test and his reported positive history, NCCF contacted the Infectious Disease Department of the Nassau County Medical Center. Edwards Aff. ¶ 6. It was suggested that Hargrove be given a two-step PPD test, administered fifteen days apart. Feleke Aff. ¶ 4; Edwards Aff. ¶ 6. Hargrove was given these two PPD skin tests in June 2004. Edwards Aff. ¶ 6; NHCC Defs.' 56.1 Statement ¶ 5. Again, Hargrove alleges that these tests were administered against his will and under threat of being placed in quarantine. Complaint, Exs. A, B; Aff. in Opp., Ex. A.

On December 3, 2004, Hargrove was seen by a physician's assistant. NHCC Defs.' 56.1 Statement ¶ 6. During this meeting, Hargrove complained of a dry cough and that the site on his forearm where the June 2004 PPD tests had been administered was red and swollen. NHCC Defs.' 56.1 Statement ¶ 6; 11/28/04 Sick Call Request.

Hargrove's December 18, 2004 chart notes a positive PPD

test and an order was placed in the chart that Hargrove not be submitted for future PPD tests. Edwards Aff. ¶ 7; NHCC Defs.' 56.1 Statement ¶ 8. *See also* 11/19/2004 Grievance.

Hargrove alleges that the following physical ailments were caused by the PPD tests: chronic coughing, high blood pressure, chronic back pain, lung infection, dizzy spells, blurred vision and a permanent scar on both his forearms. Complaint, Ex. C; Aff. in Opp. at 3-4.

(3)

**NCCF's Inmate Grievance Procedure**

NCCF has had an inmate grievance program ("IGP") in place since 2001. Aff. of Kenneth Williams, ("Williams Aff."), at 2. NCCF's IGP is carried out in conformance with the New York State Commission of Corrections Minimum Standards and Regulations for Management of County Jails and Penitentiaries ("Minimum Standards"). *Id.*

The IGP is designed to resolve complaints and grievances that an inmate may have regarding the inmate's care and treatment while incarcerated at NCCF. Williams Aff. at 2. Upon entering NCCF, all inmates receive a copy of the NCCF inmate handbook, which outlines the IGP. *Id.*

**\*3** The record does not include an actual copy of NCCF's IGP, but the NCCF's IGP is detailed in the affidavit of NCCF Investigator Kenneth Williams. [FN6] The IGP encourages inmates to resolve their grievances informally with the staff member assigned to the inmate housing unit first. *Id.* If an acceptable resolution cannot be reached, inmates must then proceed through the formal three-step process set out in the IGP. *Id.* at 3.

FN6. Hargrove does dispute any statements made by Investigator Williams regarding the inmate grievance procedure, time limits or its availability to him. Furthermore, Hargrove does

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

not dispute that he received a handbook outlining the IGP.

The first step requires an inmate to submit his grievance form [FN7] to the Inmate Grievance Unit by placing it in a locked box located in each housing area, "within five days of the date of the act or occurrence giving rise to the grievance." [FN8] *Id.* at 2-3. NCCF indexes all grievance forms filed by inmates in a log book and in a computer system. *Id.* at 1, 3. Once a grievance form is received by the Inmate Grievance Unit, the grievance is investigated and the inmate will receive a written determination of the outcome from the Inmate Grievance Coordinator in Section II of the grievance form. [FN9] *Id.* at 3. The inmate is then given a choice to accept or appeal the decision by checking the desired selection and signing his name in Section III of the grievance form. *See, e.g.,* 11/19/2004 Grievance form. If the inmate is not satisfied with the decision of the Inmate Grievance Coordinator, the inmate may appeal the determination to the Chief Administrative Officer. Williams Aff. at 3. Finally, if the inmate is not satisfied with the Chief Administrative Officer's determination, the inmate may appeal to the New York State Commission of Correction Citizen's Policy and Complaint Review Council ("Council"). *Id.* at 3. The Council will then render a final determination. *Id.* at 3.

> FN7. The grievance forms contain four sections to be utilized throughout all three steps of the IGP. Section I provides space for the inmate to explain his complaint and the actions he requests as relief. Section II is for the decision of the Inmate Grievance Coordinator. Section III is titled "Acceptance/Appeal of Grievance Coordinator's decision" and contains two mutually exclusive options in which the inmate must choose one or the other: "I have read and accept the Grievance Coordinator's decision," or "I have read and appeal the Grievance Coordinator's decision." Section IV provides space for the decision of the Chief Administrative Officer.

> FN8. Hargrove has not argued that he was unaware of this five-day deadline.

> FN9. There is no evidence in the record specifying the how long an inmate has to appeal inaction by the Inmate Grievance Unit.

(4)

**Authenticity of the Grievance Forms and Other Documents Submitted by Hargrove**

In support of his allegations that he continuously informed defendants that he had been exposed to TB and, therefore, should not have been given PPD tests, Hargrove submitted three letters with his complaint, two of which were addressed to the Inmate Grievance Committee and one of which was addressed to "To whom this may concern." Complaint, Exs. A-C. He also submitted five complaint letters written to Sheriff Reilly, seventeen sick call requests and nine grievance forms during discovery and with his Affidavit in Opposition to Defendants' Motion for Summary Judgment, explaining that some of the medical records and notarized letters were "missing." Aff. in Opp, Ex. A at 2. Defendants call the authenticity of most of these documents into question, contending that Hargrove never submitted any grievance form or complaint letter before he filed his complaint. County Defs.' Mem. of Law at 16-21; County Defs.' 56.1 Statement at ¶¶ B2, C3, D3.

Kenneth Williams, an investigator at NCCF in the Inmate Grievance Unit, testified that he reviewed all of the grievance forms, complaint letters and sick call requests annexed to Hargrove's Complaint and to Hargrove's Affidavit in Opposition to Defendants' Motion for Summary Judgment. Williams Aff. at 2. Williams testified that he examined the grievance records at NCCF and searched "for any grievances by plaintiff/inmate Hargrove" and found "only two." [FN10] Williams Aff. at 1. The first grievance, dated November 19, 2004, complained that the medical staff continued "forcing [Hargrove] to take a T.B. shot while [he] keep[s] telling them that [he] has been exposed to T.B." 11/19/2004 Grievance; Williams Aff. at 1. In response to this grievance, Hargrove's "positive" TB status was noted in his medical records and an order was placed in Hargrove's medical chart, stating that Hargrove not be subjected to future PPD tests. 11/19/2004 Grievance, Section II;

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

Williams Aff. at 1; NHCC Defs.' 56.1 Statement ¶ 8; Edwards Aff. ¶ 7. In Section III of the 11/19/2004 Grievance, Hargrove acknowledged that he had read the Grievance Coordinator's decision, and that he chose to accept the decision instead of appealing it. 11/19/2004 Grievance. The other grievance received by the Grievance Unit, dated May 11, 2005, complained of an unrelated matter. 5/11/2005 Grievance (complaining of back problems and requesting the return of his medical shoes); Williams Aff. at 1. Thus, Williams concluded that, beside the 11/19/2004 and 5/11/2005 Grievance Forms, none of the other documents were "received by the grievance unit, and, given the locked box system, the grievance-forms were never submitted by plaintiff/inmate." Williams Aff. at 2.

> FN10. It is NCCF's procedure to forward to the attention of the Grievance Unit all official grievance forms and complaint letters-even ones not specifically addressed to the Grievance Unit. Williams Aff. at 3.

**\*4** A visual examination of the grievance forms Hargrove submitted in support of his claims suggests forgery. Five of the nine grievance forms were requests to stop PPD testing. *See* April 19, 2002 grievance; April 28, 2002 grievance; April 20, 2003 grievance; April 28, 2003 grievance; November 19, 2004 grievance. The remaining grievance forms concerned Hargrove's requests for medical shoes. *See* March 18, 2002 grievance; July 6, 2002 grievance; February 20, 2003 grievance; May 11, 2005 grievance. Of the grievance forms complaining of unwanted PPD tests, the April 28, 2002 grievance form is a patent photocopy of the April 19, 2002 grievance form, and the April 28, 2003 grievance form is a patent photocopy of the April 20, 2003 grievance form, with only the handwritten dates changed. The only potentially authentic grievance forms relating to Hargrove's complaint about the PPD testing are dated April 19, 2002, April 20, 2003, and November 19, 2004. Of these grievance forms, only the November 19, 2004 has been authenticated by NCCF personnel. *See generally* Williams Aff. at 1-4.

Turning to the complaint letters addressed to Reilly, many contain notary stamps cut from the bottom of unrelated

documents and photocopied onto the bottom of the complaint letters. *See* County Defs.' Mem. of Law at 18-21. C.O. Thomas McDevitt and C.O. Paul Klein, both of whom perform notary services for prisoners at NCCF, have submitted sworn affidavits, stating that they kept individual Notary Log Books covering all dates relevant to this litigation. Aff. of C.O. Klein, ("Klein Aff."), at 1; Aff. of C.O. McDevitt, ("McDevitt Aff."), at 1. McDevitt's Notary Log Book shows that he notarized only one document for Hargrove. This document, dated May 13, 2002, was a motion related to Hargrove's criminal trial. McDevitt Aff. at 1-2. Hargrove signed the Notary Log Book acknowledging receipt of that notarized motion. McDevitt Aff. at 2. McDevitt states that he never notarized any other documents for Hargrove. McDevitt Aff. at 2. However, McDevitt's stamp and signature dated May 13, 2002 (the date of the legitimate notarization) appear on Hargrove's letter to Sheriff Reilly dated May 10, 2002. County Defs.' Not. of Motion, Ex. A.

These facts repeat themselves in regard to the documents bearing the notary stamp and signature of Klein. Klein had performed several legitimate notarizations for Hargrove in connection to Hargrove's criminal trial. Klein Aff. at 1-2. Hargrove signed Klein's Notary Log Book acknowledging receipt of those notarized documents. Klein Aff. at 2. However, Klein states that he never notarized any of Hargrove's letters addressed to Sheriff Reilly that bear Klein's stamp and signature. Klein Aff. at 2. On all of the documents that Hargrove submitted bearing Klein's stamp and signature, the dates and signatures of Klein match identically to the dates on which he had performed legitimate notarizations for Hargrove in connection with his criminal trial. Defendants argue it is clear that the documents bearing the stamps and signatures of McDevitt and Klein were not actually notarized by these notaries. County Defs.' Mem. of Law at 17-22.

**\*5** Hargrove does not deny these allegations. Instead, he resubmits the documents that McDevitt and Klein testify they did not notarize with his Affidavit in Opposition and insists that the documents "refute[ ] the assertions put forth by the defendants." Aff. in Opp. at 2.

**Discussion**

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

**(1)**

**Summary Judgment Standard**

A motion for summary judgment is granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A court ruling on a summary judgment motion must construe the facts in the light most favorable to the non-moving party and draw all reasonable inferences in his favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Williams v. Metropolitan Detention Center,* 418 F.Supp.2d 96, 100 (E.D.N.Y.2005). Defendants, the moving party in this action, bear the burden of demonstrating the absence of a genuine issue of material fact. *Baisch v. Gallina,* 346 F.3d 366, 371 (2d Cir.2003).

As Hargrove is proceeding *pro se,* his complaint must be reviewed carefully and liberally, and be interpreted to "raise the strongest argument it suggests," *Green v. United States,* 260 F.3d 78, 83 (2d Cir.2001), particularly when civil rights violations are alleged, *see, e.g., McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir.2004). Plaintiff's complaint does not specify the legal theories upon which it relies, but, in construing his complaint to raise its strongest arguments, it will be interpreted to raise claims under 42 U.S.C. § 1983. *See, e.g., Dufort v. Burgos,* No. 04-CV-4940, 2005 WL 2660384, at *2 (E.D.N.Y. Oct. 18, 2005) (liberally construing plaintiff's complaint, which failed to specify the legal theory or theories upon which it rested, as, *inter alia,* a claim under 42 U.S.C. § 1983); *Williams,* 418 F.Supp.2d at 100 (same).

**(2)**

**Prison Litigation Reform Act**

**a. Purpose of the Prison Litigation Reform Act**

The PLRA was intended to "reduce the quantity and improve the quality of prisoner suits." *Woodford v. Ngo,*

--- U.S. ----, 126 S.Ct. 2378, 2387 (2006) (quoting *Porter v. Nussle,* 534 U.S. 516, 524 (2002)). It seeks to eliminate unwarranted interference with the administration of prisons by federal courts, and thus " 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.' " *Woodford,* 126 S.Ct. at 2387 (quoting *Porter,* 534 U.S. at 525).*See also Booth v. Churner,* 532 U.S. 731, 739 (2001). Formal grievance procedures allow prison officials to reconsider their policies, implement the necessary corrections and discipline prison officials who fail to follow existing policy. *See Ruggiero v. County of Orange,* 467 F.3d 170, 177-78 (2d Cir.2006).

**b. The Exhaustion Requirement**

The PLRA's "invigorated" exhaustion provision, 42 U.S.C. § 1997e(a), provides the mechanism to reduce the quantity and improve the quality of prisoners' suits by requiring that prison officials have the opportunity to address prisoner complaints through internal processes before allowing a case to proceed in federal court. *Woodford,* 126 S.Ct. at 2382 (citing *Porter,* 534 U.S. at 524).Section 1997e(a) provides that:

**\*6** [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The exhaustion requirement is a mandatory condition precedent to any suit challenging prison conditions, including suits brought under Section 1983. *Woodford,* 126 S.Ct. at 2383;*Ruggiero,* 467 F.3d at 174;*Williams,* 418 F.Supp.2d at 100-01. The exhaustion provision is applicable to suits seeking relief, such as money damages, that may not be available in prison administrative proceedings, as long as other forms of relief are obtainable through administrative channels. *Giano v. Goord,* 380 F.3d 670, 675 (2d Cir.2004); *see also Woodford,* 126 S.Ct. at 2382-83 ("[A] prisoner must now exhaust

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

administrative remedies even where the relief sought-monetary damages-cannot be granted by the administrative process.") (citing *Booth,* 532 U.S. at 734).

In June 2006, the Supreme Court held that the PLRA requires "proper exhaustion" before a case may proceed in federal court. *Woodford,* 126 S.Ct. at 2387. "Proper exhaustion" requires a prisoner to use " 'all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).' " *Ruggiero,* 467 F.3d at 176 (citing *Woodford,* 126 S.Ct. at 2385 (emphasis in original)). Although the level of detail necessary to properly exhaust a prison's grievance process will vary from system to system, *Jones v. Bock,* 127 S.Ct. 910, 2007 WL 135890, at *12 (Jan. 22, 2007), "proper exhaustion" under the PLRA " 'demands compliance with [that] agency's deadlines and other critical procedural rules.' " *Ruggiero,* 467 F.3d at 176 (quoting *Woodford,* 126 S.Ct. at 2386). Thus, the PLRA's exhaustion requirement is not satisfied by "untimely or otherwise procedurally defective attempts to secure administrative remedies." *Ruggiero,* 467 F.3d at 176 (citing *Woodford,* 126 S.Ct. at 2382).

**(3)**

**Exhaustion Analysis: Hargrove did not Exhaust the Administrative Remedies Made Available by NCCF prior to Bringing Suit**

Section 1997e(a) of the PLRA applies to Hargrove's complaint; Hargrove was and continues to be confined in a correctional facility, *see Berry v. Kerik,* 366 F.3d 85, 87 (2d Cir.2004), and Hargrove's claim is about a "prison condition" within the meaning of the PLRA, *see Williams,* 418 F.Supp.2d at 101. *See also Sloane v. W. Mazzuca,* No. 04-CV-8266, 2006 WL 3096031, at *4 (S.D.N.Y. Oct. 31, 2006) (recognizing PLRA's application to complaint alleging retaliation by prison officials for plaintiff's refusal to consent to a PPD test). Accordingly, the merits of Hargrove's Section 1983 claims can only be addressed if it is first determined that Hargrove properly exhausted each claim under Section 1997e(a) of the PLRA before filing his complaint in federal court.

*7 Hargrove has submitted both forged [FN11] and authentic grievance forms in opposing defendants' motions for summary judgment. Excluding, for the moment, the forged documents, NCCF's records reflect that Hargrove did not submit his first grievance until after he filed the instant complaint. Williams Aff. at 1. Hargrove's first grievance complaining of unwanted PPD testing is dated November 19, 2004, Williams Aff. at 1, two to three months after Hargrove filed his complaint. Additionally, this first grievance, dated November 19, 2004, was submitted five months after the last PPD test was administered to him in June 2004. NHCC Defs.' 56.1 Statement ¶¶ 5,6. This five-month period far exceeds the five-day window provided by NCCF's IGP. Since Hargrove failed to comply with the IGP's deadlines, he did not properly exhaust the available administrative remedies. *Ruggiero,* 467 F.3d at 176 (" 'untimely or otherwise procedurally defective attempts to secure administrative remedies do not satisfy the PLRA's exhaustion requirement.' ") (quoting *Woodford,* 126 S.Ct. at 2382).

> FN11. Based on an examination of the documents themselves, as well as the uncontradicted testimony of the notaries performing services for prisoners at NCCF, *see generally* Klein Aff.; McDevitt Aff., and of the investigator in the Inmate Grievance Unit, *see generally* Williams Aff., it appears that many of the documents submitted by Hargrove are forgeries. However, in order to view the facts in the light most favorable to Hargrove, and so as to avoid making findings of fact in a summary judgment motion, for the purposes of the exhaustion analysis, all of the documents will be considered to be authentic. However, for purposes of the sanctions analysis, the documents will be explored and the consequences of Hargrove's misrepresentations will be addressed.

Furthermore, even if the falsified grievance forms Hargrove submitted in support of his claim are considered authentic, they are still untimely. The diagnostic TB tests (whether x-ray or PPD tests) were given to Hargrove on March 15, 2002, May 24, 2003 and in June of 2004, but the grievance forms Hargrove submitted complaining of unwanted PPD tests are dated April 19, 2002, April 28, 2002, April 20, 2003, April 28, 2003 and November 19,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

2004. None of these grievances were filed "within five days of the of the date of the act or occurrence giving rise to the grievance." Williams Aff. at 3. There is no evidence in the record suggesting that NCCF's IGP allows for a tolling of the five-day time limit in which to file a grievance.[FN12]

> FN12. Even if the submitted grievances had been filed within the proscribed time period, they only show that Hargrove's grievances reached an Inmate Grievance Coordinator, the first formal step of NCCF's three-step administrative grievance process; Hargrove never appealed to the Chief Administrative Officer. By failing to take the next available step in NCCF's IGP, Hargrove failed to satisfy the mandatory exhaustion requirement. *See, e.g., Williams, 418 F.Supp.2d at 101, 102* (dismissing *pro se* complaint where plaintiff could only show he exhausted two of the four-step process mandated by prison's administrative process).

While the letters to Reilly and sick call requests show that Hargrove attempted to bring his complaints about the PPD testing to the attention of the prison staff, *see, e.g.,* Aff. in Opp., Exs. A-D, NCCF's IGP requires use of formal grievance forms. Thus, writing complaint letters and submitting sick call requests did not properly exhaust NCCF's available administrative remedies. *See, e .g., Hernandez v. Coffey,* No. 99-CV-11615, 2006 WL 2109465, at *4 (S.D.N.Y. July 26, 2006) (holding letters did not satisfy plaintiff's exhaustion obligation); *Williams, 418 F.Supp.2d at 101* (holding that because plaintiff's efforts to convey his medical condition through letters and conversations with the warden and medical staff did "not include the required steps of the PLRA's administrative remedy process," plaintiff failed to exhaust); *Mills v. Garvin,* No. 99-CV-6032, 2001 U.S. Dist. LEXIS 3333, at *8 (S.D.N.Y. Mar. 2, 2001) ("letter writing is not the equivalent of an exhaustion of administrative remedies under the PLRA").

As Hargrove failed to properly exhaust his administrative remedies, this action is precluded by 42 U.S.C. § 1997e(a) unless Hargrove can establish excuse for his failure to exhaust.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

(4)

**No Grounds to Excuse Plaintiff's Failure to Exhaust**

**\*8** Exhaustion is an affirmative defense that defendants have the duty to raise. *Jones,* 2007 WL 135890, at * 8-11;*Sloane,* 2006 WL 3096031, at *4;*Williams, 418 F.Supp.2d at 101.* Once argued by the defendants, a plaintiff has an opportunity to show why the exhaustion requirement should be excused or why his failure to exhaust is justified. *See Ruggiero,* 467 F.3d at 175;*Collins v. Goord,* 438 F.Supp.2d 399, 411 (S.D.N.Y.2006) ("[T]he Second Circuit has cautioned that 'while the PLRA's exhaustion requirement is 'mandatory,' certain caveats apply.' ")(internal citations omitted). Thus, before concluding that a prisoner failed to exhaust available administrative remedies as required by Section 1997e(a) of the PLRA, the following three factors must be considered: (1) whether administrative remedies were actually available to the prisoner; (2) whether defendants have either waived the defense of failure to exhaust or acted in such a way as to estop them from raising the defense; and (3) whether special circumstances, such as a reasonable misunderstanding of the grievance procedures, exist justifying the prisoner's failure to comply with the exhaustion requirement. *Ruggiero,* 467 F.3d at 175 (citing *Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004)).[FN13]

> FN13. Courts in the Second Circuit have questioned what effect, if any, the Supreme Court's recent decision in *Woodford* requiring "proper exhaustion" may have on the three-step *Hemphill* inquiry. The Second Circuit has yet to address this issue. *See Ruggiero,* 467 F.3d at 175-76 (declining to "determine what effect *Woodford* has on our case law in this area ... because [plaintiff] could not have prevailed even under our pre-*Woodford* case law"). To date, district courts have acknowledged the tension, but resolved to apply *Hemphill* to exhaustion claims until instructed otherwise by the Second Circuit. *See, e.g., Larkins v. Selsky,* 04-CV-5900, 2006 WL 3548959, at *9, n. 4 (S.D.N.Y. Dec. 6,

Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

2006) (applying the current law of the Second Circuit to exhaustion claims); *Sloane,* 2006 WL 3096031, at *5 ("Until such time as the Court of Appeals considers the impact of *Woodford,* if any, on its prior rulings, this Court must follow the law of the Second Circuit. The Court will therefore apply the current law of this circuit to the exhaustion claims."); *Collins v. Goord,* 438 F.Supp.2d at 411 n. 13 (acknowledging that *Woodford* and *Hemphill* may be in tension, but deciding exhaustion claims under *Hemphill* inquiry); *Hernandez v. Coffey,* No. 99-CV11615, 2006 WL 2109465, at *3 (S.D.N.Y. July 26, 2006) (same). Here, Hargrove does not prevail under *Hemphill;* therefore, there is no occasion to address the potential effect *Woodford* may have had in his case.

**a. Whether administrative remedies were "available" to Hargrove**

The first step in the *Hemphill* inquiry requires a court to determine whether administrative remedies were available to the prisoner. *Hemphill,* 380 F.3d at 686. The test for assessing availability is an "objective one: that is, would a similarly situated individual of ordinary firmness have deemed them available." *Id.* at 688 (internal quotation marks omitted). In making this determination, "courts should be careful to look at the applicable set of grievance procedures." *Abney v. McGinnis,* 380 F.3d 663, 668 (2d Cir.2004). Exhaustion may be considered unavailable in situations where plaintiff is unaware of the grievance procedures or did not understand it, *Ruggiero,* 467 F.3d at 179, or where defendants' behavior prevents plaintiff from seeking administrative remedies,[FN14] *Hemphill v. State of New York,* 380 F.3d 680, 686 (2d Cir.2004).

FN14. Case law does not clearly distinguish between situations in which defendants' behavior renders administrative remedies "unavailable" to the plaintiff and cases in which defendants are estopped from asserting non-exhaustion as an affirmative defense because of their behavior. As such, there will be some overlap in the analyses.

Here, Hargrove has not claimed that NCCF's administrative grievance procedure was unavailable to him. In fact, Hargrove demonstrated his access to and knowledge of NCCF's IGP by filing proper grievances on November 19, 2004 and on May 10, 2005. Hargrove did not dispute any part of Investigator Williams's affidavit detailing the IGP and its availability to inmates since 2001. Specifically, Hargrove did not dispute, upon entering the facility, that he received a copy of the inmate handbook outlining the IGP. He has not claimed that he is unfamiliar with or unaware of NCCF's IGP. Hargrove has not alleged that prison officials failed to advance his grievances [FN15] or that they threatened him or took any other action which effectively rendered the administrative process unavailable.

FN15. Although not specifically alleged, interpreting the evidence to "raise the strongest argument," Hargrove may be arguing that NCCF's IGP was not available to him because the Grievance Coordinator failed to respond to his grievances. In the single grievance regarding PPD tests that defendants concede is authentic, Hargrove writes, "[n]ow for the third time your office refused to answer my grievances so please look into this matter because the T.B. shot is [sic] effecting my health." 11/19/04 Grievance. This language implies that Hargrove filed grievances in the past and received no response from the Inmate Grievance Coordinator. Furthermore, Hargrove wrote on one of the submitted copies of the November 19, 2004 grievance that "[t]his is the only accepte[sic] that Plaintiff got back from all grievances and letters that the Plaintiff sent to Sheriff Riley and his medical staffs about his staff making [sic] take T.B. test for 3 year[s]." County Defs'. Not. of Motion, Ex. A, 11/19/2004 grievance.

First, it must be reiterated that filing of the initial grievances was untimely. However, even assuming *arguendo* that the original grievances had been timely filed, district courts in the Second Circuit have held that the "lack of a response from the [Inmate Grievance Review Committee] does not excuse an inmate's obligation to exhaust his

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

remedies through available appeals." *Hernandez v. Coffey,* 2006 WL 2109465, at *3-5. *See also Hemphill,* 380 F.3d at 686 ("Threats or other intimidation by prison officials may well deter a prisoner of 'ordinary firmness' from filing an internal grievance, but not from appealing directly to individuals in positions of greater authority within the prison system"); *Acosta v. Corr. Officer Dawkins,* No. 04-CV-6678, 2005 WL 1668627, at *3 (S.D.N.Y. July 14, 2005) (inmate required to appeal lack of response to exhaust administrative remedies); *Mendoza v. Goord,* No. 00-CV-0146, 2002 U.S. Dist. LEXIS 22573, at *6 (S.D.N.Y. Nov. 21, 2002) ("If, as a result of a negligent error by prison officials-or even their deliberate attempt to sabotage a prisoner's grievance-the prisoner [does not receive a response] on his complaint, he is not thereby forestalled from appealing"). Hargrove did not assert or offer evidence suggesting that he appealed the unresponsiveness or that those appeals were not advanced.

**\*9** Additionally, Hargrove's transfer from NCCF to Sing Sing Correctional Facility ("Sing Sing") in July 2005 did not excuse his previous failure to properly exhaust. *See, e.g., Sims v. Blot,* No. 00-CV-2524, 2003 WL 21738766, at *4 (S.D.N.Y. July 25, 2003) (determining that failure to exhaust administrative remedies is not excused by transfer to another facility); *Santiago v. Meinsen,* 89 F.Supp.2d 435, 440-41 (S.D.N.Y.2000) (determining that plaintiff should not be "rewarded" for failing to participate in grievance procedure before being transferred). Hargrove had ample opportunity to properly file his grievances and to appeal their results as required by NCCF's procedures while he was imprisoned at NCCF. The last PPD test Hargrove complains of was given in 2004; therefore, Hargrove had until June or July of 2004 to timely file his grievance in accordance with NCCF's IGP. Hargrove was not transferred to Sing Sing until July 2005. County Defs.' Mem. of Law at 2. Thus, Hargrove's transfer cannot excuse his previous failure to properly exhaust.

**b. Estoppel**

The second step of the inquiry asks whether defendants are estopped from raising exhaustion as a defense. Specifically, "whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Hemphill,* 380 F.3d at 686 (internal citations omitted).

Here, Hargrove has not made any statements that would permit a finding that defendants should be estopped from raising the affirmative defense of exhaustion or that defendants waived the right to raise the defense. Defendants first raised the PLRA's exhaustion requirement as an affirmative defense in their respective answers. *See* County Defs.' Am. Answer at 3; NHCC Defs.' Answer at 1. County Defendants raised it again in their motion for summary judgment. *See* County Defs.' Mem of Law at 15-23. Thus, defendants are not estopped from raising the affirmative defense now. *See, e.g., Sloane,* 2006 WL 3096031, at *8 (exhaustion defense not waived where defendants first raised it in their motion to dismiss).

Additionally, defendants have not threatened Hargrove or engaged in other conduct preventing him from exhausting the available administrative remedies. *Cf. Ziemba v. Wezner,* 366 F.3d 161, 162 (2d Cir.2004) (holding defendants were estopped from asserting non-exhaustion because of prison officials' beatings, threats and other conduct inhibiting the inmate from filing proper grievances); *Feliciano v. Goord,* No. 97-CV-263, 1998 WL 436358, at *2 (S.D.N.Y. July 27, 1998) (holding defendants were estopped from asserting non-exhaustion where prison officials refused to provide inmate with grievance forms, assured him that the incidents would be investigated by staff as a prerequisite to filing a grievance, and provided prisoner with no information about results of investigation). Hargrove has not argued otherwise. *See Ruggiero,* 467 F.3d at 178 (holding defendants were not estopped from asserting a failure to exhaust defense where plaintiff pointed to no affirmative act by prison officials that would have prevented him from pursing administrative remedies); *Sloane,* 2006 WL 3096031, at *8 (finding no estoppel where plaintiff did not argue that defendants prevented him from pursuing the available administrative remedies); *Hernandez,* 2006 WL 2109465,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

at *4 (finding no estoppel where plaintiff did not argue that any threats or intimidation prevented him from pursuing his appeals). Thus, for the same reasons that administrative remedies were not deemed unavailable to Hargrove, defendants are not estopped from raising a failure to exhaust defense.

**c. Special circumstances**

*10 Even where administrative remedies are available and the defendants are not estopped from arguing exhaustion, the court must "consider whether 'special circumstances' have been plausibly alleged that justify 'the prisoner's failure to comply with administrative procedural requirements.' " Hemphill, 380 F.3d at 688 (quoting Giano, 380 F.3d at 676). For example, plaintiff's reasonable interpretation of regulations differing from prison official's interpretation has been held to constitute a "special circumstance." Giano, 380 F.3d at 676-77. No special circumstances have been alleged that would excuse Hargrove from availing himself of administrative remedies. See Sloane, 2006 WL 3096031, at *8; Freeman v. Goord, No. 02-CV-9033, 2004 U .S. Dist. LEXIS 23873, at * 9-10 (S.D.N.Y.2004) (granting motion to dismiss where "there is no evidence in the record ••• of any 'special circumstances' in this action.")

**(5)**

**Hargrove's Failure to Exhaust, in Addition to his Fraud on the Court, Warrants Dismissal with Prejudice**

Hargrove has not sufficiently rebutted the defendants' assertion of failure to exhaust, and a liberal reading of his submissions does not reveal any grounds to excuse that failure.

Because Hargrove filed a complaint in federal court before filing a grievance, permitting his unexhausted and unexcused claim to proceed would undercut one of the goals of the exhaustion doctrine by allowing NCCF to be haled into federal court without the "opportunity to correct its own mistakes with respect to the programs it administers." Woodford, 126 S.Ct. at 2385. See also Ruggiero, 467 F.3d at 178 (citing Porter, 534 U.S. at 525). Thus, his complaint must be dismissed.

In general, dismissal without prejudice is appropriate where plaintiff has failed to exhaust but the time permitted for pursuing administrative remedies has not expired. Berry v. Kerik, 366 F.3d 85, 87 (2d Cir.2004). Dismissal with prejudice is appropriate where "administrative remedies have become unavailable after the prisoner had ample opportunity to use them and no special circumstances justified failure to exhaust." Berry, 366 F.3d at 88. Here, Hargrove's administrative remedies were available to him during his entire period of confinement at NCCF. He remained incarcerated in NCCF throughout the time period in which he alleges the PPD tests are given. He could have exhausted remedies for his grievances at any time. Therefore, Hargrove had ample opportunity to seek administrative remedies but failed to do so. Because there is no evidence in the record that administrative remedies are still available to Hargrove, as the five-day time period had run, and because Hargrove has alleged no special circumstances justifying his failure to exhaust, his complaint is accordingly dismissed with prejudice. Berry, 366 F.3d at 88 (upholding dismissal with prejudice where plaintiff had no justification for his failure to pursue administrative remedies while they were available.)

*11 Additionally, defendants' have moved for sanctions based on Hargrove's alleged submission of falsified evidence. If a party commits a fraud on the court, the court has the inherent power to do whatever is reasonably necessary to deter abuse of the judicial process. Shangold v. The Walt Disney Co., No. 03-CV-9522, 2006 WL 71672, at *4 (S.D.N.Y. January 12, 2006) (citing Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991)). Fraud upon the court has been defined as "fraud which seriously affects the integrity of the normal process of adjudication." Gleason v. Jandrucko, 860 F.2d 556, 559 (2d Cir.1988); McMunn v. Mem'l Sloan-Kettering Cancer Center, 191 F.Supp.2d 440, 445 (S.D.N.Y.2002). In order for a court to grant sanctions based upon fraud, it must be established by clear and convincing evidence that a party has "sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by ... unfairly hampering

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

the presentation of the opposing party's claim or defense." *McMunn,* 191 F.Supp.2d at 455 (quoting *Aoude v. Mobil Oil Corp.,* 892 F.2d 1115, 1119 (1st Cir.1989).

After carefully reviewing the allegedly fraudulent documents, it must be concluded that Hargrove consciously falsified these documents. *See, e.g., Shangold,* 2006 WL 71672, at *1, *3 (finding clear and convincing evidence of fraud where plaintiffs fabricated a timeline and plot outlines to advance their claims); *McMunn,* 191 F.Supp.2d at 446 (finding clear and convincing evidence of fraud where plaintiff edited audio tapes and represented that they were unedited during discovery). The notaries performing services for prisoners at NCCF testify that they never notarized many of the documents supplied by Hargrove. *See* Klein Aff.; McDevitt Aff. Furthermore, a visual examination of the documents themselves makes it clear that many of the documents submitted by Hargrove are forgeries.

In considering what sanction to impose, courts consider the following five factors: (i) whether the misconduct was the product of intentional bad faith; (ii) whether and to what extent the misconduct prejudiced the plaintiffs; (iii) whether there was a pattern of misbehavior rather than an isolated instance; (iv) whether and when the misconduct was corrected; and (v) whether further misconduct is likely to occur in the future. *Scholastic, Inc. v. Stouffer,* 221 F.Supp.2d 425, 444 (S.D.N.Y.2002) (citing *McMunn,* 191 F.Supp.2d at 461).

Here, Hargrove's deception was not an isolated instance; he fabricated the dates on many grievance forms, in addition to improperly duplicating notary stamps on complaint letters to make them look authentic. Klein Aff. at 2; McDevitt Aff. at 2; County Defs.' 56.1 Statement ¶¶ C3, D3. He submitted these forgeries to defendants during discovery and again as exhibits to his Affidavit in Opposition to Defendant's Motion for Summary Judgment. A severe sanction is warranted as Hargrove's forgeries were intentional, he never corrected them once their authenticity was challenged and he continues to insist on their veracity. Aff. in Opp. at 1-4. Given that there is clear and convincing evidence that Hargrove has continuously and consciously perpetrated a fraud on the court through his submission of fraudulent documents and sworn

affirmations of those documents' authenticity, dismissal with prejudice is especially appropriate. *See, e.g., Shangold,* 2006 WL 71672, at *5 (dismissing with prejudice where plaintiffs fabricated evidence to advance their claims); *Scholastic,* 221 F.Supp.2d at 439-444 (dismissing with prejudice where plaintiff produced seven pieces of falsified evidence); *McMunn,* 191 F.Supp.2d at 445 (dismissing with prejudice where plaintiff "lie[d] to the court and his adversary intentionally, repeatedly, and about issues that are central to the truth-finding process").

**Conclusion**

**\*12** Because Hargrove did not satisfy the exhaustion requirement under the PLRA, defendants' motions for summary judgment are granted. Further, considering the fraud Hargrove perpetrated on the court, the claims are dismissed against all defendants with prejudice. The Clerk of the Court is directed to close the case.

SO ORDERED:

E.D.N.Y.,2007.
Hargrove v. Riley
Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2006 WL 2639369 (N.D.N.Y.)
(Cite as: 2006 WL 2639369 (N.D.N.Y.))

**C**
Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
James PETTUS, Plaintiff,
v.
Jospeh McCOY, Superintendent, Deputy Ryan,
Defendants.
No. 9:04-CV-0471.

Sept. 13, 2006.

James Pettus, Comstock, NY, pro se.

Charles J. Quackenbush, New York State Attorney
General, The Capitol Albany, NY, for Defendants.

**DECISION and ORDER**

THOMAS J. McAVOY, Senior District Judge.

**\*1** Plaintiff commenced the instant action asserting
various violations of his constitutional rights arising out of
his placement at the Southport Correctional Facility. In his
Complaint, Plaintiff alleges that he was improperly sent to
the Special Housing Unit ("SHU") at a maximum security
facility and that being in SHU has put his life in jeopardy.
Currently before the Court is Defendants' motion for
summary judgment pursuant to Fed.R.Civ.P. 56 seeking
dismissal of the Complaint in its entirety for failure to
exhaust administrative remedies.

**I. FACTS**[FN1]

> FN1. The following facts are taken from
> Defendants' statement of material facts submitted

pursuant to N.D.N.Y.L.R. 7.1(a)(3). These facts
are deemed admitted because they are supported
by the record evidence and Plaintiff failed to
submit an opposing statement of material facts as
required by Rule 7.1(a)(3). Plaintiff was
specifically advised by Defendants of his
obligation to file an opposing statement of
material facts and to otherwise properly respond
to the motion for summary judgment.

Plaintiff is an inmate in the custody of the New York State
Department of Correctional Services. Plaintiff signed the
instant Complaint on April 7, 2004. On his Complaint
form, Plaintiff indicated that there is a grievance
procedure available to him and that he availed himself of
the grievance procedure by filing a complaint with the
IGRC [FN2], followed by an appeal to the superintendent of
the facility, and then to the Central Office Review
Committee in Albany. The Complaint indicates that
Plaintiff is "waiting for response from Albany." The
Complaint was filed on April 27, 2004.

> FN2. Inmate Grievance Review Committee.

On April 12, 2004, prior to the filing of the instant
Complaint, Plaintiff filed a grievance relating to the issues
presented in this case. On April 19, 2004, the IGRC
recommended that Plaintiff's grievance be denied. Plaintiff
then appealed that decision to the facility Superintendent.
In the meantime, on April 27, Plaintiff commenced the
instant litigation. On May 3, 2004, after Plaintiff filed the
Complaint in this case, the Superintendent denied
Plaintiff's grievance. On May 5, 2004, Plaintiff appealed
the decision to the Central Office Review Committee in
Albany. On June 23, 2004, the Central Office Review
Committee denied Plaintiff's appeal. Plaintiff did not file
any other grievances in connection with the matters raised
in this lawsuit.

Defendants now move to dismiss on the ground that
Plaintiff commenced the instant action before fully
exhausting his available administrative remedies.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2639369 (N.D.N.Y.)
(Cite as: 2006 WL 2639369 (N.D.N.Y.))

## II. DISCUSSION

The sole issue presented is whether Plaintiff was required to complete the administrative process before commencing this litigation. This issue has already been addressed by the Second Circuit in *Neal v. Goord,* 267 F.3d 116 (2d Cir.2001). The issue in that case was "whether plaintiff's complaint should have been dismissed despite his having exhausted at least some claims during the pendency of his lawsuit." *Id.* at 121. The Second Circuit held that "exhausting administrative remedies after a complaint is filed will not save a case from dismissal." *Id.*

In this case, Defendants have established from a legally sufficient source that an administrative remedy is available and applicable. *Mojias v. Johnson,* 351 F.3d 606, 610 (2d Cir.2003); *see also* 7. N.Y.C.R.R. § 701.1, *et seq.* Plaintiff's Complaint concerns his placement in SHU at a maximum security facility. These are matters that fall within the grievance procedure available to NYSDOCS inmates and are required to be exhausted under the Prison Litigation Reform Act, 42 U.S.C. § 1997e. Plaintiff has failed to demonstrate any applicable exception to the exhaustion requirement. Because Plaintiff commenced the instant litigation prior to fully completing the administrative review process, the instant Complaint must be dismissed without prejudice. *Neal,* 267 F.3d 116.

## III. CONCLUSION

**\*2** For the foregoing reasons, Defendants' motion for summary judgment is GRANTED and the Complaint is DISMISSED WITHOUT PREJUDICE. The Clerk of the Court shall close the file in this matter.

IT IS SO ORDERED.

N.D.N.Y.,2006.
Pettus v. McCoy
Not Reported in F.Supp.2d, 2006 WL 2639369 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2010 WL 276206 (E.D.N.Y.)
(Cite as: 2010 WL 276206 (E.D.N.Y.))

**C**
Only the Westlaw citation is currently available.

United States District Court,
E.D. New York.
Douglas STRONG, Petitioner,
v.
Harry LAPIN, Director of the Federal Bureau of
Prisons, Cameron Lindsay, Warden of MDC Brooklyn,
Respondents.
**No. 09-CV-3522 (ARR).**

Jan. 15, 2010.

JUDGMENT

**\*1** An Opinion and Order of Honorable Allyne R. Ross, United States District Judge, having been been filed on January 15, 2010, adopting the Report and Recommendation of Magistrate Judge Cheryl L. Pollak, dated November 9, 2009, after a *de novo* review of the record; and denying the petition for a writ of mandamus; it is

Douglas Strong, Fairton, NJ, pro se.

Seth D. Eichenholtz, United States Attorney's Office, Brooklyn, NY, for Defendants.

ORDERED and ADJUDGED that petitioner take nothing of the respondents; that the Report and Recommendation of Magistrate Judge Cheryl L. Pollak is adopted; and that the petition for a writ of mandamus is denied.

ROBERT C. HEINEMANN

Clerk of Court

*REPORT AND RECOMMENDATION*

CHERYL L. POLLAK, United States Magistrate Judge.

Petitioner Douglas A. Strong, proceeding *pro se,* brings this petition, seeking a writ of mandamus to vacate certain sanctions, specifically, the loss of good conduct time and his return to a secure facility, which were imposed by respondents after petitioner failed to comply with the terms of his work release program. Petitioner alleges that in imposing these sanctions, defendants violated his rights to due process by failing to give petitioner notice of the charges that were pending against him, by failing to provide him with a copy of the report that formed the basis for the charges, and by depriving petitioner of the right to attend the disciplinary hearing that resulted in the imposition of sanctions.

By Order dated October 20, 2009, the petition for mandamus was referred to the undersigned to issue a Report and Recommendation. For the reasons set forth below, it is respectfully recommended that petitioner Strong's petition for a writ of mandamus be denied.

*FACTUAL BACKGROUND*

On November 9, 2007, petitioner was sentenced to a term of 33 months imprisonment and 2 years of supervised release after his conviction for bringing illegal aliens into the country in violation of 8 U.S.C. § 1324(a)(2)(B). (Gvt. Mem.[FN1] at 2). On April 14, 2009, he was transferred to a work release program at a Community Corrections Center ("CCC") in Brooklyn to serve out the remainder of his sentence. (*Id.;* Pet'n[FN2] at 1). Petitioner alleges that he paid his subsistence fees and remained drug and alcohol free while in the program. (Pet'n at 1). The rules of the CCC (the "Rules") and the Community Based Program Agreement (the "Agreement"), which petitioner was required to sign, provide that: "[a]ny unauthorized absence from the facility will be considered an as escape." (Eichenholtz Dec.,[FN3] Ex. A). The Agreement clearly

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 276206 (E.D.N.Y.)
(Cite as: 2010 WL 276206 (E.D.N.Y.))

provides that if an inmate fails to call the facility to report that he will be returning late from a pass, that would be considered an escape and a disciplinary report would be generated. (*Id.*)

> **FN1.** Citations to "Gvt Mem." refer to Government's Memorandum of Law in Opposition to Petition Seeking a Writ of Mandamus, dated October 15, 2009.

> **FN2.** Citations to "Pet'n" refer to the Petition for a Writ of Mandamus pursuant to 28 U.S.C. § 1361, filed on July 22, 2009.

> **FN3.** Citations to "Eicenholtz Dec." refer to the Declaration of Seth D. Eichenholtz, Assistant United States Attorney, dated October 14, 2009.

According to petitioner, on June 20, 2009, he went to work and was granted a weekend pass to visit his sister on Long Island. (Pet'n at 2). He claims that on June 21, 2009, he made a call to the half way house and was told that he was considered an escapee. (*Id.*) Petitioner told the staff that he had a weekend pass, but they indicated that because it was the weekend, they were unable to access the records. (*Id.*) He was told to turn himself in at the United States Marshal's office, which he did the following morning. (*Id.*)

**\*2** Respondents' story is slightly different. They contend that on June 20, 2009, at approximately 5:30 a.m., petitioner signed out of the CCC to go to work at his job at Conceptual Restoration in the Bronx. (Eichenholtz Dec., Ex. B). The work pass allowed him to be out of the CCC between 5:00 a.m. and 6:00 p.m. (*Id.*) When petitioner failed to return to the CCC by 6:00 p.m., the CCC contacted both the local police and local hospitals but he was nowhere to be found. (*Id.*) Effective as of 6:00 p.m., petitioner was declared on escape status. (*Id.*)

On June 22, 2009, petitioner was taken into custody and housed at the MDC Brooklyn. (Colvin Dec.[FN4] ¶ 3; Garcia Dec.[FN5] ¶ 7). According to the government, petitioner was charged with "Escape from Unescorted Community

Programs and Activities and Open Institutions (Minimum) and from Outside Secure Institutions-*without* Violence, Code 200." (Garcia Dec. ¶ 6) (emphasis in original). The government contends that a notice of this Bureau of Prisons ("BOP") charge was served on defendant on June 24, 2009, and he signed a form stating that he received the notice on that day. (Eichenholtz Dec., Ex. C).

> **FN4.** Citations to "Colvin Dec." refer to the Declaration of Crista M. Colvin, dated Oct. 14, 2009.

> **FN5.** Citations to "Garcia Dec." refer to the Declaration of Daniel Garcia, dated October 14, 2009.

According to the government, residents of the CCC who violate the rules have a right to a Center Discipline Committee ("CDC") hearing relating to the violation. (Garcia Dec. ¶¶ 3-4). The initial hearing was held on June 25, 2009. (*Id.* ¶ 9). However, because BOP regulations require at least 24 hours notice and petitioner only received the notice 21 hours prior to the hearing, a new hearing was set for July 13, 2009. (*Id.* ¶ 10) According to the government, petitioner chose not to be represented by a staff member at the hearing, chose not to present any witnesses, and simply made a statement in which he admitted that he had gone to a bar after work, gotten into an altercation and chosen not to return to the CCC in accordance with his curfew, (Eihenholtz Dec., Ex. E). Based on the CDC's finding that petitioner had committed the charges, a recommendation was made that petitioner be transferred to a more secure facility and that he lose available good conduct time. (*Id.*) Daniel Garcia, MDC Brooklyn's Disciplinary Hearing Officer, reviewed the CDC's recommendation to ensure that the proper procedures had been followed. (Garcia Dec. ¶¶ 8-10).

Petitioner disputes the government's claim that he received a copy of the incident report, asserting that as of the date of the Petition, "Strong still has never received a copy of the report." (Pet'n at 4). Petitioner contends that when he questioned his Unit Manager as to why he did not receive a report and was not afforded a hearing, the Unit Manager responded: " 'Strong if you or anyone else violates the half way house rules your hearing is held in absentia and your

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 276206 (E.D.N.Y.)
(Cite as: 2010 WL 276206 (E.D.N.Y.))

[sic] returned to prison.' " (*Id.*) Accordingly, because petitioner contends that he was not afforded the procedural protections required in a prison disciplinary proceeding, he brings this mandamus petition seeking an order restoring his good time, his original release date of December 7, 2009, and restoring him to the work release program. (*Id.* at 6).

*DISCUSSION*

A. *Requirements for Mandamus Relief*

**\*3** Under 28 U.S.C. § 1361, the district court has "original jurisdiction in any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Before a writ of mandamus may issue, petitioner must demonstrate that there is: "(1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and peremptory duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available." *Anderson v. Bowen,* 881 F.2d 1, 55 (2d Cir.1989); *see also Aguiar v. Laird,* No. 07 CV 1081, 2008 WL 795303, *2 (E.D.N.Y. Mar. 12, 2008)* (defining the conditions that the plaintiff must demonstrate: 1) he must show that there is "no other adequate means to attain the relief he desires;" 2) he must demonstrate that his right to mandamus is "clear and indisputable:" and 3) the court must be satisfied that the writ is appropriate under the circumstances) (internal quotations omitted).

Mandamus "is an extraordinary remedy that is 'granted only in the exercise of sound discretion.' " *Miller v. French,* 530 U.S. 327, 340, 120 S.Ct. 2246, 147 L.Ed.2d 326 (2000) (citation omitted); *see also In re Dow Corning Corp.,* 261 F.3d 280, 285 (2d Cir.2001) (noting that the remedy of mandamus is "rarely granted"). Indeed, the common law writ of mandamus, as codified in 28 U.S.C. § 1361, only provides a remedy "if [the petitioner] has exhausted all other avenues of relief and only if the [respondent] owes him a clear nondiscretionary duty." *Kerr v. United States Dist., Court,* 426 U.S. 394, 402-03, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976). To this end, a federal court's jurisdiction under the statute is "limited to actions seeking to compel the performance of a non-discretionary duty." *Duamutef v. INS,* 386 F.3d 172,

180 (2d Cir.2004); *see also Defeo v. Lapin,* No. 08 CV 7513, 2009 WL 1788056, *2 (S.D.N.Y. June 22, 2009).* Thus, a court must dismiss a petition for a writ of mandamus if the petition seeks to compel a discretionary action by a government agency. *Defeo v. Lapin,* 2009 WL 1788056, at *2* (holding that the court lacked jurisdiction to issue a writ of mandamus where petitioner sought an order compelling the director of the BOP to file a motion for a reduction in petitioner's sentence on the grounds that such a decision was discretionary on the part of the BOP); *see also Wilbur v. United States ex rel. Kadrie,* 281 U.S. 206, 218, 50 S.Ct. 320, 74 L.Ed. 809 (1930) (holding that a writ of mandamus may not compel "the exercise of judgment or discretion in a particular way").

B. *Exhaustion of Administrative Remedies*

As an initial matter, the government contends that the petition should be dismissed because petitioner has failed to exhaust his administrative remedies.

Under the Prison Litigation Reform Act ("PLRA"), "no actions shall be brought with respect to prison conditions under section 1983 [of Title 42], or any other Federal law, by a prisoner confined in jail, prison, or any other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Complete pre-suit exhaustion is required." *Barney v. Bureau of Prisons,* No. 02 CV 5284, 2004 WL 2810108, at *6 (E.D.N.Y. Dec.8, 2004); see also Williams v. United States,* No. 02 CV 6523, 2004 WL 906221, at *5 (E.D.N.Y. Apr.28, 2004).* Thus, before filing suit, an inmate must challenge the condition to the highest level of administrative review. *Id.* at *1. The exhaustion requirement applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532; *see also Baez v. Bureau of Prisons,* No. 02 CV 9216, 2004 WL 1777583, at *4 (S.D.N.Y. May 11, 2004).* The purpose behind the exhaustion requirement is to afford corrections officials time to address complaints internally. *See Porter v. Nussle,* 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002).

**\*4** The government represents that the BOP has

Slip Copy, 2010 WL 276206 (E.D.N.Y.)
(Cite as: 2010 WL 276206 (E.D.N.Y.))

established a procedure which allows inmates to seek administrative review of any complaint regarding their incarceration. (See Gvt. Mem. at 5); see also 28 C.F.R. § 542.10; Baez v. Bureau of Prisons. 2004 WL 1777583, at *4 (discussing the BOP procedures when an inmate seeks to challenge any issue relating to an aspect of his confinement). The BOP Administrative Remedy Program requires that an inmate first attempt to resolve his dispute informally through the staff and the staff is required to try to resolve the issue. See 28 C.F.R. § 542.13(a); see also Baez v. Bureau of Prisons, 2004 WL 1777583, at *2. If that method is not successful, the inmate may, within 20 days of the event, seek the Warden's review by submitting a Form BP-9, which is a written "Administrative Remedy Request to the Warden." See C.F.R. § 542.15(a). If the inmate's BP-9 request is denied, the inmate may file a Form BP-10 appeal to the Regional Director of the BOP. 28 C.F .R. § 542.15(a). Disciplinary sanctions can be challenged initially through the filing of a BP-10 Form. 28 C.F.R. § 542.14(d)(2). If the Regional Director denies the appeal, that decision in turn may be appealed through a BP-11 appeal to the General Counsel's Office within 30 days of the Regional Director's decision. 28 C.F.R. § 542 .15(a); see Baez v. Bureau of Prisons, 2004 WL 1777583 at *2. Until the BOP's Central Office considers the appeal, no administrative remedy is considered to be fully exhausted.

In opposing Mr. Strong's petition, the government acknowledges that petitioner filed a BP-10 on July 30, 2009, appealing the sanctions imposed as a result of his escape from the CCC. (Colvin Dec. ¶ 5). Before filing a BP-11, however, petitioner commenced this instant lawsuit. (Id. ¶ 6). Thus, petitioner has failed to completely exhaust his administrative remedies. See Barney v. Bureau of Prisons, 2004 WL 2810108, at *6. Moreover, even if petitioner has since taken steps to completely exhaust his administrative remedies under Section 1997e, this would nonetheless be insufficient because petitioner must have pursued all institutional remedies before filing suit; "it is not enough to take steps toward exhaustion or even to exhaust a claim, during the pendency of the case." Baez v. Bureau of Prisons. 2004 WL 1777583, at *5.

Accordingly, it is respectfully recommended that the petition be dismissed based on Mr. Strong's failure to exhaust all administrative remedies prior to filing this petition.

C) Requirements for Mandamus Relief

1) Disciplinary Procedures are Discretionary

The government contends that even if petitioner had exhausted his administrative remedies, a writ of mandamus is not warranted because the BOP has discretion to decide how to implement its disciplinary procedures and therefore, petitioner's " 'right to relief is [not] clear and indisputable.' " (Gvt. Mem. at 7-9 (quoting In re FCC, 217 F.3d 125, 134 (2d Cir.2000)). The government asserts that the procedures for disciplinary action are established by BOP regulation and require that an inmate be given notice of the charges and a hearing. See 28 C.F.R. § 541.17. The procedures also allow for an inmate to be present during the hearing. Id. However, the procedures are subject to modification in its exercise of BOP discretion when institutional concerns and individual circumstances require deviation. Id. Thus, when an inmate escapes, the hearing may be held in absentia with notice served on the inmate when he is taken back into custody. Id. § 541.17(d).

*5 To the extent that petitioner's claim is based on a perceived deviation from agency procedure, the BOP is afforded discretion to modify the procedures and therefore, no clearly defined peremptory duty exists for which a writ of mandamus may issue.

2) No Due Process Violation

Petitioner alleges that the government violated his right to procedural due process. (Pet'n at 4-7). To make out such a claim, petitioner must first prove the existence of a protected interest, and then prove government deprivation of that interest without due process of law. See, e.g., Tellier v. Fields, 208 F.3d 69, 79-90 (2d Cir.2000). The government argues that petitioner fails on both prongs of the test. (Gvt. Mem. at 9-13).

The Court agrees that petitioner's removal from his work release program did not implicate a liberty interest upon

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 276206 (E.D.N.Y.)
(Cite as: 2010 WL 276206 (E.D.N.Y.))

which petitioner may base his due process claim. As the court in *Tellier v. Scott,* No. 94 CV 3459, 2004 WL 224499, at * 3 (S.D.N.Y. Feb. 5, 2004), noted: "the violation of a BOP regulation itself does not constitute a violation of due process." Rather, the question for the court is whether a liberty interest has been created by statute or regulation such that a due process right exists.

Congress has given the BOP broad discretion to "designate the place of a prisoner's imprisonment." 18 U.S.C. § 3621(b). It follows that no liberty interest exists that would apply to plaintiff's placement in a half way house or rehabilitation program. *See Castellar v. Federal Bureau of Prisons,* No. 07 CV 3952, 2009 WL 1674642, * 1 (E.D.N.Y. May 29, 2009); *see also Sealey v. Giltner,* 116 F.3d 47, 52 (2d Cir.1997) (noting that an inmate's confinement only implicates a protected interest if it constitutes a "deprivation [that] is atypical and significant and the state has created the liberty interest by statute or regulation"). Given that petitioner has no liberty interest or right to be placed in a work release program, he cannot claim a due process violation based on the BOP's decision to remove him from that program. *See Castellar v. Federal Bureau of Prisons,* 2009 WL 1674642, * 1.

Even if petitioner could establish a liberty interest that was implicated here, his due process claim still must fail because the procedures that were followed did comport with the requirements of due process. In *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), the Supreme Court indicated that in the context of disciplinary process for inmates, constitutional due process requires that the inmate receive notice of the charges against him and an opportunity to be heard. As long as a disciplinary sanction is based on some evidence, it satisfies the standard for due process, *See, e.g., Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 454-56, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985).

Here, the government argues that the BOP paperwork indicates that petitioner was taken into custody at the Brooklyn MDC on June 24, 2009, where petitioner was given prompt notice of the charges. (Gvt. Mem. at 12). Along with the notice, petitioner was given an incident report completed by one of the supervisors at petitioner's work release program detailing the evidence against him, including that petitioner failed to report back to the facility

at 6:00 p.m. and had neither been arrested nor admitted to a hospital. (Eichenholtz Dec., Ex. B). The notice, which petitioner signed for, further states that there would be a hearing on June 25, 2009 at 12:46 p.m. (*Id.,* Ex. C). Moreover, there were two hearings held in this case: one on June 25, 2009, and a second hearing held July 13, 2009 because petitioner had received less than 24 hours notice of the first proceeding. (*Id.,* Ex. D). In the report prepared by the hearing committee, petitioner is reported to have explained at the hearing that he "went to a bar after work" and subsequently "decided not to return to the facility." (*Id.,* Ex. E) (quoting "Summary of Inmate Statements" section in report). These statements in the report are actually initialed by petitioner, demonstrating that he had an opportunity to be heard, and was given an opportunity to review his statements, before the committee rendered its decision.

**\*6** Accordingly, in light of the documents presented by the BOP, it appears that petitioner does not have a clear right to any of the relief that he seeks and therefore he cannot satisfy the requirements needed before a writ of mandamus may issue. *See Anderson v. Bowen,* 881 F.2d at 55.

*CONCLUSION*

For the reasons stated above, this Court respectfully recommends that the petition for a writ of mandamus be denied.[FN6] Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72; *Small v. Secretary of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989). The Clerk is directed to mail copies of this Report and Recommendation to the parties.

FN6. By Motion dated August 28, 2009, petitioner seeks discovery relating to similar incidents involving other BOP inmates, including, *inter alia,* "[a]ll BOP forms BP-37 which is the form for an inmate to sign if he waives his right to be present for a hearing in front of the DHO;" "[a]ll incident reports written

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 276206 (E.D.N.Y.)
(Cite as: 2010 WL 276206 (E.D.N.Y.))

by the Brooklyn and Bronx half-way houses that resulted in the inmates['] return to custody ..."; and "[a]ll the DHO reports on the hearings conducted for inmates that were returned for rule violations from the half way house." Given the Court's recommendation that the petition be denied, the Court has not reviewed petitioner's motion for discovery and denies it as moot.

SO ORDERED.

E.D.N.Y.,2010.
Strong v. Lapin
Slip Copy, 2010 WL 276206 (E.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

**Westlaw Delivery Summary Report for LIBINTBUFF,NN**

| | |
|---|---|
| Date/Time of Request: | Thursday, July 7, 2011 14:21 Central |
| Client Identifier: | KEVINMACLEOD |
| Database: | DCT |
| Citation Text: | Not Reported in F.Supp.2d |
| Lines: | 234 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson Reuters, West and their affiliates.

Not Reported in F.Supp.2d, 2003 WL 68031 (S.D.N.Y.)
**(Cite as: 2003 WL 68031 (S.D.N.Y.))**

**C**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
John OWUSU, Plaintiff,
v.
FEDERAL BUREAU OF PRISONS, and Frederick
Menifee, Warden Fci Otisville, et al., Defendants.

No. 02 Civ.0915 NRB.
Jan. 7, 2003.

**Background:** Inmate sued, inter alia, the Federal Bureau of Prisons and the warden, seeking damages relating to injuries he sustained in a fall that took place at a federal correctional institution.

**Holdings:** The District Court, Buchwald, J., held that:
(1) inmate's *Bivens* claims were barred by doctrine of sovereign immunity;
(2) inmate failed to exhaust his administrative remedies, as required under Prison Litigation Reform Act (PLRA) before he could assert *Bivens* claims against the warden in his individual capacity;
(3) United States would be substituted for warden as to inmate's Federal Tort Claims Act (FTCA) claims.

Ordered accordingly.

West Headnotes

**[1] United States 393 ⇒50.10(3)**

393 United States
   393I Government in General
      393k50 Liabilities of Officers or Agents for Negligence or Misconduct
         393k50.10 Particular Acts or Claims
            393k50.10(3) k. Criminal Law Enforcement and Investigation; Prisoners' Claims. Most Cited Cases
    Inmate's *Bivens* claims against the Federal Bur-

eau of Prisons and a warden in his official capacity, seeking damages relating to injuries he sustained in a fall that took place at a federal correctional institution, were barred by the doctrine of sovereign immunity; claims were essentially claims against the United States.

**[2] United States 393 ⇒50.10(3)**

393 United States
   393I Government in General
      393k50 Liabilities of Officers or Agents for Negligence or Misconduct
         393k50.10 Particular Acts or Claims
            393k50.10(3) k. Criminal Law Enforcement and Investigation; Prisoners' Claims. Most Cited Cases
    Inmate seeking damages relating to injuries he sustained in a fall failed to exhaust his administrative remedies, as required under Prison Litigation Reform Act (PLRA) before he could assert Bivens claims against the warden in his individual capacity. Civil Rights of Institutionalized Persons Act, § 7, 42 U.S.C.A. § 1997e; 28 C.F.R. § 542.

**[3] United States 393 ⇒50.5(1)**

393 United States
   393I Government in General
      393k50 Liabilities of Officers or Agents for Negligence or Misconduct
         393k50.5 Immunity or Privilege in General
            393k50.5(1) k. In General. Most Cited Cases
    United States would be substituted for federal prison warden in inmate's Federal Tort Claims Act (FTCA) suit where the Attorney General certified that the warden was acting within the scope of his employment at the time of the inmate's fall at the correctional institution and the inmate's conclusory statements in response did not address the issue. 28 U.S.C.A. § 2679(d)(1).

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 68031 (S.D.N.Y.)
**(Cite as: 2003 WL 68031 (S.D.N.Y.))**

Uzmah Saghir, New York, NY, for Plaintiff.

Rebecca Martin, Assistant United States Attorney, New York, NY, for Defendant.

MEMORANDUM AND ORDER

BUCHWALD, J.

**\*1** Plaintiff John Owusu sues for damages relating to injuries he sustained in a fall that took place at the federal correctional institution at Otisville, New York. According to the complaint, plaintiff was walking to the facility's dining hall on February 25, 2001 when he slipped on snow mixed with freezing rain, striking the left side of his face and injuring his left eye, nose, and jaw. Plaintiff claims that as a result of the fall he suffered numerous injuries, including a broken cheek bone, swelling and tenderness on the left side of his face, and difficulty chewing, as well as chronic headaches, blurred vision, and permanent disfigurement to his face. *See* Compl. § Nature of Action ¶ 1 and ¶ 2, § Cause of Action ¶ 1 at Count II and Addendum to Count I

Owusu accuses the defendants of two wrongs relating to his fall and injuries: (1) "gross negligence" for failing to maintain the Otisville facility walkways in a "safe and nonhazardous condition," *see* Compl. § Jurisdiction ¶ 2; and (2) failure to provide medical treatment in accordance with community standards for the initial injuries he sustained and to prevent his further injuries. Specifically, with respect to the failure to provide adequate medical treatment claim, plaintiff asserts that defendants "failed to respond quickly and efficiently to my serious medical needs," *see* Addendum to Compl., and did not provide him with the prophylactic medical care necessary to prevent permanent harm.[FN1] *See* Compl. § Nature of the Case ¶ 1.

> FN1. Owusu was ultimately taken to an outside hospital for treatment, but claims that this was after his condition had degenerated, too late to prevent the permanent injuries he sustained *See* Compl. § Nature

of the Case ¶ 1.

Plaintiff sues under two theories of liability. First, he asserts a *Bivens* "constitutional tort" claim for violation of his Eighth Amendment rights. *See Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Second, he asserts a negligence claim under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-2680. Defendants have made a number of arguments to dismiss the claims as pleaded.

[1] First, defendants argue that plaintiff's *Bivens* claims against the Federal Bureau of Prisons (BOP), its constituent facility, FCI Otisville, and Warden Frederick Menifee in his official capacity should be dismissed on sovereign immunity grounds. Defendants correctly assert that the United States has not waived its sovereign immunity as to constitutional tort claims for money damages, such as this. *See FDIC v. Meyer,* 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994). Further, "[b]ecause an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are also barred under the doctrine of sovereign immunity." *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 510 (2d Cir.1994). Thus, plaintiff's claims against the BOP and Warden Menifee in his official capacity are properly dismissed.

[2] Second, defendants assert that plaintiff's *Bivens* claims against Warden Menifee in his individual capacity should be dismissed for failure to exhaust the available administrative remedies as required the Prisoner Litigations Reform Act (PLRA). Under the PLRA, a prisoner pursuing a federal lawsuit, including a *Bivens* action like this one, is required to exhaust the available administrative remedies before a court may hear his or her case. *See Porter v. Nussle,* 534 U.S. 516, 524-25, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); *see also Funches v. Reish,* No. 97 Civ. 7611, 1998 WL 695904, at \*9 (S.D.N.Y. Oct. 5, 1998) (finding that

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 68031 (S.D.N.Y.)
**(Cite as: 2003 WL 68031 (S.D.N.Y.))**

the PLRA's exhaustion requirement applies to *Bivens* claims); *Hylton v. Federal Bureau of Prisons,* No. CV 00-5747, 2002 WL 720605, at *2 (E.D.N.Y. March 11, 2002)* (same). The *Nussle* decision makes it clear that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstance of particular episodes, and whether they allege excessive force or some other wrong," *Nussle* 534 U.S. at 532, and that "[a]ll 'available' remedies must now be exhausted; those remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.' " *id.* at 524. The exhaustion requirement cannot be dispensed with, meaning that a prisoner must file a grievance and pursue any administrative appeals, even if the only relief sought is monetary damages that will not be available administratively. *See Booth v. Churner,* 532 U.S. 731, 739-40, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001).

**\*2** Here, while plaintiff did fully exhaust the available administrative remedies for his FTCA claim, he did not do so for his *Bivens* claim under the PLRA. The exhaustion procedures under the two statutes differ,[FN2] and the fulfillment of one does not constitute satisfaction of the other. *Cf. Funches v. Reish,* No. 97 Civ. 7611, 1998 WL 695904, at *9 (S.D.N.Y. Oct. 5, 1998)* (finding that a prisoner's FTCA claim was exhausted, but that his *Bivens* claim was not); *Hylton v. Federal Bureau of Prisons,* No. CV 00-5747, 2002 WL 720605, at *2 (E.D.N.Y. March 11, 2002)* (finding that "it is entirely possible that [plaintiff] exhausted his administrative remedies for purposes of the FTCA without exhausting remedies pursuant to the PLRA for purposes of filing a *Bivens* claim" because the plaintiff had failed to exhaust the BOP's four-step grievance procedure). The PLRA's mandatory exhaustion requirement is specifically designed to facilitate the resolution of federal prisoner claims internally without resorting to the courts,[FN3] while the FTCA's administrative exhaustion requirements permit a prisoner to skip over the truly "internal" steps of the PLRA process entirely.[FN4] Furthermore, the PLRA "eliminated ... the discretion to

dispense with administrative exhaustion." *Booth* 532 U.S. at 739. Accordingly, plaintiff's *Bivens* claim against Warden Menifee is dismissed without prejudice pending his exhaustion of the four-step administrative procedures set forth in the BOP's Administrative Remedy Program. *See* 28 C.F.R. § 542.

> **FN2.** The available administrative remedies for a *Bivens* claim, consist of a four-step set of procedures set forth in the BOP's Administrative Remedy Program, 28 C.F.R. § 542, which include: (1) attempting informal resolution with prison staff; (2) submitting a formal written "Administrative Remedy Request" to the warden within twenty days of the triggering event; (3) appealing the warden's decision to the appropriate regional director within twenty days of the formal request being denial; and (4) appealing the Regional Director's decision to the BOP General Counsel's office within thirty days. *See* 28 C.F.R. §§ 542.13(a), 542.14(a), 542.15(a); Tafelski Decl. ¶ 3. The FTCA's administrative review requirements, on the other hand, merely require an inmate to file his or her claim with the Regional Office and appeal to the General Counsel's office, which Mr. Owusu has done. *See* 28 C.F.R. §§ 543 .31, 543.32.

> **FN3.** According to the Supreme Court, "[b]eyond doubt, Congress enacted [the exhaustion requirement] to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 68031 (S.D.N.Y.)
**(Cite as: 2003 WL 68031 (S.D.N.Y.))**

review might 'filter out some frivolous claims.' And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Nussle,* U.S. at 524 (citations omitted).

FN4. As we discussed above, the FTCA process permits a prisoner to start with the relevant BOP regional office without ever seeking internal redress within the prison.

Next, defendants assert that the individual *Bivens* claim against Warden Menifee should be dismissed because Warden Menifee was not individually involved in the tort plaintiff alleges. *See Black v. United States,* 534 F.2d 524, 527 (2d Cir.1976) (holding that in a *Bivens* action a plaintiff must "allege the defendant's direct and personal responsibility for the purportedly unlawful conduct of his subordinates."). While we need not address this issue in light of our decision to dismiss this claim for failure to exhaust, we note that plaintiff's pleadings do not allege Warden Menifee's direct and personal involvement in his fall.

[3] Finally, defendants argue that the United States should be substituted as the proper defendant in plaintiff's FTCA claim against the BOP, Warden Menifee, and FCI Otisville. Pursuant to the FTCA as amended by the Westfall Act, a tort action filed against federal employees is deemed an action against the United States and the United States is to be substituted as the defendant when the Attorney General certifies that the defendant employee was acting within the scope of his employment when the claim arose. 28 U.S.C. § 2679(d)(1); *McHugh v. University of Vermont,* 966 F.2d 67, 70 (2d Cir.1992). This certification is reviewable *de novo* by the district court, and such review is triggered by opposition from the plaintiff "alleg[ing] with particularity facts relevant to the scope-of-employment issue" as read in the light most favorable to plaintiff. *McHugh,* 966 F.2d at 74. In this case, defendants have submitted a certification by the United States Attorney for the Southern District of

New York that Warden Menifee was acting within the scope of their employment with the BOP at the time of the incident alleged in plaintiff's complaint. *See* Certification of United States Attorney James Comey, dated July 26, 2002. In opposition, plaintiff makes few arguments, simply stating that "[the] BOP and the Warden abused the Plaintiff's 8[th] Amendment rights to be free from Cruel and Unusual treatment" (in response to defendants' argument the Warden Menifee was not individually responsible for plaintiff's injuries) and that "for the [just-quoted] reasons mentioned above [the] United States should not be substituted as a sole defendant in this claim." Opp'n § Liability of Individual Defendants. These conclusory statements do not address the issue of whether Warden Menifee was acting within the scope of his employment, as has been certified, which is the only relevant consideration in whether the United States is the proper defendant. Hence, defendants' motion to substitute the United States as the defendant for plaintiff's FTCA claim is granted.

*CONCLUSION*

**\*3** To summarize, the claims against the defendants in their official capacity are dismissed, the *Bivens* claim against Warden Menifee is dismissed without prejudice, and the United States is substituted as the proper defendant in plaintiff's FTCA claim.

IT IS SO ORDERED.

S.D.N.Y.,2003.
Owusu v. Federal Bureau of Prisons
Not Reported in F.Supp.2d, 2003 WL 68031 (S.D.N.Y.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

**Westlaw Delivery Summary Report for LIBINTBUFF,NN**

| | |
|---|---|
| Date/Time of Request: | Thursday, July 7, 2011 14:22 Central |
| Client Identifier: | KEVINMACLEOD |
| Database: | DCT |
| Citation Text: | Not Reported in F.Supp.2d |
| Lines: | 215 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson Reuters, West and their affiliates.

Not Reported in F.Supp.2d, 2002 WL 720605 (E.D.N.Y.)
**(Cite as: 2002 WL 720605 (E.D.N.Y.))**

**C**

Only the Westlaw citation is currently available.

United States District Court, E.D. New York.
Michael Angelo HYLTON, Plaintiff,
v.
FEDERAL BUREAU OF PRISONS, Metropolitan
Detention Center, and Warden Dennis Hasty, Defendant.

No. CV 00-5747(RR).
March 11, 2002.

Michael Angelo Hylton, Elmira Correctional Facility, Elmira, Plaintiff, pro se.

Honorable Alan Vinegrad, United States Attorney, Eastern District of New York, Brooklyn, By Sharon L. Volckhausen, Assistant U.S. Attorney, for Defendants.

Memorandum and *ORDER*
RAGGI, District J.

**\*1** Michael Angelo Hylton was convicted before this court on July 14, 2000, having pleaded guilty to one count of receiving stolen bank funds. *See United States v. Hylton,* CR 98-241(RR). The court sentenced Hylton to twelve-months' imprisonment to run consecutive to a twelve-year New York State sentence for robbery. Hylton, who did not appeal his federal conviction, is presently incarcerated at Elmira Correctional Facility, where he is serving his state sentence.

A liberal reading of Hylton's complaint suggests that he now sues the Federal Bureau of Prisons, the Metropolitan Detention Center ("MDC"), and MDC Warden Dennis Hasty pursuant to both the Federal Torts Claims Act, 28 U.S.C. §§ 1346(b), 2671-80 (1993, 1994) ("FTCA"), and the United States Constitution, *see Bivens v. Six Unknown Named Agents,* 403 U.S. 388 (1971), for injuries sustained while a pre-trial detainee at the MDC. This is one of three lawsuits that Hylton has filed

with this court since his federal conviction, all seeking damages for alleged wrongs occurring in federal custody. *See Hylton v. Fortier,* CV 00-6308(RR); *Hylton v. U.S. Marshal "Debbie",* CV 00-6673.[FN1]

> FN1. In *Fortier,* the court awaits Hylton's response to defendants' motion to dismiss. In *U.S. Marshal "Debbie",* the parties are pursuing discovery.

Defendants now move for dismissal of Hylton's constitutional claim against the Bureau of Prisons, the MDC, and Warden Hasty. They also move for partial dismissal of the FTCA claim, asserting that the United States must be substituted for the named defendants. Having carefully reviewed the submissions of the parties, this court grants defendants' motion in its entirety, but without prejudice to Hylton moving formally to amend his *Bivens* claim, which motion must be accompanied by the proposed amended pleadings and a memorandum of law addressing certain issues discussed herein.

*Factual Background*

On June 1, 2000, plaintiff Michael Angelo Hylton used a shower located in the two-man cell in which he was housed in the MDC Special Housing Unit ("SHU"). Because the shower had no shower curtains, water routinely escaped onto the cell floor. Nonetheless, there were no floor mats to prevent the inmates from slipping. When exiting the shower, Hylton slipped on the wet floor and hit his face against a wall, cracking one of his back teeth. The MDC medical staff temporarily repaired his tooth the same day. Later, when Hylton was incarcerated at Fort Dix Federal Correctional Institute, his tooth was permanently repaired.[FN2]

> FN2. Neither party advises the court when this occurred.

Hylton asserts that sometime prior to his accident, he filed an administrative complaint about the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 2
Not Reported in F.Supp.2d, 2002 WL 720605 (E.D.N.Y.)
(Cite as: 2002 WL 720605 (E.D.N.Y.))

lack of shower curtains and floor mats in the SHU cells. Not receiving any response, he raised the issue with MDC Captain Betler, who told him that his administrative complaint was a waste of time because no mats or shower curtains would be put in prisoner cells.

Hylton further states that after his accident, he also filed an administrative complaint about the circumstances giving rise to his accident, to which he received no response. After being transferred to state custody, he wrote the warden of MDC about the status of his complaint, but received no reply.

*Discussion*

I. *Federal Torts Claims Act*

**\*2** Although Hylton initially sued the Bureau of Prisons, the MDC, and Warden Hasty pursuant to the FTCA for negligence in connection with his June 1, 2000 accident, all parties agree that such a claim can only be maintained against the United States. *See* 28 U.S.C. § 2679(a); *Mignogna v. Sair Aviation, Inc.,* 937 F.2d 37, 40 (2d Cir.1991). Accordingly, plaintiff's complaint is deemed amended to name the United States as a defendant in the FTCA claim. The FTCA claim is hereby dismissed as against the Bureau of Prisons, the MDC, and Warden Hasty for lack of subject matter jurisdiction.

II. *Bivens Claim*

Hylton further sues the defendants pursuant to *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, for violating his constitutional rights in connection with his June 1, 2000 accident and the subsequent treatment of his injuries. The claim is deficient in several respects.

First, a *Bivens* claim can only be brought against a federal employee in his individual capacity. It cannot be maintained against the United States, its agencies, or its employees in their official capacities. *See Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 510 (2d Cir.1994). Thus, Hylton's *Bivens* claim against the Bureau of Prisons, the MDC, and Warden Hasty in his official ca-

pacity must be dismissed, and his proposal to proceed against the United States alone must be denied.

Further, to the extent Hylton sues Warden Hasty in his individual capacity, his *Bivens* claim must also be dismissed since, as Hylton concedes in his reply papers, Hasty was not the MDC warden at the time of the facts alleged. *See Barbera v. Smith,* 836 F.2d 96, 99 (2d Cir.1987) (to state *Bivens* claim, plaintiff must allege personal involvement of defendant in violation); *accord Cuoco v. Moritsugu,* 222 F.3d 99, 109 (2d Cir.2000).

In nevertheless opposing total dismissal of his *Bivens* action, Hylton seeks leave to amend to clarify his constitutional claim. Because Hylton has failed to submit a proposed amended pleading or even to identify whom he would sue pursuant to *Bivens,* the court can neither grant nor deny this application on the present record. It grants Hylton thirty days from this order to submit his proposed amended pleading as well as papers addressing a procedural question relating to his claim.

Specifically, Hylton is asked to clarify his exhaustion of administrative remedies under the Prison Litigation Reform Act, 42 U .S.C. § 1997e(a) (Supp.2001) ("PLRA"). That statute provides that "[n]o action shall be brought with respect to prison conditions ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *See Porter v. Nussle,* ____ U.S. ____, 2202 WL 261683, at \*10 (Feb. 26, 2002) (holding that statute's reference to "prison conditions" applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong"). Although Hylton insists that he did exhaust administrative remedies, the present record is devoid of any documentation indicating that plaintiff did pursue the specific four-step procedure established by the Bureau of Prisons. 28 C.F.R. § 542.10 (2001); *see Funches v. Reish,* 97 Civ. 7611, 1998 WL 695904, at \*2

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 720605 (E.D.N.Y.)
**(Cite as: 2002 WL 720605 (E.D.N.Y.))**

(S.D.N.Y. Oct. 5, 1998) (Sand, J.) (detailing four-step procedure: (1) inmate must first seek informal resolution of complaint; (2) if no resolution achieved, prisoner may submit written request for relief on designated form to warden; (3) if request denied, inmate has twenty days to file appeal with Bureau of Prisons Regional Director; (4) upon adverse determination by Regional Director, inmate has thirty days to appeal to Bureau of Prisons General Counsel). Defendants have apparently searched computerized indices at the Bureau of Prisons that track inmate grievances and found none relating to Hylton's June 1, 2000 accident. They have, however, located Hylton's administrative tort claim for $20,000, dated June 8, 2000. Tort claims, however, are not subject to the same four-part administrative procedure that must be exhausted to pursue other claims. *See* 28 C.F.R. §§ 542.10, 542.12, 543.30 (2001). A prisoner need only file an administrative tort claim with the Bureau of Prisons Regional Office. *See* 28 C.F.R. § 543.31(c) (2001). Denial of that claim constitutes the final administrative action. *See* 28 C.F.R. § 543.32(6) (2001). Thus, it is entirely possible that Hylton exhausted his administrative remedies for purposes of the FTCA without exhausting remedies pursuant to the PLRA for purposes of filing a *Bivens* claim. *See generally Funches v. Reish,* 1998 WL 695904, *7-9 (finding FTCA claim exhausted, but not *Bivens* claim). Thus, if Hylton wishes to amend his complaint to pursue a *Bivens* action, he must show that he exhausted the Bureau of Prisons four-part procedure for resolving grievances either by producing copies of his filing or by submitting a detailed affidavit indicating the actions taken to comply with all four steps of the administrative process.

**\*3** Even if Hylton can clear the procedural hurdle of the PLRA, he is cautioned that his pursuit of an amended *Bivens* action depends on his ability to plead both the objective and subjective components of any Eighth Amendment claim of cruel and unusual punishment.FN3 *See Hudson v. McMillian,* 503 U.S. 1, 8 (1992).

FN3. Because Hylton was a sentenced state prisoner when he was transferred to the MDC to face federal charges, the parties agree that the Eighth Amendment applies to his *Bivens* claim about the conditions of his confinement and medical treatment. *See Laza v. Reish,* 84 F.3d 578, 580 (2d Cir.1996).

The objective component is contextual. *Id.* Thus, when a claim challenges a prisoner's conditions of confinement-as in Hylton's case, where he challenges the conditions under which he was required to shower-a showing of "extreme deprivation[ is] required." *Id.* at 9. This is because "routine discomfort" is considered inherent in the fact of incarceration. *Id.* Thus, "only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave" to give rise to an Eighth Amendment claim. *Id.* (citations omitted). To meet this high objective standard, Hylton must plead more than the fact that he was injured in a shower accident. He must plead circumstances-for example, recurring serious injuries to prisoners using MDC showers-sufficient to support an inference that the challenged conditions were so obviously hazardous as to constitute cruel and unusual punishment.

As for Hylton's complaint about delay in the permanent repair of his cracked tooth, the Eighth Amendment does not mandate that prisoners "have unqualified access to health care." *Id.* Thus, Hylton must plead facts showing that the temporary repair of his tooth at the MDC was so obviously insufficient to protect him from "death, degeneration or extreme pain" that "a condition of urgency" existed requiring more expeditious permanent correction of his condition. *Morales v. Mackalm,* 278 F.3d 126, 132 (2d Cir.2002) (quoting *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994)).

To then satisfy the subjective component of an Eighth Amendment claim, Hylton must show that whatever individual he names as a *Bivens* defendant acted with deliberate indifference to the serious

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 720605 (E.D.N.Y.)
**(Cite as: 2002 WL 720605 (E.D.N.Y.))**

prison condition causing his injury. *See Wilson v. Seiter,* 501 U.S. 294, 299 (1991) (holding that Eighth Amendment requires an "inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment"); *c.f. Branham v. Meachum,* 77 F.3d 626, 631 (2d Cir.1996) (holding that allegations of various prison restraints was not enough, by itself, to suggest that officials acted with deliberate indifference to plaintiff's health and safety). This requires, at a minimum, that Hylton plead a defendant's knowledge of the serious condition or medical problem at issue, an awareness of the risk of grave harm presented by the situation, an ability to take action to remedy the situation, and a failure to do so. *See Farmer v. Brennan,* 511 U.S. 825, 837-38, 844 (1994).

### Conclusion

For the reasons stated, the court dismisses with prejudice Hylton's FTCA claim as against the Bureau of Prisons, the MDC, and Warden Dennis Hasty, and substitutes the United States as the sole defendant. The court further dismisses with prejudice Hylton's *Bivens* claim against the Bureau of Prisons, the MDC, and Warden Hasty for injuries arising out of an accident on June 1, 2000 and the dental care afforded thereafter. Hylton is, however, granted thirty days from the date of this order to submit a proposed amendment to his *Bivens* claim, provided he also demonstrates that he has complied with the exhaustion requirements of the PLRA. Hylton is advised that, even if he does not submit a proposed *Bivens* amendment, his FTCA claim will go forward as against the United States.

**\*4** *SO ORDERED.*

E.D.N.Y.,2002.
Hylton v. Federal Bureau of Prisons
Not Reported in F.Supp.2d, 2002 WL 720605 (E.D.N.Y.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2010 WL 4005258 (N.D.N.Y.)

(Cite as: 2010 WL 4005258 (N.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Everton BAILEY, Plaintiff,
v.
C.O. M. FORTIER, Defendant.
Civ. Action No. 9:09-CV-0742 (GLS/DEP).

Aug. 30, 2010.
Everton Bailey, Brooklyn, NY, pro se.

Hon. Richard S. Hartunian, United States Attorney, Charles E. Roberts, Esq., Assistant U.S. Attorney, of Counsel, Syracuse, NY, for Defendant.

*REPORT AND RECOMMENDATION*

DAVID E. PEEBLES, United States Magistrate Judge.

**\*1** Plaintiff Everton Bailey, a federal prison inmate who is proceeding *pro se* and *in forma pauperis,* has commenced this *Bivens*[FN1] action against a corrections officer stationed at the facility in which he was housed at the relevant times, alleging deprivation of his civil rights. In his complaint, Bailey alleges that the defendant failed to protect him from an assault by a cellmate despite prior complaints expressing fear for his safety. As relief, plaintiff's complaint seeks $1 million compensatory damages, as well as punitive damages in the additional sum of $50,000.

> FN1. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999 (1971).

Currently pending before the court in connection with the action are two separate motions. In response to plaintiff's complaint defendant has moved for either dismissal of his claims for failure to state a cause of action or, alternatively, for summary judgment, arguing that they are procedurally barred based upon his failure to exhaust available administrative remedies. In addition to opposing

that motion plaintiff has moved for leave to amend his complaint, seeking to add the prison facility itself as a named defendant in the case.

Having carefully considered defendant's motion, which has been treated as one for summary judgment, I recommend that it be denied based upon my finding that material issues of fact preclude resolution of the exhaustion defense at this procedural juncture. I also recommend that plaintiff's motion for leave to amend be denied as futile, since in his amendment plaintiff seeks to add as a defendant a party that is not amenable to suit.

I. *BACKGROUND*[FN2]

> FN2. In light of my recommendation that defendant's motion be treated as seeking the entry of summary judgment, the following recitation is derived from the record now before the court with all inferences drawn and ambiguities resolved in plaintiff's favor. *Terry v. Ashcroft,* 336 F.3d 128, 137 (2d Cir.2003).

Plaintiff is a federal prison inmate within the custody of the United States Bureau of Prisons ("BOP") as a result of a 2007 criminal conviction entered in the United States District Court for the Eastern District of Pennsylvania. *See generally* Plaintiff's Complaint (Dkt. No. 1); *see also* VanWeelden Decl. (Dkt. No. 4) ¶ 5. While he is presently housed in another BOP facility, at the times relevant to his claims Bailey was designated by the BOP to the Ray Brook Federal Correctional Institution ("FCI Ray Brook"), located in Ray Brook, New York. *Id.*

On the morning of February 23, 2009, while housed in a six person cell in the Mohawk Housing Unit at FCI Ray Brook, plaintiff was assaulted by one of his cellmates after being accused of stealing that inmate's prayer oil. Complaint (Dkt. No. 1) ¶¶ 8-9; *see also* VanWeelden Decl. (Dkt. No. 10-4) Exh. D. Plaintiff reported the incident to defendant Fortier, a corrections officer at the facility, and requested that he be moved to another cell. Complaint (Dkt. No. 1) ¶ at 10. The request was denied,

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 4005258 (N.D.N.Y.)

(Cite as: 2010 WL 4005258 (N.D.N.Y.))

and plaintiff was directed by Corrections Officer Fortier to return to his cell for inmate count. *Id.* at ¶ 11.

Following the inmate count, plaintiff again was accosted by the same inmate, who on this occasion threw hot oil from a ceramic mug onto plaintiff's face. Complaint (Dkt. No. 1) ¶ 13; VanWeelden Decl. (Dkt. No. 10-4) Exh. D. As a result of the incident plaintiff suffered second degree burns to his face, requiring hospitalization at an outside medical facility for extensive treatment. Complaint (Dkt. No. 1) ¶¶ 13-14. According to the plaintiff, there were no corrections officers present in his cell unit at the time of the assault. *Id.*

## II. *PROCEDURAL HISTORY*

**\*2** Plaintiff commenced this action on June 29, 2009. Dkt. No. 1. Plaintiff's complaint identifies Corrections Officer M. Fortier as the sole named defendant and asserts claims against her based upon the failure to protect him from known harm. *Id.*

On January 8, 2010, prior to answering, defendant moved to dismiss plaintiff's complaint for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or, alternatively, for summary judgment pursuant to Rule 56. Dkt. No. 10. The sole basis for defendant's motion is her contention that plaintiff is precluded from pursuit of his claim based upon his failure to exhaust available administrative remedies before commencing suit, as required under 42 U.S.C. § 1997(e)(a). Defendant's motion was met, on January 27, 2010, with a response in opposition from the plaintiff, as well as a separate motion for leave to amend his complaint to add FCI Ray Brook as a named defendant. Dkt. Nos. 11, 12. Defendant has since submitted papers opposing plaintiff's motion for leave to amend, Dkt. No. 13, and additionally has filed a reply in response to plaintiff's opposition to the original motion and in further support of that application. Dkt. No. 16.

The parties' motions, which are now fully briefed and ripe for determination, have been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed.R.Civ.P. 72(b).

## III. *DISCUSSION*

### A. *Standards of Review*

### 1. *Motions to Dismiss*

A motion to dismiss a complaint, brought pursuant to Rule 12(b) (6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading, utilizing as a backdrop a pleading standard which, though unexacting in its requirements, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny. *Ashcroft v. Iqbal,* --- U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 1965 (2007)). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). While modest in its requirement, that rule commands that a complaint contain more than mere legal conclusions; "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft,* 129 S.Ct. at 1950.

To withstand a motion to dismiss, a complaint must plead sufficient facts which, when accepted as true, state a claim which is plausible on its face. *Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir.2008) (citing *Twombly,* 550 U.S. at 570, 127 S.Ct. at 1974). As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.' " *In re Elevator Antitrust Litig.,* 502 F.3d 47, 50 (2d Cir.2007) (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. at 1974).

**\*3** In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party. *Cooper v. Pate,* 378 U.S. 546, 546, 84 S.Ct. 1733, 1734 (1964); *Miller v. Wolpoff & Abramson, LLP,* 321 F.3d 292, 300 (2d Cir.2003), *cert. denied,* 540 U.S. 823, 124 S.Ct. 153 (2003); *Burke v. Gregory,* 356 F.Supp.2d 179, 182 (N.D.N.Y.2005) (Kahn, J.). The burden undertaken by a party requesting dismissal of a

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 4005258 (N.D.N.Y.)

(Cite as: 2010 WL 4005258 (N.D.N.Y.))

complaint under Rule 12(b)(6) is substantial; the question presented by such a motion is not whether the plaintiff is likely ultimately to prevail, " 'but whether the claimant is entitled to offer evidence to support the claims.' " *Log On America, Inc. v. Promethean Asset Mgmt. L.L.C.,* 223 F.Supp.2d 435, 441 (S.D.N.Y.2001) (quoting *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995)) (citations and quotations omitted).

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *Erickson v. Pardus,* 551 U.S. 89, 94 127 S.Ct. 2197, 2200 (2007) (" '[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers' ") (quoting *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292 (1976)) (internal quotations omitted)); *Davis v. Goord,* 320 F.3d 346, 350 (2d Cir.2003) (citation omitted); *Donhauser v. Goord,* 314 F.Supp.2d 119, 121 (N.D.N.Y.2004) (Hurd, J.). In the event of a perceived deficiency in a *pro se* plaintiff's complaint, a court should not dismiss without granting leave to amend at least once if there is any indication that a valid claim might be stated. *Branum v. Clark,* 927 F.2d 698, 704-05 (2d Cir.1991); *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires").

Additionally, it is appropriate "to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint." *Hale v. Rao,* 2009 WL 3698420, at *3 (N.D.N.Y.2009) (Hurd, D.J. and Lowe, M.J.) (citing *Gadson v. Goord,* 1997 WL 714878, at *1, n. 2 (S.D.N.Y.1997)). [FN3] However, this special leniency "does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Rules 8, 10 and 12." *Hale,* 2009 WL 3698420, at *3 (citing *Prezzi v. Schelter,* 469 F.2d 691, 692 (2d Cir.2008)).

FN3. Copies of all unreported decisions have been appended for the convenience of the *pro se* plaintiff. [Editor's Note: Attachments of Westlaw case copies deleted for online display.]

2. *Motions for Summary Judgment*

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, summary judgment is warranted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.,* 391 F.3d 77, 82-83 (2d Cir.2004). A fact is "material," for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *see also Jeffreys v. City of New York,* 426 F.3d 549, 553 (2d Cir.2005) (citing *Anderson* ). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

*4 A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson,* 477 U.S. at 250 n. 4, 106 S.Ct. at 2511 n. 4; *Security Ins.,* 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than mere "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 620-21 (2d Cir.1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

When deciding a summary judgment motion, a court

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 4005258 (N.D.N.Y.)

(Cite as: 2010 WL 4005258 (N.D.N.Y.))

must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the non-moving party. *Jeffreys,* 426 F.3d at 553; *Wright v. Coughlin,* 132 F.3d 133, 137-38 (2d Cir.1998). The entry of summary judgment is warranted only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *See Building Trades Employers' Educ. Ass'n v. McGowan,* 311 F.3d 501, 507-08 (2d Cir.2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

B. *Exhaustion of Administrative Remedies*

The sole basis for defendant's motion is her assertion that according to BOP records, and by his own admission, plaintiff never availed himself of the established BOP protocol for grieving the matter which forms a basis for the claims now raised.

The Prison Litigation Reform Act of 1996 ("PLRA"), Pub.L. No. 104-134, 110 Stat. 1321 (1996), which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Woodford v. Ngo,* 548 U.S. 81, 84, 126 S.Ct. 2378, 2382 (2006); *Hargrove v. Riley,* No. CV-04-4587, 2007 WL 389003, at *5-6 (E.D.N.Y. Jan. 31, 2007). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 992 (2002) (citation omitted). In the event a defendant named in such an action establishes that the inmate plaintiff has failed properly to exhaust available remedies prior to commencing the action, his or her complaint is subject to dismissal. *See Pettus v. McCoy,* No. 04-CV-0471, 2006 WL 2639369, at *1 (N.D.N.Y. Sept. 13, 2006) (McAvoy, J.); *see also Woodford,* 548 U.S. at 94-95, 126 S.Ct. at 2387-88 (holding that the PLRA requires "proper exhaustion" of available remedies). "Proper exhaustion"

requires a plaintiff to procedurally exhaust his or her claims by "compl[ying] with the system's critical procedural rules." *Woodford,* 548 U.S. at 95, 126 S.Ct. at 2388; *see also Macias v. Zenk,* 495 F.3d 37, 43 (2d Cir.2007) (citing *Woodford* ).[FN4]

> FN4. While placing prison officials on notice of a grievance through less formal channels may constitute claim exhaustion "in a substantive sense", an inmate plaintiff nonetheless must meet the procedural requirement of exhausting his or her available administrative remedies within the appropriate grievance construct in order to satisfy the PLRA. *Macias,* 495 F.3d at 43 (quoting *Johnson v. Testman,* 380 F.3d 691, 697-98 (2d Cir.2004) (emphasis omitted).

**\*5** In a series of decisions rendered since the enactment of the PLRA, the Second Circuit has crafted a three-part test for determining whether dismissal of an inmate plaintiff's complaint is warranted for failure to satisfy the PLRA's exhaustion requirement.[FN5] *Macias,* 495 F.3d at 41; *see Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004). Under the prescribed algorithm, a court must first determine whether administrative remedies were available to the plaintiff at the relevant times. *Macias,* 495 F.3d at 41; *Hemphill,* 380 F.3d at 686. If such a remedy existed and was available, the court must next examine whether the defendants have forfeited the affirmative defense of non-exhaustion by failing to properly raise or preserve it or whether, through their own actions preventing the exhaustion of plaintiff's remedies, they should be estopped from asserting failure to exhaust as a defense. *Macias,* 495 F.3d at 41; *Hemphill,* 380 F.3d at 686. In the event the proffered defense survives these first two levels of scrutiny, the court lastly must examine whether special circumstances nonetheless exist and "have been plausibly alleged" to justify the plaintiff's failure to comply with the applicable administrative procedural requirements.[FN6] *Macias,* 495 F.3d at 41; *Hemphill,* 380 F.3d at 686.

> FN5. In *Macias,* which like this action involved claims brought by a federal prison inmate construed as asserting an Eighth Amendment cause of action under *Bivens,* as well as claims

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 4005258 (N.D.N.Y.)

(Cite as: 2010 WL 4005258 (N.D.N.Y.))

under the Federal Court Claims Act, 28 U.S.C. § 2671 et seq., defendants asserted that plaintiff's complaint was subject to dismissal under the PLRA based upon plaintiff's failure to exhaust available administrative remedies. *Macias,* 495 F.3d at 40. Reiterating the importance of exhaustion in both a substantive and a procedural sense, the Second Circuit concluded that while a prisoner may have substantively exhausted remedies by making informal complaints regarding the conditions at issue, the PLRA, as illuminated by *Woodford,* 548 U.S. 81, 126 S.Ct. 2378, requires proper procedural exhaustion through the available grievance channels. *Id.* at 41. The court left open, however, the possibility that notwithstanding the Supreme Court's decision in *Woodford,* a defendant could be precluded from asserting failure to exhaust available administrative remedies in the event of a finding that threats by prison officials may have deterred the compliance with the PLRA exhaustion requirements, including under *Hemphill. Id.* at 44-45. The court in *Macias* also noted that the plaintiff did not assert that the available internal remedial scheme was so confusing as to excuse his failure to avail himself of that process, thereby obviating the need for the court to determine what effect, if any, *Woodford* would have upon the *Hemphill* holding to the effect that a reasonable misinterpretation of the available scheme could justify an inmate's failure to follow the procedural rules. See *Amador v. Superintendent of Dep't of Correctional Serv.,* No. 03 CIV. 0650 (KTD/CWG), 2007 WL 4326747, at *6 (S.D.N.Y. Dec. 4, 2007). It therefore appears that the teachings of *Hemphill* remain intact, at least with regard to the first two points of inquiry. *Id.* at *7.

FN6. In practicality these three prongs of the prescribed test, though perhaps intellectually distinct, plainly admit of significant overlap. See *Hargrove,* 2007 WL 389003, at *8 n. 14; see also *Giano v. Goord,* 380 F.3d 670, 677 n. 6 (2d Cir.2004).

*1) Availability of Remedy*

The BOP has established an administrative remedy procedure whereby inmates can seek formal review of any complaint regarding any aspect of their imprisonment through a four-step procedure set forth in the agency's Administrative Remedy Program ("ARP"). VanWeelden Decl. (Dkt. No. 10-4) ¶ 7; see also *Macias,* 495 F.3d at 42; see 28 C.F.R. § 542. The purpose of the ARP is to provide inmates with the procedure to seek formal review of an issue relating to any aspect of his/her confinement. 28 C.F.R. § 542.10(a). In accordance with the established procedures, an inmate must first attempt informal resolution of his or her complaint by presenting the issue formally to staff, and staff must attempt to resolve the issue. 28 C.F.R. § 542.13(a); see also *Johnson,* 380 F.3d at 693. If the complaint cannot be resolved informally, the inmate may submit a formal written Administrative Remedy Request to the Warden, on the appropriate form (BP-9), within twenty calendar days of the event that generated the inmate's complaint. 28 C.F.R. § 542.14(a). If the inmate's formal request is denied, the inmate may next appeal the matter to the appropriate BOP Regional Director on the appropriate form (BP-10), again within twenty calendar days of the date the grievance was denied by the facility Warden. 28 C.F .R. § 542.15(a); see also *Johnson,* 380 F.3d at 693. An unfavorable decision from the Regional Director can then be appealed to the General Counsel's office on the appropriate form (BP-11), within twenty calendar days of the date of the Regional Director's response. 28 C.F.R. § 542.15(a). Complete exhaustion has not occurred, for purposes of the PLRA, until all of the foregoing steps have been taken. *Macias,* 495 F.3d at 44; see also *Johnson v. Rowley,* 569 F.3d 40, 45 (2d Cir.2009); *Strong v. Lapin,* No. 90-CV-3522, 2010 WL 276206, at *4 (E.D.N.Y., 2010) ("Until the BOP'S Central Office Considers the appeal, no administrative remedy is considered to be fully exhausted.").

**6** Both plaintiff's complaint and the additional submissions of the parties firmly establish that plaintiff failed to file and pursue an ARR under the BOP's ARP with regard to the events of February 23, 2009.

*2) Presentation of Defense/Estoppel*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 4005258 (N.D.N.Y.)

(Cite as: 2010 WL 4005258 (N.D.N.Y.))

The focus of the second prong of the *Hemphill* analysis is upon "whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Hemphill,* 380 F.3d at 686 (citations omitted).

It should be noted that courts are generally hesitate to dispose of the exhaustion defense on a motion to dismiss, and ordinarily will dismiss a complaint at that stage only if it is patently clear from the face of plaintiff's complaint that exhaustion has not occurred and there is no basis to excuse PLRA exhaustion requirement. *Torrence v. Pesanti,* 239 F.Supp.2d 230, 231-232 (D.Conn.2003).

Viewing this second element first from the perspective of defendant's dismissal motion highlights the pitfalls associated with resolving the exhaustion defense on such a motion. In his complaint, the contents of which must be accepted as true, with all inferences drawn in his favor, Bailey asserts that he attempted to exhaust administrative remedies by requesting BP-8, BP-9, BP-10, and BP-11 forms from his counselor, who refused to provide the necessary forms. Complaint (Dkt. No. 1) ¶ 6. The plaintiff's allegations regarding the failure of prison officials to provide him with requested grievance forms would seem to present a question of whether the second prong of the *Hemphill* analysis would apply and excuse exhaustion.

A potentially different result obtains with regard to the issue when the full record now before the court is considered against the backdrop of the applicable summary judgment standard. Looking to the submissions received from both parties, however, it nonetheless seems clear that issues of material fact exist regarding plaintiff's entitlement to a *Hemphill* exemption, and whether the plaintiff can convince a reasonable factfinder that grounds exists to excuse the exhaustion requirement in this case. Plaintiff claims to have requested the requisite forms for pursuing a grievance from his counselor, identified as a Mr. Snyder. Complaint (Dkt. No. 1) ¶ 6. Defendant's submissions confirm that ordinarily inmates are directed to seek grievance forms from their counselors and that at the relevant times plaintiff's counselor was Hawley

Snyder. VanWeelden Decl. (Dkt. No. 10-4) ¶ 12.

The defendant responds that even if plaintiff was denied the necessary forms for filing and pursing his grievance, however, other avenues for raising his grievance were available to him. *See id.* According to Robin VanWeelden, a legal assistant at the facility, members of plaintiff's unit team as well as department heads make regular rounds within the special housing unit ("SHU") where the plaintiff was housed at the relevant times for the purpose of addressing inmate concerns, and plaintiff could have requested the requisite grievance forms from any of those staff members. *Id.* Ms. VanWeelden also states that in her capacity as a legal assistant, she made weekly rounds within the SHU, but at no time during any of those rounds did plaintiff raise the issue with her request grievance forms. VanWeelden Decl. (Dkt. No. 10-4) ¶ 12.

**\*7** In her declaration Legal Assistant VanWeelden goes on to note that in addition to these avenues plaintiff had other recourse, including to submit an informal "cop-out" or "request to staff" with any staff member, raising any issue, but did not do so. *Id.* at ¶ 14. In addition, plaintiff could have filed a "sensitive" request with prison officials in the event of his belief that his safety and well-being was in jeopardy, but once again did not do so. *Id.* at ¶ 15.

In response to these assertions, plaintiff states he asked various staff members at the facility, including the warden, for the necessary grievance forms but was advised that it was his counselor who should supply them. *See* Bailey Decl. (Dkt. No. 11) p. 2. Plaintiff also notes that cop-out forms are not available to inmates confined within the SHU. *Id.*

Given these circumstances, however skeptical the court may be that plaintiff ultimately will be able to establish that through the actions of prison officials at FCI Ray Brook he was unable to perfect and pursue a grievance regarding the claims now raised in the action, particularly in the face of the statements set forth in the declaration of Legal Assistant VanWeelden, it is plain that there exist genuine issues of material fact as to whether plaintiff was precluded by the actions of prison officials

Slip Copy, 2010 WL 4005258 (N.D.N.Y.)

(Cite as: 2010 WL 4005258 (N.D.N.Y.))

from pursuing a grievance in this matter. Such a dispute may only be resolved by a jury at trial.[FN7] Accordingly, I recommend against the granting of defendant's motion for summary judgment on this element of the tripartite exhaustion test.

> FN7. Some courts have taken the position that the actual issues surrounding the defense of failure to exhaust should properly be determined by the court, rather than by a jury. *See, e.g., Amador,* 2007 WL 4326747, at *5 n. 7 (examining cases). There does not appear to be any cogent basis, however, to distinguish failure to exhaust from other affirmative defenses including, for example, statute of limitations, which are often presented to juries or decided by the court based upon a jury's resolution of critical fact disputes. Accordingly, when questions of fact exist regarding failure to exhaust, summary judgment is not appropriate, and the court should not engage in factfinding in order to address the defense. *Miller v. Covey,* No. 9:05-CV-649, 2007 WL 952054, at *2 (N.D.N.Y. Mar. 29, 2007) (Kahn, D.J. and DiBianco, M.J.) (citing *Pendergrass v. Sanney,* No. 01 CV 243A, 2004 WL1946458, at *2 (W.D.N.Y. Aug. 18, 2004)).

### 3) *Special Circumstances*

The third, catchall factor that must be considered here under the Second Circuit's prescribed exhaustion rubric focuses upon whether special circumstances have been plausibly alleged which, if demonstrated, would justify excusing a plaintiff's failure to exhaust administrative remedies. *Hemphill,* 380 F.3d at 689; *see also Giano,* 380 F.3d at 676-77; *Hargrove,* 2007 WL 389003, at *10. Among the circumstances potentially qualifying as "special" under this prong of the test is where a plaintiff's reasonable interpretation of applicable regulations regarding the grievance process differs from that of prison officials and leads him or her to conclude that the dispute is not grievable. *Giano,* 380 F.3d at 676-77; *see also Hargrove,* 2007 WL 389003, at *10 (quoting and citing *Giano* ). Special circumstances may also exist when a facility's "[f]ailure to provide grievance deposit boxes, denial of forms and writing materials, and a refusal to

accept or forward plaintiff's appeals-which effectively rendered the grievance process unavailable to him." *Murray v. Palmer,* 2010 WL 1235591, at *6 (N.D.N.Y. Mar. 31,2010) (Suddaby, D.J.) (quoting *Sandlin v. Poole,* 575 F.Supp.2d 484, 488 (W.D.N.Y.2008) (noting that "[s]uch facts support a finding that defendant's may be estopped from relying on exhaustion defense as 'special circumstances' excusing plaintiff's failure to exhaust")).

**\*8** For the same reasons as were articulated with regard to the second *Hemphill* factor, consideration of the record now before the court discloses the existence of questions of fact concerning whether the special circumstances prong should also apply to excuse the requirement of exhaustion in this case.

### D. *Plaintiff's Motion to Amend the Complaint*

Plaintiff seeks leave to amend his complaint to add FCI Ray Brook as a named defendant. Defendant opposes plaintiff's motion, arguing that any claim against that entity would be futile.

Motions for leave to amend are governed by Rule 15(a) of the Federal Rules of Civil Procedure which provides, in pertinent part, that unless amendment as a matter of right is permitted based upon the circumstances-a circumstance that does not exist in this action-a party may amend its pleading "only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed.R.Civ.P. 15(a). Under Rule 15(a), leave to amend ordinarily should be liberally granted absent undue delay, bad faith, dilatory tactics, undue prejudice in being served with the proposed pleading, or futility. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230 (1962); *Elma RT v. Landesmann Int'l Mktg. Corp.,* No. 98 CIV. 3662, 2000 WL 297197, at *3 (S.D.N.Y. Mar. 22, 2000) (citing *Foman* )

Notwithstanding the familiar and well-accepted precept that leave to amend should be granted freely and is typically permitted, if a claim contained in a proposed amended complaint would be vulnerable in the face of a Rule 12(b)(6) motion then permitting amendment would be an act of futility which should not be sanctioned. *See, e.g., Saxholm AS v. Dynal, Inc.,* 938 F.Supp. 120, 124 (E.D.N.Y.1996); *In re Boesky Sec. Litig.,* 882 F.Supp.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 4005258 (N.D.N.Y.)

(Cite as: 2010 WL 4005258 (N.D.N.Y.))

1371, 1379 (S.D.N.Y.1995). "In considering whether to grant a motion for leave to amend, the court may properly take into account the futility associated with the newly added claims or defenses." *Clarke v. Max Advisors, LLC,* 235 F.Supp.2d 130, 151 (N.D.N.Y.2002) (citing *Foman,* 371 U.S. at 182, 83 S.Ct. at 230). "Quite sensibly, a court may properly deny leave to amend when the claim or defense sought to be added would not withstand a likely motion to dismiss for failure to state a legally cognizable claim or defense." *Clarke,* 235 F.Supp.2d at 151 (citing *Lucente v. International Business Machines Corp.,* 310 F.3d 243, 259 (2d Cir.2002)). If, on the other hand, a proposed claim sets forth facts and circumstances which may entitle the pleader to relief, then futility is not a proper basis on which to deny the right to amend. *Saxholm,* 938 F.Supp. at 124 (citing *Allstate Ins. v. Administratia Asigurarilor De Stat,* 875 F.Supp. 1022, 1029 (S.D.N.Y.1995) and *Mathon v. Marine Midland Bank, N.A.,* 875 F.Supp. 986, 1003 (E.D.N.Y.1995) (leave to replead granted where court could not say that under no circumstances would proposed claims provide a basis for relief)).

*9 To determine futility "a proposed amendment should be reviewed under a standard analogous to the standard of review applicable to a motion brought under Rule 12(b)(6)." *Oneida Indian Nation of New York State v. County of Oneida, N.Y.,* 199 F.R.D. 61, 88 (N.D.N.Y.2000) (McCurn, S.D.J.) (citing *Rotter v. Leahy,* 93 F.Supp.2d 487, 496 (S.D.N.Y.2000)). Additionally, "[u]nless a proposed amendment is clearly frivolous or legally insufficient on its face, the substantive merits of a claim or defense should not be considered in a motion to amend." *Lerman v. Chuckleberry Publishing, Inc.,* 521 F.Supp. 228, 231 (S.D.N.Y.1981) (citing *Nyscoseal Inc. v. Parke, Davis & Co.,* 28 F.R.D. 24, 25 (S.D.N.Y.1961), rev'd on other grounds, sub nom., *Lerman v. Flynt Distributing Co., Inc.,* 745 F.2d 123 (2d Cir.1984)).

Plaintiff's effort to assert claims against FCI Raybook, an entity which in reality is a prison facility operated by the BOP, an agency of the federal government, implicates questions of sovereign immunity. *Correctional Services Corp. v. Malesko,* 534 U.S. 61, 71-72, 122 S.Ct. 515, 522 (2001). While the United States has waived its sovereign immunity under certain circumstances, those

circumstances are limited and, in an instance such as this, depends upon compliance with the Federal Tort Claims Act ("FTCA"). See *Ali v. Federal Bureau of Prisons,* 552 U.S. 214, 217-18, 128 S.Ct. 831, 835 (2008). It is well established that while a *Bivens* action may be brought against an individual federal employee, such a claim may not be asserted against the officer's employee, whether the United States or an agency such as the BOP. See *F.D.I.C. v. Meyer,* 510 U.S. 471, 485-86, 114 S.Ct. 996, 1005-06 (1994).

Since plaintiff's putative claim against FCI Ray Brook is in reality one brought against the BOP, a federal agency, the proposed amendment is futile, and his motion for leave to amend should be denied on this basis.[FN8]

FN8. Ordinarily motions for leave to amend are viewed as non-dispositive and fall within my non-consensual jurisdiction based upon this court's standard referral practices. *Cusamano v. Sobek,* 604 F.Supp.2d 416, 508-09 N.D.N.Y.2009) (citing *Marsh v. Sheriff of Cayuga County,* 26 Fed. App'x 10, 11 (2d Cir.2002)). In this instance, however, I have chosen to format my ruling with regard to plaintiff's motion as a report and recommendation in light of the fact that it is accompanied by a dispositive motion brought by the defendant and requiring the issuance of a report and recommendation.

IV. *SUMMARY AND RECOMMENDATION*

While defendant has sought the dismissal of plaintiff's complaint for failure to exhaust available administrative remedies, genuine issues of material fact exist as to whether plaintiff was precluded by the actions of prison personnel from fulfilling his exhaustion obligation. It is therefore inappropriate to address and resolve the defense at this early procedural juncture. Turning to plaintiff's motion for leave to amend, because the proposed addition of FCI Ray Brook and the assertion of claims against that entity would, in effect, be the equivalent of raising claims against the United States, plaintiff's proposed amendment is futile, and his motion for leave to amend should be denied on this basis.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 4005258 (N.D.N.Y.)

(Cite as: 2010 WL 4005258 (N.D.N.Y.))

It is therefore hereby respectfully

RECOMMENDED, that defendants' motion to dismiss, or in the alternative for summary judgment (Dkt. No. 10) be DENIED, and that plaintiff's motion to amend his complaint (Dkt. No. 12) be DENIED;

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the Clerk of the Court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette, 984 F.2d 85 (2d Cir.1993).*

**\*10** It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

N.D.N.Y.,2010.

Bailey v. Fortier
Slip Copy, 2010 WL 4005258 (N.D.N.Y.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

--- F.3d ----, 2011 WL 3086827 (C.A.2 (N.Y.))

(Cite as: 2011 WL 3086827 (C.A.2 (N.Y.)))

**H**

Only the Westlaw citation is currently available.
United States Court of Appeals,

Second Circuit.
Rafael **MESSA**, Plaintiff–Appellant,
v.
Glenn **GOORD**, Commissioner, Department of
Correctional Services, Lester N. Wright, Deputy
Commissioner/Chief Medical Officer, Department of
Correctional Services, Marc F. Stern, Regional Medical
Director, Department of Correctional Services, Steven
Vanburen, Regional Health Services Administration,
Lucien J. LeClaire, Jr., Deputy Commissioner, Charles
R. Greiner, Superintendent, GHCF, George B. Duncan,
Superintendent, GHCF, Albert Paolano, Facility Health
Service Director, CMCF, Howard Silverberg, Dr.
Bendhein, Medical Doctor, GHCF, Dr. Nunez, Ms.
Rodas, Physician's Assistant, Mr. Nesmith, Paul
Burndrick, Nurse Administrator, C. Martuscello,
Defendants,
V. Blaestz, Senior Correctional Counselor, John
Tierney, Correctional Sergeant, S. Ullrich, Correctional
Sergeant, Gerald Tillotson, David Mazzella, Charles V.
Austin, W.R. Kelly, C. Mitchell, J. Erns, M. Miller, M.
Mrzyglod, Defendants–Appellees.[FN*]
Docket No. 10–1019–pr.

Argued: June 17, 2011.
Decided: July 26, 2011.

**Background:** Inmate brought a pro se action under §
1983 against correctional officers, alleging excessive force
and other Eighth Amendment and due process violations
in connection with a prison yard incident. The United
States District Court for the Northern District of New
York, Suddaby, J., dismissed, and the inmate appealed.

**Holding:** The Court of Appeals held that inmate was not
entitled to a jury trial on factual disputes regarding his
failure to exhaust administrative remedies required by the
Prison Litigation Reform Act.

Affirmed

West Headnotes

**[1] Jury 230 ⊙⟶ 14(1.5)**

230 Jury

230II Right to Trial by Jury
230k14 Particular Actions and Proceedings
230k14(1.5) k. Civil Rights Actions. Most Cited
Cases
Inmate bringing a § 1983 suit claiming excessive
force was not entitled to a jury trial on factual disputes
regarding his failure to exhaust administrative remedies as
required by the Prison Litigation Reform Act (PLRA),
despite claim that determining whether the inmate asserted
a valid excuse for non-exhaustion was a task for the jury;
factual disputes relating to exhaustion were not
intertwined with the merits of the inmate's underlying
excessive force claim. U.S.C.A. Const.Amend. 7; 42
U.S.C.A. § 1983; Prison Litigation Reform Act of 1995,
§ 101(a), 42 U.S.C.A. § 1997e(a).

**[2] Federal Courts 170B ⊙⟶ 776**

170B Federal Courts

170BVIII Courts of Appeals
170BVIII(K) Scope, Standards, and Extent
170BVIII(K)1 In General
170Bk776 k. Trial De Novo. Most Cited
Cases
Right to a jury trial is a legal question reviewed de
novo. U.S.C.A. Const.Amend. 7.

**[3] Jury 230 ⊙⟶ 14(1.5)**

230 Jury

230II Right to Trial by Jury
230k14 Particular Actions and Proceedings

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2011 WL 3086827 (C.A.2 (N.Y.))

(Cite as: 2011 WL 3086827 (C.A.2 (N.Y.)))

230k14(1.5) k. Civil Rights Actions. Most Cited Cases

In an action under 42 U.S.C. § 1983, the parties have a right to a jury trial on the merits, but whether the right applies to other aspects of the action depends upon the nature of the issue rather than the character of the overall action. U.S.C.A. Const.Amend. 7; 42 U.S.C.A. § 1983.

**[4] Prisons 310** ☞ **317**

310 Prisons

   310II Prisoners and Inmates
      310II(H) Proceedings
         310k316 Exhaustion of Other Remedies
            310k317 k. In General. Most Cited Cases
Exhaustion requirement of the Prison Litigation Reform Act (PLRA) is a matter of judicial administration in the sense that until the issue of exhaustion is resolved, the court cannot know whether it is to decide the case or the prison authorities are to do so. Prison Litigation Reform Act of 1995, § 101(a), 42 U.S.C.A. § 1997e(a).

**[5] Prisons 310** ☞ **317**

310 Prisons

   310II Prisoners and Inmates
      310II(H) Proceedings
         310k316 Exhaustion of Other Remedies
            310k317 k. In General. Most Cited Cases
Inmate's failure to comply with the exhaustion requirement of the Prison Litigation Reform Act (PLRA) may be excused where: (1) administrative remedies were not in fact available to the prisoner, (2) defendants' own actions inhibited exhaustion, or (3) special circumstances justify non-exhaustion. Prison Litigation Reform Act of 1995, § 101(a), 42 U.S.C.A. § 1997e(a).

**[6] Jury 230** ☞ **31.2(1)**

230 Jury

   230II Right to Trial by Jury
      230k30 Denial or Infringement of Right
         230k31.2 Rights of Action and Procedure in Civil Cases

230k31.2(1) k. In General. Most Cited Cases

Seventh Amendment's guarantee of the right to the ultimate determination of issues of fact by the jury, does not extend to the threshold issues that courts must address to determine whether litigation is being conducted in the right forum at the right time; juries decide cases, not issues of judicial traffic control. U.S.C.A. Const.Amend. 7.

**[7] Jury 230** ☞ **31.2(1)**

230 Jury

   230II Right to Trial by Jury
      230k30 Denial or Infringement of Right
         230k31.2 Rights of Action and Procedure in Civil Cases

230k31.2(1) k. In General. Most Cited Cases

Matters of judicial administration often require district judges to decide factual disputes that are not bound up with the merits of the underlying dispute, and in such cases, the Seventh Amendment is not violated. U.S.C.A. Const.Amend. 7.

**[8] Jury 230** ☞ **12(3)**

230 Jury

   230II Right to Trial by Jury
      230k12 Nature of Cause of Action or Issue in General

230k12(3) k. Issues of Law or Fact in General. Most Cited Cases

Seventh Amendment does not promise a jury trial on all issues that might, as a practical matter, finally dispose of a case, but rather, it guarantees the right to a jury's resolution of the merits of the ultimate dispute. U.S.C.A. Const.Amend. 7.

Appeal from a February 17, 2010, judgment of the United States District Court for the Northern District of New York (Suddaby, J.), dismissing plaintiff-appellant's suit for failure to exhaust administrative remedies as required by the Prison Litigation Reform Act of 1995. AFFIRMED.David J. Marck and Jeffrey Rose–Steinberg,[FN**] Seton Hall University School of Law

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2011 WL 3086827 (C.A.2 (N.Y.))

(Cite as: 2011 WL 3086827 (C.A.2 (N.Y.)))

Center for Social Justice, Newark, NJ, for Plaintiff–Appellant.

Martin Hotvet, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, and Michael S. Belohlavek, Senior Counsel, on the brief), for Eric T. Schneiderman, Attorney General of the State of New York, Albany, NY, for Defendants–Appellees.

Before B.D. PARKER and CHIN, Circuit Judges, and KORMAN, District Judge.[FN***]

PER CURIAM:

*1 In this appeal, we consider whether a plaintiff in a lawsuit governed by the Prison Litigation Reform Act of 1995 (the "PLRA") is entitled to a jury trial on disputed factual issues relating to his exhaustion of administrative remedies. The district court held that he is not. We agree.

### BACKGROUND

On March 25, 2001, plaintiff-appellant Rafael Messa, an inmate in the custody of the New York State Department of Correctional Services ("DOCS") at Green Haven Correctional Facility, was injured during a prison yard altercation with defendants-appellees, a group of correctional officers ("defendants"). As a consequence, Messa was hospitalized in the prison infirmary for more than a week.

On November 17, 2003, he brought this *pro se* action under 42 U.S.C. § 1983 against defendants and other DOCS employees, alleging excessive force and other Eighth Amendment and due process violations in connection with the prison yard incident. The parties requested a jury trial.

By mid–2007, only the excessive force claim remained. Defendants moved for summary judgment, arguing that Messa had not complied with the PLRA's exhaustion provision, which provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

Messa acknowledged that he had failed to file a grievance or otherwise pursue relief through DOCS's Inmate Grievance Procedure (the "IGP"), but he argued that his failure should be excused.[FN1] Specifically, he argued that (1) defendants should be estopped from asserting non-exhaustion because they and other prison staff had threatened him with further violence if he filed a grievance; and (2) prison staff had refused him translation and processing assistance, effectively preventing him from utilizing the IGP because he could not speak English and was illiterate in his native Spanish.

The district court denied the summary judgment motion and scheduled trial for January 11, 2010. The Friday before trial was to begin, the district court announced its plan to conduct an evidentiary hearing on exhaustion before impaneling a jury. On Monday, it denied Messa's request for an adjournment and heard testimony from both sides. Ruling from the bench, the court rejected Messa's excuses as contrary to the evidence. For example, the district court held that Messa's facility with the IGP was evident from the numerous grievances he had filed between 2000 and 2003. Moreover, he had successfully appealed disciplinary proceedings brought against him in April 2001 that arose out of the same prison yard altercation. Hence, the district court dismissed the remainder of the complaint without prejudice to refiling upon exhaustion. The trial never took place. This appeal followed.

### DISCUSSION

[1] On appeal, Messa challenges the district court's (1) denial of a jury trial on the factual disputes regarding his excuses for non-exhaustion; (2) rejection of his excuses for non-exhaustion; and (3) denial of his request to adjourn the January 11 hearing.

*2 [2][3] The right to a jury trial is a legal question that we review de novo. *See Brown v. Sandino Materials, 250 F.3d 120, 125 (2d Cir.2001).* The Seventh Amendment provides that "[i]n suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. CONST. amend. VII. In an action under 42 U.S.C. § 1983, the parties have a right to a jury trial on the merits, *City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 709, 119 S.Ct. 1624, 143 L.Ed.2d 882*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2011 WL 3086827 (C.A.2 (N.Y.))

(Cite as: 2011 WL 3086827 (C.A.2 (N.Y.)))

(1999), but whether the right applies to other aspects of the action depends upon "the nature of the issue ... rather than the character of the overall action," *see Ross v. Bernhard,* 396 U.S. 531, 538, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970).

This Court has not addressed whether there is a right to a jury trial on factual disputes regarding an inmate's failure to exhaust administrative remedies as required by the PLRA, 42 U.S.C. § 1997e(a). Five of our sister circuits have addressed the issue, however, and all five have held that there is no such right. *See Drippe v. Tobelinski,* 604 F.3d 778, 782, 785 (3d Cir.2010); *Dillon v. Rogers,* 596 F.3d 260, 272 (5th Cir.2010); *Bryant v. Rich,* 530 F.3d 1368, 1375–77 & n. 15 (11th Cir.2008); *Pavey v. Conley,* 544 F.3d 739, 741 (7th Cir.2008); *Wyatt v. Terhune,* 315 F.3d 1108, 1119–20 (9th Cir.2003). We agree.

[4] The PLRA provides that "unexhausted claims cannot be brought in [federal] court." *Jones v. Bock,* 549 U.S. 199, 211, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); *Perez v. Wisc. Dep't of Corr.,* 182 F.3d 532, 535 (7th Cir.1999) (describing satisfaction of § 1997e(a) as "a precondition" to bringing suit). Like administrative exhaustion, PLRA exhaustion "govern[s] the timing of federal-court decisionmaking." *McCarthy v. Madigan,* 503 U.S. 140, 144, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992); *see Woodford v. Ngo,* 548 U.S. 81, 93–103, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006); *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51 & n. 9, 58 S.Ct. 459, 82 L.Ed. 638 (1938). It is a matter of judicial administration in the sense that "[u]ntil the issue of exhaustion is resolved, the court cannot know whether it is to decide the case or the prison authorities are to [do so]." *Pavey,* 544 F.3d at 741.

[5] An inmate's failure to comply with this requirement may be excused where: (1) administrative remedies were not in fact " 'available' to the prisoner," (2) "defendants' own actions inhibit[ed]" exhaustion, or (3) " 'special circumstances' ... justify" non-exhaustion. *Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004). Messa argues that, unlike other aspects of exhaustion, which he concedes are properly resolved by the court, determining whether an inmate asserts a valid excuse for non-exhaustion is a task for the jury. We are not persuaded.

[6] First, the Seventh Amendment's guarantee of the right to "the ultimate determination of issues of fact by the jury," *In re Peterson,* 253 U.S. 300, 309–10, 40 S.Ct. 543, 64 L.Ed. 919 (1920), does not extend to the "threshold issue[s] that *courts* must address to determine whether litigation is being conducted in the right forum at the right time," *Dillon,* 596 F.3d at 272 (emphasis added). As one of our sister courts put it, "[j]uries decide cases, not issues of judicial traffic control." *Pavey,* 544 F.3d at 741.

*3 [7] Messa is incorrect that the presence of disputed material facts converts exhaustion into a jury issue. Matters of judicial administration often require district judges to decide factual disputes that are not bound up with the merits of the underlying dispute. In such cases, the Seventh Amendment is not violated. *See Alliance for Envtl. Renewal v. Pyramid Crossgates Co.,* 436 F.3d 82, 87–88 (2d Cir.2006); *see also Robinson v. Metro–North Commuter R.R. Co.,* 267 F.3d 147, 170 n. 14 (2d Cir.2001). Here, the factual disputes relating to exhaustion are not intertwined with the merits of Messa's underlying excessive force claim.

Second, Messa's proposal ignores Congress's reasons for requiring administrative exhaustion, which are to (1) encourage inmates to pursue administrative steps "that they might otherwise prefer to skip," *Sapp v. Kimbrell,* 623 F.3d 813, 823 (9th Cir.2010); (2) "provide[ ] prisons with a fair opportunity to correct their own errors," *Woodford,* 548 U.S. at 94; and (3) "reduce the quantity and improve the quality of prisoner suits," *Porter v. Nussle,* 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). To require a jury trial before it is certain that an inmate is entitled to be in federal court would seriously undercut these goals. *See Bryant,* 530 F.3d at 1376. "[O]ne could envision a series of jury trials before there was a trial on the merits: a jury trial to decide exhaustion, a verdict finding that the prisoner had failed to exhaust, an administrative proceeding, the resumption of the litigation, and another jury trial on failure to exhaust." *Pavey,* 544 F.3d at 741.

Third, Messa argues that excuses for PLRA exhaustion are analogous to a statute of limitations, an

--- F.3d ----, 2011 WL 3086827 (C.A.2 (N.Y.))

(Cite as: 2011 WL 3086827 (C.A.2 (N.Y.)))

issue that may be tried to a jury as of right, *see Katz v. Goodyear Tire & Rubber Co.,* 737 F.2d 238, 242–43 (2d Cir.1984); *Bertha Bldg. Corp. v. Nat'l Theatres Corp.,* 248 F.2d 833, 840 (2d Cir.1957). He is wrong. While it is true that the two are similar in some ways—*e.g.,* both are non-jurisdictional affirmative defenses—they serve very different functions in our civil justice system.

As discussed, PLRA exhaustion is a condition that must be satisfied *before* the courts can act on an inmate-plaintiff's action. *Harris v. Hegmann,* 198 F.3d 153, 158 (5th Cir.1999). A statute of limitations, on the other hand, "represent[s] a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that 'the right to be free of stale claims in time comes to prevail over the right to prosecute them.' " *United States v. Kubrick,* 444 U.S. 111, 117, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979) (quoting *R. R. Telegraphers v. Ry. Express Agency,* 321 U.S. 342, 349, 64 S.Ct. 582, 88 L.Ed. 788 (1944)). In other words, one doctrine opens the courthouse door and the other closes it. In fact, because these two doctrines play such important—and distinct—roles in our system of justice, we recently held that statutes of limitations " 'must be tolled while a prisoner completes the mandatory exhaustion process.' " *Gonzalez v. Hasty,* No. 07–1787–pr, 2011 WL 2463562, at *5 (2d Cir. June 22, 2011) (quoting *Brown v. Valoff,* 422 F.3d 926, 943 (9th Cir.2005)).

**\*4** [8] Finally, we are not persuaded by the argument that a jury trial should be permitted if exhaustion is no longer possible, *i.e.,* if a dismissal for failure to exhaust will "end litigation rather than shunting it to another forum," *Pavey,* 544 F.3d at 741. The Seventh Amendment does not promise a jury trial on all issues that might, as a practical matter, finally dispose of a case. Rather, it guarantees the right to a jury's resolution of the merits of the ultimate dispute. *See Markman v. Westview Instruments,* 517 U.S. 370, 377, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996); *see also In re Peterson,* 253 U.S. at 309–10. There has been no interference with that right in Messa's case: whether defendants used excessive force in the prison yard that day has yet to be determined.

We have considered Messa's remaining arguments

and conclude that they are without merit. The district court did not err in rejecting Messa's excuses after consideration of the evidence presented at the January 11 hearing. Nor was the district court's denial of Messa's request for an adjournment—after the case had been pending almost seven years—an abuse of discretion. *See Dow Chem. Pac. Ltd. v. Rascator Maritime S.A.,* 782 F.2d 329, 341 (2d Cir.1986).

### *CONCLUSION*

For the foregoing reasons, we hold that the Seventh Amendment does not guarantee a jury trial on factual disputes regarding administrative exhaustion under the PLRA. Accordingly, the judgment of the district court is **AFFIRMED.**

> FN* The Clerk of the Court is directed to revise the official caption to conform to the above.

> FN** Appearing pursuant to 2d Cir. R. 46.1(e).

> FN*** The Honorable Edward R. Korman, of the United States District Court for the Eastern District of New York, sitting by designation.

> FN1. The specifics of the IGP are discussed in *Espinal v. Goord,* 558 F.3d 119, 125–27 (2d Cir.2009).

C.A.2 (N.Y.),2011.

Messa v. Goord
--- F.3d ----, 2011 WL 3086827 (C.A.2 (N.Y.))
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2007 WL 2227506 (N.D.N.Y.)
(Cite as: 2007 WL 2227506 (N.D.N.Y.))

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Emilio FUSCO, Petitioner,
v.
D.B. DREW, Respondent.
**Civil Action No. 9:05-cv-41 (GLS/DRH).**

July 31, 2007.

Emilio Fusco, Longmeadow, MA, pro se.

Hon. Glenn T. Suddaby, United States Attorney for the Northern District of New York, Charles E. Roberts, Esq., Assistant United States Attorney, of Counsel, Syracuse, NY, for Respondent.

### *ORDER*

GARY L. SHARPE, U.S. District Judge.

**\*1** The above-captioned matter comes to this court following a Report-Recommendation by Magistrate Judge David E. Homer, duly filed June 27, 2007. Following ten days from the service thereof, the Clerk has sent the file, including any and all objections filed by the parties herein.

No objections having been filed, and the court having reviewed the Magistrate Judge's Report-Recommendation for clear error, it is hereby

ORDERED, that the Report-Recommendation of Magistrate Judge David R. Homer filed June 27, 2007 is ACCEPTED in its entirety for the reasons state therein, and it is further

ORDERED, that the petitioner's petition for a writ of habeas corpus (Dkt. No. 1) is DENIED, and it is further

ORDERED, that the Clerk of the Court is to enter judgment in favor of the Respondent and close this case.

IT IS SO ORDERED

### REPORT-RECOMMENDATION and ORDER

DAVID R. HOMER, United States Magistrate Judge.

Pro se Petitioner Emilio Fusco ("Fusco") brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 alleging a violation of his due process rights under the Fifth Amendment in regards to a disciplinary hearing at which he was found guilty and sentenced to the loss of good conduct credits. Pet. (Dkt. No. 1) at Ground One.[FN1] For the reasons which follow, it is recommended that the petition be denied.

FN1. Fusco was released from the custody of the Federal Bureau of Prisons on May 8, 2006. *See* Fed. Bureau of Prisons Website, < http://www.bop.gov/iloc2/InmateFinderServlet?Transaction =IDSearch & needingMoreList=false & IDType=IRN & IDNumber=02689-748> (visited June 25, 2007). However, Petitioner fulfills the "in custody" requirement of 28 U.S.C. § 2241 because Fusco is subject to a three-year term of supervised release after his incarceration was completed. *See Harvey v. City of N.Y.,* 435 F.Supp.2d 175, 178 (E.D.N.Y.2006) (citing *Scanio v. United States,* 37 F.3d 858, 860 (2d Cir.1994)) (supervisory release); *see also Fleming v.. Abrams,* 522 F.Supp. 1203, 1204-05 (S.D.N.Y.1981) (same); Scannell Decl. (Dkt. No. 5) at Ex. 1a.

### I. Background

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2227506 (N.D.N.Y.)
(Cite as: 2007 WL 2227506 (N.D.N.Y.))

Fusco was convicted in the United States District Court for the District of Massachusetts of racketeering and money laundering conspiracies in violation of 18 U.S.C. §§ 1962(d) and 1956(h). Scannell Decl. (Dkt. No. 5) at Ex. 1a. On September 19, 2003, Fusco was sentenced to thirty-three months to be followed by a three-year term of supervised release. *Id.* On April 1, 2004, while housed at the Federal Correctional Institution in Fort Dix, New Jersey, Fusco was charged with minor assault on another person. *Id.* at Ex. 1b. The charge alleged that on April 1, Fusco was running across the courtyard and when the reporting officer yelled for him to stop, Fusco ran into another **inmate**, bumping the other **inmate** in the chest with his own chest. *Id.* When the officer ran toward the **inmates**, Fusco again bumped into the other **inmate** and began yelling in that **inmate's** face. *Id.* Fusco told the officer that he and the other **inmate** were friends and were just playing around. *Id.* The officer took both **inmates** to his supervisor's office. *Id.*

A copy of the charge was delivered to Fusco and a supervisory officer proceeded to conduct an investigation. *Id.* Fusco did not request any witnesses to be interviewed during the investigation. However, in his own interview, Fusco stated that he may have been yelling but did not punch anyone. *Id.* The supervisor found the charge to be valid, Fusco was placed in the special housing unit and the matter was referred to a disciplinary hearing officer ("DHO") to conduct a hearing. *Id.* On April 5, 2004, Fusco received notice of the hearing, signed a waiver of his right to have a staff representative, and acknowledged the rights afforded him at the hearing. *See id.* at Exs. 1c & 1d. Fusco also signed and wrote on a form that he waived his right to present witnesses, although he provided the names of two witnesses on that form. *Id.* at Ex. 1c.

**\*2** On April 15, 2004, a hearing was conducted.[FN2] *Id.* at Ex. 1e. Fusco denied the charge. He stated that he did not assault the other **inmate**, he was coming from the gym, he and the other **inmate** were just talking, and they never touched each other. *Id.* The DHO noted that Fusco had requested two **inmate** witnesses but that they were not called because Fusco had waived his right to call witnesses. *Id.* In addition to Fusco's testimony, the DHO considered a memorandum from Lt. Kaough, which contained an interview with the other **inmate** involved in the incident. *Id.* at Exs. 1e & 1f. The other **inmate** stated that he was near the soccer and baseball field talking to

Fusco "about which lifting weights were better[,] Italy or American." *Id.* at Ex. 1f. The **inmate** then stated that Fusco reached out to touch his face and stated that he was handsome. *Id.* The **inmate** noted that Fusco was not trying to fight or hurt him. *Id.* The DHO found that the versions of events related by Fusco, the reporting officer, and the other **inmate** were contradictory. *Id.* at Ex. 1e. The DHO further found that the statements of Fusco and the other **inmate** were not as credible as the reporting officer's statement. *Id.* Based on that evidence, the DHO found that Fusco committed the act as charged. *Id.*

> FN2. A copy of the hearing transcript was not provided.

The DHO imposed sanctions of disciplinary segregation for thirty days and a recommendation of loss of good conduct credits for twenty-seven days. *Id.* In imposing sentence, the DHO noted that the assault demonstrated a disregard of the rules and impeded the staff's ability to maintain the facility in an orderly fashion. *Id.* Fusco was provided with a copy of the determination on April 23, 2004, and was notified of his right to appeal. *Id.* Fusco subsequently exhausted all administrative remedies. *Id.* at Exs. 1g, 1h, & 1i. During these appeals, Fusco alleged that there was no proof to substantiate the charge, he was denied an interpreter, and because he could not fully understand the English language, he was tricked into waiving his right to call witnesses. *Id.* This action followed.

## II. Discussion

Fusco contends that his due process rights under the Fifth Amendment [FN3] were violated when he was not provided a staff representative or interpreter and, when he was denied the right to call two witnesses. Pet. at § D, DHO Hr'g, at ¶ 8.

> FN3. Since Fusco was imprisoned in a federal institution, the Fifth and not the Fourteenth Amendment of the United State Constitution would apply to his due process claim. *See Pugliese v. Nelson,* 617 F.2d 916, 918 n. 2 (2d Cir.1980). The analysis of a due process claim

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2227506 (N.D.N.Y.)
(Cite as: 2007 WL 2227506 (N.D.N.Y.))

under the Fifth Amendment is virtually identical to that under the Fourteenth Amendment. *See Chew v. Dietrich,* 143 F.3d 24, 28 n. 4 (2d Cir.1998) (holding that the due process analysis under the two amendments is "basically the same").

The Due Process Clause of the **Fifth Amendment** states that "no person shall be ... deprived of life, liberty, or **property**, without due process of law [.]" U.S. Const. amend. V. In order to present a due process claim, a petitioner must establish that he possessed a constitutionally protected liberty **interest**. *Allocco Recycling, Ltd. v. Doherty,* 378 F.Supp.2d 348, 365 (S.D.N.Y.2005) (citing *Matthews v. Eldridge,* 424 U.S. 319, 332 (1976)); *Reno v. Flores,* 507 U.S. 292, 301-02 (1993); *DeMichele v. Greenburgh Cent. Sch. Dist. No. 7,* 167 F.3d 784 789 (2d Cir.1999)). Such a protected liberty interest exists when there is a recommendation for loss of good conduct credits. *Hinebaugh v. Wiley,* 137 F.Supp.2d 69, 76 (N.D.N.Y.2001) (citing *Wolff v. McDonnell,* 418 U.S. 539, 558 (1974)).

**\*3** The Supreme Court has held that a prison disciplinary proceeding does not constitute a "criminal prosecution, [and thus] the full panoply of rights due a defendant in such proceedings does not apply ." *Wolff,* 418 U.S. at 556. Therefore, a disciplinary hearing that results in loss of good conduct credits will satisfy due process if the following are provided to the **inmate**: 1) at least twenty-four hour advance notice of the charges; 2) a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence as long as the presentation of evidence is not unduly hazardous to institutional safety or correctional goals; 3) a fair and impartial hearing officer; and 4) a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken. *See Sira v. Morton,* 380 F.3d 57, 69 (2d Cir.2004) (citing *Wolff,* 418 U.S. at 563-67); *see also Hinebaugh v. Wiley,* 137 F.Supp.2d at 76. [FN4] Furthermore, the Supreme Court has held that "requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board[.]" *Superintendent, Mass. Corr. Inst. at Walpole v. Hill,* 472 U.S. 445, 455-56 (1985); *see also Hinebaugh,* 137 F.Supp.2d at 76. The Second Circuit has interpreted "some evidence" to be some "reliable evidence." *Luna v. Pico,* 356 F.3d 481, 488 (2d Cir.2004).

FN4. The Federal Bureau of Prisons has also set forth regulations incorporating these requirements to govern procedures federal prison disciplinary proceedings. *See* 28 C.F.R. § 541.17.

Here, there is no evidence to establish that Fusco was denied any of his due process rights. Fusco was advised of his right to a staff representative and he waived this right by placing a check mark on a form stating that he declined to have a staff representative. Scannell Decl. at Exs. 1c, 1d, & 1e. There is no indication from the DHO's report that Fusco made any complaints that he was denied this right during the hearing and the first time this issue was raised was in his administrative appeals. *See id.* at Exs. 1e, 1g, 1h, & 1i. Furthermore, there is absolutely no indication that Fusco ever requested an Italian interpreter because he had difficulty speaking and understanding English. *See generally id.* at Exs. 1c, 1d, & 1e. As with the staff representative issue, no complaints or objections were lodged until the appeals process. *See id.* at Exs. 1g, 1h, & 1i.

As to the opportunity to call two **inmate** witnesses, the record demonstrates that Fusco was not denied his rights. Fusco was advised that he could call witnesses and yet chose to check the line that he did not wish to have witnesses. *Id.* Moreover, Fusco expressly wrote on the same form that he wanted to waive his right to have witnesses called and provided his signature directly after the handwritten statement. *Id.* at Ex. 1c. Apparently, no objections or complaints were registered at the hearing when the waiver of witnesses was raised. *Id.* at Ex. 1e. Notwithstanding, the DHO considered a statement made by one of the witnesses Fusco sought to call who was also the subject of the disciplinary charge. *Id.* at Exs. 1e & 1f.

**\*4** Additionally, there is reliable evidence that the incident in question occurred. The reporting officer witnessed and described the alleged event in detail. *Id.* at Ex. 1b. Furthermore, the statements made by the **inmate** involved in the incident and Fusco were contradictory in that the **inmate** stated that there was some touching whereas Fusco stated that there was none. *Id.* at Exs. 1e & 1f. This

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2227506 (N.D.N.Y.)
(Cite as: 2007 WL 2227506 (N.D.N.Y.))

contradiction on a central factual issue rendered their statements unreliable as opposed to that of the reporting officer. Thus, based on all the evidence presented, no violation of due process occurred.

Therefore, it is recommended that the Petition be denied.

### III. Conclusion

For the reasons stated herein, it is hereby

**RECOMMENDED** that the petition for a writ of habeas corpus (Dkt. No. 1) be **DENIED;** and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.* *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of HHS,* 892 F.2d 15 (2d Cir.1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

N.D.N.Y.,2007.
Fusco v. Drew
Not Reported in F.Supp.2d, 2007 WL 2227506 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2008 WL 4615017 (N.D.W.Va.)

(Cite as: 2008 WL 4615017 (N.D.W.Va.))

**H**

Only the Westlaw citation is currently available.
United States District Court,

N.D. West Virginia.
Timmy McDONALD, Plaintiff,
v.
UNITED STATES of America, S.L. Hamling, Deborah
Livingston, K.M. White, Harrell Watts, Unknown
Named Employees of FCI-Gilmer, Defendants.
Civil Action No. 2:07cv82.

Oct. 14, 2008.
West KeySummary**Prisons 310**  156

310 Prisons

310II Prisoners and Inmates
310II(B) Care, Custody, Confinement, and Control
310k156 k. Hazardous and Unhealthful
Conditions; Housing. Most Cited Cases
(Formerly 310k17(1))
**Sentencing and Punishment 350H**  1538

350H Sentencing and Punishment

350HVII Cruel and Unusual Punishment in General
350HVII(H) Conditions of Confinement
350Hk1538 k. Housing. Most Cited Cases
Dismissal of an inmate's complaint of cruel and
unusual punishment was warranted for failure to state a
claim upon which relief could be granted. Although the
inmate asserted that the housing of three inmates in a cell
would be a fire hazard and constituted cruel and unusual
punishment, the inmate provided no support for his
allegations. According to the response to the inmate's
institutional grievance, three man cells were instituted in
compliance with the mandates of the American
Correctional Association and the Bureau of Prisons and
the inmate failed to show that housing three men in one
cell offended society's evolving standards of decency or
that any prison official knowingly ignored an excessive

risk to the inmate's health and safety. 28 U.S.C.A. §§
1915(e), 1915A.
Timmy McDonald, West Liberty, KY, pro se.

***ORDER***

ROBERT E. MAXWELL, District Judge.
**\*1** It will be recalled that on September 16, 2008,
Magistrate Judge Kaull filed his Report and
Recommendation, wherein the Plaintiff was directed, in
accordance with 28 U.S.C. § 636(b)(1), to file with the
Clerk of Court any written objections within ten (10) days
after being served with a copy of the Report and
Recommendation. On September 29, 2008, Plaintiff filed
his Objections to Magistrate's Report and
Recommendation.

Upon examination of the report from the Magistrate
Judge, it appears to the Court that the issues raised by the
Plaintiff in his Complaint, brought pursuant to *Bivens v.
Six Unknown Agents of Fed. Bureau of Narcotics,* 403
U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and the
Federal Tort Claim Act, were thoroughly considered by
Magistrate Judge Kaull in his Report and
Recommendation. Upon review of the Plaintiff's
objections, the Court finds that the Plaintiff has not raised
any issues that were not already throughly considered and
addressed by the Magistrate Judge in his Report and
Recommendation. Moreover, the Court, upon an
independent *de novo* consideration of all matters now
before it, is of the opinion that the Report and
Recommendation accurately reflects the law applicable to
the facts and circumstances before the Court in this action.
Therefore, it is

**ORDERED** that Magistrate Judge Kaull's Report and
Recommendation be, and the same hereby is, accepted in
whole and that this civil action be disposed of in
accordance with the recommendation of the Magistrate
Judge. Accordingly, it is

**ORDERED** that the Plaintiff's Complaint against the
Defendants shall be, and the same hereby is, **DISMISSED**
pursuant to 28 U.S.C. §§ 1915(e) and 1915A for failure to

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4615017 (N.D.W.Va.)

(Cite as: 2008 WL 4615017 (N.D.W.Va.))

state a claim upon which relief may be granted. It is further

**ORDERED** that the above-styled action shall be **STRICKEN** from the docket of this Court. It is further

**ORDERED** that the Clerk shall enter judgment for the Defendants. It is further

**ORDERED** that, if Plaintiff should desire to appeal the decision of this Court, written notice of appeal must be received by the Clerk of this Court within thirty (30) days from the date of the entry of the Judgment Order, pursuant to Rule 4 of the Federal Rules of Appellate Procedure. The $5.00 filing fee for the notice of appeal and the $450.00 docketing fee should also be submitted with the notice of appeal. In the alternative, at the time notice of appeal is submitted, Plaintiff may, in accordance with the provisions of Rule 24(a) of the Federal Rules of Appellate Procedure, seek leave to proceed *in forma pauperis* from the United States Court of Appeals for the Fourth Circuit.

### OPINION/REPORT AND RECOMMENDATION

JOHN S. KAULL, United States Magistrate Judge.

On October 15, 2007, the *pro se* plaintiff initiated this case by filing a civil rights complaint pursuant to *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.* The plaintiff was granted permission to proceed as a pauper on October 31, 2007, and paid his initial partial filing fee on November 14, 2007. On January 2, 2008, the undersigned directed the plaintiff to file proof of exhaustion. The plaintiff filed what purports to be proof of exhaustion on January 22, 2008. This case is before the undersigned for a preliminary review and report and recommendation pursuant to LR PL P 83.01, *et seq.,* and 28 U.S.C. §§ 1915(e) and 1915A.

### I. The Complaint

#### A. Disciplinary Report

On December 20, 2006, defendant S.L. Hamling ("Hamling") issued an incident report against the plaintiff

which the plaintiff asserts is false. In the report, Hamling stated that while conducting a search of the plaintiff's secure locker, he found hidden "five gambling slips for professional football teams, 60 pages of pornography showing full nudity and sexual acts, four hand rolled cigarettes, 1 oz. Chewing tobacco wrapped in plastic, two radio's with register numbers removed, and 8 headphones." *See* Petitioner's Response to Order (dckt.14) at Ex. B. Moreover, in the common area of the cell, Hamling stated that he found "8 tomatoes, 5 onions, 5 green peppers, approx. 2 lbs. of cauliflower, approx. 2 lbs. of broccoli, and four packages of religious dietary meats, all these items were found stowed inside water jug's (sic) containing inmate McDonald's register number." *Id.*

The plaintiff asserts that his inmate records show that at the time of Hamling's report, he had in his possession, only two water jugs. The plaintiff asserts that it is physically impossible to store the amount of food and meat items list by Hamling in two half gallon water jugs.

On January 12, 2007, the plaintiff appeared before Disciplinary Hearing Officer, Deborah Livingston ("Livingston"). *Id.* The plaintiff was charged with Possession of Anything not Authorized in violation of Code 305 and Possession of Gambling Paraphernalia in violation of Code 326. *Id.* After considering all of the evidence, defendant Livingston found that the plaintiff committed the prohibited acts as charged and sanctioned the plaintiff to 20 days disciplinary segregation, 14 days loss of good conduct time and six months loss of commissary. *Id.*

The plaintiff appealed his disciplinary sanctions through the Bureau of Prisons ("BOP") administrative remedy process alleging, *inter alia,* that the disciplinary report was false. *Id.* The plaintiff did not obtain relief from his disciplinary sanctions in those proceedings. *Id.*

#### B. Conspiracy

With regard to the plaintiff's claims surrounding his disciplinary proceedings, the plaintiff asserts that Livingston, K.M. White ("White"), Harrell Watts ("Watts") and other unknown named defendants, conspired to cover up the "malfeasance" of defendant Hamling in violation of 42 U.S.C. § 1985(3). Specifically, it appears that the plaintiff argues that Livingston found

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4615017 (N.D.W.Va.)

(Cite as: 2008 WL 4615017 (N.D.W.Va.))

him guilty of the charges, and White, Watts and other unknown named individuals, denied his requests for administrative remedy, as part of a conspiracy to cover-up the alleged false report by Hamling.

**C. Living Conditions**

*2 On May 9, 2007, the plaintiff was allegedly placed in a cell with two other inmates by unknown staff. The plaintiff asserts that the cell was only designed to hold two men and provided inadequate bed and living space. The plaintiff asserts that such conditions were cruel and inhumane, as housing three men in a two man cell is a fire hazard and clearly dangerous.

**D. Violation of BOP Policy**

In this claim, the plaintiff asserts that he is entitled to relief because the above-stated actions of the various defendants violated the standards of employee conduct as articulated in BOP Program Statement 3420.09.

**E. Plaintiff's Tort Claim**

Finally, the plaintiff asserts that the United States is liable under the FTCA for the malfeasance of its employees in violating his Fifth and Eighth Amendment rights as set out in the complaint.

**II. *Standard of Review***

Because the plaintiff is a prisoner seeking redress from a governmental entity or employee, the Court must review the complaint to determine whether it is frivolous or malicious. 28 U.S.C. § 1915A. Pursuant to § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. Complaints which are frivolous or malicious, must be dismissed. 28 U.S.C.1915A(b).

A complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). However, the Court must read *pro se* allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). A complaint which fails to state a claim under Fed.R.Civ.P. 12(b)(6) is not automatically frivolous. See Neitzke at 328. Frivolity dismissals should

only be ordered when the legal theories are "indisputably meritless,"[FN1] or when the claims rely on factual allegations which are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 32, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992).

FN1. *Id.* at 327.

**III. *Analysis***

**A. *Disciplinary Report and Proceeding***

In this claim, the plaintiff asserts that his due process rights were violated during his disciplinary proceedings and that he is entitled to compensatory and monetary damages for those violations of his constitutional rights. In Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), the Supreme Court of the United States found:

[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus ... *Heck* at 487 (footnote omitted). These principles are equally applicable in civil rights cases that challenge the constitutionality of a prison disciplinary proceeding. Edwards v. Balisok, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997).

*3 Here, the petitioner challenges a disciplinary proceeding which resulted in a loss of good conduct time and seeks monetary damages as a result of the sanctions he served. However, the plaintiff has not made a showing that the finding of guilt has been reversed on direct appeal, expunged by executive order, declared invalid by a tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus. Therefore, the plaintiff's is not entitled to seek monetary damages against the defendants at this time. To the extent that the plaintiff seeks the invalidation of the guilty finding or expungement of the disciplinary report, the proper avenue for which the plaintiff may seek such

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4615017 (N.D.W.Va.)

(Cite as: 2008 WL 4615017 (N.D.W.Va.))

relief is through a petition for writ of habeas corpus under 28 U.S.C. § 2241. See *Preiser v. Rodriguez,* 411 U.S. 475, 499-500, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).

**B. *Conspiracy***

In order to state a claim under § 1985(3), a plaintiff must allege and prove the following four elements: "(1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy." *Simmons v. Poe,* 47 F.3d 1370, 1376 (4th Cir.1995). Conclusory allegations of a conspiracy are insufficient to state a claim. *Id.* at 1377.

Here, the plaintiff's claims are at best, conclusory. Moreover, the plaintiff has failed to allege, much less prove, the four elements necessary to state a conspiracy claim under § 1985.

**C. *Living Conditions***

In general, the Eighth Amendment prohibits "cruel and unusual punishment." *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). In order to comply with the Eighth Amendment, prison punishment must comport with "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble,* 429 U.S. 97, 102, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). "A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. at 837.

Here, although the plaintiff asserts that the housing of three inmates in a cell would be a fire hazard and constitutes cruel and unusual punishment, the plaintiff provides no support for such conclusory and self-serving allegations. According to the response to the plaintiff's institutional grievance regarding this matter, three man cells were instituted in compliance with the mandates of the American Correctional Association and the Bureau of

Prisons. Pet's Ex. D. The plaintiff has simply failed to show that housing three men in one cell offends society's evolving standards of decency or that any prison official knowingly ignored an excessive risk to the plaintiff's health and safety by placing him in a three man cell.

**D. *Violation of BOP Policy***

**\*4** A claim that the BOP or one of its employees violated a Program Statement fails to rise to the level of a constitutional violation and is not cognizable under *Bivens. See Grubbs v. Greer,* Slip Opinion, 2008 WL 3896697 \*3 (S.D.Miss. Aug.19, 2008) (violation of P.S. 3420.09, or any program statement, does not rise to level of constitutional violation) (citing *Hernandez v. Estelle,* 788 F.2d 1154, 1158 (5th Cir.1986) (mere failure to follow prison's internal regulations does not amount to constitutional violation); *Bates v. Helman,* 175 F.3d 1019, 1999 WL 160966 \* 3 (7th Cir.1999) (violation of a program statement does not rise to the level of a constitutional violation); *Ortega v. Maynard,* No. 06-CV-084-HRW, 2006 WL 1877016 \*2 (E.D.Ky. July 6, 2006)).

**E. *Federal Tort Claims***

The FTCA provides as follows:
[T]he district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages ... for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant and in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

"The FTCA waives the sovereign immunity of the United States so that the government may be liable in tort 'in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or punitive damages.' " *Baum v. United States,* 986 F.2d 716, 719 (4th Cir.1993)(*citing* 28 U.S.C. § 2674). In other words, the FTCA waives the federal governments' traditional

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4615017 (N.D.W.Va.)

(Cite as: 2008 WL 4615017 (N.D.W.Va.))

immunity from suit for claims based on the negligence of its employees and "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." *Medina v. United States,* 259 F.3d 220, 223 (4th Cir.2001).

Here, the plaintiff asserts that all of the acts of the defendants were willful and knowing violations of his constitutional rights. The plaintiff states no cause of action with respect to any negligent acts on the part of the defendants. Thus, the plaintiff's tort claims fail and must be dismissed. *See FDIC v. Meyer,* 510 U.S. 471, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) (constitutional torts are not cognizable under the FTCA).

## IV. *Recommendation*

For the reasons set forth in this Order, it is recommended that the plaintiff's complaint be **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e) and 1915A for the failure to state a claim upon which relief may be granted.

Within ten (10) days after being served with a copy of this Opinion/Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wright v. Collins,* 766 F.2d 841 (4th Cir.1985); *United States v. Schronce,* 727 F.2d 91 (4th Cir.1984), *cert. denied,* 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984).

**\*5** The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket.

N.D.W.Va.,2008.

McDonald v. U.S.
Not Reported in F.Supp.2d, 2008 WL 4615017 (N.D.W.Va.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp., 1992 WL 320985 (S.D.N.Y.)

(Cite as: 1992 WL 320985 (S.D.N.Y.))

c

Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Ceasar A. RAMIREZ, Plaintiff,
v.
Otto G. OBERMAIER, United States Attorney for the
Southern District of New York, in his official and
individual capacities; Daniel L. Perlmutter, ex-Assistant
United States Attorney; John Dowd, DEA Special
Investigator for the Southern District of New York, in
his individual and official capacities; Jeffrey E.
Weissmann, trustee of Ceasar A. Ramirez Trust Fund,
Defendants.
No. 91 Civ. 7120 (RPP).

Oct. 28, 1992.
Ceasar Ramirez, plaintiff pro se.

Otto G. Obermaier, U.S. Atty. for the Southern District of
New York, by M. Chinta Gaston, Asst. U.S. Atty., New
York City, for defendants Otto Obermaier and John
Dowd.

Kenneth N. Karpel, White Plains, N.Y., for defendant
Jeffrey Weissmann.

OPINION AND ORDER

ROBERT P. PATTERSON, JR., District Judge.

*1 This is an action for injunctive relief and damages
in which violations of 42 U.S.C. § 1983, Rule 41 of the
Federal Rules of Criminal Procedure, and the First,
Fourth, Fifth, Sixth and Fourteenth Amendments to the
federal Constitution are alleged to have occurred due to
the manner in which seized property of Plaintiff Ceasar
Ramirez was disposed. In his first two causes of action,
Plaintiff claims that his Fourteenth Amendment right to
challenge the unlawful seizure of his property and his
rights under the other specified constitutional amendments
were violated when the United States Government
defrauded him and failed to return to him certain property

pursuant to his signed agreement with the Government. In
his third cause of action, Plaintiff claims that the
Defendants have failed to follow Rule 41(e) of the Federal
Rules of Criminal Procedure in returning certain of his
property to him.

Defendants Otto Obermaier and John Dowd move
pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss Plaintiff's
complaint against them. Defendant Jeffrey Weissmann
moves pursuant to Fed.R.Civ.P. 12(c) for judgment on the
pleadings or in the alternative for summary judgment
pursuant to Fed.R.Civ.P. 56. Plaintiff Ramirez moves for
(1) a temporary restraining order and/or preliminary
injunction ordering replacement of Defendant Weissman
as court appointed trustee of the jewelry items at issue,
and (2) a default judgment against Defendant Daniel
Perlmutter pursuant to Fed.R.Civ.P. 55. For the reasons
set forth below, Defendant Obermaier's motion to dismiss
is granted, Defendant Dowd's motion to dismiss is granted,
Defendant Weissmann's motion for judgment on the
pleadings is denied, Defendant Weissmann's motion for
summary judgment is granted, and Plaintiff's motions for
injunctive relief and a default judgment are denied.

BACKGROUND

The complaint, filed August 29, 1991, alleges that, in
April 1984, Ramirez was arrested and subsequently
indicted on twenty-three federal charges of tax evasion,
violations of the narcotics laws, engaging in a continuing
criminal enterprise, and violations of the federal gun
control laws. Immediately following his arrest, his assets
were seized by the United States government pursuant to
orders from the United States Attorney's office for the
Southern District of New York. The United States
Attorney's office also froze Plaintiff's bank accounts and
confiscated commercial buildings owned by Plaintiff. In
October 1984, after lengthy plea negotiations, Ramirez
pleaded guilty to engaging in a continuing criminal
enterprise, 21 U.S.C. § 848, and evasion of more than
$50,000 in income taxes in 1982, 26 U.S.C. § 7201. On
October 22, 1984, around the time of his plea bargain,
Ramirez consented to the entry of a Judgment of Civil
Forfeiture ("consent judgment") pursuant to which he

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1992 WL 320985 (S.D.N.Y.)

(Cite as: 1992 WL 320985 (S.D.N.Y.))

agreed to forfeit to the United States specific items of personal and real property which were seized at the time of his arrest and "deposited in the hand of defendant Daniel N. Perlmutter." Compl. ¶ 8. Ramirez also agreed not to contest the civil forfeiture of these assets.

**\*2** The items subject to the forfeiture agreement included automobiles, jewelry, cash, paintings, antique hunting rifles, electronic equipment, commercial and residential real estate, and bank and security accounts. Under the consent judgment, those items were divided into three categories. Items in the first category were deemed property of the United States; $651,653.34 of the proceeds from the sale of items in the second category were to be applied to satisfy Ramirez's delinquent tax obligations for the years 1973 to 1983, with the remaining proceeds to be placed in a trust ("Ramirez trust") for the children of Ramirez; and items in the third category were deemed the personal property of Ramirez or his nominees and/or assignees. In addition, Ramirez agreed that the items or proceeds from sale of the items placed in the Ramirez trust would be "administered by a non-family member who is satisfactory to the United States." Compl., Ex. 3, at 4. On June 8, 1987, Honorable William C. Conner of the United States District Court for the Southern District of New York, who had presided over the criminal proceedings and plea agreement between Ramirez and the Government, appointed Defendant Jeffrey Weissmann, who had been court appointed receiver of Plaintiff's commercial buildings, as trustee of the Ramirez trust with the consent of the United States.

Defendant John Dowd, an agent of the Drug Enforcement Agency ("DEA") who investigated and arrested Ramirez, supervised the law enforcement officers who seized Ramirez's jewelry and electrical items in connection with his arrest. Dowd was placed in charge of these items, most of which were stored in an evidence retention area at the United States Attorney's office until August 5, 1987. Dowd was personally in charge of the items during the plea negotiations between Ramirez and the Government.

The complaint alleges that Agent Dowd did not prepare an inventory of the goods at the time they were confiscated and delivered to the evidence retention area; that Dowd carried in the trunk of his car some of the confiscated electronic equipment; and that the equipment stored in Dowd's car was never returned either to the trust or to Plaintiff. The complaint also alleges that, on November 21, 1986, over two years after the consent judgment but eight months before the appointment of Weissmann as trustee of the Ramirez trust, Dowd orchestrated a transfer, without prior court approval or order, of seventy jewelry items belonging to Ramirez, his deceased wife, and children, to Ramirez's estranged second wife, Cleopatra Ramirez, in exchange for her testimony against Ramirez in a state criminal proceeding. Compl. ¶ 24.

In 1985, it is alleged, the Federal Bureau of Investigation ("FBI") initiated an investigation involving Defendant Daniel Perlmutter, the Assistant United States Attorney ("AUSA") in charge of Ramirez's case who had negotiated the plea bargain and consent judgment with Ramirez. The investigation of Perlmutter "was predicated upon the discovery by personnel" at the office of the United States Attorney "that a large quantity of narcotics substance had disappeared from the evidence retention area." Pl.'s Affirmation in Opp., Ex. D, at 1 (letter dated Jan. 10, 1992 from FBI to Plaintiff Ramirez). The FBI conducted "a detailed inventory ... at SDNY" which "reflected that additional items had also been removed from the evidence retention area. Specifically, the inventory reflected that a quantity of jewelry, which related to [Ramirez's] case, was also missing." *Id.* Mr. Perlmutter was arrested in part for stealing the narcotics from the evidence retention area. He was subsequently discharged from the United States Attorney's office, prosecuted and convicted.

**\*3** The complaint alleges that Defendant Perlmutter arranged the appointment of Defendant Weissmann as court appointed receiver of the Plaintiff's commercial buildings and that Weissmann mismanaged the sale of the assets. It also charges that Weissmann has not maintained custody of the jewelry entrusted to him as trustee.

The complaint further charges that Defendant Obermaier, in his official capacity as United States Attorney for the Southern District of New York, was responsible for entering into the plea agreement in bad faith and breaching the terms of the consent judgment

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1992 WL 320985 (S.D.N.Y.)

(Cite as: 1992 WL 320985 (S.D.N.Y.))

when his office (1) provided some of the jewelry items to Ramirez's then-wife Cleopatra Ramirez instead of to Ramirez and (2) lost some of the jewelry items to be placed in the Ramirez trust in accordance with the consent judgment. Specifically, Ramirez claims that certain jewelry, typewriters and antique guns were placed in the third category of the consent judgment and therefore should have been returned to him by the Government when, in April 1988, he made an application to Judge Conner for their return. Ramirez asserts a claim against Obermaier in his individual capacity on the ground that "Mr. Obermaier is ultimately responsible for the training and supervision of the personnel employed at the U.S. Attorney's office of the SDNY." Compl. ¶ 3. The complaint does not allege, however, that prior to this action Obermaier was personally involved or aware of the consent judgment or of the loss of jewelry items.

Finally, on October 22, 1991, Ramirez moved in this action for a preliminary injunction and/or temporary restraining order seeking to replace Weissmann, appointed as trustee by Judge Conner to administer the Ramirez trust.

On March 16, 1992, Defendants Obermaier and Dowd filed the present motions pursuant to Fed.R.Civ.P. 12(b)(6) and 12(b)(1) to dismiss Ramirez's complaint against them, and Defendant Weissmann filed a motion pursuant to Fed.R.Civ.P. 12(c) for judgment on the pleadings or Fed.R.Civ.P. 56 for summary judgment with respect to the claims against him. Weissmann also seeks a protective order pursuant to Fed.R.Civ.P. 26 in connection with Ramirez's first and second set of interrogatories.

DISCUSSION

I. *MOTIONS TO DISMISS*

A complaint should not be dismissed under Rule 12(b)(6) for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). When passing on a motion to dismiss, the court must accept the allegations in the complaint as true and construe them in favor of the pleader. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974); *Cruz v. Beto,* 405 U.S. 319, 322 (1972).

Because Ramirez is a pro se litigant this Court must construe his complaint more liberally than it would in reviewing a pleading submitted by counsel. *Platsky v. CIA,* 953 F.2d 26, 28 (2d Cir.1991) (citations omitted).

A. *Claims Against Otto Obermaier*

*\*4 The complaint alleges that Defendant Obermaier acted under color of state and federal law in violation of Ramirez's civil rights under 42 U.S.C. § 1983. It is undisputed that Defendant Obermaier, as United States Attorney for the Southern District of New York, is a federal officer. The complaint fails to state a claim under 42 U.S.C. § 1983 because that provision does not allow claims against federal officers acting under color of federal law. *Chodos v. Federal Bureau of Investigation,* 559 F.Supp. 69, 72 (S.D.N.Y.) (an "action brought pursuant" to section 1983 "cannot lie against federal officers" acting pursuant to federal law), *aff'd,* 697 F.2d 289 (2d Cir.1982), *cert. denied,* 459 U.S. 1111 (1983).

The complaint makes a conclusory allegation that Obermaier acted pursuant to state law, Compl. ¶ 7. It fails, however, to allege facts that would enable this Court to infer that Obermaier acted pursuant to state law. Accordingly, Defendant Obermaier's motion to dismiss Ramirez's section 1983 claim against him is granted.

Obermaier also moves to dismiss Plaintiff's claim against him in his official capacity. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971). Plaintiff alleges that his rights under the First, Fourth, Fifth, Sixth and Fourteenth Amendments were violated by the seizure of his assets, the terms of the plea agreement and consent judgment, and the Government's alleged failure to return certain property to him pursuant to the consent decree. The complaint makes no factual allegations to support a showing that Ramirez's First or Sixth Amendment rights were in any way infringed. In invoking the Fourth Amendment, Ramirez appears to challenge the original forfeiture of his assets. As part of his plea agreement, however, Ramirez expressly waived his right to make any such challenge.[FN1] Compl.Ex. 3. Finally, the Fourteenth Amendment by its terms applies to acts of states and not directly to acts of the federal government or of federal officials like Defendant Obermaier.[FN2] *See Rendell-Baker v. Kohn,* 457 U.S. 830, 837-38 (1982). Therefore, the Court need only address

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1992 WL 320985 (S.D.N.Y.)

(Cite as: 1992 WL 320985 (S.D.N.Y.))

Ramirez's claims based on the Fifth Amendment.

Ramirez claims that Obermaier, as the United States Attorney, directly supervised the plea negotiations and is responsible for the Government's failure to abide by the terms of the plea agreement when it (1) turned over some of the property to Ramirez's then-wife Cleopatra Ramirez without authorization, and (2) lost some jewelry items consigned to the Ramirez trust.

A claim asserted against an officer of the United States in his official capacity is in essence a suit against the United States. *Kentucky v. Graham,* 473 U.S. 159, 166 (1985). The United States, in turn, may assert its sovereign immunity from suits "save as it consents to be sued." *United States v. Mitchell,* 445 U.S. 535, 538, *reh'g denied,* 446 U.S. 992 (1980) (citation omitted). The United States has not waived its sovereign immunity for damages arising from constitutional violations. *Keene Corp. v. United States,* 700 F.2d 836, 845 n. 13 (2d Cir.) (citing *Contemporary Mission, Inc. v. United States Postal Service,* 648 F.2d 97, 104 (2d Cir.1981), *cert. denied,* 464 U.S. 864 (1983); *Birnbaum v. United States,* 588 F.2d 319, 327-28 (2d Cir.1978). For these reasons, Ramirez's *Bivens* claim asserting constitutional violations cannot be asserted against United States Attorney Obermaier in his official capacity. Accordingly, Defendant Obermaier's motion to dismiss the claims against him in his official capacity pursuant to Rule 12 is granted.

*5 A *Bivens* action based upon an alleged federal constitutional violation may be brought, however, against a federal employee in his individual capacity. *See Bivens,* 403 U.S. at 389. Ramirez asserts a claim against Obermaier in his individual capacity on the ground that "Mr. Obermaier is ultimately responsible for the training and supervision of the personnel employed at the United States Attorney's Office of the SDNY," Compl. ¶ 3, including former AUSA Perlmutter. Ramirez's claim is based on a theory of supervisory liability and negligent deprivation of property by a federal officer. *See* Pl.'s Mem. of Law at 45.

As a supervisory official at the United States Attorney's office, Obermaier may be held liable if he "was grossly negligent in managing subordinates who caused

the unlawful condition or event," *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986), or if he "created or acquiesced in a policy or practice of poor training and supervision of subordinate [AUSAs]." *Barbera v. Smith,* 836 F.2d 96, 99 (2d Cir.1987), *cert. denied, Barbera v. Schlessinger,* 489 U.S. 1065 (1989). Under either scenario, personal involvement by the defendant official is a prerequisite to an award of damages under section 1983. *Williams,* 781 F.2d at 323 (citation omitted). The defendant must *personally* have knowledge of or acquiesce or participate in the deprivation of the plaintiff's constitutional rights. *See id.*

The complaint does not allege that Obermaier was grossly negligent in managing his subordinates and thereby deprived Ramirez's rights under the Due Process Clause. Insofar as the complaint charges Obermaier with *negligently* depriving Ramirez of his property, it fails to allege a violation of the Fifth Amendment Due Process Clause. *Daniels v. Williams,* 474 U.S. 327, 328 (1986) (holding that "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of ... property."); *Barbera,* 836 F.2d at 99.

There is no showing that, at the time of Ramirez's plea negotiations, Obermaier personally acquiesced in a policy of poor training of AUSAs, or was in any other way personally involved in or knowledgeable about the plea negotiations or other acts that caused Ramirez's alleged deprivation of property. It is undisputed that Obermaier was not the United States Attorney in charge of subordinates in 1984-1988, when the plea negotiations took place. The complaint attempts to circumvent Obermaier's lack of personal involvement by alleging that Obermaier is liable for the actions of his predecessors in the office of United States Attorney who may have negligently and recklessly failed to supervise Perlmutter. This claim too must fail, however, because, if they were not personally involved in those violations, federal officers "cannot be held liable for violations committed by their subordinates or predecessors in office. *Leonhard v. United States,* 633 F.2d 599, 621 n. 30 (2d Cir.1980), *cert. denied,* 451 U.S. 908 (1981) (citations omitted). Allegations regarding Obermaier's negligence, or even gross negligence, in managing subordinates will not support a claim against Obermaier if he was not in office

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1992 WL 320985 (S.D.N.Y.)

(Cite as: 1992 WL 320985 (S.D.N.Y.))

as a supervisory official at the time the illegal conduct is alleged to have taken place. Accordingly, the Court grants Defendant Obermaier's motion to dismiss the claims against him based on constitutional violations.

**\*6** Ramirez also brings a claim under Rule 41(e) of the Federal Rules of Criminal Procedure. Rule 41(e) provides that "[a] person aggrieved by ... the deprivation of property may move the district court for the district in which the property was seized for the return of the property on the ground that such person is entitled to lawful possession of the property." Fed.R.Crim.P. 41(e). The Federal Rules of Criminal Procedure, however, "are not applicable to ... civil forfeiture of property for violation of a statute of the United States." Fed.R.Crim.P. 54(b)(5). The property for which Plaintiff seeks to recover was the subject of civil forfeiture. This Court, therefore, must reject Ramirez's claim made pursuant to Rule 41(e), and Defendant Obermaier's motion to dismiss the claim against him based on Rule 41(e) is granted.

B. *Claims Against John Dowd*

Plaintiff makes claims pursuant to *Bivens, supra,* and pursuant to 42 U.S.C. § 1983 against Defendant Dowd, in both his official and individual capacities. As an agent of the DEA, Dowd is a federal officer, and for the reasons stated above with regard to Defendant Obermaier, an action pursuant to section 1983 cannot lie against him as such. Nor, for reasons also stated above with regard to Defendant Obermaier, can a *Bivens* claim be asserted against Dowd in his official capacity when the United States has not waived its sovereign immunity for damages arising from constitutional violations. *See Keene, supra,* 700 F.2d at 845 n. 13. A *Bivens* action based on Dowd's alleged violation of Ramirez's federal constitutional rights may be brought against Dowd in his individual capacity under limited circumstances.[FN3] *See Bivens,* 403 U.S. at 389.

*Parratt v. Taylor,* 451 U.S. 527 (1981), *overruled on other grounds, Daniels v. Williams,* 474 U.S. 327, 330-31 (1986), and *Hudson v. Palmer,* 468 U.S. 517 (1984), teach that, even if Ramirez alleges that Agent Dowd personally deprived Ramirez of his property, Ramirez still fails to assert a claim against Dowd for any violation of the Due Process Clause, and that Ramirez must resort to other

remedies. *Parratt* and *Hudson* hold that, when it is impracticable for the state to provide predeprivation process, "postdeprivation tort remedies are all the process that is due" where they "are the only remedies the State could be expected to provide."[FN4] *Zinermon v. Burch,* 110 S.Ct. 975, 985 (1990) (construing *Parratt* and *Hudson* ).

Ramirez claims that Dowd's failure to return the property was either negligent or intentional. A negligent deprivation of property will not trigger the protections of the Fifth Amendment's Due Process Clause. *Daniels,* 474 U.S. at 328. Nor is Ramirez's claim against Dowd for intentional deprivation of property sufficient to state a violation of the Fifth Amendment where there exists an adequate postdeprivation remedy. *See Hudson,* 468 U.S. at 533 ("[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation" of due process "if a meaningful postdeprivation remedy for the loss is available. For intentional ... deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy.").

**\*7** A suitable post-deprivation remedy exists here, shielding Dowd in his individual capacity from a suit based on constitutional deprivations: the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.* ("FTCA"), provides for an action against the United States in tort for property taken or lost by federal employees acting within the scope of their employment, *see Friedman v. Young,* 702 F.Supp. at 437. Other provisions establish procedures for challenging the forfeiture of property seized by the United States. *See* 21 U.S.C. § 881(d); 19 U.S.C. §§ 1602-1618. Lastly, the limitation imposed in *Parratt* and *Hudson* also applies since it would have been impracticable here for the United States Attorney's office to anticipate and provide for a predeprivation hearing to prevent the tortious loss of Ramirez's property. *See Parratt,* 451 U.S. at 541. The existence of a postdeprivation remedy under the FTCA for the return of property is sufficient to satisfy the Due Process Clause and precludes Ramirez's Fifth Amendment challenge. *Rodriguez-Mora v. Baker,* 792 F.2d 1524, 1527 (11th Cir.1986); *Friedman,* 702 F.Supp. at 437. Accordingly, Defendant Dowd's motion to dismiss the complaint against him is granted.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1992 WL 320985 (S.D.N.Y.)

(Cite as: 1992 WL 320985 (S.D.N.Y.))

II. *MOTION FOR SUMMARY JUDGMENT*

Defendant Weissmann moves pursuant to Fed.R.Civ.P. 12(c) for judgment on the pleadings or in the alternative for summary judgment pursuant to Fed.R.Civ.P. 56. Weissmann also moves pursuant to Fed.R.Civ.P. 26(c) for a protective order with respect to the first and second set of interrogatories served by Plaintiff. Because this Court grants Weissmann's motion for summary judgment, it need not address his motion for a protective order.

Summary judgment is appropriate if the evidence offered demonstrates that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986). The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact, *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970), and the Court must view the facts in the light most favorable to the non-moving party, *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

A. *Background*

The following facts are not in dispute, nor has any party requested discovery in order to challenge them. On August 5, 1987, the jewelry seized from Plaintiff was transferred to Defendant Weissmann, who, in his capacity as court appointed trustee of the Ramirez trust, was empowered to sell the items and place the proceeds from the sale in a trust fund account to benefit Ramirez's children. On August 5, 1987, Weissmann received the jewelry to be placed in trust from United States Marshal Joseph Nicotina for safekeeping and ultimate sale in accordance with the terms of the plea agreement. In June 1987, the United States Marshal's office, under the direction of Nicotina, previously had prepared an inventory of the jewelry items. On the day the items were transferred, Weissmann, his legal counsel Kenneth Karpel, and Nicotina met in a private meeting room at Marine Midland Bank in Hartsdale, New York to verify the written inventory generated by the Marshal's office. The jewelry items were recounted and compared against the inventory provided by the Marshal's office, and the inventory was determined to be "substantially accurate."

Weissmann Aff. ¶ 15. Weissmann, Karpel, and Nicotina signed an amended inventory reflecting minor variations from the Marshal's inventory and the new count and drafted a receipt for those items. The jewelry items were then placed in a safe deposit box at the bank, where they remain.

**\*8** On March 4, 1988, in an effort to sell the jewelry items as mandated under the consent judgment, Weissmann had the items appraised by a professional appraiser. The appraisal tests revealed that the jewelry items had a considerably lower gold content and value than originally represented. The total value of the jewelry as appraised was $60,750, far less than the value estimated in the preliminary government appraisal conducted soon after the items were seized.

Ramirez objected to the trustee's proposed sale of the jewelry, however, on the ground that "someone" in the Government had replaced the valuable jewelry items with jewelry items of lesser value, Compl. ¶ 6, and Judge Conner rescinded a court order permitting Weissmann to sell the items at the lower appraised value.

Weissmann also was the Receiver in charge of Ramirez's commercial property before its sale, and he oversaw rent rolls, expenses, operations, repairs and overall management. On December 6, 1985, Weissmann submitted to Judge Conner a report and accounting of his receivership in which he stated that, from the proceeds of the sale of Ramirez's commercial buildings, he had delivered $418,377.28 to the United States Marshal's office and $651,653.34 to the Internal Revenue Service. In December 1985, after the sale of the commercial property, Judge Conner discharged Weissmann as Receiver. *See* Weissmann Aff., Ex. 2.

The complaint alleges that Weissmann authorized questionable "repairs" of the confiscated commercial property with money from the trust fund and later "refused to furnish plaintiff with copies of true documentation concerning the rent rolls" and the sale of the commercial buildings on December 3, 1985. Compl. ¶ 14. The complaint in essence alleges that Weissmann failed to account to Plaintiff for rent receipts, expenses and the proceeds of sale. The complaint also alleges that Weissmann unlawfully retained some of the proceeds from

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1992 WL 320985 (S.D.N.Y.)

(Cite as: 1992 WL 320985 (S.D.N.Y.))

the sale of those commercial buildings in receivership.

B. *Discussion*

1. Receivership

Defendant Weissmann is entitled to judgment on the pleadings or summary judgment with regard to the allegations concerning his management of the commercial buildings because "full and complete accountings were rendered-all of which were on notice to the Plaintiff, and all of which were approved by Court Order" of Judge Conner. Weissmann's final report and Judge Conner's subsequent order approving the final report show that Weissmann did account for the proceeds of sale of the commercial buildings in receivership. *See* Weissmann Mem.Supp. Protective Order, Ex. 2.

Six interim reports also show that Weissmann provided Ramirez, through Ramirez's first attorney, Harry Pollak, a full accounting of rent receipts prior to sale. *See* Exhibits attached to Weissmann's Notice Mot. Protective Order. At least four of these interim reports were approved by court orders signed by Judge Conner. *See id.* Ramirez contends, however, that Harry Pollack was replaced as his attorney sometime before the consent judgment was signed on October 22, 1984, and that he thereafter was represented by Joel Arnou, Esq., who signed the plea agreement and consent judgment; that only the first interim report, dated August 1985, was sent to Mr. Arnou; and that a jury could reasonably conclude from the evidence provided by both parties that Ramirez and his proper attorney never received the later accounting reports regarding the rent rolls and expenses of the commercial property.

**\*9** Weissmann maintains that even if a genuine issue of fact exists as to whether he made a proper accounting to Ramirez, principles of *res judicata* nevertheless preclude Ramirez from raising an objection concerning Weissmann's activities as Receiver of the commercial property and concerning the interim accounting reports because the activities and the interim reports at issue have already been approved by Judge Conner: "Having made no timely objection to my initial appointment, nor to any of my six interim reports, the Plaintiff should now be

collaterally estopped from raising issues on matters which were encompassed in my reports." Notice of Cross-Mot. for Judg. ¶ 13. Ramirez argues, in substance, that his failure to object to the accounting or to the interim reports before Judge Conner should not preclude his current claim against Weissmann if the failure is due to the very fact that the reports were not disclosed to him. Ramirez also contends that he could not by reasonable diligence have discovered that the interim reports were being approved.

*Res judicata* " 'prevents a party from litigating an issue or defense that could have been raised or decided in a previous suit, even if the issue or defense was not actually raised or decided.' " *Woods v. Dunlop Tire Corp.,* No. 92-7198, slip op. 6319, 6324 (2d Cir. Aug. 11, 1992) (quoting *Clarke v. Frank,* 960 F.2d 1146, 1150 (2d Cir.1992)). In general, where the party claiming preclusion has demonstrated that the transaction or issue has already been litigated or resolved in a prior case, "newly discovered evidence will not preclude the application of *res judicata*" except where the evidence was either fraudulently concealed or could not have been discovered with due diligence. *Saud v. Bank of New York,* 929 F.2d 916, 920 (2d Cir.1991) (citations omitted).

Even if the interim reports constitute newly discovered evidence by Ramirez, there is no suggestion that Weissmann fraudulently concealed the reports. Ramirez and his attorney were on notice concerning the existence of such reports in the light of Judge Conner's order of June 6, 1984, directing that such reports be submitted every 90 days. If such reports were not received by Ramirez or his attorney when due, Ramirez or his attorney had merely to inquire of the court or of Weissmann as to their status. "Due diligence" would require such inquiries under these circumstances. *See id.* Accordingly, Plaintiff having failed to show adequate reason for *res judicata* not to apply, Weissmann's motion for summary judgment is granted on this part of Plaintiff's claim against Weissmann.

2. Jewelry

The complaint also alleges that Weissmann as trustee is responsible for the lost jewelry and the loss in value of the jewelry after the original IRS appraisal in 1985. It

Not Reported in F.Supp., 1992 WL 320985 (S.D.N.Y.)

(Cite as: 1992 WL 320985 (S.D.N.Y.))

alleges that Weissmann converted or at least failed to account for the full value of the quantity of jewelry which had been seized by the Government immediately after Ramirez's arrest. Nothing in the complaint or any subsequent affidavits or other documentary evidence submitted to this Court indicates that Weissmann was responsible for either the Government's failure to return certain jewelry items to Ramirez or the loss of jewelry items between April 1984 (the time the items were seized by law enforcement officials) and August 5, 1987 (the time the items were transferred to Weissmann as trustee). It is undisputed that, in the company of United States Marshal Nicotina and his legal counsel, Kenneth Karpel, Weissmann conducted a full inventory of the jewelry items Weissmann was to receive as court appointed trustee and found some discrepancies in the Government's original inventory. Weissmann noted the discrepancies on an amended inventory, received only the jewelry listed in the amended inventory into the trust, and placed all of the jewelry items in a safe deposit box at Marine Midland Bank. After two appraisals of the jewelry items, and despite several motions before Judge Conner to sell them, the jewelry items originally transferred to Weissmann remain in the same safe deposit box. Ramirez offers only a conclusory and unsupported allegation "that Weissmann in conspiracy with defendants Perlmutter and ... Dowd ... converted those [genuine jewelry] items for fake jewelry." Pl.'s Aff. Opp'n to Weissmann's Cross Mot. at 8. Such conclusory allegations unsupported by facts will not suffice to defeat a motion for summary judgment. *See* Fed.R.Civ.P. 56(e). Furthermore, the beneficiaries of the trust are the proper parties to bring the action Plaintiff seeks to bring here in the guise of a section 1983 action, and any action by the beneficiaries shall be brought before Judge Conner.

**\*10** Accordingly, Defendant Weissmann's motion for summary judgment is granted pursuant to Rule 56 of the Federal Rules of Civil Procedure.

III. *INJUNCTIVE RELIEF*

Ramirez also moves for a preliminary injunction and/or temporary restraining order seeking: (1) to replace Weissmann as court appointed trustee of the Ramirez trust with Richard Sussman, a former attorney for Ramirez; (2) to place the jewelry items in another, local safe deposit box not under Weissmann's control or supervision but under the direct supervision of Ramirez's current wife, Matilda Ramirez, and Mr. Sussman; and (3) to enjoin the sale of certain of the jewelry items by Weissmann pending appraisal of those jewelry items by another professional appraiser. Application for such relief is more properly brought before Judge Conner. To discourage the bringing of such a motion before Judge Conner, the Court will address the motion on its merits.

Preliminary injunctions and temporary restraining orders to protect a plaintiff are issued only after a showing of irreparable injury and to preserve the Court's power to render a meaningful decision after a trial on the merits. *See* Buckingham Corp. v. Karp, 762 F.2d 257, 261 (2d Cir.1985) (citations omitted); *United States v. Adlers Creamery, Inc.,* 107 F.2d 987, 990 (2d Cir.1939); 11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* §§ 2947, 2951 (1973). In the Second Circuit, the "moving party must show (1) irreparable harm" would result if a preliminary injunction were not ordered, "and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking injunctive relief." *Covino v. Patrissi,* 967 F.2d 73 (2d Cir.1992) (citation omitted). A moving party seeking a temporary restraining order similarly must show irreparable injury. *See* Warner Bros., Inc. v. Dae Rim Trading, Inc., 877 F.2d 1120, 1124 (2d Cir.1989).

Ramirez has failed to demonstrate that he will suffer irreparable harm in the absence of an injunction. He provides no facts which would enable this Court to expect that the items of jewelry presently under the control of Defendant Weissmann will subsequently be lost, destroyed or otherwise affected if Weissmann is not replaced or if his current wife does not gain custody of these items. The items are secured in a bank safe-deposit vault and have remained there since August 1987; there is no current or pending effort by Weissmann to sell the items. Pursuant to Judge Conner's previous order, such a sale will now require a court order; a copy of Weissmann's original August 5, 1987 inventory of the jewelry items against which may be compared any future inventory is in existence and will be used on any interim or final accounting ordered by Judge Conner. Accordingly,

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1992 WL 320985 (S.D.N.Y.)

(Cite as: 1992 WL 320985 (S.D.N.Y.))

Ramirez's motion for injunctive relief is denied.

IV. *DEFAULT JUDGMENT*

Ramirez moves pursuant to Fed.R.Civ.P. 55 for an entry of judgment against Defendant Perlmutter. On March 2, 1992, the United States Marshal, upon the request of Ramirez, attempted to serve Perlmutter by sending a copy of the Summons and Complaint addressed to him at the office of the United States Attorney of the Southern District of New York, One St. Andrew's Plaza, New York, New York. On the same day the United States Marshal informed Ramirez that (1) he was unable to serve Perlmutter with process because he no longer worked for the United States Attorney, and that (2) the Bureau of Prisons had his current address. Pl.'s Notice Mot. Default Judg., Ex. 5. There is no indication that Ramirez attempted to serve Perlmutter thereafter. In short, Defendant Perlmutter has not been served with process, *see* Fed.R.Civ.P. 4(d)(1), and as a result Plaintiff's motion for a default judgment against him is denied. *See* Fed.R.Civ.P. 55(a). Since Plaintiff has taken no further action to serve Perlmutter in over six months, the Court will dismiss the complaint against Perlmutter pursuant to Rule 4(j) of the Federal Rules of Civil Procedure, unless Plaintiff, by November 10, 1992, shows good cause for such failure to make service of process on Defendant Perlmutter.

CONCLUSION

*11 For the reasons stated above, Defendant Obermaier's motion to dismiss is granted, Defendant Dowd's motion to dismiss is granted, Defendant Weissmann's motion for summary judgment is granted, and Plaintiff's motions for injunctive relief and for a default judgment against Defendant Perlmutter is denied.

IT IS SO ORDERED.

FN1. In any event, Ramirez states in his Affirmation in Opposition to Defendant Obermaier's Motion to Dismiss, at 32, that "plaintiff's instant [sic] action *is not* [to] challenge ... the seizure of plaintiff's ... assets...." (emphasis in the original).

FN2. The Fourteenth Amendment, § 1, provides,

in pertinent part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law...."

FN3. As with Defendant Obermaier, Ramirez bases his grievances against Dowd in the First, Fourth, Fifth, Sixth and Fourteenth Amendments. For the reasons stated above with regard to Defendant Obermaier, the Court need only address Ramirez's Fifth Amendment due process claim against Dowd.

FN4. Although *Hudson* and *Parratt* involved section 1983 claims against state employees, their rationale applies equally to claims against federal employees made pursuant to the Fifth Amendment. *Rodriguez-Mora v. Baker,* 792 F.2d 1524, 1526 (11th Cir.1986); *see Friedman v. Young,* 702 F.Supp. 433, 437 (S.D.N.Y.1988).

S.D.N.Y.,1992.

Ramirez v. Obermaier
Not Reported in F.Supp., 1992 WL 320985 (S.D.N.Y.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2008 WL 902177 (N.D.N.Y.)

(Cite as: 2008 WL 902177 (N.D.N.Y.))

**C**

Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Joseph A. CRUM, Plaintiff,
v.
Mark DUPELL, ISO Staff, FCI Ray Brook; Henry J.
Sadowski, Regional Counsel; Thomas Yando, ISO Staff,
FCI Ray Brook; and Pena, Officer R & D Staff,
Defendants.
No. 9:06-CV-512 (FJS/GJD).

March 31, 2008.
Joseph A. Crum, Forrest City, AR, pro se.

Office of the United States Attorney, Glenn T. Suddaby,
United States Attorney, Northern District of New York,
Barbara D. Cottrell, AUSA, Asst. U.S. Attorney, of
Counsel, Albany, NY, for Defendants.

**ORDER**

SCULLIN, Senior District Judge.

**\*1** In a Report-Recommendation dated September 28,
2007, Magistrate Judge DiBianco recommended that the
Court grant Defendants' motion for summary judgment.
*See* Dkt. No. 22. Plaintiff filed objections to that
recommendation. *See* Dkt. No. 23.

Most of Plaintiff's objections have nothing to do with
the merits of his claims and, in fact, are not objections at
all but statements concerning what Plaintiff considers to
be the proper legal standards for evaluating a *pro se*
litigant's claims. *See, generally, id.* The Court's review of
Magistrate Judge DiBianco's Report-Recommendation
demonstrates that he applied the appropriate standards
and, in fact, gave Plaintiff every benefit of the doubt.

Finally, to the extent that Plaintiff requests leave to
file an amended complaint to substitute the United States
in place of the individual Defendants with respect to his
claim under the Federal Tort Claims Act, the Court denies

that request as futile for the reasons that Magistrate Judge
DiBianco stated in his Report-Recommendation.
Therefore, the Court hereby

**ORDERS** that Magistrate Judge DiBianco's
September 28, 2007 Report-Recommendation is
**ADOPTED IN ITS ENTIRETY for the reasons stated
therein;** and the Court further

**ORDERS** that Defendants' motion for summary
judgment is **GRANTED;** and the Court further

**ORDERS** that the Clerk of the Court shall enter
judgment in favor of Defendants and close this case.

**IT IS SO ORDERED.**

**REPORT-RECOMMENDATION**

GUSTAVE J. Di BIANCO, United States Magistrate
Judge.

This matter has been referred to me for Report and
Recommendation by the Honorable Frederick J. Scullin,
Jr., Senior United States District Judge, pursuant to 28
U.S.C. § 636(b) and LOCAL RULES N.D.N.Y. 72.3(c).

Plaintiff has brought this action pursuant to *Bivens v.
Six Unknown Named Agents of the Federal Bureau of
Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619
(1971) for constitutional violations [FN1] resulting from the
loss or destruction of his personal property during a
transfer from the Federal Correctional Institution (FCI)
Ray Brook to FCI McKean on August 5, 2005. Plaintiff
has also brought a claim for negligence under the Federal
Tort Claims Act, 28 U.S.C. § 2671. Plaintiff seeks
substantial monetary relief.

> FN1. Plaintiff filed his complaint on a form for
> 42 U.S.C. § 1983 cases, however, it is clear that
> none of the defendants are acting under color of
> "state" law, and that the proper basis for
> plaintiff's constitutional claims is *Bivens.*

Presently before the court is defendants motion to

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 902177 (N.D.N.Y.)

(Cite as: 2008 WL 902177 (N.D.N.Y.))

dismiss and in the alternative for summary judgment pursuant to FED. R. CIV. P. 12(b)(6) and 56. (Dkt. No. 16). Plaintiff has responded in opposition to the motion, and defendants have filed a reply. (Dkt.Nos.17, 18). For the following reasons, this court agrees with defendants and will recommend dismissal of the complaint.

**DISCUSSION**

**1. *Motion to Dismiss***

A court may not dismiss an action pursuant to Rule 12(b)(6) unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cohen v. Koenig,* 25 F.3d 1168, 1172 (2d Cir.1994) (citing *inter alia Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The court must accept the material facts alleged in the complaint as true. *Id.* (citing *Cooper v. Pate,* 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964) (per curiam)).

**\*2** In determining whether a complaint states a cause of action, great liberality is afforded to pro se litigants. *Platsky v. Central Intelligence Agency,* 953 F.2d 26, 28 (2d Cir.1991) (citation omitted). For purposes of a Rule 12(b)(6) motion, the "complaint" includes any written instrument attached to the complaint and any statements incorporated into it by reference. *Gant v. Wallingford Bd. of Education,* 69 F.3d 669, 674 (2d Cir.1995) (citations omitted).

It is well settled that when considering a motion to dismiss, the court is constrained to consider ***only*** the face of the complaint and the documents referred to above. *Id.* If the court considers materials outside the complaint, the appropriate motion is one for summary judgment pursuant to FED. R. CIV. P. 56.

**2. *Summary Judgment***

Summary judgment is proper only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Bryant v. Malffucci,* 923 F.2d 979, 982 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). All factual inferences must be drawn in favor of the nonmoving party. *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (citing *Nora Beverages, Inc. v. Perrier*

*Group of America, Inc.,* 164 F.3d 736, 742 (2d Cir.1998)). In the case of a pro se plaintiff, the court must interpret the pleadings to " 'raise the strongest arguments that they suggest.' " *Id.* (citing *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)).

In this case, defendants have made their motion in the alternative and have submitted substantial material outside of the complaint. I find that the defendants exhibits must be considered, thus, this court will treat this motion as one for summary judgment, utilizing the appropriate standard.

**3. *Facts***

Plaintiff was incarcerated at FCI Ray Brook from January 16, 2003 until August 5, 2005. Defendants' Ex.[FN2] 1(D) (attached to Dkt. No. 16). Plaintiff alleges that on March 20, 2005, he was placed in the Special Housing Unit (SHU) at Ray Brook. Plaintiff claims that when he was transferred to SHU, the Ray Brook staff prepared a property inventory, listing the personal property that plaintiff had in his possession. Complaint at p. 4(c).[FN3] Plaintiff claims that at the time he entered SHU, among other items of personal property, he had a gold-plated chain; a wedding band; and "Trial Transcripts." *Id.*

> FN2. Defendants' Exhibit 1 is the declaration of Patrick Ward, Attorney Advisor at the Federal Bureau of Prisons (BOP). Attached to the Ward Declaration are Exhibits 1(A) through 1(J).

> FN3. The complaint form has pages numbered at the bottom of each page, but plaintiff has inserted additional pages in between the numbered pages. The court will refer to the form's page number and when citing to plaintiff's additional pages, will refer to the form page with a letter extension in parentheses (i.e. page 4 and pages 4(a) or 4(b)).

Plaintiff states that on August 5, 2005, between 4:00 a.m. and 5:00 a.m., defendants Yando, Dupell, and Pena came to plaintiff's cell and told him to gather all his personal belongings because he was being escorted to "R & D" (Receiving and Discharge) prior to being transferred to another facility. *Id.* Plaintiff claims that he gave the R & D staff everything that belonged to plaintiff, including his religious medallion, his gold chain, his wedding band, and his trial transcripts. *Id.* Plaintiff states that he

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 902177 (N.D.N.Y.)

(Cite as: 2008 WL 902177 (N.D.N.Y.))

complained to the staff because they would not allow him to watch them pack his property, and the officers told plaintiff that they were not required to pack the property in his presence. *Id.*

**\*3** Plaintiff claims that on September 1, 2005, after his transfer to FCI McKean, he discovered that six volumes of trial transcripts, religious medallion, gold chain, and wedding band were all missing from his property. *Id.* at 4(d). Plaintiff states that "all" of the property that he gave to the SHU staff at Ray Brook was missing. Plaintiff states that he promptly informed the R & D staff at FCI McKean of the problem and demanded that his property be returned, however, as of the date of his federal complaint, the property had not been returned to him. *Id.*

On September 19, 2005, plaintiff filed a Federal Tort Claim with defendant Regional Counsel Henry J. Sadowski. Plaintiff's claim was denied, and plaintiff alleges that the investigation was insufficient and that defendant Sadowski's "information" was "arbitrary and capricious." Then plaintiff suddenly states that his personal property was "intentionally destroyed" by FCI Ray Brook staff members Dupell, Yando, and Pena. *Id.* Plaintiff alleges that defendant Sadowski was biased toward plaintiff because plaintiff filed "successive tort claims," and that defendant Sadowski's failure to properly investigate "caused" the loss of plaintiff's property and "failed to remedy the wrong."

Plaintiff lists three "Causes of Action." Complaint at 5. Plaintiff first claims that defendants Dupell, Yando, and Pena "intentionally and maliciously" destroyed plaintiff's personal property, including his legal papers which were "essential" to plaintiff's appeal, depriving plaintiff of Due Process. Second, plaintiff alleges that defendants Dupell, Yando, and Pena "frustrated and impeded plaintiff's efforts to pursue a non-frivolous legal claim," depriving plaintiff of Due Process. Third, plaintiff alleges that defendants Dupell, Yando, and Pena violated Bureau of Prisons regulations and federal laws in their handling of plaintiff's property and refused to let plaintiff watch them pack his property while allowing other inmates to watch their property being packed in violation of the Fifth Amendment.[FN4]

[FN4.] Plaintiff also claims that his Fourteenth Amendment rights were violated, but the Fourteenth Amendment due process and equal protection claust only applies to the States. U.S. CONST. amend XIV, § 1. The Fifth Amendment due process clause applies in this case with defendants who are acting under Federal law.

Because plaintiff is pro se, and as stated above, his complaint will be read to raise the strongest arguments that it suggests, this court will consider not only the constitutional claims but the FTCA claim as well.

**4. *Exhaustion of Administrative Remedies***

Plaintiff brings this action pursuant to both *Bivens* and the FTCA. A claim under *Bivens* is a constitutional claim, and according to the Prison Litigation Reform Act (PLRA), exhaustion of administrative remedies is required prior to bringing an action in Federal Court. 42 U.S.C. § 1997e(a). A Federal Tort Claim in contrast is a claim against the United States that alleges a **non-constitutional** tort claim.

The FTCA provides that the United States shall be liable for torts committed by its employees in the same manner and to the same extent that a private individual would be liable under the same circumstances. 28 U.S.C. § 2674. Exhaustion of administrative procedures is also required under the FTCA. 28 C.F.R. §§ 543.30-.32. However, the exhaustion procedures under the FTCA and under the PLRA for *Bivens* claims differ, and fulfillment of one does not constitute satisfaction of the other. *Owusu v. Fed. Bureau of Prisons,* 02 Civ. 915, 2002 U.S. Dist. LEXIS 162, *5-7, 2003 WL 68031 (S.D.N.Y. Jan. 7, 2003)* (citations omitted).

**\*4** There is no dispute in this action that plaintiff has exhausted both types of claims that he brings before this court. Thus, the court may proceed to consider the merits of plaintiff's claims.

**5. *Bivens* Claim**

*Bivens* established a cause of action for monetary damages resulting from the violation of a constitutional

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 902177 (N.D.N.Y.)

(Cite as: 2008 WL 902177 (N.D.N.Y.))

right by federal agents or employees, acting under color of federal law. *Kinoy v. Mitchell,* 851 F.2d 591, 594 (2d Cir.1988) (citing *Bivens, supra* ). In this case, plaintiff alleges that defendants deprived him of his property without due process of law when they either lost or destroyed the property during plaintiff's transfer to FCI McKean.

However, the mere allegation of a property deprivation is insufficient to state a constitutional claim under the Due Process clause. *Hudson v. Palmer,* 468 U.S. 517, 540, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1983). To the extent that plaintiff claims that the property was "lost" due to defendants' negligence, the court notes that negligence does *not* rise to the level of a constitutional violation. *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986); *Nwaokocha v. Sadowski,* 369 F.Supp.2d 362, 370 (E.D.N.Y.2005).

To the extent that plaintiff alleges that defendants "intentionally" destroyed his property, the Court in *Hudson* held that even an intentional deprivation of property will not be actionable if a meaningful post-deprivation remedy for the loss is available. *Hudson,* 468 U.S. at 517. This rule applies if the act of which plaintiff complains is "random and unauthorized." *Alexandre v. Cortes,* 140 F.3d 406, 411 (2d Cir.1998). In this case, plaintiff claims that the defendants were violating regulations and policies, and plaintiff does not claim that the deprivation resulted from an "established" procedure. Therefore, *Hudson* applies.

Although the court in *Hudson* was referring to a claim under 42 U.S.C. § 1983 and the availability of state post-deprivation remedies, this holding has been applied to claims under *Bivens* involving federal employees and federal post-deprivation remedies. *See Stuto v. Fleishman,* 164 F.3d 820, 825 (2d Cir.1999) (quoting *Hudson,* 468 U.S. at 533); *Turkmen v. Ashcroft,* 02-CV-2307, 2006 U.S. Dist. LEXIS 39170, *137 n. 39, 2006 WL 1662663 (E.D.N.Y. June 14, 2006) (citations omitted). In challenging the deprivation, plaintiff must either utilize the available remedies or show that the available remedies are inadequate. *Hudson,* 468 U.S. at 540.

Plaintiff in this case had available remedies to

challenge the loss of his property, and he utilized them. Plaintiff challenged the deprivation both through the administrative remedy procedure of the BOP as well as through the FTCA. Defendants' Ex. 1(H)-1(J) (administrative remedy procedure); Ex. F (FTCA claim). The problem in plaintiff's case was not that these remedies were inadequate, but that plaintiff did not have sufficient evidence to show that he had experienced a loss. Because plaintiff had sufficient post-deprivation remedies available, his *Bivens* claim for loss or destruction of property cannot survive.[FN5] The plaintiff's complaint may be dismissed as against *all* defendants individually.

> FN5. To the extent that plaintiff somehow claims a denial of access to courts due to the loss of his trial transcripts, this claim also cannot survive. The Supreme Court has held that an inmate alleging a denial of access to courts must show *actual injury* as a result of the deficient access to courts. *Lewis v. Casey,* 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). The *cause of the injury* must be inadequacy of the access. *Id.* at 351. Plaintiff must show that a non-frivolous legal claim was frustrated or impeded due to the actions of prison officials. *Warburton v. Underwood,* 2 F.Supp.2d 306, 312 (W.D.N.Y.1998) (quoting *Lewis v. Casey,* 518 U.S. at 353). Although plaintiff alleges that his trial transcripts were lost, there is no indication that his criminal appeal was lost *because of* the loss of the transcripts.

**6. FTCA Claim**

**\*5** The FTCA waives the sovereign immunity of the United States to allow for civil actions for injury or loss of property caused by the negligent or wrongful act or omission of a Government employee while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable under the law of the place where the conduct or omission occurred. *Hallock v. Bonner,* 387 F.3d 147, 151 (2d Cir.2004) (citing 28 U.S.C. § 1346(b)(1)). Thus, in this case, New York law applies. The Second Circuit has analyzed those provisions to authorize recovery for conversion of property and for

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 902177 (N.D.N.Y.)

(Cite as: 2008 WL 902177 (N.D.N.Y.))

negligent damage to property. *Johnson v. Smithsonian Inst., 189 F.3d 180, 189 (2d cir.1999)*.

In this case, plaintiff exhausted his administrative remedies under the FTCA. The court also notes, however, that the proper defendant in an FTCA action is the United States. *See Nwaokocha, 369 F.Supp.2d at 372*. The United States has not been named in this action, nor has it been properly served. If this case were to continue, the individual defendants would be dismissed from the action, and United States would have to be substituted as a defendant and properly served according to FED. R. CIV. P. 4(I)(1).

Under New York law, an individual is liable for negligence if the defendant owed plaintiff a duty of care; the defendant breached that duty; and the breach caused the plaintiff's injuries. *Atkins v. Glens Falls City Sch. Dist., 53 N.Y.2d 325, 333, 424 N.E.2d 531, 535, 441 N.Y.S.2d 644,648 (1981)*. Under the FTCA, the government owes a duty of care to federal prisoners, governed by 18 U.S.C. § 4042. The Government must exercise ordinary diligence to keep prisoners safe and free from harm. *Jones v. United States, 534 F.2d 53, 54 (5th Cir.), cert. denied, 429 U.S. 978, 97 S.Ct. 487, 50 L.Ed.2d 586 (1976)*.

The defendants have submitted all the documents that were obtained in the administrative investigations of plaintiff's complaint. Plaintiff was transferred on August 5, 2005, but plaintiff's property was inventoried and packaged for transfer on August 15, 2005. Plaintiff was not present for the packing of his belongings. The Inmate Personal Property Record inventory was signed by E. Pena and M. Dupell, however, plaintiff claims that defendant Yando was also present when plaintiff gave his property to defendant Pena. Defendants' Ex. 2 at pp. 1-2. According to this inventory, there is no indication that plaintiff had a religious medal, gold chain, or ring in his property. *Id.* The inventory does indicate that there were two sets of legal materials, one was noted as being 2" thick and the other was 3" thick.

Plaintiff signed for the property on September 1, 2005. *Id.* at p. 4. The box containing plaintiff's signature on the form contains instructions stating that if "there is missing or damaged property, this information should be

noted under Comments." *Id.* Below that language is a space for "*Comments.*" *Id.* Although plaintiff's signature appears in this box, there are **no** "comments" in the appropriate space for missing or damaged property.

**\*6** Plaintiff claims that he possessed these items prior to his transfer and states that a property inventory that was completed in March of 2005 when he was transferred into SHU would show that he had these items. However, defendants have submitted the property inventory for the SHU transfer, and there is no indication that plaintiff had the religious medal, the ring, or the gold chain. Defendants' Ex. 1(F) at p. 4. Defendant Sadowski's investigation did show that on March 21, 2005, plaintiff did have "seven bundles" of legal materials. In January of *2003* it appears from a property inventory that plaintiff *did have* a ring and a religious medallion. Defendants' Ex. 1(F) at pp. 18-20.

The fact that plaintiff had property in 2003 does not support a causal connection between the actions of the defendants and any loss or injury suffered by plaintiff. The forms submitted by defendants are detailed. There is no indication on the August 2005 form that defendants packed a ring, chain, or religious medallion. It is also clear that there were substantial amounts of legal materials (one package was 2" thick and the second package was 3" thick).

The forms for the property transfer were extremely detailed, and contain many items of personal property. The inventory was completed *again* on September 1, 2005, and plaintiff was given the opportunity to review the items. In his response to defendants' motion, plaintiff claims for the first time, that he and defendant Pena specifically discussed plaintiff's jewelry, and defendant Pena told plaintiff to put the jewelry in an envelope. However, plaintiff does not state whether he complied with this suggestion by defendant Pena.

Additionally, plaintiff now states that he was told at FCI McKean that he had to sign for his property, and that plaintiff felt that he had no choice. However, as stated above, he could have signed for the property, but indicated on the form that some of it was missing. Plaintiff has **not** shown that there is a question of fact regarding whether

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 902177 (N.D.N.Y.)

(Cite as: 2008 WL 902177 (N.D.N.Y.))

these defendants caused him injury. Thus, even assuming that defendants owed plaintiff a duty of care toward his property, there is no showing that these defendants breached that duty or that their actions caused plaintiff's injury. Plaintiff can not sustain an FTCA claim as against the United States even if it were a defendant, and the court will not order substitution of parties.

**WHEREFORE,** based on the findings above, it is

**RECOMMENDED,** that defendants' motion for summary judgment (Dkt. No. 16) be **GRANTED,** and the complaint **DISMISSED IN ITS ENTIRETY.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72.

N.D.N.Y.,2008.

Crum v. Dupell
Not Reported in F.Supp.2d, 2008 WL 902177 (N.D.N.Y.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2011 WL 2111995 (M.D.Pa.)

(Cite as: 2011 WL 2111995 (M.D.Pa.))

**H**

Only the Westlaw citation is currently available.
United States District Court,

M.D. Pennsylvania.
Eugene Carl HATHAWAY, Plaintiff
v.
Lt. HOOPER and Federal Bureau of Prisons,
Defendants.
Civil No. 1:11–CV–00675.

May 3, 2011.
Eugene Carl Hathaway, Fci Memphis, Memphis, TN, pro
se.

***REPORT AND RECOMMENDATION***

J. ANDREW SMYSER, United States Magistrate Judge.
I. Background and Procedural History.

**\*1** The plaintiff, a federal prisoner proceeding *pro se,*
commenced this action by filing a complaint. The plaintiff
also filed an application to proceed *in forma pauperis.* By
a separate Order, we have granted the plaintiff's
application to proceed *in forma pauperis.*

The complaint names Lieutenant Hooper and the
Federal Bureau of Prisons as defendants.

The plaintiff alleges that, on April 30, 2009, he was
transferred to the United States Penitentiary at Lewisburg,
Pennsylvania. Lieutenant Hooper was supervising the
receiving and discharge area of that institution. Upon the
plaintiff's arrival, Lieutenant Hooper took possession of
the plaintiff's property. He told the plaintiff that after he
searched and x-rayed the property he would inventory the
property and bring it to the plaintiff. But the plaintiff never
received his property. Instead, the plaintiff received
correspondence from Lieutenant Hooper stating that he
had lost the property.

The plaintiff claims that Lieutenant Hooper was
negligent. He also, however, describes Lieutenant
Hooper's conduct as reckless and callous indifference. He

is seeking compensatory and punitive damages.

II. Pleading Standards.

"Under Federal Rule of Civil Procedure 8(a)(2), a
pleading must contain a 'short and plain statement of the
claim showing that the pleader is entitled to relief.' "
*Ashcroft v. Iqbal,* ––– U.S. ––––, ––––, 129 S.Ct. 1937,
1949, 173 L.Ed.2d 868 (2009). The statement required by
Rule 8(a)(2) need only give the defendant fair notice of
what the plaintiff's claim is and the grounds upon which it
rests. *Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct.
2197, 167 L.Ed.2d 1081 (2007). Detailed factual
allegations are not required. *Bell Atlantic Corp. v.
Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d
929 (2007). But more is required than labels, conclusions
and a formulaic recitation of the elements of a cause of
action. *Id.* "In other words, a complaint must do more than
allege the plaintiff's entitlement to relief." *Fowler v.
UPMC Shadyside,* 578 F.3d 203, 211 (3d Cir.2009). "A
complaint has to "show" such an entitlement with its
facts." *Id.* "While legal conclusions can provide the
framework of a complaint, they must be supported by
factual allegations." *Ashcroft, supra,* 129 S.Ct. at 1950.
"When there are well-pleaded factual allegations, a court
should assume their veracity and then determine whether
they plausibly give rise to an entitlement to relief." *Id.*

"[A] complaint must contain sufficient factual matter,
accepted as true, to 'state a claim to relief that is plausible
on its face.' " *Ashcroft, supra,* 129 S.Ct. at 1949 (quoting
*Twombly, supra,* 550 U.S. at 570). "A claim has facial
plausibility when the plaintiff pleads factual content that
allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged." *Id.* "The
plausibility standard is not akin to a 'probability
requirement,' but it asks for more than a sheer possibility
that a defendant has acted unlawfully." *Id.*

**\*2** A complaint filed by a *pro se* litigant is to be
liberally construed and " 'however inartfully pleaded, must
be held to less stringent standards than formal pleadings
drafted by lawyers.' " *Erickson, supra,* 551 U.S. at 94
(quoting *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 2111995 (M.D.Pa.)

(Cite as: 2011 WL 2111995 (M.D.Pa.))

285, 50 L.Ed.2d 251 (1976)).

III. Discussion.

We review the complaint pursuant to 28 U.S.C. § 1915A which provides, in pertinent part:

**(a) Screening.**—The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

**(b) Grounds for dismissal.**—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

The complaint fails to state a claim upon which relief may be granted.

The plaintiff is apparently attempting to present *Bivens*[FN1] claims.[FN2] But a *Bivens* action can be brought only against individual officials and not against a federal agency. *FDIC v. Meyer,* 510 U.S. 471, 486, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994). Thus, the plaintiff fails to state a *Bivens* claim upon which relief may be granted against the Federal Bureau of Prisons.

FN1. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). In *Bivens,* the Supreme Court recognized a private cause of action to recover damages against a federal agent for violations of constitutional rights. "A *Bivens* action, which is the federal equivalent of the [42 U.S.C.] § 1983 cause of action against state actors, will lie where the defendant has violated the plaintiff's rights under color of federal law." *Brown v. Philip Morris Inc.,* 250 F.3d 789, 800 (3d Cir.2001).

FN2. We do not construe the complaint as raising a claim under the Federal Tort Claims Act (FTCA). First, the only proper defendant with respect to a FTCA claim is the United States. *See* 28 U.S.C. § 2679; *Kennedy v. United States Postal Service,* 145 F.3d 1077, 1078 (9th Cir.1998) ("the United States is the only proper party defendant in an FTCA action"). The plaintiff has not named the United States as a defendant. Second, any such claim would be barred by 28 U.S.C. § 2680(c), which carves out an exception to the United States' waiver of sovereign immunity for claims arising from the detention of property by law enforcement officers. *Ali v. Federal Bureau of Prisons,* 552 U.S. 214, 128 S.Ct. 831, 169 L.Ed.2d 680 (2008) (holding that 28 U.S.C. § 2680(c) barred FTCA claim of federal prisoner based on the loss of his property).

We construe the plaintiff's claim against Lieutenant Hooper as a due process claim.

The plaintiff alleges that defendant Hooper was negligent in his handling of his property. But "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels v. Williams,* 474 U.S. 327, 328 (1986). And so, the plaintiff fails to state a due process claim upon which relief may be granted against Lieutenant Hooper.

Even if the complaint is construed as alleging more than mere negligence, it fails to state a due process claim upon which relief may be granted. That is so because an unauthorized intentional deprivation of property does not violate the Due Process Clause provided that adequate post-deprivation remedies are available. *Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). A grievance program may provide an adequate post-deprivation remedy. *See Tillman v. Lebanon County Correctional Facility,* 221 F.3d 410, 422 (3d Cir.2000) (stating that "the plaintiff had an adequate postdeprivation remedy in the grievance program").

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 2111995 (M.D.Pa.)

(Cite as: 2011 WL 2111995 (M.D.Pa.))

In this case, the plaintiff had adequate administrative remedies available to him. The Bureau of Prison's administrative remedy program, 28 C.F.R. §§ 542.10–542.19, and the Bureau of Prison's administrative tort claims procedures, 28 C.F.R. §§ 543.30–543.32, were available to the plaintiff. Because the plaintiff had an adequate postdeprivation remedy available to him, the complaint fails to state a due process property deprivation claim upon which relief may be granted.

**\*3** Before dismissing a complaint for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. § 1915A, the court must grant the plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hospital,* 293 F.3d 103, 114 (3rd Cir.2002). In this case, because negligence can not support a *Bivens* claim and because the availability of an adequate post-deprivation remedy bars any due process claim based on intentional conduct, amendment would be futile.

IV. Recommendations.

Based on the foregoing, it is recommended that the complaint be dismissed without leave to amend and that the case file be closed.[FN3]

> FN3. We note that by a letter dated April 19, 2011 and filed on April 25, 2011 the plaintiff indicated that he is in the process of being transferred and that he will inform the court of his new address as soon as possible. The plaintiff has not yet informed the court of his new address. But according to the Bureau of Prisons' Inmate Locator the plaintiff is currently incarcerated at the Federal Correctional Institution in Memphis, Tennessee. We have directed the Clerk of Court to update the plaintiff's address.

M.D.Pa.,2011.

Hathaway v. Hooper
Slip Copy, 2011 WL 2111995 (M.D.Pa.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2009 WL 3215344 (S.D.Miss.)

(Cite as: 2009 WL 3215344 (S.D.Miss.))

**C**

Only the Westlaw citation is currently available.
United States District Court,

S.D. Mississippi,
Western Division.
Robert WALL, Plaintiff
v.
Unknown BLACK, et al., Defendants.
Civil Action No. 5:08-cv-274(DCB)(MTP).

Sept. 30, 2009.
Robert Wall, Yazoo City, MS, pro se.

Angela Givens Williams, U.S. Attorney's Office, Jackson, MS, for Defendants.

*ORDER*

DAVID BRAMLETTE, District Judge.

**\*1** This cause is before the Court on the Report and Recommendation of Magistrate Judge Michael T. Parker **(docket entry 29),** and the plaintiff's objections thereto. Having carefully considered the recommendations of the magistrate judge, the objections, and the applicable law, the Court finds as follows:

The plaintiff, Robert Wall, an inmate currently incarcerated at the Federal Correctional Complex in Yazoo City, Mississippi ("FCC Yazoo City"), filed this *pro se* law suit pursuant to *Bivens v. Six Unknown Named Agents,* 403 U.S. 388 (1971). Wall asserts various claims against the following defendants in their individual capacities: (1) Robert B. Black, Vocational Training Instructor at FCC Yazoo City; (2) Phillip C. Jackson, a counselor at FCC Yazoo City; (3) Bruce Pearson, Warden at FCC Yazoo City; (4) Matthew J. Dalton, a Case Management Coordinator at FCC Yazoo City; (5) Katon L. Varnado, a Counselor at FCC Yazoo City; (6) Julie Southerland, a Unit Manager at FCC Yazoo City; (7) Rose M. Smith, a Senior Officer Specialist at FCC Yazoo City; (8) David C. Holston, Supervisory Chaplain at FCC Yazoo City; (9) Gerard M. Bratcher, Supervisor of Education at FCC Yazoo City; and (10) Harley G. Lappin, Director of the Bureau of Prisons ("BOP"). The plaintiff alleges the following in his Complaint **[1],** Supplement to Complaint **[5],** Supplemental Pleading to Complaint **[12],** and Second Supplemental Additions to Complaint **[17]:**

(1) Defendants Lappin, Black, Pearson and Bratcher cancelled his Lexis-Nexis account at the prison law library, in an attempt to interfere with the filing of a post-conviction motion, in violation of Plaintiff's Fifth and Sixth Amendment rights (Complaint Count I), and that it was a violation of the "Privacy Act" for Black to cancel his account (Complaint Count VIII).

(2) Defendant Smith unlawfully and "negligent[ly]" confiscated his shower shoes during a unit inspection and never returned them to him, thereby forcing Plaintiff to take showers barefoot and stand on black mold, in violation of Plaintiff's rights under 8 U.S.C. § 1401 and the Fourth Amendment (Complaint Count II);

(3) Defendants Lappin, Holston and Pearson refused to provide Plaintiff with equal access to the chapel for religious services, in violation of the First Amendment, the Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb et seq. and the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc et seq ., and they denied his request "for Land for Religious Use so that he could build a pyramid temple as required by his Thelema religion," even though "the Native Americans were provided with land for religious use and built a sweat lodge." (Complaint Count III and Supp. [5] );

(4) Defendants Southerland, Varnado and Jackson confiscated his legal papers (pertaining to a post-conviction motion) and did not return them, again in violation of 8 U.S.C. § 1401 and the Fourth Amendment, and Defendants Lappin and Pearson "personally authorized" these actions (Complaint Count IV);

**\*2** (5) Defendant Dalton "obstructed" a phone call between Plaintiff and his attorney by "heckling him" and

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3215344 (S.D.Miss.)

(Cite as: 2009 WL 3215344 (S.D.Miss.))

talking to him while he was on the phone, and Defendant Jackson refused to allow Plaintiff to make a legal call, in violation of due process and his First Amendment right to privacy (Complaint Count V);

(6) Defendant Jackson refused to provide paper and envelopes to Plaintiff so that he could pursue legal actions, in violation of Plaintiff's due process and Sixth Amendment rights, and he provided these items to other inmates "of different classes," thereby violating Plaintiff's Equal Protection rights (Complaint Count VI);

(7) Defendants Jackson, Randle, Dalton and Pearson "removed the plugs from the units and otherwise plugged them up so that [Plaintiff] could not plug in a fan then they turned off the air conditioning to heat up the unit to a boiling degree. Once [Plaintiff] was asleep and above the covers they suddenly turned on the air conditioning full blast, this continuous change in temperature night after night caused black mold spores to be released from the uncleaned vents infecting [Plaintiff] with a deep bloody cough that was never treated in violation of the Eighth Amendment" (Complaint Count VII);

(8) Defendants Lappin and Black refused to provide records that Plaintiff had requested under the Privacy Act (Complaint Count VIII);

(9) Unidentified "Defendants and supplemental Defendants" opened and copied his incoming legal mail in violation of due process and his constitutional right to privacy, as well as his right to legal access (Supp. Pleading [12] Count 1);

(10) Defendant "Bender" [*sic* ] "cancelled and obstructed a movie performance, refused to answer a cop out requesting Indie Rock music entertainment as a DJ night and did not otherwise provide the requested music while allowing other inmates and providing 'hip hop and R & B' music," and Defendant "Richardson" [*sic* ] "failed to hold a promised band meeting to review the claims and possibly restart the band." Plaintiff claims he was discriminated against on the basis of his religion, in violation of his due process and equal protection rights (Supp. Pleading [12] Count 2); and

(11) Defendants Jackson and Dalton intercepted and monitored Plaintiff's legal telephone calls, in violation of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended by the Electronic Communications Privacy Act of 1968, 18 U.S.C. § 2510, et seq. (Second Supp. Addition [17] to Complaint at ¶ 2).

As relief, Plaintiff seeks compensatory and punitive damages as well as injunctive relief. *See* Complaint at 3-4; Supp. [5] at 1-2; Supp. Pleading [12] at 1-2; Second Supp. Addition [17] at 1.

All defendants have moved to dismiss, or in the alternative for summary judgment, and the plaintiff has moved for summary judgment. In a very thorough and well-reasoned Report and Recommendation, Magistrate Judge Parker finds that no genuine issues of material fact exist, that summary judgment should be granted in favor of the defendants, and that the plaintiff's motion for summary judgment should be denied. The plaintiff has filed objections which merely reiterate his initial arguments and do not demonstrate any error in the Report and Recommendation. The Court therefore adopts the Report and Recommendation in its entirety. Accordingly,

**\*3** IT IS HEREBY ORDERED that the Report and Recommendation of Magistrate Judge Michael T. Parker **(docket entry 29)** is adopted in its entirety;

FURTHER ORDERED that the defendants' (Robert B. Black, Phillip C. Jackson, Bruce Pearson, Matthew J. Dalton, Katon L. Varnado, Julie Southerland, Rose M. Smith, David C. Holston, Gerard M. Bratcher, and Harley G. Lappin) motion for summary judgment **(docket entry 20)** is GRANTED, and said defendants' motion to dismiss **(docket entry 20)** is DENIED AS MOOT;

FURTHER ORDERED that the plaintiff Robert Wall's motion for summary judgment **(docket entry 22)** is DENIED;

FURTHER ORDERED that this action is dismissed. A final judgment dismissing this action with prejudice shall follow.

SO ORDERED.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3215344 (S.D.Miss.)

(Cite as: 2009 WL 3215344 (S.D.Miss.))

*REPORT AND RECOMMENDATION*

MICHAEL T. PARKER, United States Magistrate Judge.

THIS MATTER is before the court on a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment [20] filed by Defendants and a Motion for Summary Judgment [22] filed by Plaintiff. Having reviewed the submissions of the parties, the entire record in this matter and the applicable law, the undersigned recommends that Plaintiff's Motion for Summary Judgment [22] be denied, that Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment [20] be granted, and that Plaintiff's claims be dismissed with prejudice.

FACTUAL BACKGROUND

Plaintiff Robert Wall [FN1] is a federal inmate currently incarcerated at the Federal Correctional Complex in Yazoo City, Mississippi ("FCC Yazoo City"), serving a 120-month sentence on a conviction for possession of child pornography. Plaintiff is projected to be released from Bureau of Prisons (BOP) custody on June 2, 2016. *See* Exhs. 1 & 2 to Defs' Motion for Summary Judgment.

> FN1. The Complaint identifies Wall as "assignee for Frederick Banks ." However, by Order [7] dated October 10, 2008, the court found that "the only real party in this civil action is Robert Wall" and dismissed Banks from the action.

Plaintiff filed his *Bivens* [FN2] Complaint [1] on September 5, 2008, asserting various claims against the following Defendants in their individual capacities: [FN3] 1) Robert B. Black, Vocational Training Instructor at FCC Yazoo City; 2) Phillip C. Jackson, a counselor at FCC Yazoo City; 3) Bruce Pearson, Warden at FCC Yazoo City; 4) Matthew J. Dalton, a Case Management Coordinator at FCC Yazoo City; 5) Katon L. Varnado, a Counselor at FCC Yazoo City; 6) Julie Southerland, a Unit Manager at FCC Yazoo City; 7) Rose M. Smith, a Senior Officer Specialist at FCC Yazoo City; 8) David C. Holston, Supervisory Chaplain at FCC Yazoo City; 9) Gerard M. Bratcher, Supervisor of Education at FCC Yazoo City; and 10) Harley G. Lappin, Director of the BOP. Plaintiff alleges the following in his Complaint [1], Supplement [5] to Complaint, Supplemental Pleading [12]

to Complaint, and Second Supplemental Additions [17] to Complaint:

> FN2. *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388 (1971). A *Bivens* action mirrors a civil rights action brought under 42 U.S.C. § 1983, the difference being that a *Bivens* action applies to alleged constitutional violations by federal actors, while a section 1983 action applies to alleged constitutional violations by state actors. *See Izen v. Catalina,* 398 F.3d 363, 367 n. 3 (5th Cir.2005).

> FN3. "[A] *Bivens* action may be maintained against a defendant only in his or her individual capacity, and not in his or her official capacity." *Pollack v. Meese,* 737 F.Supp. 663, 666 (D .D.C.1990); *see also Gibson v. Federal Bureau of Prisons,* 121 Fed. Appx. 549, 551 (5th Cir. Dec. 30, 2004).

1) Defendants Lappin, Black, Pearson and Bratcher cancelled his Lexis-Nexis account at the prison law library, in an attempt to interfere with the filing of a post-conviction motion, in violation of Plaintiff's Fifth and Sixth Amendment rights (Complaint Count I), and that it was a violation of the "Privacy Act" for Black to cancel his account (Complaint Count VIII).

*4 2) Defendant Smith unlawfully and "negligent[ly]" confiscated his shower shoes during a unit inspection and never returned them to him, thereby forcing Plaintiff to take showers barefoot and stand on black mold, in violation of Plaintiff's rights under 8 U.S.C. § 1401 and the Fourth Amendment (Complaint Count II);

3) Defendants Lappin, Holston and Pearson refused to provide Plaintiff with equal access to the chapel for religious services, in violation of the First Amendment, the Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb *et seq.* and the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc *et seq.,* and they denied his request "for Land for Religious Use so that he could build a pyramid temple as required by his Thelema religion," [FN4] even

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3215344 (S.D.Miss.)

(Cite as: 2009 WL 3215344 (S.D.Miss.))

though "the Native Americans were provided with land for religious use and built a sweat lodge" (Complaint Count III and Supp. [5] );

>FN4. The Thelema religion, founded by Aleister Crowley in the early 20th century, is based upon the philosophy " 'Do what thou wilt.' " This philosophy is traced back to Francois Rebelais, a Franciscan and later Benedictine monk of the 16th century. Modern Thelema is a syncretic philosophy and religion, containing elements of numerous philosophical and religious traditions. *See* http://en.wikipedia .org/wiki/Thelema (Exh. 6 to Defs' Motion for Summary Judgment).

4) Defendants Southerland, Varnado and Jackson confiscated his legal papers (pertaining to a post-conviction motion) and did not return them, again in violation of 8 U.S.C. § 1401 and the Fourth Amendment, and Defendants Lappin and Pearson "personally authorized" these actions (Complaint Count IV);

5) Defendant Dalton "obstructed" a phone call between Plaintiff and his attorney by "heckling him" and talking to him while he was on the phone, and Defendant Jackson refused to allow Plaintiff to make a legal call, in violation of due process and his First Amendment right to privacy (Complaint Count V);

6) Defendant Jackson refused to provide paper and envelopes to Plaintiff so that he could pursue legal actions, in violation of Plaintiff's due process and Sixth Amendment rights, and he provided these items to other inmates "of different classes," thereby violating Plaintiff's Equal Protection rights (Complaint Count VI);

7) Defendants Jackson, Randle, Dalton and Pearson "removed the plugs from the units and otherwise plugged them up so that [Plaintiff] could not plug in a fan then they turned off the air conditioning to heat up the unit to a boiling degree. Once [Plaintiff] was asleep and above the covers they suddenly turned on the air conditioning full blast, this continuous change in temperature night after night caused black mold spores

to be released from the uncleaned vents infecting [Plaintiff] with a deep bloody cough that was never treated in violation of the Eighth Amendment" (Complaint Count VII);

8) Defendants Lappin and Black refused to provide records that Plaintiff had requested under the Privacy Act (Complaint Count VIII);

9) Unidentified "Defendants and supplemental Defendants" opened and copied his incoming legal mail in violation of due process and his constitutional right to privacy, as well as his right to legal access (Supp. Pleading [12] Count 1);

10) Defendant Bender "cancelled and obstructed a movie performance, refused to answer a cop out requesting Indie Rock music entertainment as a DJ night and did not otherwise provide the requested music while allowing other inmates and providing 'hip hop and R & B' music," and Defendant Richardson >FN5 "failed to hold a promised band meeting to review the claims and possibly restart the band." As such, Plaintiff claims he was discriminated against on the basis of his religion, in violation of his due process and equal protection rights (Supp. Pleading [12] Count 2); and

>FN5. There are no Defendants by these names in this action.

**\*5** 11) Defendants Jackson and Dalton intercepted and monitored Plaintiff's legal telephone calls, in violation of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended by the Electronic Communications Privacy Act of 1968, 18 U.S.C. § 2510, *et seq.* (Second Supp. Addition [17] to Complaint at ¶ 2).

As relief, Plaintiff seeks compensatory and punitive damages as well as injunctive relief.>FN6 *See* Complaint at 3-4; Supp. [5] at 1-2; Supp. Pleading [12] at 1-2; Second Supp. Addition [17] at 1.

>FN6. In the Complaint, Plaintiff also requested mandamus relief in the form of an order "presenting evidence of Defendant's

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3215344 (S.D.Miss.)

(Cite as: 2009 WL 3215344 (S.D.Miss.))

unconstitutional actions to a grand jury by the U.S. Attorney or for the court to present said evidence." *See* Complaint Count VIII. This court has already dismissed with prejudice [7] the writ of mandamus portion of Plaintiff's cause of action.

STANDARD FOR SUMMARY JUDGMENT FN7

FN7. Because Defendants have submitted matters outside the pleadings with their Motion to Dismiss or, in the Alternative, for Summary Judgment [93], the motion should be characterized as a motion for summary judgment. *See* Fed.R.Civ.P. 12(b); *Young v. Biggers,* 938 F.2d 565, 568 (5th Cir.1991).

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is proper "where a party fails to establish the existence of an element essential to his case and on which he bears the burden of proof." *Washington v. Armstrong World Indus.,* 839 F.2d 1121, 1122 (5th Cir.1988). "A complete failure of proof on an essential element renders all other facts immaterial because there is no longer a genuine issue of material fact." *Id.*

This court may grant summary judgment only if, viewing the facts in a light most favorable to the plaintiff, the defendant demonstrates that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir.1995). If the defendant fails to discharge the burden of showing the absence of a genuine issue concerning any material fact, summary judgment must be denied. *John v. State of Louisiana,* 757 F.2d 698, 708 (5th Cir.1985). The existence of an issue of material fact is a question of law that this court must decide, and in making that decision, it must "draw inferences most favorable to the party opposing the motion, and take care that no party will be improperly deprived of a trial of disputed factual issues." *Id.* at 712 (quoting *U.S. Steel Corp. v. Darby,* 516 F.2d 961, 963 (5th Cir.1975)).

There must, however, be adequate proof in the record showing a real controversy regarding material facts. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment...." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (emphasis in original). Thus, "[c]onclusory allegations," *Lujan v. National Wildlife Federation,* 497 U.S. 871, 902 (1990), unsubstantiated assertions, *Hopper v. Frank,* 16 F.3d 92, 96-97 (5th Cir.1994), or the presence of a "scintilla of evidence," *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082, 1086 (5th Cir.1994), is not enough to create a real controversy regarding material facts. In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994).

ANALYSIS

*Failure to Exhaust Administrative Remedies*

**\*6** The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires prisoners to exhaust any available administrative remedies prior to filing suit under 42 U.S.C. § 1983 or "any other Federal law." Accordingly, federal prisoners filing suit under *Bivens* "must first exhaust inmate grievance procedures just as state prisoners must exhaust administrative processes prior to instituting a § 1983 suit." *Porter v. Russels,* 534 U.S. 516, 524 (2002); *see also* *Schipke v. Van Buren,* 239 Fed. Appx. 85, 86 (5th Cir. Aug. 30, 2007). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock,* 549 U.S. 199, 211 (2007) (citations omitted).FN8

FN8. The BOP's Administrative Remedy Program ("ARP") is set forth in 28 C.F.R. § 542. 10, *et seq.* The first step of the ARP process is the informal presentation of the issue to prison staff. If that does not resolve the issue, the inmate must submit a formal Request for Administrative Remedy. If the inmate is not satisfied with the warden's response to that request, he or she may submit an appeal to the appropriate BOP regional director, and may then appeal that

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3215344 (S.D.Miss.)

(Cite as: 2009 WL 3215344 (S.D.Miss.))

decision to the General Counsel. That step "is the final administrative appeal" and its completion, therefore, constitutes exhaustion of administrative remedies.

"Exceptions to the exhaustion requirement are appropriate where the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action." *Schipke,* 239 Fed. Appx. at 86 (quoting *Fuller v. Rich,* 11 F.3d 61, 62 (5th Cir.1994)). The Fifth Circuit has taken the position that exceptions to the exhaustion requirement only apply in "extraordinary circumstances," and the prisoner bears the burden of demonstrating the futility or unavailability of administrative review. *Id.*

As an initial matter, Defendants argue that Plaintiff has failed to exhaust his administrative remedies. This argument does appear to have merit, as there are no administrative remedy filings in the BOP's records regarding Plaintiff's claims in the instant action. *See* Exh. 12 to Defs' Motion for Summary Judgment; Exh. 5 to Defs' Reply [27]. In an effort to excuse his failure to exhaust, Plaintiff argues that Defendants Jackson, Dalton, Randle and Southerland refused to give him administrative remedy forms. Plaintiff claims that he approached Dalton, Randle and Southerland for forms, but they told him he needed to get them from Jackson who, according to Plaintiff, provided him with only one remedy form (which he used to complain about the unrelated confiscation of his shower shoes). Plaintiff also claims that Jackson would not authorize any extensions of time.[FN9] *See* Complaint at 1; Second Supp. Addition to Complaint at 1; Declaration of Robert Wall [24] ¶ 7; Reply [28] to Southerland Decl.

FN9. Defendant Randle does not remember Plaintiff asking him for administrative remedy forms. *See* Declaration of Larry D. Randle (Exh. 30 to Defs' Motion for Summary Judgment) ¶ 4. At any rate, as Defendants Randle and Dalton explain, the procedure for an inmate to obtain administrative remedy forms is to get them from the counselor. Thus, if Plaintiff did ask them for forms, they would have referred him to his counselor (Jackson). *See id.;* Declaration of

Matthew J. Dalton (Exh. 23 to Defs' Motion for Summary Judgment) ¶ 5. Defendant Jackson denies Plaintiff's allegations and stated that he has given Plaintiff administrative remedy forms when he has asked for them. *See* Jackson Decl. ¶ 8. Jackson also avers that he has not denied Plaintiff an extension of time for filing an administrative remedy. Indeed, according to Mr. Jackson, Counselors such as himself do not authorize such extensions; rather, these decisions are made by the Administrative Remedy Coordinator. *See id.*

It is true that "[i]f the institutional authorities refuse to provide a prisoner with the forms needed to exhaust administrative remedies, then those remedies are not 'available' to the prisoner." *Aceves v. Swanson,* 75 Fed. Appx. 295, 296 (5th Cir. Sept. 17, 2003). However, a prisoner's claim that prison officials denied him administrative remedy forms does not automatically defeat summary judgment on the issue of exhaustion. As with any other issue, the nonmovant must present "sufficiently specific facts," not bald, conclusory assertions. *See, e.g., Dye v. Bartow,* 2007 WL 3306771, at * 6 (E.D.Wis. Nov. 6, 2007) (citing *Dale v. Lappin,* 376 F.3d 652 (7th Cir.2004)), *aff'd,* 282 Fed. Appx. 434 (7th Cir. June 12, 2008). Such "sufficiently specific facts" include the following: identification of the prison employee(s) from whom Plaintiff requested forms; identification of the specific form(s) requested; the date the alleged requests were made; evidence detailing the prison officials' response(s) to his alleged request(s); and evidence detailing complaints of denial. *Id.*

**\*7** In the instant case, Plaintiff does not provide details about the forms he allegedly requested, the dates such alleged requests were made, or the responses to his requests. Moreover, he does not provide any evidence that he made efforts to complain about the denial.[FN10] Thus, Plaintiff's claim that he was denied administrative remedy forms is not supported by sufficient evidence. Nevertheless, as the court finds below that Defendants are entitled to summary judgment on Plaintiff's claims on their merits, the issue of exhaustion is rendered moot.

FN10. Indeed, Mr. Dalton avers that when he

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3215344 (S.D.Miss.)

(Cite as: 2009 WL 3215344 (S.D.Miss.))

was Acting Unit Manager over Plaintiff's living unit, he was never told by Plaintiff that his Counselor (Jackson) would not give him administrative remedy forms. *See* Dalton Decl. ¶ 5. In addition, Ms. Southerland, the Unit Manager, avers that Plaintiff has not complained to him about this either. *See* Supplemental Declaration of Julie L. Southerland (Exh. 6 to Defs' Reply) ¶ 6.

*Claims Against Defendant Lappin-Lack of Personal Jurisdiction*

Defendants argue that Plaintiff has failed to establish that Defendant Lappin has sufficient "minimum contacts" with Mississippi and, therefore, he should be dismissed for lack of personal jurisdiction. Mr. Lappin, Director of the BOP, is employed at the BOP's Central Office in Washington, D.C. He does not reside, work or own real property in the state of Mississippi. *See* Declaration of Harley G. Lappin (Exh. 29 to Defs' Motion for Summary Judgment) ¶¶ 1-2.

Mr. Lappin denies having any personal involvement in any of Plaintiff's claims and avers that his only involvement with respect to Plaintiff is "perhaps issuing various Bureau of Prisons rules and regulations which guide staff in administering Bureau of Prisons institutions, which subordinate staff may have referred to in performing their duties." <sup>FN11</sup> *See* Lappin Decl. ¶¶ 4-5. Mr. Lappin avers that "[a]ny action of [his] that might bear on the plaintiff's allegations would have been undertaken as part of [his] official duties." *See id.* ¶ 7. In his role as Director of the BOP, Mr. Lappin "rel[ies] on members of the [BOP] staff who are located on-site at [BOP] institutions ... to provide direct supervision, care, custody and treatment for inmates," as well as "staff at the Central Office and at Regional Offices ... who perform monitoring and reviews of institution level operations...." *See id.* ¶ 3.

FN11. This is indeed what Plaintiff appears to be alleging. In his Declaration, he states that "Lappin was indeed personally involved because it was his de facto policy that he created which was being implemented by defendants including Lappin." *See* Declaration ¶ 14.

In order for this court to exercise personal jurisdiction over Lappin, a non-resident, Plaintiff must show that he purposely directed activities towards Mississippi or purposely availed himself of the privileges of conducting activities here, and that the cause of action arises out of or results from Lappin's forum-related contacts. *Nuovo Pignone, v. Storman Asia M/V,* 310 F.3d 374, 378 (5th Cir.2002) (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474 (1985)). Plaintiff argues that "[b]ecause Defendant Lappin through telephone calls, emails, letters and business and personal visits to FCC Yazoo City has sufficient personal contacts with Mississippi, this court may exercise jurisdiction over him." *See* Plaintiff's Response [22] to Defs' Motion for Summary Judgment at 8; *see also* Wall Decl. at 14 ("Lappin contacts Yazoo via email, telephone and letters. I have personally known that last year he came to Yazoo City....") However, Plaintiff does not allege or establish that his claims in the instant cause of action arise out of, or result from, those alleged contacts and, therefore, has failed to establish that this court may exercise personal jurisdiction over Mr. Lappin. *See Nuovo Pignone, 310 F .3d at 378* (citing *Burger King, 471 U.S. at 474).*

**\*8** Moreover, courts have held that mere allegations relating to a BOP official's supervisory activities over a facility inside the forum state are insufficient to establish personal jurisdiction. *See Murrell v. Chandler, 2007 WL 869568, at \* 4 (E.D.Tex. Mar. 21, 2007)* (granting defendants' motion to dismiss BOP's Administrator of National Inmate Appeals, located in Washington, D.C ., for lack of personal jurisdiction, stating that "plaintiff's allegations that [defendant] decided his administrative appeals outside the state of Texas is not sufficient contact to support a finding of personal jurisdiction"); *Jones v. Hawk-Sawyer, 2000 WL 34203850,* at\* 2 (N.D.Tex. Oct. 19, 2000) (dismissing claim against director of BOP because "[p]laintiff's allegations that [defendant] decided two administrative appeals outside the state of Texas and his conclusory allegations of conspiracy are not sufficient contact to support a finding of personal jurisdiction"); *see also Hill v. Pugh, 75 Fed. Appx. 715, 719 (10th Cir. Sept. 11, 2003)* (dismissing claims against BOP Director for lack of personal jurisdiction, holding that it was "not reasonable to suggest that federal prison officials may be hauled into court simply because they have regional and

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3215344 (S.D.Miss.)

(Cite as: 2009 WL 3215344 (S.D.Miss.))

national supervisory responsibilities over facilities within a forum state [Colorado]"); *Johnson v. Rardin,* 1992 WL 9019, at * 1 (10th Cir. Jan. 17, 1992) (dismissing BOP Director for lack of minimum contacts where his only involvement was reviewing inmate's appeals and occasionally advising prison staff members in forum state); *Durham v. Lappin,* 2006 WL 2724091, at * 5 (D.Colo. Sept. 21, 2006) (dismissing claim against BOP Director, National Inmate Appeals Administrator and BOP Regional Director, holding that their contacts with the forum state "were completely fortuitous, resulting from the fact that the Plaintiff-to whom they were responding when answering grievances-was located in Colorado"); *Thornton v. Quinlan,* 864 F.Supp. 90, 92 (S.D.Ill.1994) (declining to exercise jurisdiction over director of BOP whose only contacts with Illinois were in his official capacity).

The court finds persuasive the reasoning set forth in the case law cited above. The fact that Mr. Lappin, in his official capacity, sets policy for the BOP and its various institutions and has overall supervisory authority over BOP staff as part of his responsibilities as the BOP Director, are insufficient to establish personal jurisdiction. Nevertheless, as set forth *infra,* Plaintiff's claims against Defendant Lappin (and the other Defendants) lack merit and, therefore, should be dismissed with prejudice.

*Cancellation of Plaintiff's Lexis-Nexis Account*

Plaintiff alleges that Defendants Lappin, Black, Pearson and Bratcher cancelled his Lexis-Nexis account at the prison law library, in an attempt to interfere with the filing of a post-conviction motion, in violation of Plaintiff's Fifth and Sixth Amendment rights, and that it was a violation of the "Privacy Act" for Black to cancel his account. *See* Complaint Counts I and VIII.

**\*9** There is no *respondeat superior* liability in *Bivens* actions. *Cronn v. Buffington,* 150 F.3d 538, 544 (5th Cir.1998). Thus, in order to be liable, a prison official must either be personally involved in the acts that caused the constitutional deprivation, or must "implement a policy so deficient that the policy itself acts as a deprivation of constitutional rights." *Id.* The record before the court demonstrates that neither Director Lappin nor Warden Pearson had any personal involvement in the

cancellation of Plaintiff's Lexis-Nexis account. Warden Pearson is "responsible for the general supervisory management and oversight of the operation of the entire complex" at FCC Yazoo City, and relies on the staff of the Education Department to provide access to legal research materials to inmates, and to manage their use of the electronic law library ("ELL"). *See* Declaration of Bruce Pearson (Exh. 22 to Defs' Motion for Summary Judgment) ¶¶ 2-3. Likewise, Director Lappin relies on members of BOP staff in the various correctional facilities to provide direct supervision and care for inmates in accordance with BOP policy. *See* Lappin Decl. ¶ 3. Both Lappin and Pearson explicitly deny any personal involvement in the decision to cancel Plaintiff's Lexis-Nexis account. *See* Pearson Decl. ¶ 3; Lappin Decl. ¶ 5. In addition, Plaintiff has not demonstrated, much less alleged, that either Director Lappin or Warden Pearson implemented a constitutionally deficient policy.[FN12] At any rate, Plaintiff's claim fails as a matter of law against all of the Defendants, including Lappin and Pearson, for the reasons set forth below.

> FN12. *See* Exh. 4 to Defs' Motion for Summary Judgment (BOP Program Statement (PS) 1315.07, "Legal Activities, Inmate") (setting forth the BOP's policy of providing inmates with "reasonable access to legal materials and counsel, and reasonable opportunity to prepare legal documents" and requires wardens to "establish an inmate law library, and procedures for access to legal reference materials and to legal counsel, and for preparation of legal documents.").

The touchstone of a claim of denial of access to the courts is whether inmates have "a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions." *Lewis,* 518 U.S. at 356-57. Thus, Plaintiff must show not that the law library was somehow inadequate or deficient in a theoretical sense, but must show that he was, in fact, deprived of access to the courts. "[T]he Constitution does not require that prisoners (literate or illiterate) be able to conduct generalized research, but only that they be able to present their grievances to the courts-a more limited capability that can be produced by a much more limited degree of

Slip Copy, 2009 WL 3215344 (S.D.Miss.)

(Cite as: 2009 WL 3215344 (S.D.Miss.))

legal assistance." *Id.* at 359; *see also Jones v. Greininger,* 188 F.3d 322, 325 (5th Cir.1999) ("The right of access to the court 'does not afford prisoners unlimited access to prison law libraries.' ") (citation omitted).

Moreover, in order to prevail on a denial of legal access claim, Plaintiff must show an " 'actual injury'-that is, 'actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim.' " *Lewis v. Casey,* 518 U.S. 343, 349-51 (1996) (citation omitted); *see also Donnelly v. Edwards,* 95 Fed. Appx. 702, 703 (5th Cir. Apr. 23, 2004) (upholding dismissal of access-to-the-courts claim where plaintiff did not establish that he was unable to proceed in a case as a result of alleged delays and denials of legal assistance); *Cartner v. Lowndes Cty.,* 89 Fed. Appx. 439, 442 (5th Cir. Jan. 23, 2004), *cert. denied,* 542 U.S. 923 (2004) (affirming dismissal of access-to-the-courts claim where plaintiff failed to explain "how his position as a litigant was adversely affected"); *Richards v. Johnson,* 115 Fed. Appx. 677 (5th Cir. Oct. 20, 2004) (upholding dismissal of access-to-the-courts claim where plaintiff "alleged no fact showing that he has been prejudiced in his ability to prepare and transmit a necessary legal document to a court.").

**\*10** Plaintiff has failed to make this showing. In response to Defendants' Motion for Summary Judgment, Plaintiff alleges that because of his restriction from the ELL and cancellation of his Lexis-Nexis account, and because the main law library does not have many of the books he needs in order to conduct legal research, he was denied legal access. *See* Plaintiff's Response to Motion for Summary Judgment [22] at 2. Such general complaints about the alleged deficiencies of the law library are clearly not sufficient to establish a constitutional violation, under the above-cited authorities.

Plaintiff further alleges that as a result of his lack of access to the ELL, he was unable to prosecute his section 2255 motion. *See* Plaintiff's Response [22] at 6. The court has reviewed the Decision and Order on Plaintiff's section 2255 motion ( 2008 WL 3049948 (N.D.N.Y. Aug. 1, 2008)) (Exh. 1 to Defs' Reply [27] ). In his section 2255 motion, Plaintiff raised seven separate claims of ineffective assistance of counsel,[FN13] a claim of actual

innocence, a claim that the court lacked jurisdiction because the indictment did not name the victims of the crime, a claim that the forfeiture count was defective, and a claim that his sentence constitutes cruel and unusual punishment under the Eighth Amendment. *See* Exh. 1 to Defs' Reply. Thus, Plaintiff was able to file his section 2255 motion and raise and argue numerous grounds for relief, despite his alleged lack of access to the ELL and alleged shortcomings of the law library at Yazoo City.[FN14] Plaintiff does not provide any specificity about how he was allegedly unable to prosecute the section 2255 motion and the mere fact that his motion was denied is not enough to establish the requisite prejudice. Accordingly, Defendants are entitled to summary judgment on this claim.

> FN13. Specifically, Plaintiff argued that his counsel was ineffective for failing to: 1) appeal; 2) file a motion to suppress the fruits of a warrantless search; 3) file a motion to dismiss the indictment; 4) discuss the addendum to the Pre-Sentence Report with Plaintiff and object to the addendum; 5) file a motion to suppress allegedly coerced statements; 6) properly advise Plaintiff that he would receive a term of incarceration (rather than a 10-year period of probation) if he pled guilty; and 7) object to Plaintiff not being given an opportunity to address the court at sentencing. *See* Exh. 1 to Defs' Reply.

> FN14. Indeed, Plaintiff made numerous other filings after his ELL access was disabled. *See* Exh. 2 to Defs' Reply. Moreover, since that time, Plaintiff has filed at least six other lawsuits, in addition to the instant lawsuit. *See* Exh. 4 to Defs' Reply. These facts belie Plaintiff's allegation of denial of legal access.

In addition, to the extent that Plaintiff is claiming that his due process rights were violated by the cancellation of his Lexis-Nexis account, such a claim is unavailing. "[T]he Due Process Clause does not protect every change in the conditions of confinement which has a substantial adverse effect upon a prisoner." *Madison v. Parker,* 104 F.3d 765, 767 (5th Cir.1997) (citing *Sandin v. Conner,*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3215344 (S.D.Miss.)

(Cite as: 2009 WL 3215344 (S.D.Miss.))

115 S.Ct. 2293, 2297 (1995)). Rather, the liberty interests which are protected by the Due Process Clause "are generally limited to state created regulations or statutes which affect the quantity of time rather than the quality of time served by a prisoner." *Id.* (citing *Sandin,* 115 S.Ct. at 2297); *see also* *Thompson v. Cockrell,* 263 F.3d 423, 425 (5th Cir .2001) ("Only those state-created substantive interests that 'inevitably affect the duration of [a prisoner's] sentence' may qualify for constitutional protection" (citing *Sandin,* 515 U.S. at 484) (brackets in original); *Orellana v. Kyle,* 65 F.3d 29, 31-32 (5th Cir.1995) (stating that after *Sandin,* "it is difficult to see that any other deprivations in the prison context, short of those that clearly impinge on the duration of confinement, will henceforth qualify for constitutional 'liberty' status."). Thus, Plaintiff's due process rights were not implicated by the loss of access to his Lexis-Nexis account or the ELL, as these are not constitutionally-protected liberty interests.

**\*11** Moreover, there appears to have been ample justification for terminating Plaintiff's Lexis-Nexis account. On February 12, 2008, Defendant Black advised Plaintiff in writing of the rules for accessing the ELL for legal research-specifically, that inmates could not use the computers "for personal needs, such as correspondence or legal work, other than the use of the Lexis Nexis search function and the printing of the search results." *See* Exh. 3 to Defs' Motion for Summary Judgment; *see also* Declaration of Robert B. Black (Exh. 20 to Defs' Motion for Summary Judgment) ¶ 2; Declaration of Gerard D. Bratcher (Exh. 28 to Defs' Motion for Summary Judgment) ¶ 2. Plaintiff signed the document stating: "I have read the rights and responsibilities of inmate computer access and do acknowledge that my supervisor has reviewed this information with me. I do understand that I am subject to disciplinary action (which can include, but is not limited to: denial of inmate computer use) if I violate policy." FN15 *See* Exh. 3 to Defs' Motion for Summary Judgment. Staff subsequently discovered that Plaintiff had created folders on the server, in violation of the computer use policy, and it was therefore determined that Plaintiff should be blocked from using the computer and that his ELL account should be disabled. *See* Black Decl. ¶ 4.

> FN15. Plaintiff denies that he was ever advised

of these rules. *See* Plaintiff's Motion for Summary Judgment at 1; Wall Decl. at ¶¶ 2, 13. However, in opposing summary judgment, "[i]t is not enough for [Plaintiff] to rest on mere conclusory allegations or denials in his pleadings ... [Plaintiff] must point out, with factual specificity, evidence demonstrating the existence of a genuine issue of material fact on every component of his case." *Park v. Stocksill Boat Rentals, Inc.,* 492 F.3d 600, 605 (5th Cir.2007) (citations omitted).

Finally, Plaintiff also alleges that Defendant Black's cancellation of his Lexis-Nexis account constituted a violation of the Privacy Act. *See* Complaint [1] Count VIII. Black avers that he has "no information as to what inmate Wall is referring to" in reference to this claim. *See* Black Decl. ¶ 5. Although the court is unable to discern precisely what Plaintiff is alleging in this claim, it is clear that the Privacy Act, 5 U.S.C. § 552a, does not provide a cause of action against individuals, only against government agencies. *See* *Connelly v. Comptroller,* 876 F.2d 1209, 1215 (5th Cir.1989) ("Congress has created no cause of action against individual government officials for violating the Privacy Act."); *Petrus v. Bowen,* 833 F.2d 581, 582 (5th Cir.1987) ("Neither the Freedom of Information Act nor the Privacy Act creates a cause of action for a suit against an individual employee of a federal agency.").

For the foregoing reasons, Defendants should be granted summary judgment on this claim.

*Confiscation of Plaintiff's Shower Shoes*

Plaintiff alleges that Defendant Smith unlawfully and "negligent[ly]" confiscated his shower shoes during a unit inspection and never returned them to him, thereby forcing Plaintiff to take showers barefoot and stand on black mold, in violation of Plaintiff's rights under 8 U.S.C. § 1401 FN16 and the Fourth Amendment. *See* Complaint Count II. In his Declaration [24], Plaintiff also appears to be claiming that Defendant Jackson participated in the shakedown.

> FN16. This statute governs who shall be nationals and citizens of the United States at

Slip Copy, 2009 WL 3215344 (S.D.Miss.)

(Cite as: 2009 WL 3215344 (S.D.Miss.))

birth. Plaintiff asserts in his Complaint, without explanation, that because he is an "Indian" this statute was violated as a result of the alleged confiscation of his shower shoes. *See* Complaint Count II. In his Response [22] to Defs' Motion for Summary Judgment, Plaintiff explains that Defendants violated this statute because they "denied him access to his property as a Native American." *See* Response at 6.

Mr. Jackson avers that in May 2008, he participated in a "shakedown search," along with other staff, of inmates' living quarters looking for excess institution clothing. To the best of his recollection, he did not confiscate any property, including slippers or legal papers, from Plaintiff. He avers that inmates whose property was confiscated (other than Government property) would have been issued a property confiscation form and could pursue return of their property through established procedures. *See* Jackson Decl. ¶ 3. Mr. Varnado avers that he participated with other staff in a "shakedown search" of Plaintiff's living unit in May 2008; however, he did not search Plaintiff's area nor did he confiscate any of Plaintiff's property. *See* Declaration of Katon L. Varnado (Exh. 24 to Defs' Motion for Summary Judgment) ¶ 2. Defendant Southerland, Unit Manager of the living unit where Plaintiff resides, explains that she and other staff conduct periodic "shakedown searches" of inmates' living areas, and when contraband items are found, they are confiscated until they can be reviewed by the appropriate staff and a decision can be made about how to proceed. *See* Declaration of Julie L. Southerland (Exh. 25 to Defs' Motion for Summary Judgment) ¶¶ 2-3. Ms. Southerland does not recall any search of Plaintiff's living area involving the confiscation of his slippers and legal papers. *See* Southerland Decl. ¶¶ 4-5. Defendant Smith has no recollection of confiscating Plaintiff's shower shoes, although she admits that she has participated in numerous shakedown searches of inmates' living units, and it is possible that she confiscated Plaintiff's shower shoes. However, Smith explains that if she did, it would have been because they had been altered and were therefore contraband.[FN17] *See* Declaration of Rose M. Smith (Exh. 26 to Defs' Motion for Summary Judgment) ¶ 2. Smith also avers that around the time Plaintiff alleges his shower shoes were taken, she was performing weekly inspections

of housing units and she saw no black mold in the shower areas. *See id.* ¶ 4.

FN17. When shower shoes are purchased from the commissary, they are all plastic and either black or white. Inmates are required to maintain their shower shoes in this same condition; however, they will frequently alter them by removing the plastic strap and replacing it with a leather or velcro strap. Once the shoes are altered in this manner, they are considered contraband and inmates are not allowed to possess them. *See* Smith Decl. ¶ 2; Exhs. 5 & 5A to Defs' Motion for Summary Judgment.

**\*12** Even if Plaintiff's allegations were true, this would be insufficient to establish a constitutional violation. First, the court cannot consider Plaintiff's claim of negligence, "because negligence is not the basis of a constitutional claim" under *Bivens.* Banks v. Green, 2007 WL 4370306, at \*2 (M.D.Pa. Dec. 11, 2007) (citing *Bivens,* 403 U.S. at 392), *reconsid. denied,* 2008 WL 170002 (M.D.Pa. Jan. 16, 2008).

In addition, it is well-established that random, unauthorized deprivations of property (whether negligent or intentional) by prison officials do not violate due process where there is an adequate post-deprivation remedy available. Daniels v. Williams, 474 U.S. 327 (1986); Hudson v. Palmer, 468 U.S. 517, 533 (1984). Plaintiff has not alleged that the deprivations were made in accordance with any policy, practice or custom or were in any other way "authorized." *See* Smith v. Epps, 2009 WL 1262424, at \* 1 (5th Cir. May 8, 2009). Moreover, there is an adequate remedy available under the FTCA. *See* Gordon v. Day, 172 Fed. Appx. 565, 567 (5th Cir. Mar. 22, 2006); *see also* Williams v. Morris, 2008 WL 112106, at \* 2 (E.D.Tex. Jan. 9, 2008) ("The Federal Tort Claims Act provides a federal inmate ... with an adequate post-deprivation remedy."). In addition, the BOP grievance procedure itself provides an adequate post-deprivation remedy. Williams, 2008 WL 112106, at \* 2 (citing Phelps v. Winn, 2007 WL 2872465 (D.Mass. Sept. 27, 2007); Mendez v. FMC-Rochester, 2007 WL 2320547 (D.Minn. Aug. 10, 2007); Cyrus v. U.S., 2007 WL 80162 (M.D.Pa. Jan. 8, 2007)).

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3215344 (S.D.Miss.)

(Cite as: 2009 WL 3215344 (S.D.Miss.))

Finally, Plaintiff had both the opportunity and the resources to buy shower shoes at the commissary and, in fact, purchased numerous other comparably-priced items during the relevant time period. *See* Exhs. 14, 15 & 16 to Defs' Motion for Summary Judgment. Indeed, records reflect that Plaintiff did buy a new pair of shower shoes on August 4, 2008. *See* Exh. 15 to Defs' Motion for Summary Judgment. Accordingly, even if his shower shoes were taken, Plaintiff cannot establish that he was "forced to take barefoot showers" as a result. For the foregoing reasons, Defendants are entitled to summary judgment on this claim.

*Denial of Religious Services and Land for Religious Use*

Plaintiff claims that Defendants Lappin, Holston and Pearson refused to provide Plaintiff with equal access to the chapel for religious services, in violation of the First Amendment, the Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb *et seq.* and the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc *et seq.,*[FN18] and they denied his request "for Land for Religious Use so that he could build a pyramid temple as required by his Thelema religion," even though "the Native Americans were provided with land for religious use and built a sweat lodge." *See* Complaint Count III and Supplement [5].

> FN18. RFRA is the predecessor of RLUIPA. RFRA was struck down by the Supreme Court in *City of Boerne v. Flores,* 521 U.S. 507, 523-36 (1997). *See Longoria v. Dretke,* 507 F.3d 898, 902 (5th Cir.2007). RLUIPA was enacted as a response to *City of Boerne. See id.* It provides that the government shall not "impose a substantial burden on the religious exercise of a person residing in or confined to an institution ..." 42 U.S.C. § 2000cc-1(a).

*13 The BOP has an established procedure for inmates to formally request new or unfamiliar religious components, set forth in Program Statement P5360.09, Religious Beliefs and Practices, 8-9 (Exh. 7 to Defs' Motion for Summary Judgment); [FN19] *see also* Holston Decl. ¶ 2. There is no indication in the record that Plaintiff ever used these procedures or asked these Defendants for

such accommodations. Indeed, Defendant Holston, the Supervisory Chaplain, states that Plaintiff has not made any requests (whether verbal or via an Inmate Request to Staff form) to use the chapel for Thelema religious services, or for land to build a pyramid temple. Nor has Plaintiff submitted any such issues to the RIC for its review. *See* Declaration of David C. Holston (Exh. 27 to Defs' Motion for Summary Judgment) ¶ 4. Warden Pearson avers that he does not remember being presented with any request from Plaintiff for religious accommodations, nor does he recall ever being contacted by any chaplains or administrative staff regarding such issues.[FN20] *See* Pearson Decl. ¶ 4.

> FN19. The inmate submits a written request (Form BP-S822, "New or Unfamiliar Religious Components Questionnaire"), along with supporting documentation, to the institution's chaplain. Where a decision cannot be reached locally, the request is then routed through the appropriate channels to a Religious Issues Committee ("RIC") at the BOP's Central Office. After the review is completed, the RIC makes a recommendation to the Warden, who then determines what the institution will do. Once the Warden makes the decision, the inmate can appeal through the ARP. *See* Holston Decl. ¶ 2; Exh. 7 to Defs' Motion for Summary Judgment.

> FN20. The court finds it interesting that after this case was filed, Plaintiff notified staff that he was a "Pagan" and BOP records were updated to reflect this on September 28, 2008. *See* Exh. 17 to Defs' Motion for Summary Judgment ("Inmate History-Religion"). Plaintiff apparently has attended Wicca religious services frequently (more than 25 times from May-November 2008). *See* Holston Decl. ¶ 3; *see also* Exh. 18 to Defs' Motion for Summary Judgment. Plaintiff's attempt to explain why he has been attending Wicca services fails to clarify the issue: "I only started attending Wicca because a fellow inmate, Banks, also a Thelemite informed me that a request he made for Thelemite services at the chapel and the unit was denied by Holston/Williams and the RIC based on a

Slip Copy, 2009 WL 3215344 (S.D.Miss.)

(Cite as: 2009 WL 3215344 (S.D.Miss.))

previous ruling by the RIC at a different institution. The Wicca service in no way comports with the tenants [sic] of my Thelemic faith." *See* Holston Decl. ¶ 12.

Thus, no decision has been made regarding the religious accommodations Plaintiff claims to be seeking.[FN21] *See* Holston Decl. ¶ 4. In response to Defendants' Motion for Summary Judgment, Plaintiff states that the reason he did not utilize the established procedures is because "Defendants failed to provide him with the New Religions Form to submit it." *See* Response [22] to Defs' Motion for Summary Judgment at 2. Plaintiff elaborated on this claim in his Declaration, stating that he "submitted multiple requests to Holston for the new religions form, but was never provided with the form." *See* Declaration [24] at ¶ 12. Plaintiff does not provide any further detail about his alleged requests–such as when they were made. Moreover, even assuming that Plaintiff had made such requests and that they were denied, Plaintiff provides no information regarding any further steps by him to obtain the form. For example, he has not presented requests for administrative remedy on this issue, nor has he apparently brought this to the attention of the Warden or other staff at FCC Yazoo City .[FN22] Thus, Defendants are entitled to summary judgment on this claim.

FN21. *Cf. Banks v. Roberts,* 2006 WL 2060428, at * 1 (M.D.Pa. July 21, 2006) (noting that where Plaintiff's request for Thelema's The Book of the Law and for a plot of land on which to erect a pyramid temple remained outstanding before BOP prison officials, Plaintiff's request for relief was premature).

FN22. Indeed, the first time this claim was raised by Plaintiff was in response to Defendants' Motion for Summary Judgment.

*Confiscation of Legal Papers*

Plaintiff alleges that Defendants Southerland, Varnado and Jackson confiscated his legal papers (pertaining to a post-conviction motion) and did not return them, again in violation of 8 U.S.C. § 1401 and the Fourth Amendment, and that Defendants Lappin and Pearson

"personally authorized" these actions. *See* Complaint Count IV.

Defendants Pearson and Lappin deny that they had any personal involvement in the alleged confiscation of Plaintiff's legal papers and deny personally authorizing any such action. *See* Pearson Decl. ¶ 5; Lappin Decl. ¶ 5. As for the other Defendants, as discussed *supra,* Mr. Jackson avers that in May 2008, he participated in a "shakedown search," along with other staff, of inmates' living quarters looking for excess institution clothing, but did not recall confiscating any property from Plaintiff. Mr. Varnado states that he participated with other staff in a "shakedown search" of Plaintiff's living unit in May 2008, but neither searched Plaintiff's area nor confiscated any of Plaintiff's property. *See* Varnado Decl. ¶ 2. Defendant Southerland does not recall any search of Plaintiff's living area involving the confiscation of his slippers and legal papers. *See* Southerland Decl. ¶¶ 4-5.

**\*14** In response to these averments, Plaintiff merely restates his earlier allegations in a Declaration and also claims that he will show that Defendants confiscated his property "at trial." *See* Response [22] at 3; Wall Decl. ¶¶ 4, 9-10. Even assuming that these statements are sufficient to create a genuine issue of material fact on the issue of whether the takings actually occurred, Plaintiff's claim would still fail. As discussed *supra,* random, unauthorized deprivations of property (whether negligent or intentional) by prison officials do not violate due process where there is an adequate post-deprivation remedy available. *Daniels,* 474 U.S. 327; *Hudson,* 468 U.S. at 533. Plaintiff has not alleged that the deprivations were made in accordance with any policy, practice or custom or were in any other way "authorized ." *See Smith,* 2009 WL 1262424, at * 1. Moreover, there are adequate remedies available under the FTCA as well as the BOP grievance procedure. *See Gordon,* 172 Fed. Appx. at 567; *Williams,* 2008 WL 112106, at * 2 (citations omitted).

Finally, to the extent that Plaintiff is claiming that this alleged confiscation of his legal papers constituted a denial of legal access, as discussed *supra,* in order to prevail on such a claim Plaintiff must show "actual prejudice with respect to contemplated or existing litigation." *Lewis,* 518 U.S. at 349-51; *see also Donnelly,* 95 Fed. Appx. at 703; *Cartner,* 89 Fed. Appx. at 442.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3215344 (S.D.Miss.)

(Cite as: 2009 WL 3215344 (S.D.Miss.))

Plaintiff has failed to make this showing, let alone even allege that he was prejudiced by the alleged confiscation of his legal papers, and for this reason as well, this claim should be dismissed.

*Interference with Legal Telephone Calls*

Plaintiff claims that Defendant Jackson refused to allow Plaintiff to make a legal call, and Dalton "obstructed" a phone call between Plaintiff and his attorney by "heckling him" and talking to him while he was on the phone, in violation of due process and his First Amendment right to privacy. *See* Complaint Count V.

Jackson avers that Plaintiff never asked him to provide him with a legal telephone call and he never denied Plaintiff a legal telephone call.[FN23] *See* Jackson Decl. ¶ 4. Nevertheless, Plaintiff apparently did have the legal call in question on or about July 20, 2008, and Dalton assisted Plaintiff with that call. However, Dalton denies obstructing the call by talking to Plaintiff or "heckling" him. *See* Dalton Decl. ¶ 2.

> FN23. On or about November 12, 2008, Jackson received a phone call from a staff member at a New York state family court seeking to speak with Plaintiff. As Plaintiff was unavailable at that time, the call could not take place. However, Jackson explained the procedures for how to arrange a telephone call and plans were made for the call to take place in the future. *See* Jackson Decl. ¶ 5; Exh. 11 to Defs' Motion for Summary Judgment. On December 10, 2008, Jackson placed the call to the family court and provided the telephone to Plaintiff. *See* Jackson Decl. ¶ 5. This is the subject of Plaintiff's claim, discussed *infra,* that Jackson and Dalton intercepted and monitored his legal telephone call. *See* Second Supp. Addition [17] to Complaint at ¶ 2.

In response to the Motion for Summary Judgment, Plaintiff reiterates that Jackson denied him a legal call, that Defendant Dalton "heckled and intercepted" his phone call, and argues that because Dalton admits that he assisted Plaintiff with the call, he therefore admits to eavesdropping and intercepting it.[FN24] Plaintiff also contends that the alleged heckling "resulted in a loss to his

appeal from his § 2255 motion." *See* Plaintiff's Response [22] at 3, 9. Specifically, Plaintiff claims that his counsel was unable to provide him with effective assistance because Plaintiff was continually interrupted while attempting to explain that he was actually innocent of the charges "because Banks [FN25] subpoenaed his work records which showed that Wall had been at work at the time the crimes were committed." *See id.* at 9. Plaintiff further claims that Jackson's alleged refusal to provide him with a phone call prejudiced him because he was unable to communicate his actual innocence to his attorney. *See id.*

> FN24. *See also* Wall Decl. ¶ 9 ("Dalton did indeed heckle and obstruct and monitor and intercept my legal call.").

> FN25. Presumably, Plaintiff is referring to fellow prisoner Frederick Banks, referred to in footnote 1, *supra.*

**\*15** Thus, Plaintiff apparently is asserting a denial of access to the courts claim. However, as discussed *supra,* in order to prevail on such a claim, Plaintiff must show an " 'actual injury'-that is, 'actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim.' " *Lewis,* 518 U.S. at 349-51; *see also Donnelly,* 95 Fed. Appx. at 703; *Cartner,* 89 Fed. Appx. at 442. Plaintiff has failed to make this showing. First, Plaintiff pled guilty to the crime at issue and thereby waived his right to appeal or collaterally attack his conviction or sentence, including the right to file a section 2255 motion (except for claims regarding whether his guilty plea is knowingly, voluntarily or competently made). *See* Exh. 1 to Defs' Reply [27]. As the court noted in its opinion denying Plaintiff's section 2255 motion, "[i]n addition to the evidence in the government's possession ... Petitioner admitted his guilt on several occasions-to the FBI, in his plea agreement, at the plea hearing, and at the sentencing hearing. Petitioner was specifically warned not to plead guilty unless he was, in fact, guilty." *See id.*

Nevertheless, Plaintiff's claim of actual innocence *was* asserted in his section 2255 motion and *was* reviewed by the court. Indeed, in its opinion the court specifically mentioned that Plaintiff had submitted an additional

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3215344 (S.D.Miss.)

(Cite as: 2009 WL 3215344 (S.D.Miss.))

affidavit on June 16, 2008 in an attempt to demonstrate actual innocence, to which he had attached two exhibits-his work records and "Internet Explorer" history-"to demonstrate that he was not at home at the time that images were downloaded from his computer." *See id.* Plaintiff has failed to establish that the work records he refers to in this claim are different than those that he apparently submitted to the court in support of his section 2255 motion. Moreover, even if they are different, Plaintiff has failed to established that they would have resulted in a different outcome.

Based on the foregoing, Defendants are entitled to summary judgment on this claim.

*Denial of Paper and Envelopes*

Plaintiff claims that Defendant Jackson refused to provide paper and envelopes to Plaintiff so that he could pursue legal actions, in violation of Plaintiff's due process and Sixth Amendment rights, yet he provided these items to other inmates "of different classes," thereby violating Plaintiff's Equal Protection rights. *See* Complaint Count VI.

Defendant Jackson avers that there was a time when paper and envelopes were not available at FCC Yazoo City and he told Plaintiff that when they were available, he would receive some. Defendant Jackson avers that when writing paper and envelopes became available, Plaintiff was given some. *See* Declaration of Phillip C. Jackson (Exh. 21 to Defs' Motion for Summary Judgment) ¶ 6. In response to the Motion for Summary Judgment, Plaintiff re-states his allegation that Jackson denied him paper and envelopes and states, in a conclusory fashion, that the products were available in the institution.[FN26] *See* Response [22] at 3; *see also* Wall Decl. ¶ 5 (stating that "[o]n all occasions except one Jackson refused to provide me with paper."). Again, "a plaintiff cannot defeat a motion for summary judgment by merely restating conclusory allegations contained in his complaint...." *Paul Kadair,* 694 F.2d at 1030.

FN26. Envelopes and paper were available for purchase from the commissary and, in fact, Plaintiff purchased envelopes on June 5, 2008. *See* Exhs. 14 & 15 to Defs' Motion for Summary

Judgment. Plaintiff has had plenty of resources with which to buy envelopes and paper during the relevant time period, but apparently he has chosen to spend his money on other commissary items. *See* Exhs. 14, 15 & 16 to Defs' Motion for Summary Judgment. Likewise, the docket of this court is filled with lawsuits filed by this Plaintiff (in addition to the instant lawsuit)-which belies any claim that Plaintiff is unable to access the court system. *See, e.g.,* Civil Action Nos. 5:08cv234; 5:08cv261; 5:08cv277; 5:08cv313; 5:08cv319; 5:08cv338; 5:09cv50; 5:09cv56; 5:09cv88

**\*16** At any rate, even if Plaintiff had established that Jackson had wrongfully denied him paper and envelopes, he has failed to show " 'actual injury'-that is, 'actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim.' " *Lewis,* 518 U.S. at 349-51 (citation omitted); *see also Donnelly,* 95 Fed. Appx. at 703; *Cartner,* 89 Fed. Appx. at 442; *Richards,* 115 Fed. Appx. At 677. Thus, for this reason as well, Defendant Jackson is entitled to summary judgment on this claim.

As for the Equal Protection claim, Plaintiff must show that he was "intentionally discriminated against ... because of membership in a protected class," or "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Nance v. New Orleans & Baton Rouge Steamship Pilots' Ass'n,* 174 Fed. Appx. 849, 854 (5th Cir. Apr. 10, 2006) (citations omitted). Alternatively, Plaintiff may show that a government policy or procedure was selectively enforced against him, by showing that "the government official's acts were motivated by improper considerations, such as race, religion, or the desire to prevent the exercise of a constitutional right." *Id.* (citation omitted).

In response to the Motion for Summary Judgment, Plaintiff alleges that Jackson refused to provide him with envelopes because he is an "Indian," but that he provided envelopes to other white and black inmates. *See* Response at 10. In his Declaration, Plaintiff summarily states: "Jackson during the relevant times provided paper to other

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3215344 (S.D.Miss.)

(Cite as: 2009 WL 3215344 (S.D.Miss.))

inmates of different classes but refused to provide it to me including envelopes." *See* Wall Decl. ¶ 5. Thus, rather than provide competent summary judgment evidence to make the required showing, Plaintiff "merely makes unsubstantiated, vague assertions that he and unspecified others received unequal treatment ." *Nance, 174 Fed. Appx. at 854*. This is not sufficient for Plaintiff to meet his burden in opposing summary judgment. *See Ragas,* 136 F.3d at 458; *Paul Kadair,* 694 F.2d at 1030; *Fontenot,* 780 F.2d at 1195. Accordingly, Defendant is entitled to summary judgment on this claim.

*Air Conditioning Conspiracy/Denial of Medical Treatment*

Plaintiff alleges that Defendants Jackson, Randle, Dalton and Pearson "removed the plugs from the units and otherwise plugged them up so that [Plaintiff] could not plug in a fan then they turned off the air conditioning to heat up the unit to a boiling degree. Once [Plaintiff] was asleep and above the covers they suddenly turned on the air conditioning full blast, this continuous change in temperature night after night caused black mold spores to be released from the uncleaned vents infecting [Plaintiff] with a deep bloody cough that was never treated in violation of the Eighth Amendment." *See* Complaint Count VII.

**\*17** Defendants aver that they do not control the temperatures in the housing units at FCC Yazoo City; rather, temperatures are controlled by the Facilities Department, in accordance with relevant BOP policy.[FN27] When temperatures seem either too hot or too cold, Facilities Department staff are called and asked to make an adjustment. They explain that the reason live electric plugs were removed from certain areas at FCC Yazoo City was because inmates were using "stingers" [FN28] in those plugs, thereby creating a fire hazard. *See* Pearson Decl. ¶ 6; Jackson Decl. ¶ 7; Dalton Decl. ¶ 3; Randle Decl. ¶ 3. Further, there were certain times during the summer of 2008 when the air conditioning system experienced some problems with broken "chillers" and as a consequence, the living units were hot at times until they were repaired. *See* Pearson Decl. ¶ 6.

FN27. *See* PS P4200.00, Facilities Operations Manual (Exh. 10 to Defs' Motion for Summary Judgment).

FN28. According to Defendants, a "stinger" is "an unauthorized, makeshift, electronic device used to heat water or food items."

In response to the Motion for Summary Judgment, Plaintiff merely argues that because Defendants are responsible for the conditions in the unit as BOP employees, pursuant to 18 U.S.C. § 4042,[FN29] a genuine issue of material fact is in dispute.[FN30] *See* Response [22] at 3-4. However, "a plaintiff cannot defeat a motion for summary judgment by merely restating conclusory allegations contained in his complaint," *Paul Kadair,* 694 F.2d at 1030, nor can he "discharge his burden by alleging legal conclusions." *Fontenot,* 780 at 1195 (5th Cir.1986). Plaintiff has failed to meet his burden.

FN29. This statute sets forth the duties of the BOP, including "management and regulation of all Federal penal and correctional institutions" and "provid[ing] suitable quarters and ... for the safekeeping, care and subsistence" of prisoners. *See* 18 U.S.C. §§ 4042(a)(1), (2). It does not address the responsibilities of individual BOP employees.

FN30. Plaintiff also vaguely asserts that he "should be given leave to join the proper additional parties once discovery is conducted." *See* Response [22] at 3. However, Plaintiff also avers that Jackson, Dalton and Pearson are the proper parties "since they are at all times material [sic] responsible for the conditions in the unit ... as BOP employees." Moreover, to the extent that this can be liberally construed as a request for a continuance pursuant Rule 56(f), such a request should be denied, as Plaintiff has not made the requisite showing. Rule 56(f) authorizes the court to "order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken" when "a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition...." Fed.R.Civ.P. 56(f). Because the party resisting

Slip Copy, 2009 WL 3215344 (S.D.Miss.)

(Cite as: 2009 WL 3215344 (S.D.Miss.))

summary judgment does not bear a heavy burden, he "must conclusively justify his entitlement to the shelter of Rule 56(f) by presenting specific facts explaining the inability to make a substantive response ... and by specifically demonstrating how postponement of a ruling on the motion will enable him ... to rebut the movant's showing of the absence of a genuine issue of fact ." *Lee v. Stalder,* 223 Fed. Appx. 315, 319 (5th Cir.2007) (internal citations and quotations omitted). "[I]t is not enough to 'rely on vague assertions that discovery will produce needed, but unspecified, facts.' " *Stearns Airport Equip. Co. v. FMC Corp.,* 170 F.3d 518, 535 (5th Cir.1999) (citation omitted).

In addition, to the extent that Plaintiff is claiming that Defendants were involved in a conspiracy, Plaintiff's allegations clearly fall short. Conclusory allegations of a conspiracy are insufficient to state a constitutional claim. *Wilson v. Budney,* 976 F.2d 957, 958 (5th Cir.1992). Further, the plaintiff must "prove an actual deprivation of a constitutional right; a conspiracy to deprive is insufficient." *Villanueva v. McInnis,* 723 F.2d 414, 418 (5th Cir.1984); *see also Gillum v. City of Kerrville,* 3 F.3d 117, 123 (5th Cir.1993). Plaintiff has not proven an actual deprivation of a constitutional right. Accordingly, this claim should be dismissed.

Finally, as for Plaintiff's claim that he was denied medical treatment, there is no indication in his medical records that he presented any medical complaints-whether of a bloody cough or otherwise-from the time he arrived at FCC Yazoo City on October 24, 2007 to the date this case was filed on September 5, 2008. *See* Exh. 10A to Defs' Motion for Summary Judgment; *see also* Declaration of Dr. Anthony Chambers, Clinical Director of FCC Yazoo City (Exh. 31 to Defs' Motion for Summary Judgment) ¶ 4. Plaintiff avers that he "presented a cop out to medical but was never scheduled for an appointment and thus was never treated." *See* Response [22] at 4. However, there are no doctors nor other medical personnel as named as Defendants in this action, and Plaintiff has not established that any of the non-medical Defendants in this action were in any way personally involved with denying him medical treatment. Accordingly, Defendants are

entitled to summary judgment on this claim.

*Refusal to Provide Records*

**\*18** Plaintiff claims that Defendants Lappin and Black refused to provide records that Plaintiff had requested under the Privacy Act. *See* Complaint Count VIII.

As discussed *supra,* it is well-settled that the Privacy Act, 5 U.S.C. § 552a, does not provide a cause of action against individuals, only against government agencies. *See Petrus,* 833 F.2d at 582; *Connelly,* 876 F.2d at 1215. Thus, because the Privacy Act does not create a cause of action against Defendants Lappin and Black, they should be granted summary judgment on these claims. *See Jacobs v. Reno,* 208 F.3d 1006, at * 1 (5th Cir. Jan. 20, 2000) (*per curiam* ).

*Opening of Legal Mail*

Plaintiff alleges that "Unidentified "Defendants and supplemental Defendants" opened and copied his incoming legal mail in violation of due process and his constitutional right to privacy, as well as his right to legal access. *See* Supp. Pleading [12] Count 1.

Plaintiff provides no specific information as to which Defendants allegedly opened and copied his mail, when this occurred, or any other details about these incidents. More importantly, Plaintiff provides no information that would allow the court to even determine whether the mail in question was, in fact, legal.[FN31] Plaintiff's wholly conclusory, unsubstantiated allegations are insufficient to withstand summary judgment and, accordingly, this claim should be dismissed.

> FN31. Although Plaintiff attaches envelopes as exhibits to his Declaration [24], he does not discuss them in the affidavits, nor do the envelopes have the required "special mail" marking to indicate that they contained legal mail. In the absence of such markings, BOP regulations allow staff to treat the mail as general correspondence and open, inspect and read it. *See* 28 C.F.R. § 540.18.

*Music/Movie Claims (Discrimination/Equal Protection)*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3215344 (S.D.Miss.)

(Cite as: 2009 WL 3215344 (S.D.Miss.))

Plaintiff claims that Defendant Bender "cancelled and obstructed a movie performance, refused to answer a cop out requesting Indie Rock music entertainment as a DJ night and did not otherwise provide the requested music while allowing other inmates and providing 'hip hop and R & B' music," and Defendant Richardson "failed to hold a promised band meeting to review the claims and possibly restart the band." As such, Plaintiff claims he was discriminated against on the basis of his religion, in violation of his due process and equal protection rights. *See* Supp. Pleading [12] Count 2. As noted *supra,* the individuals against whom these claims are being asserted are not Defendants in this action. Accordingly, these claims should be dismissed.

*Interception and Monitoring of Legal Phone Calls*

Plaintiff alleges that Defendants Jackson and Dalton intercepted and monitored Plaintiff's legal telephone calls, in violation of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended by the Electronic Communications Privacy Act of 1968, 18 U.S.C. § 2510, *et seq. See* Second Supp. Addition [17] to Complaint at ¶ 2.

Mr. Jackson avers that on or about November 12, 2008, he received a phone call from a staff member at a New York state family court asking to speak with Plaintiff. As Plaintiff was unavailable at that time, the call was not able to take place. However, Jackson explained the procedures for how to arrange a telephone call and arrangements were made for the call to take place in the future. *See* Jackson Decl. ¶ 5; Exh. 11 to Defs' Motion for Summary Judgment. On December 10, 2008, Jackson placed the call to the family court and provided the telephone to Plaintiff. *See* Jackson Decl. ¶ 5. Jackson remained in the room during the call, but avers that he did not monitor or record it. No one (including Plaintiff or his attorney) advised Jackson that the call was confidential or that he should not remain in the room. *See id.* Mr. Dalton avers that at the time of this phone call he was no longer Acting Unit Manager over Plaintiff's living unit, and he had no personal involvement in this phone call. Dalton avers that he did not intercept and monitor such a telephone call. *See* Dalton Decl. ¶ 4.

**\*19** Plaintiff offers no further evidence to support these claims. Accordingly, Plaintiff having failed to meet

his burden, Defendants are entitled to summary judgment on this claim.

RECOMMENDATION

For the reasons stated above, it is the recommendation of this court that Plaintiff's Motion for Summary Judgment [22] be denied, that Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment [20] be granted, and that Plaintiff's claims against Defendants be dismissed with prejudice. [FN32]

> FN32. Although Defendants have raised the defense of qualified immunity, "if it becomes evident that the plaintiff has failed to state or otherwise to establish a claim, then the defendant[s][are] entitled to dismissal on that basis." *Wells v. Bonner,* 45 F.3d 90, 93 (5th Cir.1993) (citing *Siegert v. Gilley,* 500 U.S. 226, 231-33 (1991)); *see also Sappington v. Bartee,* 195 F.3d 234, 236 (5th Cir.1999). Thus, because the court has found that Plaintiff has failed to establish his claims against Defendants, it need not reach the question whether Defendants are entitled to qualified immunity. *Wells,* 45 F.3d at 93.

NOTICE OF RIGHT TO OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within ten days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party. The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within ten days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir.1996).

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3215344 (S.D.Miss.)

(Cite as: 2009 WL 3215344 (S.D.Miss.))

S.D.Miss.,2009.

Wall v. Black
Slip Copy, 2009 WL 3215344 (S.D.Miss.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.



Page 1

Not Reported in F.Supp.2d, 2010 WL 786298 (N.D.N.Y.)

(Cite as: 2010 WL 786298 (N.D.N.Y.))



Only the Westlaw citation is currently available.
**This decision was reviewed by West editorial staff
and not assigned editorial enhancements.**

United States District Court,

N.D. New York.
Cesar ANDUJAR, Plaintiff,
v.
Brian FISCHER, Commissioner of New York State
Department of Corrections; and Melvin Williams,
Superintendent of Willard Drug Treatment Center,
Defendants.
No. 09-CV-489 (NAM/DRH).

March 2, 2010.
Cesar Andujar, Comstock, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General for the State
of New York, James Seaman, Esq., Assistant Attorney
General, of Counsel, Albany, NY, for Defendants.

## MEMORANDUM-DECISION AND ORDER

Hon. NORMAN A. MORDUE, Chief Judge.
   **\*7** Plaintiff, an inmate in the custody of the New York
State Department of Correctional Services ("DOCS"),
brought this action pursuant to 42 U.S.C. § 1983 alleging
that defendants violated his constitutional rights under the
Fourteenth Amendment. Defendants moved to dismiss the
complaint (Dkt. No. 16) and plaintiff moved (Dkt. No. 19)
to amend his complaint.
   United States Magistrate Judge David R. Homer
issued a Report and Recommendation and Order (Dkt. No.
21) in which he (1) recommended that defendants' motion
to dismiss be granted, and (2) denied plaintiff's motion to
file an amended complaint. Plaintiff objected to the
recommendation that the case be dismissed; appealed the
denial of his motion to amend the complaint; and
requested appointment of counsel (Dkt.Nos.22, 23).

   The Court first considers the recommendation that the
motion to dismiss be granted. Where, as here, a party
interposes only general objections to a report and
recommendation, the Court reviews for clear error or
manifest injustice. *See Davis v. Chapple,* 2010 WL
145298, \*2 (N.D.N.Y. Jan.8, 2010), Brown v. Peters,
1997 WL 599355,\*2-\* 3 (N.D.N.Y.), *af'd without op.,* 175
F.3d 1007 (2d Cir.1999). The Court finds no clear error or
manifest injustice and no basis to reject the Report and
Recommendation.

   **\*8** Turning to consider Magistrate Judge Homer's
order denying leave to serve an amended complaint, the
Court notes that such an order is generally viewed as a
non-dispositive order reviewable under the "clearly
erroneous or contrary to law" standard, *see, e.g., Sanrio
Co., Ltd. v. Epic Trading, Inc.,* 2005 WL 1705746
(E.D.N.Y.2005); Lyondell-Citgo Refining v. Petroleos De
Venezuela, 2005 WL 883485 at \*3 (S.D.N.Y.2005); *see
also* Kilcullen v. New York State Dep't of Transp., 55 Fed.
Appx. 583, 584-85 (2d Cir.2003); in any event, even if
reviewed *de novo,* the order is correct.

   Plaintiff's request for appointment of counsel is
denied as moot.

   It is therefore

   ORDERED that United States Magistrate Judge
David R. Homer's Report and Recommendation and Order
(Dkt. No. 21) is accepted; and it is further

   ORDERED that defendants' motion (Dkt. No. 16) is
granted and the action is dismissed; and it is further

   ORDERED that plaintiff's appeal (Dkt. No. 23) is
denied and Magistrate Judge Homer's Order denying leave
to amend the complaint (Dkt. No. 21) is affirmed; and it is
further

   ORDERED that plaintiff's request (Dkt. No. 22) for
appointment of counsel is denied as moot.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 786298 (N.D.N.Y.)

(Cite as: 2010 WL 786298 (N.D.N.Y.))

IT IS SO OEDERED.

**REPORT-RECOMMENDATION AND ORDER**[FN1]

> FN1. This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

DAVID R. HOMER, United States Magistrate Judge.

*1 Plaintiff pro se Cesar Andujar ("Andujar"), an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, the DOCS Commissioner and a DOCS employee, violated his constitutional rights under the Fourteenth Amendment. Compl. (Dkt. No. 1). Presently pending is defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). Dkt. No. 16. Andujar opposes the motion and also requests permission to amend his complaint to add DOCS as a defendant. Dkt. No. 19. For the following reasons, it is recommended that defendants' motion to dismiss be granted and that Andujar's motion be denied.

**I. Background**

The facts are related herein in the light most favorable to Andujar as the non-moving party. *See* subsection II(A) *infra*.

On March 3, 2006, Andujar was sentenced by a Rensselaer County Supreme Court judge to a determinate term of three years, to be served as parole supervision, given that Andujar successfully complete a drug treatment program at DOCS Willard Drug Treatment Facility ("Willard"), plus two years of post-release supervision. Compl. at 7. Thereafter, Andujar was transferred to Ulster Correctional Facility on March 13, 2006 and subsequently to Willard on April 18, 2006. *Id.*

Andujar then filed a petition for a writ for habeas corpus alleging that he should have been transferred from Ulster to Willard within ten days, as prescribed by New York law.[FN2] Compl. at 7. The petition was granted, stating that Andujar should have arrived at Willard no later than March 23, 2006 and that since he was not transferred until April, Andujar was improperly held at Ulster for twenty-five days. *Id.* at 4, 8. Facility personnel asserted that the delay resulted from a lack of vacancies in the drug

treatment program, indicating that Andujar was transferred as soon as practicable. *Id.* at 8. The court rejected defendants' contentions and on May 9, 2006, ordered Andujar "released and restored to community-based parole supervision ...." *Id.* at 9. This action followed.

> FN2. Under state law, "[p]rovided, however, if the court directs that the sentence be executed as a sentence of parole supervision, it shall remand the defendant for immediate delivery to a reception center ... for a period not to exceed ten days." N.Y. CPL § 410.91(1).

**II. Discussion**

In his complaint, Andujar alleges that his Due Process rights were violated when, in contravention of state law, he was incarcerated for an extra twenty five days in Ulster before being transferred to his court-ordered drug treatment program at Willard. Defendants move to dismiss on the grounds that (1) Andujar's due process and negligence claims are meritless, (2) recovery for emotional distress is barred because Andujar did not suffer any physical injuries, and (3) defendants are protected by qualified immunity.

**A. Legal Standard**[FN3]

> FN3. Generally, consideration of a motion to dismiss "is limited to the facts asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir.2007). As the habeas corpus decision was attached to the complaint, it too has been considered. Defendants attached the decision with their motion papers to assist the court with pagination references. For consistency, the undersigned has used the pagination provided by the CM/ECF headers in this decision, and not that provided by the defendants.

Rule 12(b)(6) authorizes dismissal of a complaint that states no actionable claim. When considering a motion to dismiss, "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 786298 (N.D.N.Y.)

(Cite as: 2010 WL 786298 (N.D.N.Y.))

in favor of the non-movant." *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994). However, this "tenet ... is inapplicable to legal conclusions[; thus, t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 555 (2007) (holding that "entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action ... [as] courts are not bound to accept as true a legal conclusion couched as a factual allegation.")).

**\*2** Accordingly, to defeat a motion to dismiss, a claim must include "facial plausibility ... that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 556 (explaining that the plausibility test "does not impose a probability requirement ... it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].")); *see also Arar v. Ashcroft,* 585 F.3d 559, 569 (2d Cir.2009) (holding that, "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible ....") (citations omitted). Determining whether plausibility exists is "a content specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 129 S.Ct. at 1950-51.

When, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. *See Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a *pro se* litigant is entitled to "special solicitude," ... that a *pro se* litigant's submissions must be construed "liberally," ... and that such submissions must be read to raise the strongest arguments that they 'suggest..... At the same time, our cases have also indicated that we cannot read into *pro se* submissions claims that are not "consistent" with the *pro se* litigant's allegations, .. or arguments that the submissions themselves do not "suggest, ..." that we should not "excuse frivolous or vexatious filings by *pro*

se litigants" ... and that *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law ...."

*Id.* (citations and footnote omitted); *see also Sealed Plaintiff v. Sealed Defendant # 1,* 537 F.3d 185, 191-92 (2d Cir.2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se,* ... a court is obliged to construe his pleadings liberally.' " (citations omitted)).

**B. Due Process**

The Due Process Clause of the Fourteenth Amendment states that "[n]o State shall ... deprive any person of life, liberty, or property without due process of law." U.S. Const. Amend. XIV § 1. It is important to emphasize that due process "does not protect against all deprivations of liberty. It protects only against deprivations of liberty accomplished without due process of the law." *Baker v. McCollan,* 443 U.S. 137, 145, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) (internal quotation and citations omitted).

In this case, Andujar claims that his imprisonment for twenty-five days, resulting from defendants violation of the time for transfer prescribed in New York State Criminal Procedure Law, constituted a deprivation of his due process rights. This argument is flawed for a few reasons. First, "[a] violation of state law neither gives [Andujar] a § 1983 claim nor deprives defendants of the defense of qualified immunity to a proper § 1983 claim." *Doe v. Conn. Dept. of Child & Youth Servs.,* 911 F.2d 868, 869 (2d Cir.1990) (internal quotation marks and citations omitted); *see also Patterson v. Coughlin,* 761 F.2d 886, 891 (2d Cir.1985) ("[A] state employee's failure to conform to state law does not itself violate the Constitution and is not alone actionable under § 1983 ...."); *Rivera v. Wohlrab,* 232 F.Supp.2d 117, 123 (S.D.N.Y.2002) ( "[V]iolations of state law procedural requirements do not alone constitute a deprivation of due process since federal constitutional standards rather than state law define the requirements of procedural due process.") (internal quotation marks and citations omitted).

**\*3** Second, "[a]mple precedent establishes that a state

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 786298 (N.D.N.Y.)

(Cite as: 2010 WL 786298 (N.D.N.Y.))

rule of criminal procedure ... does not create a liberty interest that is entitled to protection under the federal Constitution," as procedural rights are designed to "protect a substantive interest to which the individual has a legitimate claim of entitlement." *Watson v. City of New York,* 92 F.3d 31, 37-38 (2d Cir.1996) (citations omitted). Thus, despite the "explicitly mandatory language" utilized in the state statute requiring Andujar to be transferred from a receiving facility to Willard within ten days, which would have compelled the finding of a liberty interest under pre-*Sandin* due process analysis, the current state of the law asks the undersigned to determine what "the true liberty interest at stake ...," is and whether it was accorded proper protections. *Id.* at 37-38.

Federal case law firmly establishes that "[t]he claim to a constitutional right to treatment for narcotics addiction has no basis in either the provisions of the Constitution or the decisions of the courts ...." *Smith v. Follette,* 445 F.2d 955, 961 (2d Cir.1971). However, in this case, Andujar is not contending that he had a constitutional right to attend Willard, but that defendants' actions in failing to transfer him to Willard within the ten day statutory mandate extended his incarceration accordingly. Thus, Andujar claims that defendants extended his incarceration in DOCS by twenty-five days.

Clearly, an individual has a right to be free from unnecessary incarceration. "Although the plaintiff may have been confined too long, the United States Supreme Court has held that the Constitution does not protect against wrongful detention caused by a State actor's mistake or inadvertence in carrying out his or her duties." *Williams v. Coughlin,* No. 91-CV83E (M), 1993 WL 481392, at *3 (W.D.N.Y. Nov.17, 1993) (citing *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) (holding that an innocent man who was mistakenly identified, arrested, and incarcerated for eight days was not deprived any due process rights because the detention occurred pursuant to a valid warrant and bona fide mistake). In *Williams,* a prisoner was inadvertently confined for an extra twenty days in segregation despite receiving a constitutionally sound disciplinary hearing. *Id.* Following *Baker,* the *Williams* court found no constitutional deprivation

where the alleged mistake resulted in only a slightly prolonged restrictive confinement of a convicted felon whose liberty was already severely restrained by his being imprisoned[, in] contrast [to] the mistake in *Baker* ... [where] a far more severe deprivation of liberty [occurred] in that an innocent person has to endure eight days in jail.

*Id.*

This case presents a situation comparable to those in *Baker* and *Williams.* In this case, Andujar was sentenced and awaiting transfer from Ulster to another DOCS detention facility. His release to parole supervision was contingent upon successful completion of his subsequent treatment at the DOCS facility. Thus, Andujar's position differed from that in *Baker* where the plaintiff was truly innocent of any wrongdoing. In *Williams* the plaintiff was incarcerated and complained of the location of his incarceration while Andujar complains of an extension of his incarceration.

**\*4** Defendants here were attempting to transfer Andujar to the treatment facility but had to wait for an appropriate vacancy to appear before the transfer could occur. Despite the factual differences in the cases, defendants here were acting similarly to those defendants th *Baker* and *Williams* since they were detaining Andujar pursuant to a valid sentencing order until he could be transferred to complete the conditional requirement standing between his incarceration and release. The failure to comply with the New York State Criminal Procedural requirement was an inadvertent mistake and result of a situation which was beyond anyone's control.

This is further supported by the attached habeas petition which admonished DOCS for its poor organizational skills and ability to discharge patients appropriately from Willard and usher in the next wave of individuals requiring treatment pursuant to county court sentences. Compl. at 8. While the opinion is scathing, it fails to allege anything more than a negligent failure of the individuals at DOCS to perform their duties in a better fashion as their "conduct made the Willard programming component untenable." *Id*. Additionally, there is no language in the complaint indicating with facial

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 786298 (N.D.N.Y.)

(Cite as: 2010 WL 786298 (N.D.N.Y.))

plausibility that such actions by the defendants were intentional. Accordingly, defendants' negligent failure to comply with the ten-day rule is insufficient to allege the requisite culpability for an actionable § 1983 claim. *See generally Daniels v. Williams,* 474 U.S. 327, 328 (1986) ("[T]he Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property.").

Accordingly, defendants' motion to dismiss should be granted.

### C. Damages for Emotional Distress

Pursuant to the Prisoner Litigation Reform Act of 1995 ("PLRA"), "[n]o Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Because Andujar has failed to allege that he has suffered any concomitant physical injury, it appears he is precluded from recovering any type of compensatory damages related to emotional distress. *Jenkins v. Haubert,* 179 F.3d 19, 28-29 (2d Cir.1999) ("[I]n the case of suits seeking damages for mental or emotional injuries ... a defendant in a prisoner § 1983 suit may also assert as an affirmative defense the plaintiff's failure to comply with the PLRA's requirements [and make a prior showing of a physical injury]."). However, Andujar was not confined at the time the suit was filed in 2009, he was released on parole, thus the statutory language of § 1997e(e) is inapplicable. *See Kelsey v. County of Schoharie,* No. 04-CV-299, 2005 WL 1972557, at *3 (N.D.N.Y. Aug.05, 2005) ("[B]ecause plaintiffs were not incarcerated at the time this action was commenced, § 1997e(e) is inapplicable ....") (citing *Kerr v. Puckett,* 138 F.3d 321, 322 (7th Cir.1998) (holding that a parolee "is not a person incarcerated or detained," thus the provisions of § 1997e are irrelevant) (internal quotations and citations omitted)).

**\*5** Therefore, defendants' motion to dismiss on this ground should be denied.

### D. Qualified Immunity

Defendants claim that even if Andujar's constitutional claims are substantiated, they are entitled to qualified immunity. Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Aiken v. Nixon,* 236 F.Supp.2d 211, 229-30 (N.D.N.Y.2002) (McAvoy, J.), *aff'd,* 80 Fed.Appx. 146 (2d Cir. Nov.10, 2003). However, even if the constitutional privileges "are clearly established, a government actor may still be shielded by qualified immunity if it was objectively reasonable for the ... official to believe that his [or her] acts did not violate those rights." *Smith v. City of Albany,* No. 03-CV-1157, 2006 WL 839525 *16 (N.D.N.Y. Mar. 27, 2006) (quoting *Kaminsky v. Rosenblum,* 929 F.2d 922, 925 (2d Cir.1991); *Magnotti v. Kuntz,* 918 F.2d 364, 367 (2d Cir.1990) (internal citations omitted)).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation. *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights, of which a reasonable person would have known, were clearly established at the time of the alleged violation. *Aiken,* 236 F.Supp.2d at 230. Here, the second prong of the inquiry need not be reached concerning Andujar's claims because, as discussed *supra,* accepting all of Andujar's allegations as true, he has not shown that any of defendants violated his constitutional rights.

Even if it could be said that Andujar's rights were violated by the extra twenty-five days of detention, qualified immunity would still protect defendants. The plain language of the Fourteenth Amendment guarantees an individual freedom from incarceration without due process. However, the Second Circuit has yet to address a case which contemplates whether a due process violation occurred when an individual is subject to continued confinement in DOCS custody, beyond a state mandated deadline, because DOCS officials did not have adequate space at a drug treatment facility which the individual was court-ordered to complete prior to release on parole. Andujar was "sentence[d to a term] of parole supervision *on the condition that he enter and complete the Willard Drug Treatment Program* ...." Compl. at 7 (emphasis

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 786298 (N.D.N.Y.)

(Cite as: 2010 WL 786298 (N.D.N.Y.))

added). Thus, Andujar's release was conditional upon his completion of the DOCS-administered drug treatment program. Holding him in Ulster, the DOCS receiving facility, for an additional three weeks until there was a vacancy at Willard was a reasonable course of action to take since Andujar's release from confinement was contingent upon his successful completion of the Willard program.

**\*6** Accordingly, in the alternative, defendants' motion should be ground on this ground.

### E. Andujar's Motion to Amend

Rule 15(a) provides that a court should grant leave to amend "freely ... when justice so requires." When exercising its discretion, a court must examine whether there has been undue delay, bad faith, or dilatory motive on the part of the movant party. *Evans v. Syracuse City School District,* 704 F.2d 44, 46 (2d Cir.1983) (*citing Foman,* 371 U.S. at 182). The court must also examine whether there will be prejudice to the opposing party. *See, e.g., Ansam Associates Inc. v. Cola Petroleum, Ltd.,* 760 F.2d 442, 446 (2d Cir.1985) (permitting proposed amendment would be especially prejudicial once discovery has been completed and a summary judgment motion filed). Finally, where it appears that granting leave to amend is unlikely to be productive or the amendment is futile, it is not an abuse of discretion to deny leave to amend. *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993) (citations omitted).

In this case, granting Andujar's request to amend his complaint to add DOCS as a defendants is futile under the Eleventh Amendment. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "[D]espite the limited terms of the Eleventh Amendment, a federal court [cannot] entertain a suit brought by a citizen against his [or her] own State." *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 98, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (citing *Hans v. Louisiana,* 134 U.S. 1, 21, 10 S.Ct. 504, 33 L.Ed. 842 (1890)). Regardless of the nature of the relief sought, in the absence of the State's consent or

waiver of immunity, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment. *Halderman,* 465 U.S. at 100. Section 1983 claims do not abrogate the Eleventh Amendment immunity of the states. *See Quern v. Jordan,* 440 U.S. 332, 340-41, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979).

"Agencies of the state, such as DOCS, are entitled to assert the state's Eleventh Amendment immunity where, for practical purposes, the agency is the alter ego of the state and the state is the real party in interest." *Santiago v. New York State Dep't of Corr. Servs.,* 945 F.2d 25, 28 n. 1 (2d Cir.1991) (*citing Halderman,* 465 U.S. at 100). Thus, any potential claims Andujar can assert against DOCS are barred by application of the Eleventh Amendment. Additionally, "this court has held that DOCS is not a 'person' under § 1983 [and c]onsequently, because defendant DOCS is immune from suit under the Eleventh Amendment[,] defendants' motion to dismiss plaintiff's claims against DOCS must be granted." *Boddie v. New York State Dep't of Corr. Serv.,* No. 96-CV-3291 (HB), 1997 WL 482036, at \*1 (S.D.N.Y. Aug.20, 1997) (internal citations omitted).

Moreover, in the case of proposed amendments where new defendants are to be added, the Court must also look to Fed.R.Civ.P. 21. Rule 21 states that a party may be added to an action "at any stage of the action and on such terms as are just." Rule 21 is "intended to permit the bringing in of a person, who through inadvertence, mistake or for some other reason, had not been made a party and whose presence as a party is later found necessary or desirable." *United States v. Commercial Bank of N.A.,* 31 F.R.D. 133, 135 (S.D.N.Y.1962) (internal quotations omitted). Addition of parties under Rule 21 is also guided by the same liberal standard as a motion to amend under Rule 15. *Fair Housing Dev. Fund Corp. v. Burke,* 55 F.R.D. 414, 419 (E.D.N.Y.1972).

As previously stated, DOCS defendants are neither a necessary or desirable party as all claims against them are futile. Thus, as the liberal standard of Rule 15 precludes the addition of DOCS as a defendant, so does Rule 21. Accordingly, Andujar's motion to amend is denied on this ground.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 786298 (N.D.N.Y.)

(Cite as: 2010 WL 786298 (N.D.N.Y.))

### III. Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that defendants' motion to dismiss (Dkt. No. 16) be **GRANTED** and that the complaint be **DISMISSED** as to all claims and all defendants; and

**IT IS ORDERED** that Andujar's motion to amend the complaint (Dkt. No. 19) is **DENIED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Sec'y of HHS,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,2010.

Andujar v. Fischer
Not Reported in F.Supp.2d, 2010 WL 786298 (N.D.N.Y.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.